# CLEARMEADOW INVESTMENTS, LLC

*A Limited Liability Company*
*Organized Under the Laws of*
*the State of Delaware*

**Dated Effective:** October 10, 2001

DEFENDANT'S EXHIBIT
3
PENGAD-Bayonne, N. J.

37-P

# OPERATING AGREEMENT OF

# CLEARMEADOW INVESTMENTS, LLC

**THE UNDERSIGNED** hereby declares this to be, and agrees according to the terms of, the Operating Agreement (the "**Operating Agreement**" or "**Agreement**") of CLEARMEADOW INVESTMENTS, LLC, a limited liability company organized under the laws of the State of Delaware (the "**Company**"), made effective as of the Organization Date (as defined herein).

## ARTICLE I

## ORGANIZATION

1.1 **Organization.** The Member (as defined below) caused there to be filed a Certificate of Formation with the Delaware Secretary of State on October 9, 2001 (the "**Organization Date**"), creating the Company, organized and to be operated in compliance with the provisions of the Act (as defined below). The rights and liabilities of the Member are as provided in the Act except as provided in this Operating Agreement.

1.2 **Name.** The name of the Company is "CLEARMEADOW INVESTMENTS, LLC."

1.3 **Principal Office.** The location of the principal office and place of business of the Company is 2233 S. West Street, Wichita, Kansas 67213, or such other location as the Member may from time to time determine. At this principal office, the Company shall maintain its records.

1.4 **Registered Office and Registered Agent.** The registered agent of the Company is National Registered Agents, Inc., and its address is 9 East Loockerman Street, Dover, Delaware, 19901, or such other location as the registered agent may determine in accordance with Section 18-104 of the Act. This Section 1.4 of the Agreement may be amended from time to time by the Member to reflect each change in the identity or address of the registered agent or registered office of the Company in the State of Delaware.

1.5 **Term.** The Company commenced on the date the Articles of Organization were filed and will continue until it is dissolved, terminated, and wound up in accordance with the provisions of this Operating Agreement.

1.6 **Purpose.** The purpose of the Company is to engage in any activities for which a limited liability company may be formed under the Act.

## ARTICLE II

## DEFINED TERMS

The terms defined in this Article, whenever used in this Agreement and capitalized, have the following meanings:

**2.1** "**Act**" means the Delaware Limited Liability Company Act, as codified in Chapter 18 of Title 6 of the Delaware Code, as now enacted or hereafter amended.

**2.2** "**Member**" means Mark E. Hutton, and any other Person (as that term is defined in the Act) who may subsequently be designated as a Member of the Company pursuant to the terms of this Agreement and the Act.

## ARTICLE III

## CAPITAL CONTRIBUTIONS; DISTRIBUTIONS

**3.1** **Initial Contribution.** The Member initially contributes to the capital of the Company that contribution further described in **Exhibit A**, attached hereto. The Member shall not be required to make any additional contributions to the capital of the Company for any purpose whatsoever. If the Member advances any additional money or property to or on behalf of the Company, such advance shall constitute a loan to the Company pursuant to Section 3.3 of this Agreement.

**3.2** **Limited Liability.** The Member shall have no personal liability for liabilities or obligations of the Company except to the extent of its capital contribution.

**3.3** **Loans.** If the capital needs of the Company exceed the capital contributions provided by Section 3.1, the Member may, but shall not be required to, loan additional monies to the Company in amounts, and on terms and conditions, to be agreed upon by the Company and the Member. The Company may also borrow money for its capital needs from any third parties in amounts, and on terms and conditions, determined by the Member.

**3.4** **Distributions.** The Company may distribute cash or other property to the Member at such times and in such amounts as the Member may determine in its sole discretion.

## ARTICLE IV

## RIGHTS AND DUTIES OF MEMBER

**4.1** **Management Rights.** The management of the Company is hereby reserved to the Member. The Member is the agent of the Company for the purpose of its business, and the act of the Member, including the execution in the Company name of any

instrument for apparently carrying on in the usual way the business of the Company, binds the Company. The Member may, from time to time, act in the capacity of an officer of the Company, including, but not limited to, the Secretary of the Company. The Member has the power and authority to delegate to one or more other persons the Member's rights and powers to manage and control the business and affairs of the Company, including to delegate to agents, officers, and employees of the Member or the Company, and to delegate by a management agreement or another agreement with, or otherwise to, other persons. Such delegation by the Member shall not cause the Member to cease to be a Member of the Company.

4.2 **Right to Indemnity.** If the Member was or is a party, or is threatened to be made a party, in any threatened, pending, or completed action, suit, proceeding, or investigation involving a cause of action or alleged cause of action for damages or other relief arising from or related to the business or affairs of the Company or the offer or sale of any membership interest in the Company, the Company (but without recourse to the separate assets of the Member) shall indemnify the Member against all losses, costs, and expenses, including attorneys' fees, judgments, and amounts paid in settlement actually and reasonably incurred by the Member in connection with the action, suit, proceeding, or investigation. The Company may indemnify any employee or agent of the Member or the Company upon such terms and conditions, if any, as the Member in its sole discretion considers appropriate. Expenses, including attorneys' fees, incurred by any indemnitee of the Company, including the Member, in defending an action, suit, proceeding, or investigation shall be paid by the Company as they are incurred, in advance of the final disposition of the action, suit, proceeding, or investigation, but only upon the terms and conditions as the Member determines in its sole discretion.

4.3 **Reliance.** The Member is entitled to rely in good faith upon the records of the Company and upon such information, opinions, reports, or statements presented to the Company by any of its other managers, members, officers, employees, or committees of the Company, or by any other person, as to matters the Member reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports, or statements as to the value and amount of the assets, liabilities, profits, or losses of the Company or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

4.4 **Fiduciary Duties and Obligations.** The Member shall have no fiduciary duties of loyalty or otherwise with respect to the Company.

## ARTICLE V

## DISSOLUTION AND LIQUIDATION

5.1 **Events of Dissolution; Withdrawal.** The Company shall be dissolved only upon the filing of a written declaration of dissolution by the Member.

**5.2** **Liquidation.** If the Company is dissolved pursuant to Section 5.1, the Company shall be liquidated and the business and affairs of the Company shall be wound up in accordance with the applicable provision of the Act and, in settling the accounts of the Company, the assets and other property of the Company shall be distributed in the following order of priority after all income and loss for the fiscal year of the sale has been allocated to the Member and appropriate reserves have been established pursuant to Section 5.3 herein:

(a) to creditors, including the Member in its capacity as a creditor of the Company, to the extent otherwise permitted by law, in satisfaction of liabilities of the Company (whether by payment or the making of reasonable provision for payment thereof) other than liabilities for which reasonable provision for payment has been made and liabilities for distributions to the Member under Sections 18-601 or 18-604 of the Act;

(b) to the Member in satisfaction of liabilities for distributions under Sections 18-601 or 18-604 of the Act; and

(c) to the Member.

**5.3** **Reserves.** Upon dissolution, the Company shall:

(a) pay or make reasonable provision to pay all claims and obligations, including all contingent, conditional, or unmatured contractual claims, known to the Company;

(b) make such provision as will be reasonably likely to be sufficient to provide compensation for any claim against the Company which is the subject of a pending action, suit, or proceeding to which the Company is a party; and

(c) make such provision as will be reasonably likely to be sufficient to provide compensation for claims that have not been made known to the Company or that have not arisen but that, based on facts known to the Company, are likely to arise or to become known to the Company within ten (10) years after the date of dissolution.

If there are sufficient assets, such claims and obligations shall be paid in full and any such provision for payment made shall be made in full. If there are insufficient assets, such claims and obligations shall be paid or provided for according to their priority and, among claims of equal priority, ratably to the extent of assets available therefor. Any remaining assets shall be distributed as provided in Section 5.2 hereof.

**5.4** **Responsibility.** Upon dissolution, the Member shall look solely to the assets of the Company for the return of its capital contribution. The winding up of the affairs of the Company and the distribution of its assets shall be conducted by the Member, who is hereby

authorized to take all actions necessary to accomplish such distribution, including, without limitation, selling any Company assets it deems necessary or appropriate to sell and over any period of time which the Member in its sole discretion deems necessary or appropriate to realize the highest value of the Company assets in a sale, including a sale of the Company, or its assets and goodwill, as a going concern.

## ARTICLE VI

## TRANSFERS OF MEMBERSHIP INTEREST

The Member may sell, hypothecate, pledge, assign, or otherwise voluntarily, transfer any part or all of such Member's membership interest to any other person. If the Member transfers the entire membership interest, the transferee(s) shall become a member(s) without any further action unless the Member and the transferee(s) agree otherwise.

## ARTICLE VII

## MISCELLANEOUS

7.1 **Books of Account.** The Member shall maintain accurate books of account for the Company and every transaction involving the Company shall be entered therein. The books of account shall be kept at the principal office of the Company.

7.2 **Accounting Method.** The books of account shall be kept on the cash method of accounting, unless the Member determines that another method is required or advisable.

7.3 **Fiscal Year.** The fiscal year of the Company is the calendar year.

7.4 **Entire Agreement.** This Operating Agreement contains the entire written declaration of the Member.

7.5 **Amendment.** This Operating Agreement may only be amended in a writing signed by the Member.

7.6 **Applicable Law.** This Agreement and the rights of the Member shall be interpreted and enforced in accordance with the laws of the State of Delaware.

7.7 **Severability.** The invalidity or unenforcability of any provision of this Agreement in any particular respect shall not affect the validity and enforceability of any other provision of this Agreement or of the same provision in any other respect.

7.8 **Reference to Statutory Provisions.** All references to statutory provision shall be deemed to refer to corresponding provisions of subsequent law.

7.9 **Pronouns and Plurals.** All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular, or plural, as the identity of the person or persons may require.

7.10 **Benefits.** This Agreement shall inure to the benefit of and shall bind the Member and its permitted successors and assigns.

**IN WITNESS WHEREOF**, the Member has executed this Operating Agreement as of this 10 day of October, 2001, but effective as of the Organization Date.

[signature]
**Mark E. Hutton**

# EXHIBIT A

## MEMBER NAME AND ADDRESS, CONTRIBUTION TO CAPITAL, AND COMPANY UNITS

| Member Name and Address | Contribution to Capital | Number and Class of Company Units |
|---|---|---|
| Mark E. Hutton<br>2233 S. West Street<br>Wichita, Kansas 67213 | *See attached Schedule A-1. | 100,000 Class A Units |
| | | **100,000 Company Units** |

## SCHEDULE A-1

## CAPITAL CONTRIBUTION OF MARK E. HUTTON

Mark E. Hutton hereby contributes Two Hundred Eighty Seven Thousand Five Hundred and no/100 Dollars ($287,500) and in exchange for his Class A Units as specified in **Exhibit A** of this Agreement.

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 11/28/2001
010605266 – 3461875

# CERTIFICATE OF INCORPORATION

# OF

# CLEARMEADOW CAPITAL CORP.

---

The undersigned, for the purposes of forming a corporation under the laws of the State of Delaware, do make, file and record this Certificate, and do certify that:

FIRST: The name of this corporation is CLEARMEADOW CAPITAL CORP.

SECOND: Its Registered Office in the State of Delaware is to be located at 9 East Loockerman Street, in the City of Dover, County of Kent, 19901. The Registered Agent in charge thereof is National Registered Agents, Inc.

THIRD: The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of Delaware.

The corporation shall be entitled to all of the general powers granted to corporations under the General Corporation Law of the State of Delaware, granted by specific statutory authority and by construction of law.

FOURTH: The amount of the total authorized capital stock of the corporation is 10,000 shares, all of which are of a par value of $.01 each and classified as Common stock.

FIFTH: The name and mailing address of the incorporator are as follows:

| NAME | ADDRESS |
|---|---|
| ROBERT S. BLOINK, ESQ. | 5220 SPRING VALLEY ROAD<br>SUITE 610<br>DALLAS, TX 75254 |

SIXTH: The duration of the corporation shall be perpetual.

SEVENTH: The personal liability of all of the directors of the corporation is hereby eliminated to the fullest extent allowed as provided by the Delaware General Corporation Law, as the same may be supplemented and amended.

EIGHTH: The corporation shall, to the fullest extent legally permissible under the provisions of the Delaware General Corporation Law, as the same may be amended and supplemented, shall indemnify and hold harmless any and all persons whom it shall have power to indemnify under said provisions from and against any and all liabilities (including expenses)

DEFENDANT'S EXHIBIT 4
PENGAD-Bayonne, N. J.

imposed upon or reasonably incurred by him in connection with any action, suit or other proceeding in which he may be involved or with which he may be threatened, or other matters referred to in or covered by said provisions both as to action in his official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director or officer of the corporation. Such indemnification provided shall not be deemed exclusive of any other rights to which those indemnified may be entitled under any Bylaw, Agreement or Resolution adopted by the shareholders entitled to vote thereon after notice.

Signed on October 12, 2001

Robert S. Bloink, Esq., Incorporator

Form **2553** (Rev. January 2001) Department of the Treasury Internal Revenue Service

# Election by a Small Business Corporation

(Under section 1362 of the Internal Revenue Code)

▶ See Parts II and III on back and the separate instructions.

▶ The corporation may either send or fax this form to the IRS. See page 1 of the instructions.

OMB No. 1545-0146

**Notes:** 1. *This election to be an S corporation can be accepted only if all the tests are met under **Who May Elect** on page 1 of the instructions; all signatures in Parts I and III are originals (no photocopies); and the exact name and address of the corporation and other required form information are provided.*

2. *Do not file **Form 1120S**, U.S. Income Tax Return for an S Corporation, for any tax year before the year the election takes effect.*

3. *If the corporation was in existence before the effective date of this election, see **Taxes an S Corporation May Owe** on page 1 of the instructions.*

## Part I Election Information

Please Type or Print

Name of corporation (see instructions): CLEARMEADOW CAPITAL CORP.

A Employer identification number: 48 1251040

Number, street, and room or suite no. (If a P.O. box, see instructions.): 2233 S. WEST ST.

B Date incorporated: 10/10/2001

City or town, state, and ZIP code: WICHITA, KS 67213

C State of incorporation: DELAWARE

D Election is to be effective for tax year beginning (month, day, year) . . . ▶ 10 / 10 / 2001

E Name and title of officer or legal representative who the IRS may call for more information: John V. Ivsan, Attorney at Law

F Telephone number of officer or legal representative: (704) 321-9425

G If the corporation changed its name or address after applying for the EIN shown in A above, check this box . . . ▶ ☐

H If this election takes effect for the first tax year the corporation exists, enter month, day, and year of the **earliest** of the following: (1) date the corporation first had shareholders, (2) date the corporation first had assets, or (3) date the corporation began doing business . . . ▶ 10 / 10 / 2001

I Selected tax year: Annual return will be filed for tax year ending (month and day) ▶ DECEMBER 31

If the tax year ends on any date other than December 31, except for an automatic 52-53-week tax year ending with reference to the month of December, you **must** complete Part II on the back. If the date you enter is the ending date of an automatic 52-53-week tax year, write "52-53-week year" to the right of the date. See Temporary Regulations section 1.441-2T(e)(3).

| J Name and address of each shareholder; shareholder's spouse having a community property interest in the corporation's stock; and each tenant in common, joint tenant, and tenant by the entirety. (A husband and wife (and their estates) are counted as one shareholder in determining the number of shareholders without regard to the manner in which the stock is owned.) | K Shareholders' Consent Statement. Under penalties of perjury, we declare that we consent to the election of the above-named corporation to be an S corporation under section 1362(a) and that we have examined this consent statement, including accompanying schedules and statements, and to the best of our knowledge and belief, it is true, correct, and complete. We understand our consent is binding and may not be withdrawn after the corporation has made a valid election. (Shareholders sign and date below.) Signature | Date | L Stock owned: Number of shares | Dates acquired | M Social security number or employer identification number (see instructions) | N Share-holder's tax year ends (month and day) |
|---|---|---|---|---|---|---|
| MARK E. HUTTON 2233 S. WEST ST. WICHITA, KS 67213 | Mark E. Hutton | 10/10/01 | 10,000 | 10/10/01 | [redacted] | 12/31 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

21

DEFENDANT'S EXHIBIT 5 PENGAD-Bayonne, N. J.

Under penalties of perjury, I declare that I have examined this election, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete.

Signature of officer ▶ Mark E. Hutton Title ▶ PRESIDENT Date ▶ 10/10/01



120

## Part II Selection of Fiscal Tax Year (All corporations using this part must complete item O and item P, Q, or R.)

O Check the applicable box to indicate whether the corporation is:

1. ☑ A new corporation adopting the tax year entered in item I, Part I.
2. ☐ An existing corporation retaining the tax year entered in item I, Part I.
3. ☐ An existing corporation changing to the tax year entered in item I, Part I.

P Complete item P if the corporation is using the expeditious approval provisions of Rev. Proc. 87-32, 1987-2 C.B. 396, to request **(1)** a natural business year (as defined in section 4.01(1) of Rev. Proc. 87-32) or **(2)** a year that satisfies the ownership tax year test in section 4.01(2) of Rev. Proc. 87-32. Check the applicable box below to indicate the representation statement the corporation is making as required under section 4 of Rev. Proc. 87-32.

**1.** Natural Business Year ▶ ☐ I represent that the corporation is retaining or changing to a tax year that coincides with its natural business year as defined in section 4.01(1) of Rev. Proc. 87-32 and as verified by its satisfaction of the requirements of section 4.02(1) of Rev. Proc. 87-32. In addition, if the corporation is changing to a natural business year as defined in section 4.01(1), I further represent that such tax year results in less deferral of income to the owners than the corporation's present tax year. I also represent that the corporation is not described in section 3.01(2) of Rev. Proc. 87-32. (See instructions for additional information that must be attached.)

**2.** Ownership Tax Year ▶ ☐ I represent that shareholders holding more than half of the shares of the stock (as of the first day of the tax year to which the request relates) of the corporation have the same tax year or are concurrently changing to the tax year that the corporation adopts, retains, or changes to per item I, Part I. I also represent that the corporation is not described in section 3.01(2) of Rev. Proc. 87-32.

**Note:** *If you do not use item P and the corporation wants a fiscal tax year, complete either item Q or R below. Item Q is used to request a fiscal tax year based on a business purpose and to make a back-up section 444 election. Item R is used to make a regular section 444 election.*

Q Business Purpose—To request a fiscal tax year based on a business purpose, you must check box Q1 and pay a user fee. See instructions for details. You may also check box Q2 and/or box Q3.

**1.** Check here ▶ ☐ if the fiscal year entered in item I, Part I, is requested under the provisions of section 6.03 of Rev. Proc. 87-32. Attach to Form 2553 a statement showing the business purpose for the requested fiscal year. See instructions for additional information that must be attached.

**2.** Check here ▶ ☐ to show that the corporation intends to make a back-up section 444 election in the event the corporation's business purpose request is not approved by the IRS. (See instructions for more information.)

**3.** Check here ▶ ☐ to show that the corporation agrees to adopt or change to a tax year ending December 31 if necessary for the IRS to accept this election for S corporation status in the event (1) the corporation's business purpose request is not approved and the corporation makes a back-up section 444 election, but is ultimately not qualified to make a section 444 election, or (2) the corporation's business purpose request is not approved and the corporation did not make a back-up section 444 election.

R Section 444 Election—To make a section 444 election, you must check box R1 and you may also check box R2.

**1.** Check here ▶ ☐ to show the corporation will make, if qualified, a section 444 election to have the fiscal tax year shown in item I, Part I. To make the election, you must complete **Form 8716**, Election To Have a Tax Year Other Than a Required Tax Year, and either attach it to Form 2553 or file it separately.

**2.** Check here ▶ ☐ to show that the corporation agrees to adopt or change to a tax year ending December 31 if necessary for the IRS to accept this election for S corporation status in the event the corporation is ultimately not qualified to make a section 444 election.

## Part III Qualified Subchapter S Trust (QSST) Election Under Section 1361(d)(2)*

| Income beneficiary's name and address | Social security number |
|---|---|
| Trust's name and address | Employer identification number |

Date on which stock of the corporation was transferred to the trust (month, day, year) . . . . . . . . . . . . ▶ / /

In order for the trust named above to be a QSST and thus a qualifying shareholder of the S corporation for which this Form 2553 is filed, I hereby make the election under section 1361(d)(2). Under penalties of perjury, I certify that the trust meets the definitional requirements of section 1361(d)(3) and that all other information provided in Part III is true, correct, and complete.

Signature of income beneficiary or signature and title of legal representative or other qualified person making the election — Date

*Use Part III to make the QSST election only if stock of the corporation has been transferred to the trust on or before the date on which the corporation makes its election to be an S corporation. The QSST election must be made and filed separately if stock of the corporation is transferred to the trust after the date on which the corporation makes the S election.

*State of Delaware*

# *Office of the Secretary of State*

PAGE 1

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "CLEARMEADOW CAPITAL CORP.", FILED IN THIS OFFICE ON THE TWENTY-EIGHTH DAY OF NOVEMBER, A.D. 2001, AT 9 O'CLOCK A.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE KENT COUNTY RECORDER OF DEEDS.

PENGAD-Bayonne, N. J. DEFENDANT'S EXHIBIT 6

27-P

Harriet Smith Windsor

*Harriet Smith Windsor, Secretary of State*

3461875 8100

AUTHENTICATION: 1471224

23

010605266

DATE: 11-29-01

DEUTSCHE BANC ALEX. BROWN INC.
P.O. BOX 1776
BALTIMORE MD 21203

CLENDENING/BRUBAKER
INVESTMENT REP #182
200 CRESCENT COURT SUITE 500
DALLAS TX 75201-6959
(214) 740-7700 (800) 527-3903

# Portfolio Overview

## Assets

| Assets | Value as of October 31, 2001 | % of total assets |
|---|---|---|
| Cash | $0.00 | 0.0% |
| Money funds | 250,065.92 | 100.0 |
| Common stocks | 0.00 | 0.0 |
| Preferred stocks | 0.00 | 0.0 |
| Mutual funds | 0.00 | 0.0 |
| Government debt issues | 0.00 | 0.0 |
| Corporate debt issues | 0.00 | 0.0 |
| Municipal debt issues | 0.00 | 0.0 |
| Certificates of deposit | 0.00 | 0.0 |
| Options | 0.00 | 0.0 |
| Limited partnerships | 0.00 | 0.0 |
| Annuities | 0.00 | 0.0 |
| Other | 0.00 | 0.0 |
| **Total assets** | **$250,065.92** | **100.0%** |

## Liabilities

| Liabilities | Value as of October 31, 2001 | % of total assets |
|---|---|---|
| Cash debit | $0.00 | 0.0% |
| Margin debit | 0.00 | 0.0 |
| Short options | 0.00 | 0.0 |
| Other short securities | 0.00 | 0.0 |
| **Total liabilities** | **$0.00** | **0.0%** |

## Net Value of Your Account $250,065.92

## Net Value as of December 31, 2000 $0.00

Deutsche Bank

# Deutsche Banc Alex. Brown
# Client Statement

DEFENDANT'S EXHIBIT 7
PENGAD-Bayonne, N. J.

CLEARMEADOW INVESTMENTS LLC
ATTN MARK E HUTTON
2233 S WEST STREET
WITCHITA KS 67213

SH 00151

24

## Activity

| Activity | This period |
|---|---|
| Net value of your account as of September 30 | $0.00 |
| Net cash activity | 249,942.29 |
| Net securities into/out of account | 0.00 |
| Net return on your portfolio | 123.63 |
| **Net value of your account as of October 31** | **$250,065.92** |

## Income

| Income | This period | Year to date |
|---|---|---|
| Net income received | $123.63 | $123.63 |
| Current estimated annual income | $5,801.52 | |
| Current estimated annual yield | 2.32% | |

CASE # 05-1223

Statement of Account
October 1 to October 31, 2001
Account [redacted]

2237888400-021-00181198 R N

**Deutsche Banc Alex. Brown**

Statement of Account
October 1 to October 31, 2001
Account [redacted]



# Cash Summary

## Opening Cash Balance $0.00

## Income Summary

| | This period | Year to date |
|---|---|---|
| Taxable dividends | $123.63 | $123.63 |
| Taxable interest | 0.00 | 0.00 |
| Capital gains distributions received | 0.00 | 0.00 |
| Non-taxable dividends | 0.00 | 0.00 |
| Non-taxable interest | 0.00 | 0.00 |
| **Net income received** | **$123.63** | **$123.63** |

## Cash Activity

| | This period | Year to date |
|---|---|---|
| Deposits | $287,500.00 | $287,500.00 |
| Withdrawals | 37,520.00 - | 37,520.00 - |
| U.S. tax withheld | 37.71 - | 37.71 - |
| Non-resident tax withheld | 0.00 | 0.00 |
| Foreign taxes withheld | 0.00 | 0.00 |
| Interest charges on cash debit | 0.00 | 0.00 |
| Interest charges on margin debit | 0.00 | 0.00 |
| **Net cash activity** | **$249,942.29** | **$249,942.29** |

## Purchases and Sales

| | This period | Year to date |
|---|---|---|
| Total purchases | $287,585.92 - | $287,585.92 - |
| Total sales | 37,520.00 | 37,520.00 |
| Other money fund sales | 0.00 | 0.00 |
| **Net purchases/sales(incl. money funds)** | **$250,065.92 -** | **$250,065.92 -** |

## Other Activity

| | This period | Year to date |
|---|---|---|
| Bond redemptions | $0.00 | $0.00 |
| Other activity | 0.00 | 0.00 |
| **Net other activity** | **$0.00** | **$0.00** |

## Closing Cash Balance $0.00

# Portfolio Summary

## Activity

| | This period | Year to date |
|---|---|---|
| Previous net account value | $0.00 | $0.00 |
| Net cash activity | 249,942.29 | 249,942.29 |
| Net securities into/out of account | 0.00 | 0.00 |
| **Adjusted previous account value** | **$249,942.29** | **$249,942.29** |
| Net change in market value | 0.00 | 0.00 |
| Net income received | 123.63 | 123.63 |
| **Net account value as of October 31, 2001** | **$250,065.92** | **$250,065.92** |
| Net return on portfolio | 123.63 | 123.63 |

SH 00152



CASE # 05-1223

SH 00153

# Portfolio Holdings

Prices are provided by an independent pricing service. For current market price quotations, call your Investment Representative.

## Cash and Equivalents

| | Amount | Estimated annual income | Current annual yield |
|---|---|---|---|
| DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC - PRIME SERIES | $250,065.92 | $5,801.52 | 2.32% |
| **Total cash and equivalents** | **$250,065.92** | **$5,801.52** | |

# Portfolio Activity

## Dividends and Interest

| Date | Activity | Description | Amount |
|---|---|---|---|
| 10/?3/2001 | Dividend | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC.- PRIME SERIES TEFRA TAX WITHHELD | $123.63<br>37.71 - |
| **Total dividends and interest** | | | **$123.63** |

## Purchases and Sales

| Settlement date | Activity | Type | Quantity | Description | Unit price | Amount |
|---|---|---|---|---|---|---|
| 10/?5/2001 | Purchased | Sweep | 287,500 | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC.- PRIME SERIES | $1 | $287,500.00 - |
| 10/06/2001 | Sold | Cash | 27,510 - | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC - PRIME SERIES | 1 | 27,510.00 |
| 10/?3/2001 | Fund reinvested | Cash | 85.92 | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC - PRIME SERIES MONTHLY DIVIDEND REINVESTED | 1 | 85.92 - |
| 10/?3/2001 | Sold | Cash | 7,500 - | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC - PRIME SERIES | 1 | 7,500.00 |
| 10/?4/2001 | Sold | Cash | 2,500 - | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC - PRIME SERIES | 1 | 2,500.00 |

26

CASE # 05-1223

Case 1:05-cv-01223-FMA Document 30-3 Filed 08/22/2007 Page 18 of 20



SH 00154

# Portfolio Activity continued

## Purchases and Sales

| Settlement date | Activity | Type | Quantity | Description | Unit price | Amount |
|---|---|---|---|---|---|---|
| 10/25/2001 | Sold | Sweep | 10 - | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC.- PRIME SERIES | 1 | 10.00 |
| **Net purchases and sales** | | | | | | **$250,065.92 -** |

# Deposits

## Other Deposits

| Date posted | Description | Amount |
|---|---|---|
| 10/12/2001 | FUNDS RECEIVED COMM WICHITA | $287,500.00 |
| **Total other deposits** | | **$287,500.00** |

# Withdrawals

## Other Withdrawals

| Date posted | Description | Amount |
|---|---|---|
| 10/16/2001 | FUNDS WIRED TO SOCIETE GENERALE NA INC. NEW Y IRD OPERATIONS | $27,500.00 - |
| 10/16/2001 | WIRE FEE | 10.00 - |
| 10/23/2001 | TRF TO CF ADV XXXVII A/O 10/23/01 AS INV ADV PYMT | 7,500.00 - |
| 10/24/2001 | FUNDS WIRED TO BANKERS TRUST COMPANY DEUTSCHE BK LONDON/F | 2,500.00 - |
| 10/24/2001 | WIRE FEE | 10.00 - |
| **Total other withdrawals** | | **$37,520.00 -** |



CASE # 05-1223

# Market Indices

| Equities | Current | December 31, 2000 | Change year to date |
|---|---|---|---|
| Dow Jones Industrial Average | 9,075 14 | 10,786.85 | 15.9%- |
| NASDAQ Composite | 1,690.20 | 2,470.52 | 31.6%- |
| S & P 500 | 1,059 78 | 1,320.28 | 19.7%- |
| MSCI EAFE | 1,108 34 | 1,492.41 | 25.7%- |

SH 00155

| Fixed Income Securities | Current | December 31, 2000 |
|---|---|---|
| Long term treasury bond yield | 4.81% | 5.46% |
| Lehman Brothers Intermediate US Credit Index | 11.33% | 9.46% |



CASE # 05-1223

Deutsche Bank

Statement of Account
October 1 to October 31, 2001
Account [redacted]

2237888400-021-00181200 R N

**Deutsche Banc Alex. Brown**

Statement of Account
October 1 to October 31, 2001
Accoun[redacted]



# Disclosure

Please advise us promptly of any material change in your investment or financial situation.
Your account is with Deutsche Banc Alex. Brown Inc., a registered broker-dealer, referred to herein as Deutsche Banc Alex. Brown. The reporting period for your statement ends on the last day of the month. The dates indicated on purchases and sales are settlement dates. Margin interest charges incurred after the period indicated on this statement will be shown on the next statement. In order to review margin interest charges, you should retain this statement for use in conjunction with the next statement.
Any free credit balances represents funds payable on demand which, although properly accounted for on our books and records, are not segregated and may be used in the conduct of this Firm's business, without payment to you subject to the limitations of 17 CFR Section 240.15c3-3 under the Securities Exchange Act of 1934.
Positions and activity shown on your margin account comprise a combined statement of your margin account and your special memorandum account. The special memorandum account is maintained for you in accordance with Regulation T of the Board of Governors of the Federal Reserve System and is comprised of funds generated by your margin activity and segregated for your future use. A permanent detailed record of the activity in this account is available for inspection at your request. We reserve the right to establish or modify requirements pertaining to the operation of a margin account which may exceed requirements established by the Federal Reserve Board and/or the New York Stock Exchange.
Aggregate commissions which you have paid are not reported separately on this statement of account.
Commissions and charges incurred in connection with the execution of option and other transactions have been included in confirmations of those transactions previously furnished you. A summary of this information will be made available to you upon request.
Orders for your account may be aggregated with other customer orders. In so doing, you may receive an average price for your orders which may be different from the price(s) you may have received had your orders not been aggregated. This practice may also result in your orders being only partially completed.
A financial statement on this Firm is available for your personal inspection at our offices, or a copy will be mailed upon your written request.
Information regarding market price, market value, estimated income, dividends and annual yields is based on data obtained from sources we consider to be reliable but is not guaranteed as to accuracy. This information is provided as a convenience to aid in your financial recordkeeping.
Deutsche Banc Alex. Brown money fund yield figures are based on the seven-day period preceding the statement date. Deutsche Asset Management Funds and Deutsche Asset Management Flag Investors Funds estimated yield and income figures are computed based on either dividends for the preceding twelve-month period or the annualized rate of distribution.
Direct participation program securities (e.g. partnerships, limited liability companies, and real estate investment trusts ("REITS") which are not listed on a national securities exchange or on The Nasdaq Stock Market, Inc. are generally illiquid. No formal trading market exists for these securities and their values will be different than the purchase price. Unless otherwise indicated, the values shown herein for such securities have been provided by the management of each program and are updated quarterly. These values represent management's estimate of the investor's interest in the net assets of the program. Therefore, the estimated values shown herein may not necessarily be realized upon sale of the securities.
We receive payment for routing for execution some orders in certain listed securities. The determination as to where to route orders is based on several factors, subject to the overriding consideration that customers receive best execution. All orders for which we receive payment are exposed to the possibility of price improvement, so that all such orders potentially can be executed at prices superior to the best bid or best offer. Payment is received in the form of rebates, or credits against exchange fees and specialist fees. Details will be furnished upon written request.

Deutsche Banc Alex. Brown Inc. debits $50 from each account transferring to another broker-dealer or financial institution to cover the administrative costs of such transfer.
NASD Regulation, Inc. makes available to investors a brochure regarding its Public Disclosure Program. The Public Disclosure hotline number is (800) 289-9999. The NASD Regulation website can be located at www.nasdr.com.
Deutsche Banc Alex. Brown Inc., Member SIPC.
* The current portfolio value excludes unpriced securities.
** Denotes a mutual fund.
*** Denotes a foreign security.

# Money Market Fund 7 Day Average Yields:

| | |
|---|---|
| DB ALEX. BROWN CASH RESERVE PRIME | 2.32% |
| DB ALEX. BROWN CASH RESERVE TREASURY | 2.15% |
| DB ALEX. BROWN CASH RESERVE TAX FREE | 1.59% |

# Your Standing Instructions are:

Purchases: Hold securities in street name
Sales: Credit proceeds to account
Income: Hold in account

**End of Statement**

SH 00156

29

CASE # 05-1223