(iv) Distribute any remaining Company assets to the Members in accordance with their positive Capital Account balances as determined pursuant to Section 4.1 of this Agreement.

## ARTICLE VIII

## TRANSFER OF COMPANY UNITS; ADMISSION OF ADDITIONAL MEMBERS

8.1 **Prohibition on Unapproved Transfers.** A Class A Member may Transfer one or more of his, her, or its Class A Units, in whole or in part, at any time and without the need for any advance written notice to any other Member. A Class B Member shall not Transfer any of his, her, or its Class B Units, in whole or in part, at any time without the advance written consent of the Members pursuant to a Required Vote. Except as otherwise provided in this Article VIII, in no event shall the assignee or transferee of any Units become, or exercise the rights of, a Member unless the Members approve the assignee or transferee to become a substitute Member pursuant to Article VI hereof with respect to such transferred Units and the assignee or transferee executes a copy of or joinder to this Agreement.

8.2 **Requirements to Transfer.** Except for a Transfer described in Section 8.4, any and all Transfers made pursuant to this Article VIII are subject in all respects to the following:

**(a)** No Transfer shall be made without assurances to the Company that the Transfer does not violate any law applicable to the Company.

**(b)** The Company may require of the transferor or transferee, as a condition to the approval of such Transfer: (i) (A) registration under the Securities Act and applicable state securities laws, or (B) an opinion of counsel, from counsel and in form and substance satisfactory to the Company, that such Transfer is exempt from registration under the Securities Act and/or applicable state securities laws; and (ii) representations and warranties from the transferee or the transferring Member concerning the facts and circumstances establishing the basis for the availability of exemptions under the Securities Act, the Investment Company Act of 1940, as amended, the Investment Advisers Act of 1940, as amended, and other reasonable assurances relating to any other applicable laws.

**(c)** As a condition to admission as a substitute Member, an assignee, transferee, legatee, or distributee of all or part of the Company Units of any Member shall execute and acknowledge such instruments, in form and substance satisfactory to the Company, as the Company deems necessary or advisable to effect such admission and to confirm the agreement of the Person being admitted as such substitute Member to be bound by all the terms and provisions of this

Agreement. Such assignee, transferee, legatee, or distributee shall pay all reasonable expenses in connection with such admission as a substitute Member, including, but not limited to, legal fees and costs incurred by the Company in connection therewith.

(d) If a proposed Transfer would, alone or in conjunction with one or more other Transfers, cause a Termination of the Company, the Company may prohibit the proposed Transfer from occurring until the earliest time that the Transfer may occur without causing a Termination. If at any time more than one Transfer is being delayed under this Section 8.2(d), the Transfers are to be made in the order in which the Company received notice of such Transfers.

(e) If a Transfer causes a Termination, the Member making the Transfer shall be liable to the Company and each of the other Members for any taxes, fines, penalties, damages, or losses which may be due as a result of the Termination, including, without limitation, costs of enforcement of the Company's power to void or otherwise prohibit the Transfer or attempted Transfer.

(f) Any Transfer not made in compliance with this Article VIII is void ab initio and of no effect.

**8.3 Acquit Company.** Following the effective date of an approved Transfer of Company Units pursuant to this Article VIII, the Company shall make all allocations and pay all further distributions of profits or other compensation by way of income or returns of capital in respect of the Units so assigned to the assignee thereof. In the absence of compliance with this Article VIII, any payment in respect thereto by the Company to the assigning Member, or his, her, or its personal representative, shall acquit the Company of liability to the extent of such payment to any Person who may have an interest in such payment by reason of a Transfer or otherwise.

**8.4 Class A Member Call and Put Rights.** Notwithstanding any other provision of this Article VIII to the contrary, any time after the expiration of the period ending fifteen (15) days prior to the end of the first calendar quarter after the effective date of this Agreement, the Class A Members reserve the right (i) to terminate the services of the Class B Member at any time and for any reason whatsoever by a Required Vote and (ii) to individually elect either of the following:

(a) A Class A Member may require that the Class B Member purchase all of such Class A Member's Class A Company Units at the book value for such Class A Company Units as determined in accordance with Section 4.1 of this Agreement.

(b) The Class A Members by a Required Vote may require that the Class B Member sell all of the Class B Member's Class B Company Units to the Class A Members or the Company at the

book value for such Class B Company Units as determined in accordance with Section 4.1 of this Agreement.

A Class A Member may exercise the rights described in this Section 8.4, and such exercise shall be deemed effective, by delivery to the Class B Member of a notice to such effect. Any payment due by a Member to another Member as a result of an exercise made by a Class A Member pursuant to this Section 8.4 shall be due and payable as of the date of such exercise.

## ARTICLE IX

## INDEMNIFICATION

9.1 **Right to Indemnity.** If any Member (an "**Indemnitee**") was or is a party or is threatened to be made a party in any threatened, pending, or completed action, suit, proceeding, or investigation involving a cause of action or alleged cause of action for damages or other relief arising from or related to the business or affairs of the Company or the offer or sale of any Units, the Company (but without recourse to the separate assets of any Member) shall indemnify the Indemnitee against all losses, costs, and expenses, including attorneys' fees, judgments, and amounts paid in settlement actually and reasonably incurred by the Indemnitee in connection with the action, suit, proceeding, or investigation, so long as the Indemnitee has met the standard set forth in Section 5.4 of this Agreement. The termination of any action, suit, proceeding, or investigation by judgment, order, settlement, or conviction upon a plea of nolo contendere or its equivalent does not, of itself, create a presumption that an Indemnitee did not act in good faith and in a manner he, she, or it reasonably believed to be in or not opposed to the best interests of the Company and with the care that an ordinarily prudent person in a like position would use under similar circumstances and, with respect to any criminal action, proceeding, or investigation, that he, she, or it had reasonable cause to believe his, her, or its conduct was unlawful.

9.2 **Member Determination.** Unless indemnification is ordered by a court, the determination for purposes of Section 9.1 of this Agreement as to whether an Indemnitee met the standard set forth in this Agreement is to be made in the specific case by the Members in any manner permitted by the Act or this Agreement.

9.3 **Advancement Of Expenses.** Expenses, including attorneys' fees, incurred by any Indemnitee in defending an action, suit, proceeding, or investigation shall be paid by the Company as they are incurred, in advance of the final disposition of the action, suit, proceeding, or investigation, but only upon the terms and conditions as the Members may determine.

9.4 **Other Rights to Indemnity or Reimbursement; Survival.** Notwithstanding the foregoing, indemnification under this Article IX is to be provided only with respect to losses, costs, expenses, judgments, and amounts which otherwise are not compensated for by insurance carried for the benefit of the Company. Indemnification under this Agreement is not exclusive of any other rights to which those seeking indemnification may be entitled under any rule of law (whether common law or statutory), agreement, or arrangement, whether as to action in an official capacity and as to action in another capacity while holding such position or while employed by or acting as agent for the Company, and continues as to an Indemnitee who has ceased to serve in any capacity on behalf of the Company and inures to the benefit of the heirs, successors, executors, and administrators of the Indemnitee.

9.5 **Indemnification of Officers, Employees, and Agents.** The Company may indemnify any employee or agent of the Company upon such terms and conditions, if any, as the Members consider appropriate.

9.6 **Insurance.** The Company may purchase and maintain insurance or furnish similar protection, including, but not limited to, trust funds, letters of credit, or self-insurance, for or on behalf of any Person who is or was a Member, partner, employee, or agent of the Company, or who is or was serving at the request of the Company as a manager, director, trustee, officer, employee, or agent of another limited liability company, corporation, partnership, joint venture, trust, or other enterprise, so long as the insurance is available on acceptable terms as determined by the Members. The insurance or similar protection purchased or maintained for such Person or Persons may be for any liability asserted against them and incurred by them in any capacity described in this Section 9.6 or for any liability arising out of their status as described in this Section 9.6, whether or not the Company would have the power to indemnify them against that liability under this Agreement. Insurance may be so purchased from or so maintained with a Person in which the Company has a financial interest.

9.7 **Savings Clause.** If this Article IX or any portion hereof is invalidated on any ground by any court of competent jurisdiction, then the Company shall nevertheless indemnify each Indemnitee as to costs, charges, and expenses (including attorneys' fees), judgments, fines, and amounts paid in settlement with respect to any action, suit, proceeding, or investigation, whether civil, criminal, administrative, or investigative, including any action by or in the right of the Company, to the fullest extent permitted by any applicable portion of this Article IX that has not been invalidated and to the fullest extent permitted by applicable law.

## ARTICLE X

## MISCELLANEOUS

10.1 **Entire Agreement; Amendments.** This Operating Agreement contains the entire agreement of the Members with respect to the Company. No oral or written agreement or understanding, except an amendment duly adopted with the unanimous written consent of all the Members, affects or amends the terms of this Operating Agreement. Any prior operating agreement of the Company is hereby revoked in its entirety.

10.2 **Counterparts.** This Agreement may be executed in several counterparts, all of which shall constitute one agreement, binding on all parties hereto, notwithstanding that all the parties are not signatories to the same counterpart.

10.3 **Applicable Law.** This Agreement and the rights of the Members shall be interpreted and enforced in accordance with the laws of the State of Delaware.

10.4 **Severability.** The invalidity or unenforceability of any provision of this Agreement in any particular respect shall not affect the validity and enforceability of any other provision of this Agreement or of the same provision in any other respect.

10.5 **Reference to Statutory Provisions**. All references to statutory provisions shall be deemed to refer to corresponding provisions of subsequent law.

10.6 **Confidentiality.** No Member may, without the consent of the Members pursuant to a Required Vote, divulge to any other person or entity any information whatsoever that relates in any way to the services, business, or operations of the Company, whether before or after the Company's dissolution.

10.7 **Notice of Tax Examinations.** Any Member receiving advice that the Service intends to examine any income tax return of the Company is to promptly notify the Company and the other Members. Each Member is to report on his, her, or its federal income tax return items of income and loss on a basis consistent with the Form K-1 prepared by or on behalf of the Company.

10.8 **Other Business Ventures.** The Members may engage in and possess an interest in any other professional or business venture of any nature and description whatsoever, independently or with others, including, but not limited to, the acquisition, ownership, and operation of ventures competitive with, and similar in nature to, the business conducted by the Company.

[THE REMAINDER OF THIS PAGE HAS BEEN LEFT INTENTIONALLY BLANK.]

**IN WITNESS WHEREOF**, the Members have executed and delivered this Agreement as of the Effective Date.

**"Members"**

**CLEARMEADOW CAPITAL CORP.**

By: MARK E. HUTTON
Its: President

**CF ADVISORS XXXVII, LLC**

By: Daniel J. Brooks, Jr.
Its: President

# EXHIBIT A

## MEMBER NAME AND ADDRESS, CONTRIBUTION TO CAPITAL, AND COMPANY UNITS

| **Member Name and Address** | **Contribution to Capital** | **Number and Class of Company Units** |
|---|---|---|
| CLEARMEADOW CAPITAL CORP.<br>2233 S. West Street<br>Wichita, Kansas 67213 | *See attached Schedule A-1. | 99,000 Class A Units |
| CF Advisors XXXVII, LLC<br>10 Bay Street<br>Westport, CT 06880 | *See attached Schedule A-2. | 1,000 Class B Units |
| ***Total*** | | **100,000 Company Units** |

## SCHEDULE A-1

## CAPITAL CONTRIBUTION OF CLEARMEADOW CAPITAL CORP.

CLEARMEADOW CAPITAL CORP. hereby contributes Two Hundred Eighty Seven Thousand Five Hundred and no/100 Dollars ($287,500) and in exchange for its Class A Units as specified in **Exhibit A** of this Agreement.

## SHEDULE A-2

## CAPITAL CONTRIBUTION OF CF ADVISORS XXXVII, LLC

CF Advisors XXXVII, LLC hereby contributes Two Thousand Five Hundred and NO/100 Dollars ($2,500.00) out of its service fees payable under Section 5.5 of this Agreement to the capital of the Company and in exchange for its Class B Units as specified in **Exhibit A** of this Agreement.

PENGAD-Bayonne, N.J.
DEFENDANT'S
EXHIBIT
23

# ASSIGNMENT OF LIMITED LIABILITY COMPANY UNITS AND JOINDER AGREEMENT

**THIS ASSIGNMENT OF LIMITED LIABILITY COMPANY UNITS AND JOINDER AGREEMENT** (the "**Assignment**") entered into this 18 day of December, 2001, by and among **CLEARMEADOW CAPITAL CORP.**, a corporation organized under the laws of the State of Delaware ("**CLEARMEADOW**"), and **CF ADVISORS XXXVII, LLC**, a limited liability company organized under the laws of the State of Delaware ("**Clarion**"),

## W I T N E S S E T H:

**WHEREAS**, CLEARMEADOW INVESTMENTS, LLC, a limited liability company organized under the laws of the State of Delaware (the "**Company**"), was formed on the 9 day of Oct., 2001;

**WHEREAS**, the business and affairs of the Company are governed by the terms of that certain operating agreement of the Company dated as of the 19 day of Oct, 2001 (the "**Operating Agreement**");

**WHEREAS**, Clarion and CLEARMEADOW are Members (as that term is defined in the Operating Agreement) of the Company, in which Clarion currently owns one thousand (1,000) Company Units (as that term is defined in the Operating Agreement) (collectively, the "**Clarion Units**");

**WHEREAS**, Clarion currently serves as an investment advisor with respect to certain foreign currency and derivatives investments of the Company;

**WHEREAS**, the Company has liquidated the majority of its foreign currency and derivatives investments, and CLEARMEADOW does not anticipate a continuing need for Clarion's services on behalf of the Company; and

**WHEREAS**, CLEARMEADOW desires to purchase the Clarion Units from Clarion and thereby acquire complete ownership of all Company Units, and Clarion desires to sell the Clarion Units to CLEARMEADOW and thereby withdraw from any and all membership interests in the Company;

**NOW, THEREFORE**, in consideration of the premises, and of the mutual promises, covenants, and conditions herein contained, and for other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the parties hereto intending to be legally bound hereby agree as follows:

1. **Sale and Assignment; Withdrawal.** Clarion hereby sells to CLEARMEADOW, and CLEARMEADOW hereby purchases from Clarion, the Clarion

Units for the purchase price of that amount in cash or foreign currency as further specified in **Schedule A**, attached hereto, tendered simultaneously herewith from CLEARMEADOW to Clarion. Clarion hereby assigns all right, title, and interest in and to the Clarion Units to CLEARMEADOW, and Clarion hereby withdraws from membership in the Company, surrendering to CLEARMEADOW any and all rights Clarion may have as a Member with respect to the Clarion Units.

2. **Joinder.** CLEARMEADOW hereby agrees to take the Clarion Units subject to the terms and conditions of the Operating Agreement. The parties hereto agree to treat CLEARMEADOW as a Member with respect to the Clarion Units pursuant to the terms of the Operating Agreement.

3. **Consents.** The parties hereto consent to the transfer of the Units from Clarion to CLEARMEADOW, to the admission of CLEARMEADOW as a Member with respect to the Clarion Units, and to the withdrawal of Clarion as a Member.

4. **Further Action.** The parties hereto agree to take all such further action as may be necessary or appropriate to effectuate the purposes of this Assignment.

5. **Governing Law.** This Assignment shall be construed and enforced pursuant to the laws of the State of Delaware.

**IN WITNESS WHEREOF**, the undersigned have executed this Assignment as of the day and year first above written.

**CLEARMEADOW CAPITAL CORP.**

By: Mark E. Hutton, President

**CF ADVISORS XXXVII, LLC**

By: Daniel J. Brooks, Jr., President

## SCHEDULE A

## PURCHASE PRICE

The parties hereto agree that the assets on the books of the Company as of the date of this Assignment are as follows:

---

**Specify Assets Herein**

---

As of the date of this Assignment, the Clarion Units constitute one percent (1%) of all outstanding Company Units. Accordingly, one percent (1%) of the assets of the Company amounts to: 1,000 Class B Company Units

---

**Specify 1% of Assets Herein**

---

Accordingly, the parties hereto agree that the purchase price under Section 1 of this Assignment shall be: $2,500 00/100 (USD)

---

**Specify 1% of Assets Herein**

---

**CLEARMEADOW INVESTMENTS, LLC**
2233 S. West Street
Wichita, Kansas 67213

December 16, 2001

**VIA TELECOPY (214) 740-7780**

Mr. Craig Brubaker
Deutsche Banc Alex Brown
200 Crescent Court
Suite 500
Dallas, Texas 75201

Re: CLEARMEADOW INVESTMENTS, LLC
Acct # [redacted]

Dear Mr. Brubaker:

This letter is to inform you that CF Advisors XXXVII, LLC assigned all of its interest in CLEARMEADOW INVESTMENTS, LLC to CLEARMEADOW CAPITAL CORP. and is no longer a member of CLEARMEADOW INVESTMENTS, LLC as evidenced by that certain Assignment of Limited Liability Company Units and Joinder Agreement between CLEARMEADOW CAPITAL CORP. and CF Advisors XXXVII, LLC. Accordingly, Dan Brooks, in his capacity as President of CF Advisors XXXVII, LLC shall no longer maintain any investment authority over the above-mentioned account.

Please contact me if you have any questions regarding this matter.

Very truly yours,
CLEARMEADOW CAPITAL CORP.

Mark E. Hutton

By: Mark E. Hutton, President

DEFENDANT'S EXHIBIT 24

PENGAD-Bayonne, N.J.



15-P

CLEARMEADOW INVESTMENTS, LLC
2233 S. West Street
Wichita, Kansas 67213

December 27, 2001

**VIA TELECOPY (214) 740-7780**

Mr. Craig Brubaker
Deutsche Banc Alex Brown
200 Crescent Court
Suite 500
Dallas, Texas 75201

Re: CLEARMEADOW INVESTMENTS, LLC
Acct # [redacted]

Dear Mr. Brubaker:

This letter constitutes your authorization to sell the positions indicated on the attached Schedule A currently held in the above-referenced account.

Please contact me if you have any questions regarding this matter.

Very truly yours,

[signature]
By:
Its:

DEFENDANT'S EXHIBIT 25A

PENGAD-Bayonne, N. J.

3-P

## Clearmeadow Investments LLC

## Schedule A

Sell exactly forty percent (40%) of all positions currently held by the LLC.



PENGAD-Bayonne, N. J.
DEFENDANT'S EXHIBIT 25B

# United States of America

**Department of the Treasury**
**Internal Revenue Service**

Date: January 5, 2006

## CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed transcript(s) is(are) an exact transcript of the account of the Taxpayer named herein in respect to the taxes specified. It is a true and complete transcript for the period(s) stated of all assessments, abatements, credits, and refunds relating thereto as disclosed by the records of this office as of the date of this certification. It also contains a statement of all unidentified and advanced payments, if any, for the periods(s) stated.

CLEARMEADOW INVESTMENTS LLC

For tax period(s) December 31, 2001
Form 1065
Certification of Assessment and Payments consisting of 3 page(s)
under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

Susan A. Hansen, Field Director
Cincinnati Submission Processing Center

Catalog Number 19002E

Form **2866** (Rev. 09-1997)

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

CLEARMEADOW INVESTMENTS LLC EIN/SSN: 48-1251013

TYPE OF TAX: U.S. PARTNERSHIP RETURN OF INCOME
FORM: 1065 TAX PERIOD: DEC 2001

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|---|---|---|---|---|
| | RETURN PREPARER TIN: P00024411 | | | |
| 08-29-2002 | RETURN FILED 29265-243-12603-2 200238 | | 0.00 | 09-30-2002 |
| 05-27-2002 | EXTENSION OF TIME TO FILE EXT. DATE 07-15-2002 | | | |
| 07-18-2002 | EXTENSION OF TIME TO FILE EXT. DATE 10-15-2002 | | | |
| 0-24-2004 | AMENDED RETURN FILED 29265-306-39318-4 | | | |
| | ADDITIONAL TAX ASSESSED 29254-405-17329-5 200503 | 0.00 | | 01-31-2005 |
| 05-17-2005 | RECEIVED POA/TIA | | | |

FORM 4340 (REV. 01-2002) PAGE 1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

---

CLEARMEADOW INVESTMENTS LLC EIN/SSN: 48-1251013

TYPE OF TAX: U.S. PARTNERSHIP RETURN OF INCOME
FORM: 1065 TAX PERIOD: DEC 2001

---

BALANCE 0.00

---

I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED, AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN. I FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

---

SIGNATURE OF CERTIFYING OFFICER: [signature]

PRINT NAME: Beverly S. Nadermann

TITLE: Operations Manager, Accounting Control/Services

DELEGATION ORDER: SC-C 198 (Rev.8)

LOCATION: INTERNAL REVENUE SERVICE

ACCOUNT STATUS DATE 01/04/2006

FORM 4340 (REV. 01-2002) PAGE 2