SG

October 15, 2001

To: CLEARMEADOW INVESTMENTS, LLC
Attn: Mr. Jason Saffran, Cantley & Sedacca
Fax: 214-722-1713

From: Liliana Gowdie / IRD Dept.
Tel: 212-278-7145
Fax: 212-278-7650

Re: SG NY Ref # 200101715

CONFIRMATION FOR CURRENCY LINKED DEPOSIT SWAP

The purpose of this instrument (this "Confirmation") is to confirm the terms and conditions of the Transactions entered into between us on the Trade Date specified below.

The definitions and provisions contained in the 2000 ISDA Definitions as published by the International Swaps and Derivatives Association, Inc. (the "Swap Definitions") and in the 1998 FX and Currency Option Definitions, as published by the International Swaps and Derivatives Association, Inc., the Emerging Markets Traders Association and the Foreign Exchange Committee (the "1998 Definitions," and together with the Swap Definitions, the "Definitions") are incorporated into this Confirmation. In the event of any inconsistency between the Swap Definitions and the 1998 Definitions, the 1998 Definitions will govern. In the event of any inconsistency between the Definitions and this Confirmation, this Confirmation will govern.

1. This Confirmation evidences a complete and binding agreement between you and us as to the terms of the Transactions to which this Confirmation relates. In addition, if we have not already done so, you and we agree to use all reasonable efforts to negotiate, execute and deliver an agreement in the form of the ISDA Master Agreement (Multicurrency-Cross Border), including the Schedule thereto that forms a part thereof (the "ISDA Form"), except that Subparagraph (ii) of Section 2(c) thereof will not apply and with such other modifications as you and we will in good faith agree. Upon the execution by you and us of such an agreement, this Confirmation will supplement, form part of, and be subject to that agreement. All provisions contained in or incorporated by reference in that agreement upon its execution will govern this Confirmation except as expressly modified below. Until you and we execute and deliver that agreement, this Confirmation, together with all other documents referring to the ISDA Form (each a "Confirmation") confirming transactions (each a "Transaction") entered into between us (notwithstanding anything to the contrary in a Confirmation), shall supplement, form a part of, and be subject to, an agreement in the form of the ISDA Form as if you and we had executed an agreement in such form (but without any Schedule except for the election of "law" as the governing law and US Dollars as the Termination Currency) on the Trade Date of the Transactions confirmed hereby. In the event of any inconsistency between the provisions of that agreement and this Confirmation, this Confirmation will prevail for the purpose of these Transactions.

In the event that Depositor shall not have received a complete, duly executed ISDA Form from the Deposit Recipient no later than seven (7) Business Days after the Trade Date, Depositor shall have the right in its discretion, but shall not be required, to terminate any Transaction under this Confirmation.

2. a. The following terms form a part of the currency-linked deposit swap Transaction confirmed hereby:



Société Générale
1221 Avenue of the Americas
New York NY 10020
tel 212 278 6000

18-P

DEFENDANT'S EXHIBIT 17

| | |
|---|---|
| Reference: | 200101715 |
| Trade Date: | October 15, 2001 |
| Depositor: | Societe Generale, NY |
| Deposit Recipient: | CLEARMEADOW INVESTMENTS, LLC |
| Deposit Amount: | EUR 27,472,520 |
| Deposit Settlement Amount: | EUR 27,472,520 |
| Fixed Deposit Rate: | 3.6650 % |
| Premium Deposit Rate: | EUR 4,347,252 (15.824 % Absolute) |
| Day Count Fraction: | 30/360 |
| Date of Deposit: | October 16, 2001 |
| Maturity Date: | December 14, 2001 |
| Expiration Time: | 10:00 am New York |
| Expiration Date: | December 14, 2001 |
| Settlement Date: | December 18, 2001 |
| Premium: | EUR 2,717,033 |
| Premium Payment Date: | October 16, 2001 |
| Reference Exchange Rate: | USD/JPY |
| Threshold Rate: | USD/JPY 124.67 |

b. Other applicable terms are as follows:

| | |
|---|---|
| Business Day Convention: | Following Banking Day: |
| Calculation Agent. | Societe Generale, New York Branch |
| Address for notice to the Depositor: | Societe Generale, New York Branch<br>1221 Avenue of the Americas<br>New York NY 10020 |

Address for notice to the Deposit Recipient: CLEARMEADOW INVESTMENTS, LLC
2233 South West Street
Wichita, Kansas 67213

c. On the Expiration Date the Deposit Recipient will convert the Euro amount payable pursuant to Section 3.a to United States Dollars at the then spot exchange rate for such currencies in the Spot Market and will pay such Dollars to the Depositor on the Settlement Date at the account specified for the Depositor in the ISDA Master Agreement between the parties.

3. a. On the Maturity Date, the Deposit Recipient shall pay to the Depositor an amount equal to the sum of (i) the Deposit Settlement Amount, plus (ii) the Fixed Yield, plus (iii) the Premium Yield, if any.

b. "Fixed Yield" means interest on the Deposit Amount from the Date of Deposit to the Maturity Date calculated at the Deposit Interest Rate on the basis of the Day Count Fraction.

c. "Premium Yield", if any, means an amount equal to the product of the Premium Deposit Rate (flat) and the Deposit Amount. If, at the Expiration Time on the Expiration Date, the Reference Exchange Rate on the Spot Market is equal to or greater than the Threshold Rate, on the Settlement Date the Deposit Recipient shall pay to the Depositor the Premium Yield.

d. If, at the Expiration Time on the Expiration Date, the Reference Exchange Rate is less than the Threshold Rate: no payment of the Premium Yield shall be due; no other payment or indemnity shall be due by either party to the other as a result of such Reference Exchange Rate; and the Premium shall be retained by the Deposit Recipient.

e. For the purposes of this Section 3:

"<u>Spot Market</u>" means the global spot foreign exchange market between banks (independent of the Calculation Agent) and/or brokers, including spot foreign exchange transactions concluded via electronic dealing systems, and which shall be deemed to be open continuously any week from Monday 5:00 a.m. Sydney time to Friday 6:00 p.m. New York time.

"<u>Depositor Business Day</u>" means any day which is a Banking Day in the place where the Address of the Depositor is located.

4. Each party represents to the other party that (a) except as provided in the ISDA Form, it does not rely on any representation (whether written or oral) whatsoever made by such other party with respect to the Transaction confirmed hereby, (b) it has the knowledge and sophistication to independently appraise and understand the financial, legal and tax terms, conditions and risks of this Transaction, (c) it is not relying on any information or communication (written or oral) from the other party as investment advice or a recommendation, and it acknowledges that the other party has not provided any investment advice or recommendation to enter this Transaction or any assurance as to the expected results of this Transaction, (d) to the

extent necessary it has consulted its own independent legal, financial, tax and other advisors and has determined that this Transaction is appropriate for it and made the decision to enter into this Transaction upon its own judgment and the advice of such advisors, and (e) the other party is not acting as a fiduciary for or adviser to it.

5. CLEARMEADOW INVESTMENTS, LLC represents to Societe Generale that CLEARMEADOW INVESTMENTS, LLC does not receive deposits of monies from third parties and is not engaged in the business of receiving deposits of monies from third parties.

6. Notwithstanding Section 7 of the ISDA Form, this Confirmation, together with the completed ISDA Form, may, pursuant to a duly executed Assignment and Acceptance Agreement in the form of Exhibit A to the Schedule that forms a part of the signed ISDA Form, be assigned by Depositor to a single corporation, limited liability company, partnership or other entity that is majority-owned and controlled by Depositor, but such assignee shall be subject to such Section 7. Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us at the address first appearing above.

7. CLEARMEADOW INVESTMENTS, LLC agrees that in the event CLEARMEADOW INVESTMENTS, LLC is in default under any other agreement between it and Societe Generale, New York, Societe Generale, New York will have the right to set-off, counterclaim or withhold payment in respect of any payment due hereunder by Societe Generale, New York against any unpaid indebtedness of CLEARMEADOW INVESTMENTS, LLC under such other agreement.

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us at the address first appearing above.

Yours sincerely,

SOCIETE GENERALE, NEW YORK BRANCH

By: ______________________
Name: Glenn Rosenberg
Title: Vice President

By: ______________________
Name: Liliana Gowdie
Title: Specialist

Confirmed and agreed as of the date first Above written:

CLEARMEADOW INVESTMENTS, LLC

By: ______________________
Name: Marc Hutton
Title:

**CLEARMEADOW INVESTMENTS, LLC**
2233 S. West Street
Wichita, Kansas 67213

10/15, 2001

**VIA TELECOPY (214) 740-7780**

Mr. Craig Brubaker
Deutsche Banc Alex Brown
200 Crescent Court
Suite 500
Dallas, Texas 75201

Re: CLEARMEADOW INVESTMENTS, LLC
Acct # [redacted]

Dear Mr. Brubaker:

This letter constitutes your authorization to transfer the necessary funds to complete the purchase of the market linked deposits in the notional amount of US $25,000,000 and to also pay the premiums totaling US $2,500,000 associated therewith from the above-referenced account to Societe Generale, New York ABA.

Please contact me if you have any questions regarding this matter.

Very truly yours,

Mark E. Hutton, Manager

19-P

DEFENDANT'S EXHIBIT 18



95

# CLEARMEADOW INVESTMENTS, LLC

2233 S. West Street
Wichita, Kansas 67213

10/10, 2001

**VIA TELECOPY (214) 740-7780**

Mr. Craig Brubaker
Deutsche Banc Alex Brown
200 Crescent Court
Suite 500
Dallas, Texas 75201

Re: Account No. [redacted]

Dear Mr. Brubaker:

Please use this letter as your authorization to wire transfer the sum of Seven Thousand Five Hundred Dollars ($7,500.00) to the account of CF Advisors XXXVII, LLC at Deutsche Bank Alex. Brown as follows:

ALLFIRST
BALTIMORE, MARYLAND
ABA [redacted]
ACCOUNT NAME: DEUTSCHE BANK ALEX. BROWN
ACCOUNT # [redacted]
FOR FURTHER CREDIT TO ACCOUNT # [redacted]
ACCOUNT TITLE: CF Advisors XXXVII, LLC

Thank you for your prompt attention to this matter.

Sincerely,

CLEARMEADOW INVESTMENTS, LLC

By: Mark E. Hutton, Manager

21-P

DEFENDANT'S EXHIBIT 19



97

**CLEARMEADOW INVESTMENTS, LLC**
2233 S. West Street
Wichita, Kansas 67213

December 18, 2001

**VIA TELECOPY (214) 740-7780**

Mr. Craig Brubaker
Deutsche Banc Alex Brown
200 Crescent Court
Suite 500.
Dallas, Texas 75201

Re: Account No.[redacted]

Dear Mr. Brubaker:

Please use this letter as your authorization to wire transfer the sum of Two Thousand Five Hundred Dollars ($2,500.00) to the account of CF Advisors XXXVII, LLC at Deutsche Bank Alex. Brown as follows:

ALLFIRST
BALTIMORE, MARYLAND
ABA[redacted]
ACCOUNT NAME: DEUTSCHE BANK ALEX. BROWN
ACCOUNT #[redacted]
FOR FURTHER CREDIT TO ACCOUNT # [redacted]
ACCOUNT TITLE: CF Advisors XXXVII, LLC

Thank you for your prompt attention to this matter.

Sincerely,

CLEARMEADOW CAPITAL CORP.

20-P

By: Mark E. Hutton, President

DEFENDANT'S EXHIBIT 20



96

# ASSIGNMENT OF LIMITED LIABILITY COMPANY UNITS AND JOINDER AGREEMENT

**THIS ASSIGNMENT OF LIMITED LIABILITY COMPANY UNITS AND JOINDER AGREEMENT** (the "**Assignment**"), entered into this 19 day of October, 2001, by and among **MARK E. HUTTON**, an individual residing in the State of Kansas ("**HUTTON**"), and **CLEARMEADOW CAPITAL CORP.**, a corporation organized under the laws of the State of Delaware ("**CLEARMEADOW**"),

**<u>WITNESSETH:</u>**

**WHEREAS**, CLEARMEADOW INVESTMENTS, LLC, a limited liability company organized under the laws of the State of Delaware (the "Company"), was formed on the 9 day of October, 2001;

**WHEREAS**, the business and affairs of the Company and its Members are governed by the terms of that certain operating agreement of the Company, made effective as of the 19 day of October, 2001, (the "Operating Agreement");

**WHEREAS**, HUTTON is the sole Member (as that term is defined in the Operating Agreement) in the Company (collectively, the "Membership Interest");

**WHEREAS**, HUTTON desires to transfer his entire membership interest (the "Membership Interest") to CLEARMEADOW as a contribution to the capital of CLEARMEADOW, and thereby withdraw and terminate his complete interest as a Member of the Company, and

**WHEREAS**, ~~HUTTON~~ CLEARMEADOW desires to receive the Membership Interest and assume all rights and obligations as a Member with respect to the Membership Interest;

**NOW, THEREFORE**, in consideration of the premises, and of the mutual promises, covenants, and conditions herein contained, and for other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the parties hereto intending to be legally bound hereby agree as follows:

1. **<u>Sale and Assignment; Withdrawal.</u>** HUTTON hereby contributes to CLEARMEADOW, and CLEARMEADOW hereby accepts from HUTTON, the Membership Interest as a contribution to the capital of CLEARMEADOW. HUTTON hereby assigns all right, title, and interest in and to the Membership Interest to CLEARMEADOW, and HUTTON hereby withdraws from membership in the Company, surrendering to CLEARMEADOW any and all rights HUTTON may have as a Member with respect to the Membership Interest.

DEFENDANT'S EXHIBIT 21

2. **Joinder**. CLEARMEADOW hereby agrees to take the Membership Interest subject to the terms and conditions of the Operating Agreement. The parties hereto agree to treat CLEARMEADOW as a Member with respect to the Membership Interest pursuant to the terms of the Operating Agreement.

3. **Consents**. The parties hereto consent to the transfer of the Units from HUTTON to CLEARMEADOW, to the admission of CLEARMEADOW as a Member with respect to the Membership Interest, and to the withdrawal of HUTTON as a Member.

4. **Further Action**. The parties hereto agree to take all such further action as may be necessary or appropriate to effectuate the purposes of this Assignment.

5. **Governing Law**. This Assignment shall be construed and enforced pursuant to the laws of the State of Delaware, notwithstanding its choice of law provisions.

IN WITNESS WHEREOF, the undersigned have executed this Assignment as of the day and year first above written.

Mark E. Hutton

**MARK E. HUTTON**

**CLEARMEADOW CAPITAL CORP.**

Mark E. Hutton

By: Mark E. Hutton
Its: President

*Amended and Restated Operating Agreement of*

# CLEARMEADOW INVESTMENTS, LLC

*A Limited Liability Company*
*Organized Under the Laws of*
*the State of Delaware*

**Dated Effective:** October 19, **2001**

DEFENDANT'S EXHIBIT 22

# AMENDED AND RESTATED

# OPERATING AGREEMENT

# OF

# CLEARMEADOW INVESTMENTS, LLC

---

**THIS AMENDED AND RESTATED OPERATING AGREEMENT** is entered into effective as of the 19 day of October, 2001 (the "**Effective Date**"), by and among the Members, each of whom hereby agrees and certifies as set forth herein. All capitalized terms used herein not otherwise defined outside of Article II hereof shall have the definitions prescribed thereto pursuant to Article II of this Agreement.

## ARTICLE I

## ORGANIZATION

1.1 Formation. The Members, by and through their Authorized Representative, caused there to be filed a Certificate of Formation with the Delaware Secretary of State on the Organization Date, creating the Company, organized and to be operated in compliance with the provisions of the Act. The rights and liabilities of the Members are as provided in the Act except as provided in this Operating Agreement.

1.2 Name. The name of the Company is "**CLEARMEADOW INVESTMENTS, LLC.**"

1.3 Principal Office; Statutory Agent. The location of the principal office and place of business of the Company is 2233 S. West Street, Wichita, Kansas 67213. At this principal office, the Company shall maintain its records as required by Section 18-104 of the Act. National Registered Agents, Inc. is the statutory agent of the Company in Delaware, and its address is 9 East Loockerman Street, Dover, Delaware, 19901.

1.4 Term. This Agreement is effective as of the Effective Date and will continue in perpetuity unless and until the Company is dissolved and liquidated in accordance with the provisions of this Operating Agreement.

1.5 Purpose. The purposes of the Company are:

(a) To engage in the acquisition, maintenance, and disposition of foreign currency investments and foreign currency derivates;

(b) To acquire, invest in, and sell other investments for the mutual benefit of the Members;

(c) To enable the Class B Member to consolidate and manage various foreign currency and foreign currency derivative investments of the Members within the ownership and management structure of the Company consistent with the investment strategy which the Class B Member deems in its sole discretion to provide the greatest yield for the Members in light of the risks of such investments; and

(d) To conduct any other business or joint enterprise which shall be legal for a limited liability company to conduct under the Act.

## ARTICLE II

## DEFINED TERMS

The terms defined in this Article, whenever used in this Agreement and capitalized, have the following meanings unless the context or use requires another meaning:

"Act" means the Delaware Limited Liability Company Act, as codified in Chapter 18 of Title 6 of the Delaware Code, as now enacted or hereafter amended.

"Adjusted Capital Account Deficit" means the deficit balance, if any, in a Member's capital account (i) increased by (a) to the extent provided in Treasury Regulations Section 1.704-1(b)(2)(ii)(c), the amount of any unconditional obligation of such Member imposed by state or local law to make contributions to the Company, and (b) the amount the Member is deemed obligated to restore pursuant to the penultimate sentences of Treasury Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5), and (ii) decreased by the items described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5), and (6).

"Agreement" means this amended and restated operating agreement of the Company, as amended from time to time.

"Capital Account" means the capital account of a Member maintained in accordance with Section 4.1 of this Agreement.

"Class A Member" means that Member listed on **Exhibit A** as holding one or more Class A Units, and any other Person who is admitted as a Class A Member in accordance with this Agreement and the Act, so long as such Class A Member holds at least one Class A Unit.

"Class A Unit" means a Unit of Class A interest.

"**Class B Member**" means that Member listed on **Exhibit A** as holding one or more Class B Units, and any other Person who is admitted as a Class B Member in accordance with this Agreement and the Act, so long as such Class B Member holds at least one Class B Unit.

"**Class B Unit**" means a Unit of Class B interest.

"**Code**" means the Internal Revenue Code of 1986, as amended. All references to particular sections of the Internal Revenue Code shall be deemed to include reference to corresponding provisions of subsequent internal revenue law of the United States of America.

"**Company**" means CLEARMEADOW INVESTMENTS, LLC, a limited liability company organized under the laws of the State of Delaware.

"**Company Unit**" or "**Unit**" means an interest of a Member or an assignee in the Company representing such fractional part of the interests of all the Members and assignees pursuant to this Agreement as is equal to the quotient of one divided by the number of Outstanding Units.

"**Effective Date**" has the meaning set forth in the recitals to this Agreement.

"**Excess Cash**" means the amount of cash (from whatever source) of the Company on hand from time to time that is in excess of the required equity of the Company as determined by the Members pursuant to a Required Vote.

"**Fiscal Year**" means the fiscal year of the Company as determined by the Members from time to time and in compliance with Code Section 706, and, initially, means a fiscal year ending on December 31.

"**Indemnitee**" has the meaning set forth in Section 9.1 of this Agreement.

"**Member**" or "**Members**" means those Persons listed on **Exhibit A**, attached hereto, and any other Person who is admitted as a Member pursuant to the terms of this Agreement, so long as such Member holds at least one Company Unit.

"**Organization Date**" means the 9 day of October, 2001.

"**Person**" means and includes any natural person and any corporation, firm, partnership, trust, estate, limited liability company, or other entity resulting from any form of association, or as otherwise defined under Section 34-101 of the Act.

"**Required Vote**" has the meaning set forth in Section 6.2(c) of this Agreement.

"**Securities Act**" means the Securities Act of 1933, as amended.

"**Transfer**" means any sale, assignment, pledge, hypothecation, encumbrance, disposition, transfer (including, without limitation, a transfer by will, intestate distribution, or decree

of divorce or separation), gift, or attempt to create or grant a security interest in any Unit or portion thereof, whether voluntary or involuntary, by operation of law or otherwise.

## ARTICLE III

## CAPITAL CONTRIBUTIONS

3.1 Initial Capital Contributions. The Members hereby contribute that cash, foreign currency, foreign currency derivatives, and other property further described in **Exhibit A**, attached hereto, in exchange for their initial interests in the Company as described in Section 3.2 of this Agreement.

3.2 Initial Interest in the Company. Each Member has subscribed for the number of Units as further described in **Exhibit A**, attached hereto, and shall have an interest in the profits and capital of the Company proportionate to such Units as provided in this Agreement.

3.3 No Interest on Capital. No interest shall be paid by the Company on the contributions to the capital of the Company by the Members.

3.4 Loans from the Members. If any Member advances any funds to the Company in excess of his, her, or its required contributions to the capital of the Company, the amount of any such advance shall not be deemed a capital contribution but shall be an obligation of the Company to such Member and shall be repaid by the Company on such terms as the Members by a Required Vote determine as of the date of the advance.

3.5 No Additional Capital Contributions. Following their initial contributions, Members are not required to contribute any additional amounts to the capital of the Company.

## ARTICLE IV

## ALLOCATION OF PROFITS, GAINS, AND LOSSES; DISTRIBUTIONS TO MEMBERS

The Members agree that the income, profits, gains, and losses of the Company shall be allocated, and cash distributions of the Company shall be made, as follows:

4.1 Capital Accounts. Each Member shall have a Capital Account maintained as set forth in Treasury Regulations Section 1.704-1(b)(2)(iv).

4.2 Allocation of Income, Profits, Gains, and Losses. After the special allocations contained in Sections 4.3 and 4.4 have been made, all items of income, profits, gains, and losses of the Company for each Fiscal Year, determined using such methods of accounting

for depreciation and other items as the Members select, shall be allocated among the Members in the following order of priority:

(a) Net Loss. Any net loss shall be allocated to and among the Members in the following order of priority:

(i) First, except as provided in Section 4.2(a)(iii) with respect to allocations that would cause a Member to have an Adjusted Capital Account Deficit, all losses shall be allocated in an amount equal to the excess, if any, of the Residual Net Profits allocated to the Members pursuant to Section 4.2(b)(iii) over all prior allocations of losses to the Members pursuant to this Section 4.2(a)(i). Allocations of losses pursuant to this Section 4.2(a)(i) are intended to offset prior allocations, if any, of Residual Net Profits and shall, in each case, be made to and among the Members in proportion to their respective Units.

(ii) Second, except as provided in Section 4.2(a)(iii) with respect to allocations that would cause a Class A Member to have an Adjusted Capital Account Deficit, all other losses shall be allocated to and among the Class A Members in proportion to their respective Class A Units.

(iii) Notwithstanding the provisions of Sections 4.2(a)(i) and (ii), losses shall not first be allocated to a Member to the extent such allocation would cause such Member to have (or increase) an Adjusted Capital Account Deficit; rather, such losses shall first be allocated to the other Members (even if such Members holding a different class of Units) in proportion to their respective Units until no Member may receive an allocation without causing such Member to have (or increase) an Adjusted Capital Account Deficit, at which point such losses shall be allocated to all the Members (with regard to any effect such allocation has on an Adjusted Capital Account Deficit) in proportion to their respective Units.

(b) Net Profit. Any net profit shall be allocated to and among the Members in the following order of priority:

(i) First, to the Members, until cumulative profits allocated pursuant to this Section 4.2(b)(i) equal cumulative losses allocated to the Members pursuant to Section 4.2(a)(iii);

(ii) Second, to and among the Class A Members to the extent of the excess, if any, of (A) the aggregate net losses resulting from all prior allocations under Section 4.2(a)(ii) over (B) all prior allocations of profits pursuant to this Section 4.2(b)(ii); and

(iii) Third, the balance of the net profits ("**Residual Net Profits**") to and among the Members as follows:

(A) Residual Net Profits shall be allocated to the Class A Members in proportion to their Class A Units until cumulative allocations of Residual Net Profits under this clause (A) equal ten percent (10%) of the fair market value of the assets originally contributed by the Class A Members (unreduced by any liabilities assumed by the Company from the Class A Members) in exchange for their Class A Units; and

(B) The balance of any Residual Net Profits shall be allocated among the Members in proportion to their respective Units.

4.3 Special Allocations.

(a) **Nonrecourse Deductions**. Nonrecourse deductions (as defined in Treasury Regulations Section 1.704-2(c)) shall be separately allocated to and among the Members in proportion to their respective Membership Units.

(b) **Minimum Gain Chargeback**. Notwithstanding anything to the contrary contained in this Article IV, if, during any Fiscal Year, there is a net decrease in Company "minimum gain," as defined in Treasury Regulations Section 1.704-2(c), each Member shall be specially allocated items of Company income and gain for such year (and, if necessary, subsequent years) in an amount equal to the portion of such Member's share of the net decrease in Company minimum gain for the year, as determined in accordance with Treasury Regulations Section 1.704-2(g)(2). The items to be so allocated shall be determined in accordance with Treasury Regulations Section 1.704-2(f).

(c) **Member Minimum Gain Chargeback**. Notwithstanding anything to the contrary contained in this Article IV, except Section 4.3(b) hereof, if there is a net decrease during any Fiscal Year in the "partner minimum gain" attributable to a "partner nonrecourse

debt," as defined in Treasury Regulations Section 1.704-2(j)(2), and as determined in accordance with Treasury Regulations Section 1.704-2(i)(3), then each Member with a share of the minimum gain attributable to such debt must be specifically allocated items of Company income and gain for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to the portion of such Member's share of the net decrease in partner minimum gain attributable to such partner nonrecourse debt that is allocable to the disposition of Company property subject to such partner nonrecourse debt.

(d) Qualified Income Offset. Except as provided in Section 4.3(b), in the event a Member unexpectedly receives an adjustment, allocation, or distribution described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5), or (6) that has not otherwise been taken into account in determining such Member's Adjusted Capital Account Deficit, if any, such Member shall be specially allocated items of Company income and gain in an amount and manner sufficient to eliminate, to the extent required by Treasury Regulations and Code Section 704(b), the Adjusted Capital Account Deficit of such Member as quickly as possible.

(e) Member's Interest in Company Profits. For purposes of determining each Member's share of "excess nonrecourse liabilities" of the Company, as such term is defined by Treasury Regulations Section 1.752-3(a)(3), and solely for such purpose, the Member's interests in Company profits shall be determined in proportion to their respective Membership Units.

(f) Management Fees. All deductions, losses, and other items related to expenses incurred by the Company pursuant to Section 5.5 of this Agreement shall be allocated entirely to the Class A Members.

4.4 Discretionary Allocations.

(a) Allocation Savings Provision. The allocation method set forth in this Article IV is intended to comply with the requirements of Code Section 704(b). If, in the opinion of the Members by a Required Vote, the allocation of profits or losses pursuant to the preceding provisions of this Article IV do not (i) satisfy the requirements of Code Section 704(b), (ii) comply with any other provisions of the Code or Treasury Regulations enacted thereunder, or (iii) properly take into account any expenditure made by the Company or transfer of a Membership Unit, then,

notwithstanding anything to the contrary contained in the preceding provisions of Article IV, profits and losses shall be allocated in such a manner as the Members by a Required Vote determine to be required so as to reflect properly the foregoing requirements.

(b) Members' Varying Interests. If any interest in the Company is transferred or assigned during any Fiscal Year in accordance with Article VIII hereof, all items of income, gain, loss, deduction, and credit, and all other items of the Company with respect to each interest so transferred shall be prorated between the transferor and the transferee(s) in accordance with the number of days during such year each held such interest or in such other manner as the Members may determine to be necessary to comply with the requirements of Code Section 706(d) at the time of such transfer.

(c) Code Section 704(c). In accordance with Code Section 704(c) and applicable Treasury Regulations, income, gain, loss, and deduction with respect to any property contributed to the Company shall, solely for tax purposes, be allocated among the Members so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and the value ascribed to it under this Agreement. In addition, in the event the value of any Company asset is required to be adjusted pursuant to the provisions of Code Section 704(b) and the Treasury Regulations thereunder, subsequent allocations of income, gain, loss, and deduction for tax purposes with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its adjusted value in the same manner as under Code Section 704(c) and the applicable Treasury Regulations. Any elections or other decisions relating to such allocations shall be made by the Members in any manner that reasonably reflects the purpose and intentions of this Agreement. Allocations pursuant to this Section 4.4(c) are solely for purposes of federal, state, and local taxes, as appropriate, and shall not affect, or in any way be taken into account in computing, any Members' Capital Account or share of profits, losses, other items, or distributions pursuant to any provision of this Agreement.

4.5 Tax Allocations. Except as otherwise provided in Sections 4.3 or 4.4 of this Agreement, all items of income, gain, loss, and deduction are to be allocated for federal income tax purposes in the same manner as the corresponding allocation is made for book purposes pursuant to Section 4.2 of this Agreement.

4.6 Distributions to Members. Excess Cash shall be distributed to the Members in proportion to their respective Units, at such times and in such amounts as the Members may determine pursuant to a Required Vote.

4.7 Entity Classification. Neither the Company nor any Member shall file or cause to be filed any election the effect of which would be to cause the Company to be classified as other than a partnership for Federal income tax purposes without the prior written consent of all the Members.

## ARTICLE V

## MANAGEMENT AND OPERATIONS

5.1 Member Management. The management and control of the Company is reserved exclusively to the Members. Those Members acting pursuant to a Required Vote have all power and authority to manage, and direct the management of, the business and affairs of the Company, both ordinary and extraordinary, but only in accordance with the terms of this Agreement and the Act. Approval by or action taken by a Member pursuant to a Required Vote and in accordance with this Agreement is the approval or action of the Company.

5.2 Investment Powers of Class B Member. The Members hereby request that the Class B Member direct the investment activity of the Company and manage the Company's assets for the benefit of the Members in the manner deemed best by the Class B Member to grow the value of the Company's assets and provide the greatest investment return to all the Members. The following provisions shall apply in governing the Class B Member's ability to direct and manage the Company's investment activities:

(a) Subject to the limitations imposed by the Act and this Agreement, including paragraph (b) of this Section 5.2, the authority of the Class B Member includes the power to:

(i) approve the annual operating and capital budgets and strategic plans of the Company;

(ii) authorize any commitment for a capital expenditure;

(iii) authorize any sale, lease, transfer, or other disposition of any asset of the Company or any group of assets (other than a disposition of any real property);

(iv) open, conduct, and close checking, savings, custodial, and other accounts on behalf of the Company in such banks or other financial institutions as the Members may select from time to time;

employee of the Company, and any other Person acting on behalf of the Company;

(v) commence, defend, or settle litigation pertaining to the Company and its business or assets, provided that the Company shall not bear the expenses of any litigation brought against any Member acting in that capacity, any employee of the Company, or any other Person acting on behalf of the Company except as otherwise provided in this Agreement;

(vi) change the Fiscal Year of the Company or make or modify any tax election;

(vii) employ accountants, attorneys, contractors, brokers, investment managers, engineers, consultants, or other Persons on such terms, and for such compensation, as it considers appropriate, including, without limitation, Persons who may be Members, or who perform services for, or have business, financial, family, or other relationships with, any Member, manager, officer, or employee;

(viii) approve any purchase or lease of real property;

(ix) enter into any contract, agreement, undertaking, or transaction with any Member or with any other person, firm, or corporation which performs services for or has any business, financial, family, or other relationship with any Member;

(x) authorize any distribution to a Member;

(xi) approve any change of the location of the principal office of the Company;

(xii) determine the fair market value of all Company property upon a Revaluation Event or otherwise;

(xiii) authorize the filing of a Bankruptcy petition by or on behalf of the Company.

employee of the Company, and any other Person acting on behalf of the Company;

(v) commence, defend, or settle litigation pertaining to the Company and its business or assets, provided that the Company shall not bear the expenses of any litigation brought against any Member acting in that capacity, any employee of the Company, or any other Person acting on behalf of the Company except as otherwise provided in this Agreement;

(vi) change the Fiscal Year of the Company or make or modify any tax election;

(vii) employ accountants, attorneys, contractors, brokers, investment managers, engineers, consultants, or other Persons on such terms, and for such compensation, as it considers appropriate, including, without limitation, Persons who may be Members, or who perform services for, or have business, financial, family, or other relationships with, any Member, manager, officer, or employee;

(viii) approve any purchase or lease of real property;

(ix) enter into any contract, agreement, undertaking, or transaction with any Member or with any other person, firm, or corporation which performs services for or has any business, financial, family, or other relationship with any Member;

(x) authorize any distribution to a Member;

(xi) approve any change of the location of the principal office of the Company;

(xii) determine the fair market value of all Company property upon a Revaluation Event or otherwise;

(xiii) authorize the filing of a Bankruptcy petition by or on behalf of the Company.

5.3 Standard of Care.

(a) Any Member, in the performance of his, her, or its duties, is entitled to rely in good faith on information, opinions, reports, and other statements, including financial statements, books of account, and other financial data, if prepared or presented by (i) one or more employees of the Company or (ii) legal counsel, public accountants, or other Persons as to matters within the Person's professional or expert competence.

(b) A Member is to perform his, her, or its duties as a Member in good faith, in a manner he, she, or it reasonably believes to be in or not opposed to the best interests of the Company, and with the care that an ordinarily prudent person in a similar position would use under similar circumstances.

(c) A Member cannot be found to have violated Section 5.3(b) herein unless it is proved, by clear and convincing evidence, in an action brought against the Member, that he, she, or it has not met the standard of Section 5.3(b) herein.

(d) A Member is to be liable in damages for any action that he, she, or it takes or fails to take as a Member only if it is proved, by clear and convincing evidence, that his, her, or its action or failure to act involved an act or omission undertaken with deliberate intent to cause injury to the Company or undertaken with reckless disregard for the best interests of the Company.

5.4 Tax Matters Partner. The Members by a Required Vote may designate the "Tax Matters Partner" (the "TMP") pursuant to Code Section 6231(a)(7) for the Company. The TMP shall have the power to (i) enter into a settlement agreement with the Internal Revenue Service (the "Service") with respect to determinations of Company tax items that shall bind each Member who is not entitled to receive notice of the proceedings from the Service, who is not a member of a notice group defined in Code Section 6223(b)(2), and who has not timely filed a statement with the United States Secretary of Treasury (or his delegate) providing that the TMP shall not have authority to bind the Member, which settlement may be on such terms as the TMP shall determine in his sole discretion to be in the best interests of the Members as a class; (ii) in his sole discretion, decide whether or not to commence judicial action for review of Company items included in a notice of final Company administrative adjustment, with the selection of the appropriate court and the Company items to be contested; (iii) in his sole discretion, determine whether to appeal from an adverse decision in an action commenced pursuant to clause (ii) of this Section 5.4 and prosecute any appeal; (iv) in his sole discretion, intervene on behalf of the Company in any judicial action commenced by any other Member or notice group defined in Code Section 6223(b)(2) as to Company tax items; (v) file a request with the Service for an administrative adjustment as a substituted Company return, or otherwise, and to request judicial review on behalf of the Company as to any part of a request for administrative adjustment not

allowed by the Service, with the selection of the appropriate court, the Company items to be contested, and the decision whether to appeal from an adverse decision in any such action to be determined in the sole discretion of the TMP; (vi) in his sole discretion, enter into an agreement with respect to all present or former Members to extend the period for assessing any tax that is attributable to any Company item (and no other person shall be authorized to enter into any such agreement); (vii) upon receipt of a notice of the commencement of administrative proceedings by the Service, furnish to the Service the name, address, profits interest, and taxpayer identification number of each person who is or was a Member at any time during the applicable Company taxable year and such revised or additional information as may be required by law; and (viii) conform to any tax administrative requirements as may be placed on Tax Matters Partners generally by Treasury Regulations adopted after the date hereof as to income tax or any other federal tax applicable to the Company. The designation of the TMP may be modified at any time, and any vacancy in the TMP may be filled, by the Members pursuant to a Required Vote.

5.5 Investment Advisory Fees for Class B Member. The Class A Members have solicited the Class B Member to join the Company as a Class B Member for the specific purpose of obtaining the services of the Class B Member as a investment advisor and specialist with regard to foreign currency and foreign currency derivative investments. The Class B Member shall be compensated by the Company for services rendered in the capacity as an investment manager for the Company. The Class B Member shall also be reimbursed for any and all expenses incurred on behalf of, and properly chargeable to, the Company. The Members hereby agree that the Class B Member shall receive for every quarter of each Fiscal Year, as compensation for its services as the investment manager for the Company, payable no later than the last day of each quarter of each Fiscal Year, quarterly services fees in an amount that, when annualized, equal:

(a) Two percent (2%) of the net asset value of the Company as of the last day of such Fiscal Year (unreduced by Member distributions for such Fiscal Year); and

(b) Twenty percent (20%) of all income and gains realized by the Company during such Fiscal Year.

Solely for the first quarter of the first Fiscal Year, the parties hereto agree that a front-end loaded service fee of Ten Thousand and NO/100 Dollars ($10,000) for such quarter shall be due and payable as of the Effective Date to the Class B Member by the Company, and this expense and all other management fees under this Section 5.5 shall be allocated in the manner provided in Section 4.3(f) of this Agreement.

## ARTICLE VI

## VOTING; RIGHTS AND OBLIGATIONS OF THE MEMBERS

6.1 Meetings of Members. Meetings of Members may be called by those Members holding a majority of the Outstanding Units held among all Members.

6.2 Voting by Members.

(a) Voting Power. Except to the extent that the voting rights of any Units are increased, limited, or denied by the terms of this Agreement, Members vote their Units on each matter submitted to the Members for their vote, consent, waiver, release, or other action. Except as otherwise specifically provided in this Agreement, a Member votes such Member's entire Units even though the capital commitment has not been fully paid, but Units on which a capital contribution is overdue for payment or in default cannot be voted.

(b) Quorum. Those Members holding more than fifty per cent (50%) of the Outstanding Units held among all Members constitute a quorum for the transaction of business at a meeting of the Members. The holders of a majority of the Outstanding Units present at a meeting of the Members may adjourn the meeting from time to time.

(c) Required Vote. Except to the extent that the Operating Agreement otherwise provides, the vote of Members holding more than fifty per cent (50%) of the Outstanding Units present at the meeting is approval by the Members and shall constitute a "Required Vote."

6.3 Written Consent or Action. Any action that the Members may authorize or take at a meeting may be authorized or taken without a meeting with the affirmative vote or approval of, and in a writing or writings signed by, those Members sufficient to constitute a Required Vote.

6.4 Limitations on the Rights of Members. Subject to any mandatory requirements of applicable law, no Member (in his, her, or its capacity as a Member) has the right to take any part whatsoever in the management and control of the ordinary business of the Company, sign for or bind the Company, compel a sale or appraisal of Company assets, or Transfer his, her, or its Units in the Company, except as provided in this Agreement.

6.5 Limited Liability of Members. Notwithstanding anything in this Agreement to the contrary, the liability of the Members arising out of or in any manner relating to the Company or its business shall not exceed the amount of their agreed upon contributions and obligations specified in Article III of this Agreement. After such contributions and obligations, the Members shall have no further liability to contribute money or otherwise to, or in respect of, the liabilities or obligations of the Company except as otherwise provided under the Act.

## ARTICLE VII

## DISSOLUTION AND LIQUIDATION

7.1 Events of Dissolution. Notwithstanding anything in the Act to the contrary, the Company shall be dissolved upon the consent of the Members pursuant to a Required Vote.

7.2 Liquidation.

(a) Upon an event of dissolution described in Section 7.1 of this Agreement, the Members shall (i) deliver to the Secretary of State of Delaware for filing a certificate of dissolution in accordance with the Act, and (ii) diligently proceed to wind up the affairs of the Company, liquidate its assets, and distribute the assets in accordance with this Agreement. During the time prior to liquidation, the Company shall continue as a limited liability company bound by the terms of this Agreement, succeed to all Company assets and liabilities, the business of the Company shall be continued, and the Members shall have the right to do all acts authorized by law for the purpose of winding up the affairs of the Company.

(b) In the event of liquidation of the Company, the Members shall take the following steps and in the following order of priority:

(i) Determine which Company properties and assets should be distributed in kind, and dispose of all other Company properties and assets at the best cash price obtainable therefore;.

(ii) Apply Company property to the payment of the debts and liabilities of the Company (other than liabilities for distributions to Members), the expenses of liquidation, and the establishment of any reserves deemed necessary by the Members pursuant to a Required Vote;

(iii) Repay any loans and advances (other than capital contributions) by Members, including liabilities for distributions to Members, and all accrued interest thereon; and

(iv) Distribute any remaining Company assets to the Members in accordance with their positive Capital Account balances as determined pursuant to Section 4.1 of this Agreement.

## ARTICLE VIII

## TRANSFER OF COMPANY UNITS; ADMISSION OF ADDITIONAL MEMBERS

8.1 Prohibition on Unapproved Transfers. A Class A Member may Transfer one or more of his, her, or its Class A Units, in whole or in part, at any time and without the need for any advance written notice to any other Member. A Class B Member shall not Transfer any of his, her, or its Class B Units, in whole or in part, at any time without the advance written consent of the Members pursuant to a Required Vote. Except as otherwise provided in this Article VIII, in no event shall the assignee or transferee of any Units become, or exercise the rights of, a Member unless the Members approve the assignee or transferee to become a substitute Member pursuant to Article VI hereof with respect to such transferred Units and the assignee or transferee executes a copy of or joinder to this Agreement.

8.2 Requirements to Transfer. Except for a Transfer described in Section 8.4, any and all Transfers made pursuant to this Article VIII are subject in all respects to the following:

(a) No Transfer shall be made without assurances to the Company that the Transfer does not violate any law applicable to the Company.

(b) The Company may require of the transferor or transferee, as a condition to the approval of such Transfer: (i) (A) registration under the Securities Act and applicable state securities laws, or (B) an opinion of counsel, from counsel and in form and substance satisfactory to the Company, that such Transfer is exempt from registration under the Securities Act and/or applicable state securities laws; and (ii) representations and warranties from the transferee or the transferring Member concerning the facts and circumstances establishing the basis for the availability of exemptions under the Securities Act, the Investment Company Act of 1940, as amended, the Investment Advisers Act of 1940, as amended, and other reasonable assurances relating to any other applicable laws.

(c) As a condition to admission as a substitute Member, an assignee, transferee, legatee, or distributee of all or part of the Company Units of any Member shall execute and acknowledge such instruments, in form and substance satisfactory to the Company, as the Company deems necessary or advisable to effect such admission and to confirm the agreement of the Person being admitted as such substitute Member to be bound by all the terms and provisions of this

Agreement. Such assignee, transferee, legatee, or distributee shall pay all reasonable expenses in connection with such admission as a substitute Member, including, but not limited to, legal fees and costs incurred by the Company in connection therewith.

(d) If a proposed Transfer would, alone or in conjunction with one or more other Transfers, cause a Termination of the Company, the Company may prohibit the proposed Transfer from occurring until the earliest time that the Transfer may occur without causing a Termination. If at any time more than one Transfer is being delayed under this Section 8.2(d), the Transfers are to be made in the order in which the Company received notice of such Transfers.

(e) If a Transfer causes a Termination, the Member making the Transfer shall be liable to the Company and each of the other Members for any taxes, fines, penalties, damages, or losses which may be due as a result of the Termination, including, without limitation, costs of enforcement of the Company's power to void or otherwise prohibit the Transfer or attempted Transfer.

(f) Any Transfer not made in compliance with this Article VIII is void ab initio and of no effect.

8.3 Acquit Company. Following the effective date of an approved Transfer of Company Units pursuant to this Article VIII, the Company shall make all allocations and pay all further distributions of profits or other compensation by way of income or returns of capital in respect of the Units so assigned to the assignee thereof. In the absence of compliance with this Article VIII, any payment in respect thereto by the Company to the assigning Member, or his, her, or its personal representative, shall acquit the Company of liability to the extent of such payment to any Person who may have an interest in such payment by reason of a Transfer or otherwise.

8.4 Class A Member Call and Put Rights. Notwithstanding any other provision of this Article VIII to the contrary, any time after the expiration of the period ending fifteen (15) days prior to the end of the first calendar quarter after the effective date of this Agreement, the Class A Members reserve the right (i) to terminate the services of the Class B Member at any time and for any reason whatsoever by a Required Vote and (ii) to individually elect either of the following:

(a) A Class A Member may require that the Class B Member purchase all of such Class A Member's Class A Company Units at the book value for such Class A Company Units as determined in accordance with Section 4.1 of this Agreement.

(b) The Class A Members by a Required Vote may require that the Class B Member sell all of the Class B Member's Class B Company Units to the Class A Members or the Company at the

book value for such Class B Company Units as determined in accordance with Section 4.1 of this Agreement.

A Class A Member may exercise the rights described in this Section 8.4, and such exercise shall be deemed effective, by delivery to the Class B Member of a notice to such effect. Any payment due by a Member to another Member as a result of an exercise made by a Class A Member pursuant to this Section 8.4 shall be due and payable as of the date of such exercise.

## ARTICLE IX

## INDEMNIFICATION

9.1 **Right to Indemnity**. If any Member (an "**Indemnitee**") was or is a party or is threatened to be made a party in any threatened, pending, or completed action, suit, proceeding, or investigation involving a cause of action or alleged cause of action for damages or other relief arising from or related to the business or affairs of the Company or the offer or sale of any Units, the Company (but without recourse to the separate assets of any Member) shall indemnify the Indemnitee against all losses, costs, and expenses, including attorneys' fees, judgments, and amounts paid in settlement actually and reasonably incurred by the Indemnitee in connection with the action, suit, proceeding, or investigation, so long as the Indemnitee has met the standard set forth in Section 5.4 of this Agreement. The termination of any action, suit, proceeding, or investigation by judgment, order, settlement, or conviction upon a plea of nolo contendere or its equivalent does not, of itself, create a presumption that an Indemnitee did not act in good faith and in a manner he, she, or it reasonably believed to be in or not opposed to the best interests of the Company and with the care that an ordinarily prudent person in a like position would use under similar circumstances and, with respect to any criminal action, proceeding, or investigation, that he, she, or it had reasonable cause to believe his, her, or its conduct was unlawful.

9.2 **Member Determination**. Unless indemnification is ordered by a court, the determination for purposes of Section 9.1 of this Agreement as to whether an Indemnitee met the standard set forth in this Agreement is to be made in the specific case by the Members in any manner permitted by the Act or this Agreement.

9.3 **Advancement Of Expenses**. Expenses, including attorneys' fees, incurred by any Indemnitee in defending an action, suit, proceeding, or investigation shall be paid by the Company as they are incurred, in advance of the final disposition of the action, suit, proceeding, or investigation, but only upon the terms and conditions as the Members may determine.

9.4 <u>Other Rights to Indemnity or Reimbursement; Survival.</u> Notwithstanding the foregoing, indemnification under this <u>Article IX</u> is to be provided only with respect to losses, costs, expenses, judgments, and amounts which otherwise are not compensated for by insurance carried for the benefit of the Company. Indemnification under this Agreement is not exclusive of any other rights to which those seeking indemnification may be entitled under any rule of law (whether common law or statutory), agreement, or arrangement, whether as to action in an official capacity and as to action in another capacity while holding such position or while employed by or acting as agent for the Company, and continues as to an Indemnitee who has ceased to serve in any capacity on behalf of the Company and inures to the benefit of the heirs, successors, executors, and administrators of the Indemnitee.

9.5 <u>Indemnification of Officers, Employees, and Agents</u>. The Company may indemnify any employee or agent of the Company upon such terms and conditions, if any, as the Members consider appropriate.

9.6 <u>Insurance</u>. The Company may purchase and maintain insurance or furnish similar protection, including, but not limited to, trust funds, letters of credit, or self-insurance, for or on behalf of any Person who is or was a Member, partner, employee, or agent of the Company, or who is or was serving at the request of the Company as a manager, director, trustee, officer, employee, or agent of another limited liability company, corporation, partnership, joint venture, trust, or other enterprise, so long as the insurance is available on acceptable terms as determined by the Members. The insurance or similar protection purchased or maintained for such Person or Persons may be for any liability asserted against them and incurred by them in any capacity described in this <u>Section 9.6</u> or for any liability arising out of their status as described in this <u>Section 9.6</u>, whether or not the Company would have the power to indemnify them against that liability under this Agreement. Insurance may be so purchased from or so maintained with a Person in which the Company has a financial interest.

9.7 <u>Savings Clause</u>. If this <u>Article IX</u> or any portion hereof is invalidated on any ground by any court of competent jurisdiction, then the Company shall nevertheless indemnify each Indemnitee as to costs, charges, and expenses (including attorneys' fees), judgments, fines, and amounts paid in settlement with respect to any action, suit, proceeding, or investigation, whether civil, criminal, administrative, or investigative, including any action by or in the right of the Company, to the fullest extent permitted by any applicable portion of this <u>Article IX</u> that has not been invalidated and to the fullest extent permitted by applicable law.

## ARTICLE X

## MISCELLANEOUS

10.1 Entire Agreement; Amendments. This Operating Agreement contains the entire agreement of the Members with respect to the Company. No oral or written agreement or understanding, except an amendment duly adopted with the unanimous written consent of all the Members, affects or amends the terms of this Operating Agreement. Any prior operating agreement of the Company is hereby revoked in its entirety.

10.2 Counterparts. This Agreement may be executed in several counterparts, all of which shall constitute one agreement, binding on all parties hereto, notwithstanding that all the parties are not signatories to the same counterpart.

10.3 Applicable Law. This Agreement and the rights of the Members shall be interpreted and enforced in accordance with the laws of the State of Delaware.

10.4 Severability. The invalidity or unenforceability of any provision of this Agreement in any particular respect shall not affect the validity and enforceability of any other provision of this Agreement or of the same provision in any other respect.

10.5 Reference to Statutory Provisions. All references to statutory provisions shall be deemed to refer to corresponding provisions of subsequent law.

10.6 Confidentiality. No Member may, without the consent of the Members pursuant to a Required Vote, divulge to any other person or entity any information whatsoever that relates in any way to the services, business, or operations of the Company, whether before or after the Company's dissolution.

10.7 Notice of Tax Examinations. Any Member receiving advice that the Service intends to examine any income tax return of the Company is to promptly notify the Company and the other Members. Each Member is to report on his, her, or its federal income tax return items of income and loss on a basis consistent with the Form K-1 prepared by or on behalf of the Company.

10.8 Other Business Ventures. The Members may engage in and possess an interest in any other professional or business venture of any nature and description whatsoever, independently or with others, including, but not limited to, the acquisition, ownership, and operation of ventures competitive with, and similar in nature to, the business conducted by the Company.

[THE REMAINDER OF THIS PAGE HAS BEEN LEFT INTENTIONALLY BLANK]

**IN WITNESS WHEREOF**, the Members have executed and delivered this Agreement as of the Effective Date.

**"Members"**

**CLEARMEADOW CAPITAL CORP.**

By: MARK E. HUTTON
Its: President

**CF ADVISORS XXXVII, LLC**

By: Daniel J. Brooks, Jr.
Its: President

# EXHIBIT A

## MEMBER NAME AND ADDRESS, CONTRIBUTION TO CAPITAL, AND COMPANY UNITS

| Member Name and Address | Contribution to Capital | Number and Class of Company Units |
| --- | --- | --- |
| CLEARMEADOW CAPITAL CORP.<br>2233 S. West Street<br>Wichita, Kansas 67213 | *See attached Schedule A-1. | 99,000 Class A Units |
| CF Advisors XXXVII, LLC<br>10 Bay Street<br>Westport, CT 06880 | *See attached Schedule A-2. | 1,000 Class B Units |
| *Total* | | **100,000 Company Units** |

## SCHEDULE A-1

### CAPITAL CONTRIBUTION OF CLEARMEADOW CAPITAL CORP.

CLEARMEADOW CAPITAL CORP. hereby contributes Two Hundred Eighty Seven Thousand Five Hundred and no/100 Dollars ($287,500) and in exchange for its Class A Units as specified in **Exhibit A** of this Agreement.

## SHEDULE A-2

## CAPITAL CONTRIBUTION OF CF ADVISORS XXXVII, LLC

CF Advisors XXXVII, LLC hereby contributes Two Thousand Five Hundred and NO/100 Dollars ($2,500.00) out of its service fees payable under Section 5.5 of this Agreement to the capital of the Company and in exchange for its Class B Units as specified in **Exhibit A** of this Agreement.

DEFENDANT'S EXHIBIT 23

ASSIGNMENT OF LIMITED LIABILITY COMPANY UNITS
AND JOINDER AGREEMENT

THIS ASSIGNMENT OF LIMITED LIABILITY COMPANY UNITS AND JOINDER AGREEMENT (the "**Assignment**") entered into this 18 day of December, 2001, by and among **CLEARMEADOW CAPITAL CORP.**, a corporation organized under the laws of the State of Delaware ("**CLEARMEADOW**"), and **CF ADVISORS XXXVII, LLC**, a limited liability company organized under the laws of the State of Delaware ("**Clarion**"),

<u>W I T N E S S E T H</u>:

WHEREAS, CLEARMEADOW INVESTMENTS, LLC, a limited liability company organized under the laws of the State of Delaware (the "**Company**"), was formed on the 9 day of Oct., 2001;

WHEREAS, the business and affairs of the Company are governed by the terms of that certain operating agreement of the Company dated as of the 19 day of Oct, 2001 (the "**Operating Agreement**");

WHEREAS, Clarion and CLEARMEADOW are Members (as that term is defined in the Operating Agreement) of the Company, in which Clarion currently owns one thousand (1,000) Company Units (as that term is defined in the Operating Agreement) (collectively, the "**Clarion Units**");

WHEREAS, Clarion currently serves as an investment advisor with respect to certain foreign currency and derivatives investments of the Company;

WHEREAS, the Company has liquidated the majority of its foreign currency and derivatives investments, and CLEARMEADOW does not anticipate a continuing need for Clarion's services on behalf of the Company; and

WHEREAS, CLEARMEADOW desires to purchase the Clarion Units from Clarion and thereby acquire complete ownership of all Company Units, and Clarion desires to sell the Clarion Units to CLEARMEADOW and thereby withdraw from any and all membership interests in the Company;

NOW, THEREFORE, in consideration of the premises, and of the mutual promises, covenants, and conditions herein contained, and for other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the parties hereto intending to be legally bound hereby agree as follows:

1. <u>Sale and Assignment; Withdrawal</u>. Clarion hereby sells to CLEARMEADOW, and CLEARMEADOW hereby purchases from Clarion, the Clarion

Units for the purchase price of that amount in cash or foreign currency as further specified in **Schedule A**, attached hereto, tendered simultaneously herewith from CLEARMEADOW to Clarion. Clarion hereby assigns all right, title, and interest in and to the Clarion Units to CLEARMEADOW, and Clarion hereby withdraws from membership in the Company, surrendering to CLEARMEADOW any and all rights Clarion may have as a Member with respect to the Clarion Units.

2. **Joinder**. CLEARMEADOW hereby agrees to take the Clarion Units subject to the terms and conditions of the Operating Agreement. The parties hereto agree to treat CLEARMEADOW as a Member with respect to the Clarion Units pursuant to the terms of the Operating Agreement.

3. **Consents**. The parties hereto consent to the transfer of the Units from Clarion to CLEARMEADOW, to the admission of CLEARMEADOW as a Member with respect to the Clarion Units, and to the withdrawal of Clarion as a Member.

4. **Further Action**. The parties hereto agree to take all such further action as may be necessary or appropriate to effectuate the purposes of this Assignment.

5. **Governing Law**. This Assignment shall be construed and enforced pursuant to the laws of the State of Delaware.

**IN WITNESS WHEREOF**, the undersigned have executed this Assignment as of the day and year first above written.

**CLEARMEADOW CAPITAL CORP.**

[signature]
By: Mark E. Hutton, President

**CF ADVISORS XXXVII, LLC**

______________________________
By: Daniel J. Brooks, Jr., President

## SCHEDULE A

### PURCHASE PRICE

The parties hereto agree that the assets on the books of the Company as of the date of this Assignment are as follows:

---

**Specify Assets Herein**

---

As of the date of this Assignment, the Clarion Units constitute one percent (1%) of all outstanding Company Units. Accordingly, one percent (1%) of the assets of the Company amounts to: 1,000 Class B Company Units

---

**Specify 1% of Assets Herein**

---

Accordingly, the parties hereto agree that the purchase price under Section 1 of this Assignment shall be: $2,500 00/100 (USD)

---

**Specify 1% of Assets Herein**

---

**CLEARMEADOW INVESTMENTS, LLC**
2233 S. West Street
Wichita, Kansas 67213

December 16, 2001

**VIA TELECOPY (214) 740-7780**

Mr. Craig Brubaker
Deutsche Banc Alex Brown
200 Crescent Court
Suite 500
Dallas, Texas 75201

Re: CLEARMEADOW INVESTMENTS, LLC
Acct # [redacted]

Dear Mr. Brubaker:

This letter is to inform you that CF Advisors XXXVII, LLC assigned all of its interest in CLEARMEADOW INVESTMENTS, LLC to CLEARMEADOW CAPITAL CORP. and is no longer a member of CLEARMEADOW INVESTMENTS, LLC as evidenced by that certain Assignment of Limited Liability Company Units and Joinder Agreement between CLEARMEADOW CAPITAL CORP. and CF Advisors XXXVII, LLC. Accordingly, Dan Brooks, in his capacity as President of CF Advisors XXXVII, LLC shall no longer maintain any investment authority over the above-mentioned account.

Please contact me if you have any questions regarding this matter.

Very truly yours,
CLEARMEADOW CAPITAL CORP.

[signature]
By: Mark E. Hutton, President

DEFENDANT'S EXHIBIT 24

**CLEARMEADOW INVESTMENTS, LLC**
2233 S. West Street
Wichita, Kansas 67213

December 27, 2001

**VIA TELECOPY (214) 740-7780**

Mr. Craig Brubaker
Deutsche Banc Alex Brown
200 Crescent Court
Suite 500
Dallas, Texas 75201

Re: CLEARMEADOW INVESTMENTS, LLC
Acct # [redacted]

Dear Mr. Brubaker:

This letter constitutes your authorization to sell the positions indicated on the attached Schedule A currently held in the above-referenced account.

Please contact me if you have any questions regarding this matter.

Very truly yours,

[signature]
By: ____________
Its: ____________

3-P

DEFENDANT'S EXHIBIT 25A



5

## Clearmeadow Investments LLC

## Schedule A

Sell exactly forty percent (40%) of all positions currently held by the LLC.

DEFENDANT'S EXHIBIT 25B

# United States of America

**Department of the Treasury**
**Internal Revenue Service**

Date: January 5, 2006

## CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed transcript(s) is(are) an exact transcript of the account of the Taxpayer named herein in respect to the taxes specified. It is a true and complete transcript for the period(s) stated of all assessments, abatements, credits, and refunds relating thereto as disclosed by the records of this office as of the date of this certification. It also contains a statement of all unidentified and advanced payments, if any, for the periods(s) stated.

CLEARMEADOW INVESTMENTS LLC

For tax period(s) December 31, 2001
Form 1065
Certification of Assessment and Payments consisting of 3 page(s)
under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

Susan A. Hansen, Field Director
Cincinnati Submission Processing Center

DEFENDANT'S EXHIBIT 26

Catalog Number 19002E

Form **2866** (Rev. 09-1997)

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

CLEARMEADOW INVESTMENTS LLC EIN/SSN: 48-1251013

TYPE OF TAX: U.S. PARTNERSHIP RETURN OF INCOME
FORM: 1065 TAX PERIOD: DEC 2001

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|---|---|---|---|---|
| | RETURN PREPARER TIN: P00024411 | | | |
| 08-29-2002 | RETURN FILED 29265-243-12603-2 200238 | | 0.00 | 09-30-2002 |
| 05-27-2002 | EXTENSION OF TIME TO FILE EXT. DATE 07-15-2002 | | | |
| 07-18-2002 | EXTENSION OF TIME TO FILE EXT. DATE 10-15-2002 | | | |
| 10-24-2004 | AMENDED RETURN FILED 29265-306-39318-4 | | | |
| | ADDITIONAL TAX ASSESSED 29254-405-17329-5 200503 | | 0.00 | 01-31-2005 |
| 05-17-2005 | RECEIVED POA/TIA | | | |

FORM 4340 (REV. 01-2002) PAGE 1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

CLEARMEADOW INVESTMENTS LLC EIN/SSN: 48-1251013

TYPE OF TAX: U.S. PARTNERSHIP RETURN OF INCOME
FORM: 1065 TAX PERIOD: DEC 2001

BALANCE 0.00

I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED, AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN. I FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

SIGNATURE OF CERTIFYING OFFICER: [signature]

PRINT NAME: Beverly S. Nadermann

TITLE: Operations Manager, Accounting Control/Services

DELEGATION ORDER: SC-C 198 (Rev.8)

LOCATION: INTERNAL REVENUE SERVICE

ACCOUNT STATUS DATE 01/04/2006

FORM 4340 (REV. 01-2002) PAGE 2

2926524312603

Form **1065** Department of the Treasury Internal Revenue Service

# U.S. Return of Partnership Income 2001

► See separate instructions.

IRS use only — Do not write or staple in this space.

For calendar year 2001, or tax year beginning , 2001, and ending , 20 OMB No.1545-0099

| | | | |
|---|---|---|---|
| A Principal Business Activity: INVESTING | Use the IRS label. Otherwise, print or type. | CLEARMEADOW INVESTMENTS, LLC<br>2233 S WEST STREET<br>WICHITA, KS 67213 | D Employer Identification Number: 48-1251013 |
| B Principal Product or Service: INVESTMENTS | | | E Date Business Started: 10/09/2001 |
| C Business Code Number: 523900 | | | F Total Assets (see instrs): $ |

G Check applicable boxes: (1) [X] Initial return (2) [X] Final return (3) [ ] Name change (4) [ ] Address change (5) [ ] Amended return

H Check accounting method: (1) [X] Cash (2) [ ] Accrual (3) [ ] Other (specify) ►

I Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ► 2

Caution: *Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.*

**INCOME**

| Line | Description | | | | |
|---|---|---|---|---|---|
| 1a | Gross receipts or sales | 1a | | | |
| b | Less returns and allowances | 1b | | 1c | |
| 2 | Cost of goods sold (Schedule A, line 8) | | | 2 | |
| 3 | Gross profit. Subtract line 2 from line 1c | | | 3 | |
| 4 | Ordinary income (loss) from other partnerships, estates, and trusts *(attach schedule)* | | | 4 | |
| 5 | Net farm profit (loss) *(attach Schedule F (Form 1040))* | | | 5 | |
| 6 | Net gain (loss) from Form 4797, Part II, line 18 | | | 6 | |
| 7 | Other income (loss) *(attach schedule)* | | | 7 | |
| 8 | Total income (loss). Combine lines 3 through 7 | | | 8 | |

**DEDUCTIONS** (SEE INSTRUCTIONS FOR LIMITATIONS)

| Line | Description | | | | |
|---|---|---|---|---|---|
| 9 | Salaries and wages (other than to partners) (less employment credits) | | | 9 | |
| 10 | Guaranteed payments to partners | | | 10 | |
| 11 | Repairs and maintenance | | | 11 | |
| 12 | Bad debts | | | 12 | |
| 13 | Rent | | | 13 | |
| 14 | Taxes and licenses | | | 14 | |
| 15 | Interest | | | 15 | |
| 16a | Depreciation (if required, attach Form 4562) | 16a | | | |
| b | Less depreciation reported on Schedule A and elsewhere on return | 16b | | 16c | |
| 17 | Depletion (Do not deduct oil and gas depletion.) | | | 17 | |
| 18 | Retirement plans, etc. | | | 18 | |
| 19 | Employee benefit programs | | | 19 | |
| 20 | Other deductions *(attach schedule)* | | | 20 | |
| 21 | Total deductions. Add the amounts shown in the far right column for lines 9 through 20 | | | 21 | |
| 22 | Ordinary income (loss) from trade or business activities. Subtract line 21 from line 8 | | | 22 | |

RECEIVED 1081 AUG 29 2002 IRS-OSC OGDEN, UT

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member) is based on all information of which preparer has any knowledge.

► [signature] Signature of General Partner or Limited Liability Company Member ► 8/24/02 Date

May the IRS discuss this return with the preparer shown below (see instrs)? [X] Yes [ ] No

**Paid Preparer's Use Only**

Preparer's Signature: Scott R. Hewitt Date: 8.22.02 Check if self-employed ► [ ]

Firm's Name (or yours if self-employed), Address, and ZIP Code ► HANNEMAN & HEWITT, PA
229 E. WILLIAM, STE 310
WICHITA, KS 67202

97

EIN

Phone No (316) 269-4500

DEFENDANT'S EXHIBIT 8-1.0973

## Schedule A Cost of Goods Sold (see instructions)

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases less cost of items withdrawn for personal use | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional Section 263A costs *(attach schedule)* | 4 | |
| 5 | Other costs *(attach schedule)* | 5 | |
| 6 | **Total.** Add lines 1 through 5 | 6 | |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | |

9a Check all methods used for valuing closing inventory:
(i) ☐ Cost as described in Regulations Section 1.471-3
(ii) ☐ Lower of cost or market as described in Regulations Section 1.471-4
(iii) ☐ Other (specify method used and attach explanation) ►

b Check this box if there was a writedown of 'subnormal' goods as described in Regulations Section 1.471-2(c) ► ☐

c Check this box if the LIFO inventory method was adopted this tax year for any goods *(if checked, attach Form 970)* ► ☐

d Do the rules of Section 263A (for property produced or acquired for resale) apply to the partnership? ☐ Yes ☐ No

e Was there any change in determining quantities, cost, or valuations between opening and closing inventory? ☐ Yes ☐ No
If 'Yes', attach explanation.

## Schedule B Other Information

| | | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box:<br>a ☐ Domestic general partnership b ☐ Domestic limited partnership<br>c ☒ Domestic limited liability company d ☐ Domestic limited liability partnership<br>e ☐ Foreign partnership f ☐ Other ► | | |
| 2 | Are any partners in this partnership also partnerships? | X | |
| 3 | During the partnership's tax year, did the partnership own any interest in another partnership or in any foreign entity that was disregarded as an entity separate from its owner under Regulations Sections 301.7701-2 and 301.7701-3? If yes, see instructions for required attachment | | X |
| 4 | Is this partnership subject to the consolidated audit procedures of Sections 6221 through 6233? If 'Yes,' see **Designation of Tax Matters Partner** below | | X |
| 5 | Does this partnership meet all three of the following requirements?<br>a The partnership's total receipts for the tax year were less than $250,000;<br>b The partnership's total assets at the end of the tax year were less than $600,000; and<br>c Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return.<br>If 'Yes,' the partnership is not required to complete Schedules L, M-1, and M-2; item F on page 1 of Form 1065; or item J on Schedule K-1 | | X |
| 6 | Does this partnership have any foreign partners? If 'Yes,' the partnership may have to file Forms 8804, 8805 and 8813. See instructions | | X |
| 7 | Is this partnership a publicly traded partnership as defined in Section 469(k)(2)? | | X |
| 8 | Has this partnership filed, or is it required to file, Form 8264, Application for Registration of a Tax Shelter? | | X |
| 9 | At any time during calendar year 2001, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for Form TD F 90-22.1. If 'Yes,' enter the name of the foreign country. ► | | X |
| 10 | During the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If 'Yes,' the partnership may have to file Form 3520. See instructions | | X |
| 11 | Was there a distribution of property or a transfer (e.g., by sale or death) of a partnership interest during the tax year? If 'Yes,' you may elect to adjust the basis of the partnership's assets under Section 754 by attaching the statement described in the instructions under Elections Made by the Partnership | X | |
| 12 | Enter the number of Forms 8865 attached to this return ► 0 | | |

## Designation of Tax Matters Partner (see instructions)

Enter below the general partner designated as the tax matters partner (TMP) for the tax year of this return:

Name of Designated TMP ► CLEARMEADOW CAPITAL CORP

Identifying Number of TMP ► 48-1251040

98

Address of Designated TMP ► 2233 S WEST STREET
WICHITA, KS 67213

Form 1065 (2001) CLEARMEADOW INVESTMENTS, LLC 48-1251013 Page 3

## Schedule K Partners' Shares of Income, Credits, Deductions, etc

| | (a) Distributive share items | | (b) Total amount |
|---|---|---|---|
| Income (Loss) | 1 Ordinary income (loss) from trade or business activities (page 1, line 22) | 1 | |
| | 2 Net income (loss) from rental real estate activities *(attach Form 8825)* | 2 | |
| | 3a Gross income from other rental activities — 3a | | |
| | b Expenses from other rental activities *(attach sch)* — 3b | | |
| | c Net income (loss) from other rental activities. Subtract line 3b from line 3a | 3c | |
| | 4 Portfolio income (loss): a Interest income | 4a | 450,163. |
| | b Ordinary dividends | 4b | 1,016. |
| | c Royalty income | 4c | |
| | d Net short-term capital gain (loss) *(attach Schedule D (Form 1065))* | 4d | |
| | e (1) Net long-term capital gain (loss) *(attach Schedule D (Form 1065))* | 4e (1) | |
| | (2) 28% rate gain (loss) ► (3) Qualified 5-year gain ► | | |
| | f Other portfolio income (loss) *(attach schedule)* SEE STATEMENT 1 | 4f | 1,039. |
| | 5 Guaranteed payments to partners | 5 | 10,000. |
| | 6 Net Section 1231 gain (loss) (other than due to casualty or theft) *(attach Form 4797)* | 6 | |
| | 7 Other income (loss) | 7 | |
| Deductions | 8 Charitable contributions *(attach schedule)* | 8 | |
| | 9 Section 179 expense deduction *(attach Form 4562)* | 9 | |
| | 10 Deductions related to portfolio income (itemize) SEE STATEMENT 2 | 10 | 10,040. |
| | 11 Other deductions | 11 | |
| Credits | 12a Low-income housing credit: | | |
| | (1) From partnerships to which Section 42(j)(5) applies | 12a (1) | |
| | (2) Other than on line 12a(1) | 12a (2) | |
| | b Qualified rehabilitation expenditures related to rental real estate activities *(attach Form 3468)* | 12b | |
| | c Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities | 12c | |
| | d Credits related to other rental activities | 12d | |
| | 13 Other credits | 13 | |
| Investment Interest | 14a Interest expense on investment debts | 14a | 446,863. |
| | b (1) Investment income included on lines 4a, 4b, 4c, and 4f above | 14b (1) | 451,179. |
| | (2) Investment expenses included on line 10 above | 14b (2) | 10,040. |
| Self-Employment | 15a Net earnings (loss) from self-employment | 15a | 10,000. |
| | b Gross farming or fishing income | 15b | |
| | c Gross nonfarm income | 15c | |
| Adjustments and Tax Preference Items | 16a Depreciation adjustment on property placed in service after 1986 | 16a | |
| | b Adjusted gain or loss | 16b | |
| | c Depletion (other than oil and gas) | 16c | |
| | d (1) Gross income from oil, gas, and geothermal properties | 16d (1) | |
| | (2) Deductions allocable to oil, gas, and geothermal properties | 16d (2) | |
| | e Other adjmnts & tax pref items | 16e | |
| Foreign Taxes | 17a Name of foreign country or U.S. possession ► | | |
| | b Gross income from all sources | 17b | |
| | c Gross income sourced at partner level | 17c | |
| | d Foreign gross income sourced at partnership level: | | |
| | (1) Passive ► (2) Listed categories *(attach sch)* ► (3) General limitation ► | 17d (3) | |
| | e Deductions allocated and apportioned at partner level: | | |
| | (1) Interest expense ► (2) Other ► | 17e (2) | |
| | f Deductions allocated and apportioned at partnership level to foreign source income: | | |
| | (1) Passive ► (2) Listed categories *(attach sch)* ► (3) General limitation ► | 17f (3) | |
| | g Total foreign taxes (check one): ► ☐ Paid ☐ Accrued | 17g | |
| | h Reduction in taxes available for credit *(attach schedule)* | 17h | |
| Other | 18 Section 59(e)(2) expenditures: a Type ► b Amount ► | 18b | |
| | 19 Tax-exempt interest income | 19 | |
| | 20 Other tax-exempt income | 20 | |
| | 21 Nondeductible expenses | 21 | |
| | 22 Distributions of money (cash and marketable securities) | 22 | 284,315. |
| | 23 Distributions of property other than money | 23 | 2,501,000. |
| | 24 Other items and amounts required to be reported separately to partners *(attach schedule)* | | |

BAA Form 1065 (2001)

PTPA0134L 01/01/02

## Analysis of Net Income (Loss)

| | | |
|---|---|---|
| 1 Net income (loss). Combine Schedule K, lines 1 through 7 in column (b). From the result, subtract the sum of Schedule K, lines 8 through 11, 14a, 17g, and 18b | 1 | 5,315. |

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | | | | | |
| b Limited partners | -4,685. | | | 10,000. | | |

## Schedule L Balance Sheets per Books (Not required if question 5 on Schedule B is answered 'Yes.')

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | | | |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (attach schedule) | | | | |
| 7 Mortgage and real estate loans | | | | |
| 8 Other investments (attach schedule) | | | | |
| 9a Buildings and other depreciable assets | | | | |
| b Less accumulated depreciation | | | | |
| 10a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | | | |
| 12a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | | | |
| 13 Other assets (attach schedule) | | | | |
| 14 Total assets | | | | 0. |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | | | |
| 16 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 Other current liabilities (attach sch) | | | | |
| 18 All nonrecourse loans | | | | |
| 19 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 20 Other liabilities (attach schedule) | | | | |
| 21 Partners' capital accounts | | | | 0. |
| 22 Total liabilities and capital | | | | 0. |

## Schedule M-1 Reconciliation of Income (Loss) per Books with Income (Loss) per Return (Not required if question 5 on Schedule B is answered 'Yes.')

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | -4,685. | 6 Income recorded on books this year not included on Schedule K, lines 1 though 7 (itemize): a Tax-exempt interest $ | |
| 2 Income included on Schedule K, lines 1 through 4, 6, and 7, not recorded on books this year (itemize): | | | |
| 3 Guaranteed payments (other than health insurance) | 10,000. | 7 Deductions included on Schedule K, lines 1 through 11, 14a, 17g, and 18b, not charged against book income this year (itemize): a Depreciation $ | |
| 4 Expenses recorded on books this year not included on Schedule K, lines 1 through 11, 14a, 17g, and 18b (itemize): a Depreciation $ b Travel and entertainment $ | | 8 Add lines 6 and 7 | |
| 5 Add lines 1 through 4 | 5,315. | 9 Income (loss) (Analysis of net income (loss), line 1). Subtract line 8 from line 5 | 5,315. |

## Schedule M-2 Analysis of Partners' Capital Accounts (Not required if question 5 on Schedule B is answered 'Yes.')

| | | | |
|---|---|---|---|
| 1 Balance at beginning of year | 0. | 6 Distributions: a Cash | 284,315. |
| 2 Capital contributed during year | 2,790,000. | b Property | 2,501,000. |
| 3 Net income (loss) per books | -4,685. | 7 Other decreases (itemize): | |
| 4 Other increases (itemize): | | | |
| | | 8 Add lines 6 and 7 | 2,785,315. |
| 5 Add lines 1 through 4 | 2,785,315. | 9 Balance at end of year. Subtract line 8 from line 5 | 0. |

Supplemental Information

## LINE 25
## SUPPLEMENTAL INFORMATION

FEDERAL INCOME TAX WITHHELD ON INVESTMENT ACCOUNT $ 38

SEE STATEMENT A FOR INFORMATION ON LINE 23 - DISTRIBUTION OF PROPERTY OTHER THAN MONEY

2001 **FEDERAL STATEMENTS** PAGE 1

CLEARMEADOW INVESTMENTS, LLC 48-1251013

**STATEMENT 1**
**FORM 1065, SCHEDULE K, LINE 4F**
**OTHER PORTFOLIO INCOME (LOSS)**

| | | |
|---|---|---|
| SEE STATEMENT 1(A) | $ | 1,039. |
| TOTAL | $ | 1,039. |

**STATEMENT 2**
**FORM 1065, SCHEDULE K, LINE 10**
**DEDUCTIONS RELATED TO PORTFOLIO INCOME**

| | | |
|---|---|---|
| INVESTMENT FEES | $ | 10,000. |
| WIRE FEES | | 40. |
| TOTAL | $ | 10,040. |

2001 **FEDERAL SUPPLEMENTAL INFORMATION** **PAGE 1**

**CLEARMEADOW INVESTMENTS, LLC** 48-1251013

STATEMENT 1(A)
FORM 1065, SCHEDULE K, LINE 4F, OTHER PORTFOLIO INCOME (LOSS)

| | DATE ACQUIRED | DATE SOLD | COST | PROCEEDS | NET GAIN/LOSS |
|---|---|---|---|---|---|
| CHF CALL | 10/22/01 | 10/29/01 | 2,500 | 3,122 | 622 |
| JPY PUT | 11/07/01 | 11/16/01 | 2,500 | 3,315 | 815 |
| CAD CALL | 11/21/01 | 12/06/01 | 2,500 | EXPIRED | (2,500) |
| GBP CALL | 11/21/01 | 12/06/01 | 2,500 | 4,602 | 2,102 |
| IRC SECTION 988 GAIN/(LOSS) | | | 10,000 | 11,039 | 1,039 |

STATEMENT A
SCHEDULE K-1 - DISTRIBUTIONS OF PROPERTY OTHER THAN MONEY

| OPEN SECURITIES | UNITS HELD | COST BASIS OF PROPERTY DISTRIBUTION | FMV OF PROPERTY DISTRIBUTION |
|---|---|---|---|
| CAD CURRENCY | 1487.51 | $ 2,501,000 | $ 1,000 |

2001 **GENERAL ELECTIONS** **PAGE 1**

**CLEARMEADOW INVESTMENTS, LLC** 48-1251013

## ELECTION TO AMORTIZE START-UP EXPENDITURES

PURSUANT TO IRC SECTION 195(B), THE TAXPAYER HEREBY ELECTS TO AMORTIZE START-UP EXPENDITURES OVER THE AMORTIZATION PERIOD STATED BELOW, BEGINNING THE MONTH IN WHICH THE ACTIVE TRADE OR BUSINESS BEGAN.

AMORTIZATION PERIOD (MONTHS): 60
DATE BUSINESS BEGAN:
DESCRIPTION OF EXPENDITURE:
DATE PAID OR INCURRED:
AMOUNT: $0.

## ELECTION TO AMORTIZE ORGANIZATIONAL EXPENDITURES

PURSUANT TO IRC SECTION 709, THE TAXPAYER HEREBY ELECTS TO AMORTIZE ORGANIZATIONAL EXPENDITURES OVER THE AMORTIZATION PERIOD STATED BELOW, BEGINNING THE MONTH IN WHICH THE TAXPAYER'S BUSINESS BEGAN.

AMORTIZATION PERIOD (MONTHS): 60
DATE BUSINESS BEGAN:
DESCRIPTION OF EXPENDITURE:
DATE PAID OR INCURRED:
AMOUNT: $0.

Form **8800** (Rev September 2000)
Department of the Treasury Internal Revenue Service

# Application for Additional Extension of Time to File U.S. Return for a Partnership, REMIC, or for Certain Trusts

► File a separate application for each return.

OMB No. 1545-1057

Please type or print.

File the original and one copy by the due date for filing the return for which an extension is requested. See instructions.

Name: CLEARMEADOW INVESTMENTS, LLC

Employer Identification Number: 48-1251013

Number, Street, and Room or Suite Number. If a P.O. Box, See Instructions.
2233 S WEST STREET

City or Town, State, and ZIP Code. If a Foreign Address, Enter City, Province or State, and Country. Follow the Country's Practice for Entering the Postal Code.
WICHITA, KS 67213

1 I request an additional extension of time until 10/15, 2002, to file (check only one):
☐ Form 1041 ☐ Form 1041-QFT ☒ Form 1065 ☐ Form 1065-B ☐ Form 1066

2 If the entity does not have an office or place of business in the United States, check this box ► ☐

3a For calendar year 20 01, or other tax year beginning ______, 20 __, and ending ______, 20 __

b If this tax year is for less than 12 months, check reason: ☐ Initial return ☐ Final return ☐ Change in accounting period

4 Explain why the entity needs an extension. All entities filing this form must give an adequate explanation.
TAXPAYER RESPECTFULLY REQUESTS ADDITIONAL TIME TO GATHER INFORMATION NECESSARY TO FILE A COMPLETE AND ACCURATE TAX RETURN.

5 Has the entity filed Form 8736 to request an extension of time to file for this tax year? ☒ Yes ☐ No
If you checked 'No,' we will grant an extension only for undue hardship. Fully explain the hardship on line 4.

## Signature and Verification

Under penalties of perjury, I declare that I have examined this form, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete; and that I am authorized to prepare this form.

Signature ► Scott R Hewitt Title ► CPA Date ► 7-15-02

File original and one copy. The IRS will show below whether or not your application is approved and will return the copy.

Notice to Applicant — To Be Completed by the IRS.

☐ We Have approved this application. Please attach this form to the entity's return.

☐ We Have Not approved this application.
However, we have granted a 10-day grace period to ______. This grace period is considered a valid extension of time for elections otherwise required to be made on a timely return. Please attach this form to the entity's return.

☐ We Have Not approved this application. After considering the reasons stated in item 4 above, we cannot grant this request for an extension of time to file. We are not granting a 10-day grace period.

☐ We cannot consider this application because it was filed after the due date of the return for which an extension was requested.

☐ Other: ______

______ By: ______ ______
Director Date

If you want a copy of this form is to be returned to an address other than that shown above, please enter the address to which the copy should be sent.

Please Type or Print

Name: HANNEMAN & HEWITT, PA

Number, Street, and Room or Suite Number (If a P.O. box, see instructions.)
229 E. WILLIAM, STE 310

City or Town, State, and ZIP Code. If a Foreign Address, Enter City, Province or State, and Country. Follow the Country's Practice for Entering the Postal Code.
WICHITA, KS 67202

105

Form **8736** (Rev October 2000)

Department of the Treasury Internal Revenue Service

# Application for Automatic Extension of Time to File U.S. Return for a Partnership, REMIC, or for Certain Trusts

► File a separate application for each return.

OMB No. 1545-1054

Please type or print.

File by the due date for filing the return for which an extension is requested. See instructions.

| Name | Employer Identification Number |
|---|---|
| Clearmeadow Investments, LLC | 48-1251013 |
| Number, Street, and Room or Suite No. If a P.O. Box, See Instructions. | |
| 2233 S West Street | |
| City or town, state and ZIP code. If a Foreign Address, Enter City, Province or State, and Country. Follow the country's practice for entering the postal code. | |
| Wichita, KS 67213 | |

1 I request an automatic 3-month extension of time to file (check only one):
☐ Form 1041 ☐ Form 1041-QFT ☒ Form 1065 ☐ Form 1065-B ☐ Form 1066

2 If the entity does not have an office or place of business in the United States, check this box ► ☐

3a For calendar year 2001, or other tax year beginning ________, _____, and ending ________, _____.

b If this tax year is for less than 12 months, check reason:
☐ Initial return ☐ Final return ☐ Change in accounting period

4 If this extension is requested for Form 1041, Form 1041-QFT, Form 1065-B, or Form 1066, enter the following amounts:

a Tentative total tax from Form 1041, Form 1041-QFT, Form 1065-B, or Form 1066 (see instructions) $ N/A

b Refundable credits and estimated tax payments, including any prior year overpayment allowed as a credit, from Form 1041, Form 1041-QFT, or Form 1065-B (see instructions). REMICs, enter -0- $ N/A

c Balance due. Subtract line 4b from line 4a. If zero or less, enter -0-. Enclose payment, if any, with Form 8736 (see instructions) ► $ N/A

**Caution:** *Interest will be charged on any tax not paid by the regular due date of Forms 1041, 1041-QFT, 1065-B, and 1066 from the due date until the tax is paid.*

**BAA For Paperwork Reduction Act Notice, see separate instructions.** Form 8736 (Rev 10-2000)



PTPZ0201L 11/19/01

2926524312603 296652444696

Schedule K-1 (Form 1065)
Department of the Treasury Internal Revenue Service

# Partner's Share of Income, Credits, Deductions, Etc

For calendar year 2001 or tax year beginning , 2001, and ending , 20

OMB No. 1545-0099

**2001**

Partner's identifying number ► 62-1871495

Partner's Name, Address, and ZIP Code

CF ADVISORS XXXVII, LLC
10 BAY STREET
WESTPORT, CT 06880

Partnership's identifying number ► 48-1251013

Partnership's Name, Address, and ZIP Code

CLEARMEADOW INVESTMENTS, LLC
2233 S WEST STREET
WICHITA, KS 67213

A This partner is a ☐ general partner ☐ limited partner ☒ limited liability company member

B What type of entity is this partner? ► PARTNERSHIP

C Is this partner a ☒ domestic or a ☐ foreign partner?

D Enter partner's % of: (i) Before change or termination (ii) End of year

Profit sharing .... ____ % ____ %

Loss sharing ..... ____ % ____ %

Ownership of capital .. ____ % ____ %

E IRS Center where partnership filed return: OGDEN

F Partner's share of liabilities:

Nonrecourse .... $____

Qualified nonrecourse financing .... $____

Other .... $____

G Tax shelter registration number ► ____

H Check here if this partnership is a publicly traded partnership as defined in Section 469(k)(2) .... ☐

I Check applicable boxes: (1) ☒ Final K-1 (2) ☐ Amended K-1

J Analysis of partner's capital account:

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Partner's share of lines 3, 4, and 7, Form 1065, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year (combine columns (a) through (d)) |
|---|---|---|---|---|
| 0. | 2,500. | | ( 2,500.) | 0. |

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| Income (Loss) | 1 Ordinary income (loss) from trade or business activities | 1 | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 2 Net income (loss) from rental real estate activities | 2 | | |
| | 3 Net income (loss) from other rental activities | 3 | | |
| | 4 Portfolio income (loss): | | | |
| | a Interest | 4a | | Schedule B, Part I, line 1 |
| | b Ordinary dividends | 4b | | Schedule B, Part II, line 5 |
| | c Royalties | 4c | | Schedule E, Part I, line 4 |
| | d Net short-term capital gain (loss) | 4d | | Schedule D, line 5, column (f) |
| | e (1) Net long-term capital gain (loss) | 4e(1) | | Schedule D, line 12, column (f) |
| | (2) 28% rate gain (loss) | 4e(2) | | Schedule D, line 12, column (g) |
| | (3) Qualified 5-year gain | 4e(3) | | Line 4 of worksheet for Sch D, line 29 |
| | f Other portfolio income (loss) *(attach schedule)* | 4f | | Enter on applicable ln of your return |
| | 5 Guaranteed payments to partner | 5 | 10,000. | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 6 Net Section 1231 gain (loss) (other than due to casualty or theft) | 6 | | |
| | 7 Other income (loss) *(attach schedule)* | 7 | | Enter on applicable ln of your return |
| Deductions | 8 Charitable contributions (see instructions) *(attach schedule)* | 8 | | Schedule A, line 15 or 16 |
| | 9 Section 179 expense deduction | 9 | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 10 Deductions related to portfolio income *(attach schedule)* | 10 | | |
| | 11 Other deductions *(attach schedule)* | 11 | | |
| Credits | 12a Low-income housing credit: | | | |
| | (1) From Section 42(j)(5) partnerships | 12a(1) | | Form 8586, line 5 |
| | (2) Other than on line 12a(1) | 12a(2) | | |
| | b Qualified rehabilitation expenditures related to rental real estate activities | 12b | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | c Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities | 12c | | |
| | d Credits related to other rental activities | 12d | | |
| | 13 Other credits | 13 | | |

BAA For Paperwork Reduction Act Notice, see instructions for Form 1065. Schedule K-1 (Form 1065) 2001

PTPA0312L 01/01/02

PARTNER 2

Schedule K-1 (Form 1065) 2001 CLEARMEADOW INVESTMENTS, LLC 48-1251013 Page 2

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| Investment Interest | 14a Interest expense on investment debts | 14a | | Form 4952, line 1 |
| | b (1) Investment income included on lines 4a, 4b, 4c, and 4f | 14b(1) | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | (2) Investment expenses included on line 10 | 14b(2) | | |
| Self-employment | 15a Net earnings (loss) from self-employment | 15a | 10,000. | Schedule SE, Section A or B |
| | b Gross farming or fishing income | 15b | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | c Gross nonfarm income | 15c | | |
| Adjustments and Tax Preference Items | 16a Depreciation adjustment on property placed in service after 1986 | 16a | | See Partner's Instructions for Schedule K-1 (Form 1065) and instructions for Form 6251. |
| | b Adjusted gain or loss | 16b | | |
| | c Depletion (other than oil and gas) | 16c | | |
| | d (1) Gross income from oil, gas, and geothermal properties | 16d(1) | | |
| | (2) Deductions allocable to oil, gas, and geothermal properties | 16d(2) | | |
| | e Other adjustments & tax preference items *(attach sch)* | 16e | | |
| Foreign Taxes | 17a Name of foreign country or U.S. possession ► | | | Form 1116, Part I |
| | b Gross income from all sources | 17b | | |
| | c Gross income sourced at partner level | 17c | | |
| | d Foreign gross income sourced at partnership level: | | | |
| | (1) Passive | 17d(1) | | |
| | (2) Listed categories *(attach schedule)* | 17d(2) | | |
| | (3) General limitation | 17d(3) | | |
| | e Deductions allocated and apportioned at partner level: | | | |
| | (1) Interest expense | 17e(1) | | |
| | (2) Other | 17e(2) | | |
| | f Deductions allocated and apportioned at partnership level to foreign source income: | | | |
| | (1) Passive | 17f(1) | | |
| | (2) Listed categories *(attach schedule)* | 17f(2) | | |
| | (3) General limitation | 17f(3) | | |
| | g Total foreign taxes (check one): ► ☐ Paid ☐ Accrued | 17g | | Form 1116, Part II |
| | h Reduction in taxes available for credit *(attach schedule)* | 17h | | Form 1116, line 12. |
| Other | 18a Section 59(e)(2) expenditures: a Type ► | | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | b Amount | 18b | | |
| | 19 Tax-exempt interest income | 19 | | Form 1040, line 8b |
| | 20 Other tax-exempt income | 20 | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 21 Nondeductible expenses | 21 | | |
| | 22 Distributions of money (cash and marketable securities) | 22 | 2,500. | |
| | 23 Distributions of property other than money | 23 | | |
| | 24 Recapture of low-income housing credit: | | | |
| | a From Section 42(j)(5) partnerships | 24a | | Form 8611, line 8 |
| | b Other than on line 24a | 24b | | |

**Supplemental Information**

25 Supplemental information required to be reported separately to each partner *(attach additional schedules if more space is needed)*:

108

PTPA0312L 01/01/02

Schedule K-1 (Form 1065) 2001

PARTNER 2: CF ADVISORS XXXVII, LLC 62-1871495

2956524446907

**Schedule K-1** (Form 1065)

Department of the Treasury Internal Revenue Service

# Partner's Share of Income, Credits, Deductions, Etc

For calendar year 2001 or tax year

beginning , 2001, and ending , 20

OMB No. 1545-0099

**2001**

| Partner's identifying number ► 48-1251040 | Partnership's identifying number ► 48-1251013 |
|---|---|
| Partner's Name, Address, and ZIP Code<br>CLEARMEADOW CAPITAL CORP<br>2233 S WEST STREET<br>WICHITA, KS 67213 | Partnership's Name, Address, and ZIP Code<br>CLEARMEADOW INVESTMENTS, LLC<br>2233 S WEST STREET<br>WICHITA, KS 67213 |

A This partner is a ☐ general partner ☐ limited partner ☒ limited liability company member

B What type of entity is this partner? ► S CORPORATION

C Is this partner a ☒ domestic or a ☐ foreign partner?

D Enter partner's % of: (i) Before change or termination (ii) End of year

Profit sharing .... ______ % ______ %

Loss sharing ..... ______ % ______ %

Ownership of capital.. ______ % ______ %

E IRS Center where partnership filed return: OGDEN

F Partner's share of liabilities:

Nonrecourse ........ $______

Qualified nonrecourse financing ........ $______

Other ........ $______

G Tax shelter registration number ► ______

H Check here if this partnership is a publicly traded partnership as defined in Section 469(k)(2) ........ ☐

I Check applicable boxes: (1) ☒ Final K-1 (2) ☐ Amended K-1

J Analysis of partner's capital account:

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Partner's share of lines 3, 4, and 7, Form 1065, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year (combine columns (a) through (d)) |
|---|---|---|---|---|
| 0. | 2,787,500. | -4,685. | ( 2,782,815.) | 0. |

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| Income (Loss) | 1 Ordinary income (loss) from trade or business activities | 1 | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 2 Net income (loss) from rental real estate activities | 2 | | |
| | 3 Net income (loss) from other rental activities | 3 | | |
| | 4 Portfolio income (loss): | | | |
| | a Interest | 4a | 450,163. | Schedule B, Part I, line 1 |
| | b Ordinary dividends | 4b | 1,016. | Schedule B, Part II, line 5 |
| | c Royalties | 4c | | Schedule E, Part I, line 4 |
| | d Net short-term capital gain (loss) | 4d | | Schedule D, line 5, column (f) |
| | e (1) Net long-term capital gain (loss) | 4e(1) | | Schedule D, line 12, column (f) |
| | (2) 28% rate gain (loss) | 4e(2) | | Schedule D, line 12, column (g) |
| | (3) Qualified 5-year gain | 4e(3) | | Line 4 of worksheet for Sch D, line 29 |
| | f Other portfolio income (loss) *(attach schedule)* SEE LINE 25 | 4f | 1,039. | Enter on applicable ln of your return |
| | 5 Guaranteed payments to partner | 5 | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 6 Net Section 1231 gain (loss) (other than due to casualty or theft) | 6 | | |
| | 7 Other income (loss) *(attach schedule)* | 7 | | Enter on applicable ln of your return |
| Deductions | 8 Charitable contributions (see instructions) *(attach schedule)* | 8 | | Schedule A, line 15 or 16 |
| | 9 Section 179 expense deduction | 9 | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 10 Deductions related to portfolio income *(attach schedule)* SEE LINE 25 | 10 | 10,040. | |
| | 11 Other deductions *(attach schedule)* | 11 | | |
| Credits | 12a Low-income housing credit: | | | |
| | (1) From Section 42(j)(5) partnerships | 12a(1) | | Form 8586, line 5 |
| | (2) Other than on line 12a(1) | 12a(2) | | |
| | b Qualified rehabilitation expenditures related to rental real estate activities | 12b | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | c Credits (other than credits shown on lines 12a and 12b) related to rental real estate activities | 12c | | |
| | d Credits related to other rental activities | 12d | | |
| | 13 Other credits | 13 | | |

**BAA For Paperwork Reduction Act Notice, see instructions for Form 1065.** Schedule K-1 (Form 1065) 2001

PTPA0312L 01/01/02

PARTNER 1

Schedule K-1 (Form 1065) 2001 CLEARMEADOW INVESTMENTS, LLC 48-1251013 Page 2

| | (a) Distributive share item | | (b) Amount | (c) 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| Investment Interest | 14a Interest expense on investment debts | 14a | 446,863. | Form 4952, line 1 |
| | b (1) Investment income included on lines 4a, 4b, 4c, and 4f | 14b(1) | 451,179. | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | (2) Investment expenses included on line 10 | 14b(2) | 10,040. | |
| Self-employment | 15a Net earnings (loss) from self-employment | 15a | | Schedule SE, Section A or B |
| | b Gross farming or fishing income | 15b | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | c Gross nonfarm income | 15c | | |
| Adjustments and Tax Preference Items | 16a Depreciation adjustment on property placed in service after 1986 | 16a | | See Partner's Instructions for Schedule K-1 (Form 1065) and instructions for Form 6251. |
| | b Adjusted gain or loss | 16b | | |
| | c Depletion (other than oil and gas) | 16c | | |
| | d (1) Gross income from oil, gas, and geothermal properties | 16d(1) | | |
| | (2) Deductions allocable to oil, gas, and geothermal properties | 16d(2) | | |
| | e Other adjustments & tax preference items *(attach sch)* | 16e | | |
| Foreign Taxes | 17a Name of foreign country or U.S. possession ► | | | |
| | b Gross income from all sources | 17b | | Form 1116, Part I |
| | c Gross income sourced at partner level | 17c | | |
| | d Foreign gross income sourced at partnership level: | | | |
| | (1) Passive | 17d(1) | | |
| | (2) Listed categories *(attach schedule)* | 17d(2) | | |
| | (3) General limitation | 17d(3) | | |
| | e Deductions allocated and apportioned at partner level: | | | |
| | (1) Interest expense | 17e(1) | | |
| | (2) Other | 17e(2) | | |
| | f Deductions allocated and apportioned at partnership level to foreign source income: | | | |
| | (1) Passive | 17f(1) | | |
| | (2) Listed categories *(attach schedule)* | 17f(2) | | |
| | (3) General limitation | 17f(3) | | |
| | g Total foreign taxes (check one): ► ☐ Paid ☐ Accrued | 17g | | Form 1116, Part II |
| | h Reduction in taxes available for credit *(attach schedule)* | 17h | | Form 1116, line 12. |
| Other | 18a Section 59(e)(2) expenditures: a Type ► | | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | b Amount | 18b | | |
| | 19 Tax-exempt interest income | 19 | | Form 1040, line 8b |
| | 20 Other tax-exempt income | 20 | | See Partner's Instructions for Schedule K-1 (Form 1065). |
| | 21 Nondeductible expenses | 21 | | |
| | 22 Distributions of money (cash and marketable securities) | 22 | 281,815. | |
| | 23 Distributions of property other than money | 23 | 2,501,000. | |
| | 24 Recapture of low-income housing credit: | | | |
| | a From Section 42(j)(5) partnerships | 24a | | Form 8611, line 8 |
| | b Other than on line 24a | 24b | | |

**Supplemental Information**

25 Supplemental information required to be reported separately to each partner *(attach additional schedules if more space is needed)*:

**LINE 4F**
**OTHER PORTFOLIO INCOME**

SEE STATEMENT 1(A) ........ $ 1,039.
TOTAL $ 1,039.

**LINE 10**
**DEDUCTIONS RELATED TO PORTFOLIO INCOME**

INVESTMENT FEES ........ $ 10,000.
WIRE FEES ........ 40.
TOTAL $ 10,040.

110

PTPA0312L 01/01/02 Schedule K-1 (Form 1065) 2001

PARTNER 1: CLEARMEADOW CAPITAL CORP 48-1251040

29316244 06109

Form **1120S** — Department of the Treasury Internal Revenue Service

# U.S. Income Tax Return for an S Corporation 2001

OMB No. 1545-0130 | IRS use only — Do not write or staple in this space.

► Do not file this form unless the corporation has timely filed Form 2553 to elect to be an S corporation.
► See separate instructions.

For calendar year 2001, or tax year beginning , 2001, and ending , 20

A Effective Date of Election as an S Corporation: 10/12/2001

B Business Code No. (see instructions): 523900

Use IRS label. Otherwise, print or type.

CLEARMEADOW CAPITAL CORP
2233 S WEST STREET
WICHITA, KS 67213

C Employer Identification Number: 48-1251040

D Date Incorporated: 10/12/2001

E Total Assets (see instructions): $ 1,923,314.

F Check applicable boxes: (1) [X] Initial return (2) [ ] Final return (3) [ ] Name change (4) [ ] Address change (5) [ ] Amended return

G Enter number of shareholders in the corporation at end of the tax year ► 1

**Caution:** *Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.*

| Section | Line | Description | Ref | Amount |
|---|---|---|---|---|
| INCOME | 1a | Gross receipts or sales ___ b Less returns and allowances ___ c Bal ► | 1c | |
| | 2 | Cost of goods sold (Schedule A, line 8) | 2 | |
| | 3 | Gross profit. Subtract line 2 from line 1c | 3 | |
| | 4 | Net gain (loss) from Form 4797, Part II, line 18 *(attach Form 4797)* | 4 | |
| | 5 | Other income (loss) *(attach schedule)* | 5 | |
| | 6 | Total income (loss). Combine lines 3 through 5 ► | 6 | |
| DEDUCTIONS (SEE INSTRUCTIONS) | 7 | Compensation of officers | 7 | |
| | 8 | Salaries and wages (less employment credits) | 8 | |
| | 9 | Repairs and maintenance | 9 | |
| | 10 | Bad debts | 10 | |
| | 11 | Rents | 11 | |
| | 12 | Taxes and licenses | 12 | |
| | 13 | Interest | 13 | |
| | 14a | Depreciation *(if required, attach Form 4562)* — 14a | | |
| | b | Depreciation claimed on Schedule A and elsewhere on return — 14b | | |
| | c | Subtract line 14b from line 14a | 14c | |
| | 15 | Depletion (Do not deduct oil and gas depletion.) | 15 | |
| | 16 | Advertising | 16 | |
| | 17 | Pension, profit-sharing, etc, plans | 17 | |
| | 18 | Employee benefit programs | 18 | |
| | 19 | Other deductions *(attach schedule)* | 19 | |
| | 20 | Total deductions. Add the amounts shown in the far right column for lines 7 through 19 ► | 20 | |
| | 21 | Ordinary income (loss) from trade or business activities. Subtract line 20 from line 6 | 21 | |
| TAX AND PAYMENTS | 22 | Tax: a Excess net passive income tax *(attach schedule)* — 22a | | |
| | b | Tax from Schedule D (Form 1120S) — 22b | | |
| | c | Add lines 22a and 22b (see instructions for additional taxes) | 22c | |
| | 23 | Payments: a 2001 estimated tax payments and amount applied from 2000 return — 23a | | |
| | b | Tax deposited with Form 7004 — 23b | | |
| | c | Credit for federal tax paid on fuels *(attach Form 4136)* — 23c | | |
| | d | Add lines 23a through 23c | 23d | |
| | 24 | Estimated tax penalty. Check if Form 2220 is attached ► [ ] | 24 | |
| | 25 | Tax due. If the total of lines 22c and 24 is larger than line 23d, enter amount owed. See instrs for depository method of payment ► | 25 | 0. |
| | 26 | Overpayment. If line 26 is larger than the total of lines 22c and 24, enter amount overpaid ► | 26 | |
| | 27 | Enter amount of line 26 you want: Credited to 2002 estimated tax ► Refunded | 27 | |

RECEIVED AUG 2 9 2002 OGDEN, UT

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of Officer: [signature] Date: 8/24/02 Title: [handwritten]

May the IRS discuss this return with the preparer shown below (see instructions)? [X] Yes [ ] No

**Paid Preparer's Use Only**

Preparer's Signature: Scott R. Hewitt Date: 8-22-02 Check if self-employed [ ] Preparer's SSN or PTIN: P0...2441

Firm's Name (or yours if self-employed), Address, and ZIP Code: HANNEMAN & HEWITT, PA, 229 E. WILLIAM, STE 310, WICHITA, KS 67202

EIN 48-...2079 Phone No. (316) 269-4500

DEFENDANT'S EXHIBIT 28

BAA For Paperwork Reduction Act Notice, see separate instructions. SPSA0105L 12/13/01 Form 1120S (2001)

**Schedule A — Cost of Goods Sold** (see instructions)

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional Section 263A costs *(attach schedule)* | 4 | |
| 5 | Other costs *(attach schedule)* | 5 | |
| 6 | **Total.** Add lines 1 through 5 | 6 | |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | |

9a Check all methods used for valuing closing inventory:

(i) ☐ Cost as described in Regulations Section 1.471-3

(ii) ☐ Lower of cost or market as described in Regulations Section 1.471-4

(iii) ☐ Other (specify method used and attach explanation) ______

b Check if there was a writedown of 'subnormal' goods as described in Regulations Section 1.471-2(c) ► ☐

c Check if the LIFO inventory method was adopted this tax year for any goods *(if checked, attach Form 970)* ► ☐

d If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing inventory computed under LIFO ... 9d

e Do the rules of Section 263A (for property produced or acquired for resale) apply to the corporation? ☐ Yes ☐ No

f Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If 'Yes,' attach explanation ☐ Yes ☐ No

**Schedule B — Other Information**

| | | Yes | No |
|---|---|---|---|
| 1 | Check method of accounting: (a) [X] Cash (b) ☐ Accrual (c) ☐ Other (specify) ► | | |
| 2 | Refer to the list in the instructions and state the corporation's principal: (a) Business activity ► INVESTING (b) Product or service ► INVESTMENTS | | |
| 3 | Did the corporation at the end of the tax year own, directly or indirectly, 50% or more of the voting stock of a domestic corporation? (For rules of attribution, see Section 267(c).) If 'Yes,' attach a schedule showing: (a) name, address, and employer identification number and (b) percentage owned | | X |
| 4 | Was the corporation a member of a controlled group subject to the provisions of Section 1561? | | X |
| 5 | Check this box if the corporation has filed or is required to file **Form 8264**, Application for Registration of a Tax Shelter ► ☐ | | |
| 6 | Check this box if the corporation issued publicly offered debt instruments with original issue discount ► ☐ If so, the corporation may have to file **Form 8281**, Information Return for Publicly Offered Original Issue Discount Instruments. | | |
| 7 | If the corporation: (a) filed its election to be an S corporation after 1986, (b) was a C corporation before it elected to be an S corporation or the corporation acquired an asset with a basis determined by reference to its basis (or the basis of any other property) in the hands of a C corporation, and (c) has net unrealized built-in gain (defined in Section 1374(d)(1)) in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years (see instructions) ► $ ______ | | |
| 8 | Check this box if the corporation had accumulated earnings and profits at the close of the tax year (see instructions) ► ☐ | | |

**Note:** *If the corporation had assets or operated a business in a foreign country or U.S. possession, it may be required to attach Schedule N (Form 1120), Foreign Operations of U.S. Corporations, to this return. See Schedule N for details.*

**Schedule K — Shareholders' Shares of Income, Credits, Deductions, etc**

INCOME (LOSS)

| | (a) Pro rata share items | | | (b) Total amount |
|---|---|---|---|---|
| 1 | Ordinary income (loss) from trade or business activities (page 1, line 21) | | 1 | |
| 2 | Net income (loss) from rental real estate activities *(attach Form 8825)* | | 2 | |
| 3a | Gross income from other rental activities | 3a | | |
| b | Expenses from other rental activities *(attach schedule)* | 3b | | |
| c | Net income (loss) from other rental activities. Subtract line 3b from line 3a | | 3c | |
| 4 | Portfolio income (loss): | | | |
| a | Interest income | | 4a | 450,163. |
| b | Ordinary dividends | | 4b | 1,016. |
| c | Royalty income | | 4c | |
| d | Net short-term capital gain (loss) *(attach Schedule D (Form 1120S))* | | 4d | |
| e | (1) Net long-term capital gain (loss) *(attach Schedule D (Form 1120S))*: | | 4e (1) | |
| | (2) 28% rate gain (loss) ► ______ (3) Qualified 5-year gain ► ______ | | | |
| f | Other portfolio income (loss) *(attach schedule)* SEE STATEMENT 1 | | 4f | -1,004,040. |
| 5 | Net Section 1231 gain (loss) (other than due to casualty or theft) *(attach Form 4797)* | | 5 | |
| 6 | Other income (loss) *(attach schedule)* | | 6 | |

Form 1120S (2001) CLEARMEADOW CAPITAL CORP 48-1251040 Page 3

**Schedule K** Shareholders' Shares of Income, Credits, Deductions, etc *(continued)*

| | (a) Pro rata share items | | (b) Total amount |
|---|---|---|---|
| Deductions | 7 Charitable contributions *(attach schedule)* | 7 | |
| | 8 Section 179 expense deduction *(attach Form 4562)* | 8 | |
| | 9 Deductions related to portfolio income (loss) (itemize) SEE STATEMENT 2 | 9 | 10,040. |
| | 10 Other deductions *(attach schedule)* SEE STATEMENT 3 | 10 | 4,384. |
| Investment Interest | 11a Interest expense on investment debts | 11a | 446,863. |
| | b (1) Investment income included on lines 4a, 4b, 4c, and 4f above | 11b (1) | 451,179. |
| | (2) Investment expenses included on line 9 above | 11b (2) | 10,040. |
| Credits | 12a Credit for alcohol used as a fuel *(attach Form 6478)* | 12a | |
| | b Low-income housing credit: | | |
| | (1) From partnerships to which Section 42(j)(5) applies | 12b (1) | |
| | (2) Other than on line 12b(1) | 12b (2) | |
| | c Qualified rehabilitation expenditures related to rental real estate activities *(attach Form 3468)* | 12c | |
| | d Credits (other than credits shown on lines 12b and 12c) related to rental real estate activities | 12d | |
| | e Credits related to other rental activities | 12e | |
| | 13 Other credits | 13 | |
| Adjustments and Tax Preference Items | 14a Depreciation adjustment on property placed in service after 1986 | 14a | |
| | b Adjusted gain or loss | 14b | |
| | c Depletion (other than oil and gas) | 14c | |
| | d (1) Gross income from oil, gas, or geothermal properties | 14d (1) | |
| | (2) Deductions allocable to oil, gas, or geothermal properties | 14d (2) | |
| | e Other adjustments and tax preference items *(attach schedule)* | 14e | |
| Foreign Taxes | 15a Name of foreign country or U.S. possession | | |
| | b Gross income from all sources | 15b | |
| | c Gross income sourced at shareholder level | 15c | |
| | d Foreign gross income sourced at corporate level: | | |
| | (1) Passive | 15d (1) | |
| | (2) Listed categories *(attach schedule)* | 15d (2) | |
| | (3) General limitation | 15d (3) | |
| | e Deductions allocated and apportioned at shareholder level: | | |
| | (1) Interest expense | 15e (1) | |
| | (2) Other | 15e (2) | |
| | f Deductions allocated and apportioned at corporate level to foreign source income: | | |
| | (1) Passive | 15f (1) | |
| | (2) Listed categories *(attach schedule)* | 15f (2) | |
| | (3) General limitation | 15f (3) | |
| | g Total foreign taxes (check one): ☐ Paid ☐ Accrued | 15g | |
| | h Reduction in taxes available for credit *(attach schedule)* | 15h | |
| Other | 16 Section 59(e)(2) expenditures: a Type ▶ b Amount ▶ | 16b | |
| | 17 Tax-exempt interest income | 17 | |
| | 18 Other tax-exempt income | 18 | |
| | 19 Nondeductible expenses | 19 | |
| | 20 Total property distributions (including cash) other than dividends reported on line 22 below | 20 | |
| | 21 Other items and amounts required to be reported separately to shareholders *(attach schedule)*. | | |
| | 22 Total dividend distributions paid from accumulated earnings and profits | 22 | |
| | 23 Income (loss). (Required only if Schedule M-1 must be completed.) Combine lines 1 through 6 in column (b). From the result, subtract the sum of lines 7 through 11a, 15g, and 16b | 23 | -1,014,148. |

BAA Form 1120S (2001)



SPSA0134L 12/20/01

Form 1120S (2001) CLEARMEADOW CAPITAL CORP 48-1251040 Page 4

**Schedule L — Balance Sheets per Books**

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | | | 282,100. |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (attach schedule). SEE ST. 4 | | | | 1,495,598. |
| 7 Loans to shareholders | | | | |
| 8 Mortgage and real estate loans | | | | |
| 9 Other investments (attach schedule) | | | | |
| 10a Buildings and other depreciable assets | | | | |
| b Less accumulated depreciation | | | | |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 12 Land (net of any amortization) | | | | |
| 13a Intangible assets (amortizable only) | | | 100,000. | |
| b Less accumulated amortization | | | 4,384. | 95,616. |
| 14 Other assets (attach schedule) SEE ST. 5 | | | | 50,000. |
| 15 Total assets | | 0. | | 1,923,314. |
| **Liabilities and Shareholders' Equity** | | | | |
| 16 Accounts payable | | | | |
| 17 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 Other current liabilities (attach sch) | | | | |
| 19 Loans from shareholders | | | | |
| 20 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 Other liabilities (attach schedule) | | | | |
| 22 Capital stock | | | | 100. |
| 23 Additional paid-in capital | | | | 149,900. |
| 24 Retained earnings | | | | 1,773,314. |
| 25 Adjustments to shareholders' equity (att sch) | | | | |
| 26 Less cost of treasury stock | | | | |
| 27 Total liabilities and shareholders' equity | | 0. | | 1,923,314. |

**Schedule M-1 — Reconciliation of Income (Loss) per Books With Income (Loss) per Return** (You are not required to complete this schedule if the total assets on line 15, column (d), of Schedule L are less than $25,000.)

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | -1,014,148. | 5 Income recorded on books this year not included on Schedule K, lines 1 through 6 (itemize): a Tax-exempt interest $ | |
| 2 Income included on Schedule K, lines 1 through 6, not recorded on books this year (itemize): | | 6 Deductions included on Schedule K, lines 1 through 11a, 15g, and 16b, not charged against book income this year (itemize): a Depreciation ... $ | |
| 3 Expenses recorded on books this year not included on Schedule K, lines 1 through 11a, 15g, and 16b (itemize): a Depreciation ....... $ b Travel and entertainment $ | | 7 Add lines 5 and 6 | 0. |
| 4 Add lines 1 through 3 | -1,014,148. | 8 Income (loss) (Schedule K, ln 23). Ln 4 less ln 7 | -1,014,148. |

**Schedule M-2 — Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed** (see instructions)

| | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|
| 1 Balance at beginning of tax year | 0. | | |
| 2 Ordinary income from page 1, line 21 | | | |
| 3 Other additions SEE STATEMENT 6 | 3,238,679. | | |
| 4 Loss from page 1, line 21 | | | |
| 5 Other reductions SEE STATEMENT 7 | ( 1,465,365.) | | |
| 6 Combine lines 1 through 5 | 1,773,314. | | |
| 7 Distributions other than dividend distributions | | | |
| 8 Balance at end of tax year. Subtract line 7 from line 6 | 1,773,314. | | |

SPSA0134L 12/20/01 Form 1120S (2001)