No. 05-1223 T
(Judge Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CLEARMEADOW INVESTMENTS, LLC,
CLEARMEADOW CAPITAL CORP.,
Tax Matters Partner,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THOMAS C. PLISKE
Stientjes & Pliske, LLC
1120 Olivette Executive Parkway
Suite 220
St. Louis, MO 63132
Tel: (314) 872 -3988
Fax: (314) 872-7374

Attorney for Plaintiff

**TABLE OF CONTENTS**

Page

Statement of the Case..........1

A. *Summary.* ..........2

B. *It is completely irrelevant with respect to Hutton whether the MLD Transaction before this Court is one of many such deals devised and marketed by Cantley & Sedacca, Deutsche Bank, and other promoters.* ..........4

C. *Hutton reasonably believed that the MLD investment was a high risk/high reward transaction. Hutton was not promised any tax benefits as alleged by Defendant.* ..........6

D. *Hutton, through Clearmeadow, spent $27.5 million for long and short positions in the MLD transaction.* ..........7

E. *Hutton, contributed his MLD positions to a corporation, which admitted Daniel Brooks in a partnership.* ..........8

F. *Before the end of the taxable year, Hutton liquidated the Clearmeadow partnership and had Clearmeadow Capital sell a portion of the partnership assets.* ..........9

G. *The IRS offered Hutton the chance to settle his tax liabilities.* ..........10

H. *Hutton has recently filed suit against the individuals that have been identified by the IRS as promoters in an effort to protect the statute of limitations for purposes of malpractice action, contract and tort law.* ..........11

Jurisdiction..........11

A. *Plaintiff concedes the jurisdictional issue raised in Defendant's argument for the issue regarding the timely filing of the complaint and FPAA.* ..........11

B. *Plaintiff concedes the jurisdictional issue raised in Defendant's argument for the issue regarding whether the Court has judisdiction to determine the basis of the partners' partnership interest within the partnership.* ..........11

[Table of Contents, continued] Page

Argument ....................................................................................................13

I. *The partnership did not assume a liability of $2,769,200 from Clearmeadow Capital in a transaction described in Notice 2000-44.* ...........14

A. *Defendant's presentment of the facts involved in the transaction, as well as its characterization of the facts, are incorrect.* ..........................................................................14

B. *Despite Defendant's claims regarding the applicability of Treas. Reg. § 1.752-6 to the transaction at issue, an issue of material fact exists regarding the applicability of the exception codified in I.R.C. § 358(h)(2)(A).* ......................................................................16

1. *The activities of Clearmeadow LLC constituted an "active trade or business."* ..................................................17

2. *Defendant's potential arguments that Clearmeadow LLC was not an activity engaged in for profit are without merit because Defendant's application of Treas. Reg. § 1.752-7 are improper.* ...........................................................19

II. *The 40% gross valuation misstatement penalty does not apply to the transactions and tax reporting of Clearmeadow LLC.* ..................................21

A. *Despite Defendant's claim that the Court need only to focus on the gross valuation misstatement penalty and not the other penalties, the other penalties are still not "applicable" due to reasonable cause.* ..................................................................21

B. *In this case, the gross valuation misstatement is not "applicable" due to reasonable cause.* ....................................................22

1. *Genuine issues of material fact exists which would not allow the Court to find for Defendants regarding the gross valuation misstatement penalty.* .............................................22

2. *Gross valuation misstatement penalty cannot apply if a transaction is simply to be disregarded for lack of economic substance.* ..............................................................23

[Table of Contents, continued] Page


3. *Gross valuation misstatement penalty cannot apply when the IRS totally disallows the deduction /losses for which the penalty would apply.* ....24

4. *Gross valuation misstatement penalty cannot apply because there was reasonable reliance.* ....25

C. *Reasonable cause exists in this case because Clearmeadow LLC reasonably relied on Cantley & Sedacca's opinion.* ....26

D. *This Court has jurisdiction to determine whether reasonable cause existed for Clearmeadow LLC; and its partners reasonably relied on the Cantley & Sedacca opinion.* ....30

III. *Clearmeadow LLC's transaction lacked business purpose and economic substance; however in 2001, when the transaction was entered into, Clearmeadow LLC' transaction did not lack economic substance or business purpose.* ....33

Conclusion ....35

# TABLE OF AUTHORITIES

Cases: Page

C.I.R. v. Groetzinger, 480 U.S. 23 (1987) ........ 18
Crystal Beach Development of Destin Ltd. v. Commissioner, 79 T.C.M. (CCH) 2068........ 31
Heasley v. Commissioner, 902 F.2d 380, 383 (5th Cir. 1990) ........ 24
Long Term Capital Holdings, Ltd. v. U.S., 330 F.Supp. 2d 122, 205 (D. Conn. 2004) (citing H.R. Conf. Rep. 105-599 at 241) ........ 27
Montgomery v. Commissioner, 127 T.C. 43, 66 (2006)........ 27
Neonatology Associates v. Commissioner, 299 F.3d 221, 234 (3rd Cir. 2002) ........ 28
Santa Monica Pictures v. Commissioner, 89 T.C.M. (CCH) 1157........ 32
Swayze v. Commissioner, 785 F.2d 715, 719 (9th Cir. 1986)........ 27
U.S. v. Boyle, 469 U.S. 241, 250-51 (1985)........ 27, 28
Weiner v. U.S., 389 F.3d 152, 161-62 (5th Cir. 2004) ........ 24

Statutes:

Internal Revenue Code of 1986:

§ 162(a) ........ 17
§ 351........ 16
§ 358(h)(2) ........ 17
§ 358(h)(2)(A)........ 14, 17
§ 358(h)(2)(B)........ 17
§ 752........ 14, 23
§ 6221........ 30
§ 6231(a)(3) ........ 30
§ 6231(a)(5) ........ 30
§ 6226(e)(1) ........ 31
§ 6226(f)........ 30, 31
§ 6230(c)(4) ........ 31
§ 6664........ 33
§ 6664(c) ........ 27, 29

Treasury Regulations (26 C.F.R.):

§ 1.752-6 ........ 14, 17
§ 1.752-6(b)(1)........ 17
§ 1.752-7 ........ 20
§ 1.752-7(b)(8)(ii)........ 20
§ 1.752-7(b)(10)........ 19, 20, 21
§ 1.752-7(k)........ 20

[Table of Authorities, continued] Page

Treasury Regulations (26 C.F.R.) Continued:

§ 1.6664-4(b)....................27
§ 1.6664-4(c)....................28
§ 301.6221-1(d)....................32
Proced. & Admin. Regs. § 301.7701-3....................14
Proced. & Admin. Regs. § 301.7701-3(g)(iv) ....................15
Proced. & Admin. Regs. § 301.7701-3(f)(2) ....................15

Miscellaneous:

28 U.S.C. § 1346(e) ....................31
Notice 2000-44, 2000-2 CB 255 (August, 2000)....................2, 14, 17
Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), IRC §§ 6221-6233 ....................30, 31
The Taxpayer Relief Act of 1997 ....................31
Treasury Decision, TD 9207, May 24, 2005 ....................20, 21

## STATEMENT OF THE CASE

In 2001, the taxpayer, Mark Hutton (hereinafter "Hutton"), made an investment in a complex transaction for which it was represented to him there was an opportunity to make a large return on his investment. In addition, he was advised, like in every other investment transaction, there were tax consequences (benefits/detriments) that would flow from this investment.

The investment, later described herein, will be referred to as a market link deposit investment (hereinafter referred to as "MLD investment"). In 2006, Hutton became aware that numerous other investor's in similar MLD type investments brought suit against certain parties involved in similar MLD transaction type investments. In this other class action lawsuit the facts alleged were similar to the facts in the Hutton situation. Because of the pending statute of limitations in bring such a lawsuit based on various elements of tort and contract law, Hutton brought a similar suit, as required, in order to protect the statute of limitations in this other matter against the same parties involved in his MLD investment. The defendant in the current matter is seeking to draw a negative inference from the fact that Hutton alleges certain facts in this other lawsuit which are yet unproven, and for which Hutton was required to file the lawsuit in order to protect the statute of limitations. Any damages with respect to the MLD transaction for which the subsequent lawsuit is based is undetermined at this point and such lawsuit could be dismissed based upon the outcome of this current lawsuit.

The MLD transaction is a very complex investment transaction. The tax benefits that ultimately flowed from the transactions are pursuant to the black letter of the law, i.e. the Internal Revenue Code and the regulations thereunder. The Internal Revenue Service

recognizing that certain investors were obtaining tax benefits in the MLD type investment, issued Notice 2000-44, putting taxpayers on notice that it would challenge this type of investment based upon lack of economic substance. The Internal Revenue Service, like a taxpayer, certainly has the power to interpret the law and the facts associated with certain transactions, but does not have the power to write the law or determine whether an investment is a viable investment or not. Only Congress and the Courts have such power. The Notice issued by the Service simply informed the public that it would challenge the viability of the transaction. Hutton was advised by the law firm of Cantley & Sedacca that Notice 2000-4 did not include the MLD investment.

*A. Summary*

The defendant in this case states the facts of the MLD investment in the Summary section of the Defendant's Brief fairly accurately, but attempts to taint the transactions with such conclusory, and unsupported, statements as "pretended" or "non-existent deposit." The facts do reflect that all the i's were dotted and the t's were crossed to properly execute the MLD investment transaction. Defendant unrealistically proposes that in today's society with computerized financial transactions occurring by the millions everyday throughout the world, that investors, such as Hutton, should have exchanged "pennies", written a check, wired money, etc. to participate in the MLD investment. This is a complex transaction that involved borrowing and investing monies at or near the same time. Today, nearly every investor in the stock market may invest on margin[1], and

[1] Margin accounts allow investors to buy a lot of shares with a relatively small amount of cash up front by using the assets currently held in their accounts as collateral.

As in any borrower-lender relationship, brokerage firms make money on margin accounts by charging interest on the debit balance. The equity in the account rises and falls as the price of the stock rises and falls but the debit balance remains the same -- except for the accruing interest.

will invest monies (i) that the investor doesn't own, (ii) doesn't sign a promissory for each transaction, or (iii) doesn't even exchange a "penny". Hutton's actions in the MLD investment are not that different than those of nearly every investor in the stock market in that he simply was involved in a margin type situation.

In summary, and undisputed, on October 15, 2001Clearmedow Investments, LLC (a single member disregarded entity) invested $25,000,000 with the New York branch of Societe Generale, and at or near this same time, Societe Generale invested with Clearmeadow a like amount. See Plaintiff's Response to Defendant's Proposed Findings of Uncontroverted Fact (hereinafter referred to as "PRDPFUF" No. 44) There were promises to repay these amounts by December 14, 2001 along with a stated interest at a rate of 3.665%. (PRDPFUF No. 38) Clearmeadow LLC subsequently paid Societe Generale $2,500,000 for a foreign–currency option which could return $2,800,000 if certain conditions existed on December 14, 2001. (PRDPFUF No. 38) In addition, as part of this high risk and complex transaction, Societe Generale paid Clearmeadow LLC $2,472,500 for a different foreign currency option which would pay $2,769,200 if certain conditions existed on December 14, 2001. (PRDPFUF No. 40) This was a high risk investment by all parties.

Hutton claimed a tax benefit on his 2001 tax return when he followed the black letter of the law, based upon advice of legal counsel, and with the review and approval of his independent CPA, Scott Hewitt. Essentially the tax benefit arose when Hutton contributed the foreign-currency option to the partnership and increased his basis in the

---

Here's how simplified Margin investing works: Suppose you want to buy 100 shares of Intel on margin. If Intel is trading at $100 a share, that means you want to borrow $10,000. The 50 percent requirement means you need at least $5,000 cash in your margin account. Your broker then loans you the remaining $5,000. Your equity is $5,000 and your debit balance is $5,000, plus interest.

partnership by the $2,500,000 that he paid for the option. (PRDPFUF No. 97, 98, 104, 105) Later in 2001, when the partnership liquidated and sold the asset, the foreign-currency option, at a loss, Hutton claimed a loss of $1,004,040. (PRDPFUF No. 110) In addition, Hutton transferred to the partnership, the rights and detriment of the foreign-currency option that he had sold, with the partnership taking on the risk as to contingent liability as to paying off the options if certain conditions were met. This was a high risk investment and the fair market value of the liability was de minimis. Therefore, pursuant to the Internal Revenue Code, Treasury Regulation as written and applicable in 2001, Clearmeadow Capital was not required to reduce its basis in the partnership by this portion (ie contingent liability), of the transaction.

*B. It is completely irrelevant with respect to Hutton whether the MLD Transaction before this Court is one of many such deals devised and marketed by Cantley & Sedacca, Deutsche Bank, and others .*

Mark Hutton is, as Defendant pointed out in his brief, a general contractor. (PRDPFUF No. 1) He works hard and operates Hutton Construction Corp. (PRDPFUF No. 1) His 2001 income was not significantly different than any prior year. (PRDPFUF No. 3) Simply put, Hutton, because of Hutton Construction Corp., was able to report similar income in 2001 as he did in prior years. There was nothing unusual in anyway with respect to the income for 2001. (PRDPFUF No. 3) There was no spike in income that may have inspired other taxpayers to seek a reduction of their tax liability. (PRDPFUF No. 3) Mark Hutton did not attend a seminar, or otherwise seek out tax benefits from some new investment that might exist. In fact, his good friend and trusted business advisor, Bryan Hanning, approached him and suggested the MLD investment to him. (PRDPFUF No. 5) Hanning often presented Hutton with investment opportunities

that he thought may benefit Hutton. (PRDPFUF No. 5) Hanning was employed by Massachusetts Mutual Life Insurance Company and was a member of AGH Wealth Advisors. (PRDPFUF No. 4) Nearly every investment that was presented by Hanning to Hutton, split dollar life insurance, qualified retirement plan, etc., had tax benefits attributed to such investment. (PRDPFUF No. 12) Hanning, as Hutton acknowledged, was compensated upon Hutton's ultimate investment in the MLD investment. (PRDPFUF No. 15) However, Hanning was always compensated for the sale of any products that were sold by him. (Plaintiff's Proposed Additional Findings of Uncontroverted Fact (hereinafter referred to as "PPAFUF") No. 20) Hutton had known Hanning for 8+ years prior to the MLD investment in and trusted him to bring him only reputable investment products. (PPAFUF No. 21) Hutton believed that Hanning would never bring him an investment opportunity that did not make sense, or would not otherwise be a valid investment despite the risks involved. (PPAFUF No. 22)

The law firm of Cantley & Sedacca presented the MLD investment to Hanning and later to Hutton. (PPAFUF No. 23) This law firm provided Hutton a legal opinion with respect to the MLD transaction and assisted Hutton with the transactions necessary to implement the transaction. (PPAFUF No. 24) Hutton was not aware, nor was it necessary that he be aware, of any role other parties may have taken with respect to the MLD transactions or perhaps their relationship with Cantley & Sedacca. (PPAFUF No. 25) For instance Daniel Brooks and Alex Brown were apparently involved with Deutsche Bank. Later, Brooks joined Clarion Capital, a party that was involved in Hutton's MLD investment. Hutton was not aware and would not be aware of the parties and roles of individuals involved in the MLD investment. Hutton simply recognized that the MLD

investment was a high risk investment for which he was receiving expert assistance from a law firm with expertise in foreign-currency transactions. (PPAFUF No. 26) In addition, Hutton had his own investment advisor, Bryan Hanning, and his own CPA, Scott Hewitt, evaluate the transaction prior to any investment. (PRDPFUF No. 14) Hutton recognized that if certain conditions ultimately existed that there could be tax benefits, (i.e. a tax loss), or tax detriments (i.e. a taxable gain). (PPAFUF No. 27) There were no guarantees made to Hutton that he would be entitled to tax benefits as alleged by the Defendant in this matter.

*C. Hutton reasonably believed that the MLD investment was a high risk/high reward transaction. Hutton was not promised any tax benefits as alleged by Defendant.*

Hutton was advised of the nature of the risk of the MLD investment. He understood that it was a *high* risk investment that had a high possible reward. (PPAFUF No. 26) Hutton had invested in oil wells and other high risks investments and had obtained tax benefits from such investments as intangible drilling costs. (PPAFUF No. 28) His trusted advisors, Brian Hanning, an investment advisor, presented Hutton with investment opportunities in the past; and Hutton's personal and business certified public accountant (CPA) Scott Hewitt were involved in the review and analysis of those transactions, as well as the MLD investment. (PPAFUF No. 22 and 29) Neither of these trusted advisors advised Hutton that the MLD transaction was not a good investment or that the represented tax consequences, good or bad, were being improperly represented. (PPAFUF No. 26 and 30) Both of these individuals are experienced financial advisors and have worked with Hutton many years prior to 2001 and are still working with him through today. (PPAFUF No. 31) They continue to provide him with both financial and

tax advice as might be applicable with respect to certain investments. (PPAFUF No. 32) They participated in the initial conferences with the law firm, Cantley and Sedacca, which originally introduced the MLD transaction to Hanning; they participated in subsequent follow up conferences with Cantley and Sedacca and they did their own independent research. (PPAFUF No. 30) To the extent that Defendant concludes in its statement of facts, Hutton or his financial advisors possessed knowledge and experience in financial and business matters sufficient to ensure his (or his financial advisor's) capability to evaluate the merits and risks of the MLD transaction was false, is absolutely wrong. (PRDPFUF No. 21, 28) Hutton had every reason to believe, based on the facts, that his financial advisors properly evaluated the merits and risks of the MLD transactions. (PPAFUF No. 34)The mere fact that Hanning brought the MLD investment to Hutton, led Hutton to believe it had merit. (PPAFUF No. 35) Hanning never brought an investment to Hutton that did not have merit. (PPAFUF No. 36) Same with Hewitt, in that he was involved in all conferences with Hutton and did his own independent research. (PPAFUF No. 37) He never told Hutton that that the investment did not have merit and their working relationship was such that if the investment did not have merit, or if he was unable to properly analyze the investment, he would have told Hutton such. (PPAFUF No. 39)

*D. Hutton, through Clearmeadow, spent $27.5 million for long and short positions in the MLD transaction.*

The facts stated within the Defendant's brief fairly accurately describe the transactions associated with the MLD transaction.

However, Plaintiff only wishes to clarify the facts as to Defendant's failure to understand that complex investments may involve simultaneous transactions with respect

to a single investor. In addition, in today's high tech world, such transactions may involve something out of the ordinary course of business. For instance, as stated earlier, the MLD transaction involved, *inter alia*, simultaneous borrowing and lending $25 million dollars. Although there were no tax consequences with respect to this transaction, the defendant questions whether this transaction was proper. Parties may agree to loan and borrow such amounts from each other. This could occur through margin investing, or simply bookkeeping entries of the various parties. Monies do not have to be wired, checks do not have to be written and promissory notes do not have to be signed. Nothing in particular is legally required to execute such a transaction as the Defendant seems to be looking for. Defendant has acknowledged that the parties intended to enter and execute the simultaneous lending and borrowings and that such occurred. It is not the responsibility of an outside third party such as the defendant to determine or question the relationship between a debtor and creditor when both parties respect the debtor creditor relationship.

*E. Hutton, contributed his MLD positions to a corporation, which admitted Daniel Brooks in a partnership.*

The facts, as stated in this section of Defendant's brief in support of the summary judgment motion fairly accurately states the transactions that took place with respect to the MLD investment. However, Defendant mischaracterizes the events surrounding whether an IRS Form 8832, Entity Classification Election was made. Defendant assumes that IRS Form 8832 was filed to convert Plaintiff, Clearmeadow LLC, from a single member LLC to an association, and, as explained in below, certain tax consequences occur when such an election is made. In this case, no IRS Form 8832 was filed when the Partnership admitted CF Advisors, nor was it required. Defendant's Motion for

Summary Judgment, if based upon such election being made, failed to propose a finding of fact that such an election was made. Instead, the Amended and Restated Operating Agreement of Clearmeadow LLC merely admitted CF Advisors as an additional member, converting the single member disregarded entity into a multi-member disregarded entity. This conversion does not trigger the tax consequences, as explained below in Plaintiff's argument.

*F. Before the end of the taxable year, Hutton liquidated the Clearmeadow partnership and had Clearmeadow Capital sell a portion of the partnership assets.*

The facts, as stated in this section of Defendant's brief in support of the summary judgment motion fairly accurately states the transactions that took place with respect to the MLD investment. However, Defendant fails to recognize the reality of the world. Defendant attempts to draw negative inference because of Plaintiff's actions. Yes, plaintiff, recognizing, or at least being advised and believing, that he would be able to report a taxable loss from the MLD transaction engaged in tax planning with his CPA, Scott Hewitt, and inquired as to what portion of the loss was available to use in 2001 based upon his personal tax situation. This is real world. Investors all the time will sell certain portions of their portfolios to reduce or eliminate their tax liabilities if such losses exist in their portfolios. Charitable contributions will be made at the end of the year, as might be necessary to assist in the reduction of tax liabilities. Defendant simply concludes that "Hutton betrayed his intentions on November 30, 2001 when he sent" an email to Hanning and Jeremy Nerenberg, an attorney with Cantley & Sedacca, trying to determine how much of the loss would be available in 2001 and was there a way to carry

forward a portion of the loss that was not used in 2001. This is simply common sense tax planning and nothing more.

*G. The IRS offered Hutton the chance to settle his tax liabilities.*

It wasn't until Hutton received the letter dated May 20, 2004 that he and his advisors became aware that the IRS was taking the position that the MLD investment was a tax shelter being challenged by the IRS. (Pliske Decl. Ex. 1 at 98, App. B at 235-36.) In fact, Hutton immediately hired an attorney to assist him with the filing of an amended 2001 tax return to properly report the MLD transaction as interpreted by the IRS. (PRDPFUF No. 112) In addition, Hutton immediately paid the tax that was associated with any benefits he received from the MLD transactions. (PPAFUF No. 40) Hutton, upon the advice of his new attorney, signed a Notice of Election to participate in the settlement initiative that was being offered by the IRS. (PPAFUF No. 41) Later the IRS sought additional information and Hutton provided such information to his attorney to forward to the IRS. (PPAFUF No. 42) The IRS claims that they never received a response to their request for additional information. (PPAFUF No. 42) The IRS issued a summons to Hutton, and Hutton not being required to produce records already provided to the IRS, did not respond. (PRDPFUF No. 123, 125) For unknown reasons, the IRS did not seek enforcement of the summons, perhaps because such information already requested was in its possession and control. Hutton during the deposition proceeded to respond to all the government's inquiries with respect to the additional information sought in order to participate in the settlement initiative offered by the IRS.

The plaintiff does not dispute the other facts that defendant states in its brief with respect to the issuance of the Notice of Final Partnership Administrative Adjustment (hereinafter referred to as "FPAA") for Clearmeadow LLC.

*H. Hutton has recently filed suit against the individuals that have been identified by the IRS as promoters in an effort to protect the statute of limitations for purposes of malpractice action, contract and tort law.*

The defendant in this matter would like the court draw a negative inference by the recent lawsuit filed by Hutton against the MLD promoters, ie., Deutsche Bank. However, the simple fact is that the statute of limitations was about to expire if Hutton failed to bring suit for any potential damage he might incur herein due to misrepresentations, etc. To the extent that the promoters of the MLD transaction made misrepresentations or committed fraud back in 2001, Hutton was unaware of such actions on their part. Six years later, and numerous law suits later, Hutton has been advised that he must consider preserving the statute of limitations. Any allegations in Hutton's recent complaint against the promoters are simply unproven allegations at this point and should have no effect on the outcome of these proceedings. Upon the advice of Counsel, Hutton filed the lawsuit against the promoters should this court determine that the MLD investment lacked economic substance or was otherwise without merit.

JURISDICTION

*A. Plaintiff concedes the jurisdictional issue raised in Defendant's argument for the issue regarding the timely filing of the complaint and FPAA.*

Plaintiff concedes this issue and acknowledges that the Court has jurisdiction in the case because the complaint was timely filed and the FPAA was timely issued.

*B. Plaintiff concedes the jurisdictional issue raised in Defendant's argument for the issue regarding whether the Court has judisdiction to determine the basis of the partners partnership interest within the partnership.*

Plaintiff concedes this issue and acknowledges that the Court has jurisdiction in the case to determine the partner's basis in his partnership interest within the partnership (inside basis). Defendant mischaracterizes the difference between a partner's inside basis (the partner's basis in the partnership within the partnership), and outside basis (the partner's basis in his partnership interest). Inside basis would include all items that affect the determination of the partner's outside basis, which are within this Court's jurisdiction because these items are partnership items. Outside basis would be the partner's basis in his partnership interest, and beyond the jurisdiction of this Court because it is an affected item.

## ARGUMENT

The Defendant incorrectly concludes that there are no genuine issues of material fact. However, genuine issues of material fact exist as to two issues in the FPAA: (1) the amount and character of the assumed liability and (2) the applicability of the 40% penalty for a gross valuation misstatement. With respect to the third issue in the defendant's motion for summary judgment, as discussed below, the plaintiff at this time will concede, as stated in the FPAA, that the MLD investment lacked economic substance and business purpose.

As described below, Defendant ignores the factual issues which arise in the adjustments stated in the FPAA for (1) and (2) listed above. These genuine issues of material fact involve: (1) the proper determination of whether a liability was assumed by Clearmeadow LLC; (2) the proper determination of that facts which establish the exception to the assumption of liability; and (3) whether reasonable cause exists regarding the penalties.

Therefore, plaintiff suggests that no ruling may be made as a matter of law with respect to Issue No. 1 as to the amount and character of the assumed liability which ultimately affects the taxpayer's basis in the partnership, and Issue No. 2 as to the applicability of the 40% gross valuation misstatement for which both issues rely on the basis of Clearmeadow Capital's partnership interest.

## Plaintiff's Response to Defendant's Arguments

*I. The partnership did not assume a liability of $2,769,200 from Clearmeadow Capital in a transaction described in Notice 2000-44.*

Defendant claims that pursuant to I.R.C. § 752, the partnership assumed a liability from Clearmeadow Capital (an "S" Corporation) in a transaction described in Notice 2000-44. Defendant's claims are misplaced, as the partnership did not assume "a liability" from Clearmeadow Capital. Defendant's errors are due to its confusion over: a) the facts; and b) despite the applicability of Treas. Reg. § 1.752-6 to this transaction, Treas. Reg. §1.752-6 does not prevent plaintiff from using the exception contained in I.R.C. § 358(h)(2)(A). Because Defendant's presentment of the facts and argument which underlie its claims in support for the increased assessment of tax liability against Clearmeadow LLC are in error, this Court should deny Defendant's Motion for Summary Judgment because there are genuine issues of material fact in this case.

*A. Defendant's presentment of the facts involved in the transaction, as well as its characterization of the facts, are incorrect.*

Defendant bases its argument on the premise that the partnership (Clearmeado LLC) assumed the liabilities of Clearmeadow Capital (an "S" Corporation). Defendant mistakenly reached this conclusion based on the Amended and Restated Operating Agreement of Clearmeadow LLC dated October 19, 2001 involving the admittance of CF Advisors as a Class B partner, Defendant assumed that Clearmeadow LLC elected under the check the box regulations, as codified in Proced. & Admin. Regs. § 301.7701-3, to convert from a single member disregarded entity LLC to an association, thereby triggering the following consequences: "the owner of the eligible entity contributes all of

the assets and liabilities of the entity to the association in exchange for stock of the association." See Proced. & Admin. Regs. § 301.7701-3(g)(iv).

Defendant's starting point is in error because Clearmeadow LLC, as a disregarded entity, never filed nor was required to file an IRS Form 8832, Entity Classification Election, to convert from a single member disregarded entity to a multi-member disregarded entity at the time it admitted CF Advisors to the LLC. Proced. & Admin. Regs. § 301.7701-3(f)(2) provides in pertinent part:

> An eligible entity classified as a partnership becomes disregarded as an entity separate from its owner when the entity's membership is reduced to one member. A single member entity disregarded as an entity separate from its owner is classified as a partnership when the entity has more than one member. If an entity classification change under paragraph (c) of this section is effective at the same time as a membership change described in paragraph (f)(2), the deemed transactions in paragraph (g) of this section resulting from the elective change preempt the transaction that would result from the change in membership. See Proced. & Admin. Regs. § 301.7701-3(f)(2).

As the above cited regulation explains, had Clearmeadow LLC filed an IRS Form 8832 and reclassified itself as an association rather than a multi-member disregarded LLC, at the same time admitting CF Advisors, the entity classification would receive priority over the change in membership, and would also trigger the tax consequences as enumerated above. Since Clearmeadow effectuated a change of membership without an entity election, the tax consequences of Proced. & Admin. Regs. § 301.7701-3(g)(iv) do not apply to this case. Therefore, Defendant's claims that the partnership assumed the liabilities of Clearmeadow Capital are unfounded.

Additionally, a careful examination of the facts outlined in Defendant's Proposed Findings of Uncontroverted Facts reveals that Clearmeadow LLC did not assume any

liabilities of Clearmeadow Capital. The relevant facts to refute Defendant's claims are as follows:

1. On October 9, 2001, Edward Sedacca formed Clearmeadow Investments, LLC ("Clearmeadow LLC"). (Plaintiff's Response to Defendant's Proposed Findings of Uncontroverted Facts ("PRDPFUF") No. 35)
2. On October 10, 2001, Hutton became sole member of Clearmeadow LLC by making a capital contribution to Clearmeadow LLC in exchange for his partnership interests. (PRDPFUF No. 36)
3. On October 12, 2001, Robert S. Bloink, formed Clearmeadow Capital Corporation ("Clearmeadow Capital"). (PRDPFUF No. 51)
4. On October 15, 2001, Clearmeadow LLC entered into a series of transaction which constituted the "Long Position" and the "Short Position" regarding the MLD transaction. (PRDPFUF No. 37-42).
5. On October 19, 2001, Hutton exchanged his Clearmeadow LLC interest for stock of Clearmeadow Capital in a 351 exchange. (PRDPFUF No. 54)
6. On October 19, 2001, Hutton as President of Clearmeadow Capital, approved the admittance of CF Advisors as an additional partner of Clearmeadow LLC. (PRDPFUF No. 55)

As the facts and the explanation above indicate, at no point did Clearmeadow LLC assume the liability of Clearmeadow Capital. At best, a colorable argument can be made that Clearmeadow Capital assumed the liability of Clearmeadow LLC in the I.R.C. § 351 exchange which occurred between Hutton and Clearmeadow Capital on October 19, 2001. Otherwise, Defendant has not supported its claim that Clearmeadow LLC assumed the liabilities of Clearmeadow Capital. Furthermore, this Court should deny Defendant's Summary Judgment Motion because based on the facts raised in Defendant's own Proposed Findings of Facts, a genuine issue of material fact exists regarding whether Clearmeadow LLC assumed the liability of Clearmeadow Capital.

*B. Despite Defendant's claims regarding the applicability of Treas. Reg. § 1.752-6 to the transaction at issue, an issue of material fact exists regarding the applicability of the exception codified in I.R.C. § 358(h)(2)(A).*

Even assuming in arguendo that Defendant is correct regarding the assumption of liability and the applicability of Treas. Reg. § 1.752-6, an issue of material fact remains regarding the applicability of the exception contained in I.R.C. § 358(h)(2)(A). The issue of material fact is whether Clearmeadow LLC is an active trade or business for purposes of evaluating whether I.R.C. § 358(h)(2)(A) applies.

I.R.C. § 358(h)(2) provides in pertinent part:

> Except as provided by the Secretary, paragraph (1) shall not apply to any liability if - (A) the trade or business with which the liability is associated is transferred to the person assuming the liability as part of the exchange, or (B) substantially all of the assets with which the liability is associated are transferred to the person assuming the liability as part of the exchange.

Under Treas. Regulation § 1.752-6, the Secretary of the Treasury has prescribed that the exception codified in I.R.C. § 358(h)(2)(B) is inapplicable to transactions described in Notice 2000-44 or transactions similar to those described in Notice 2000-44. However, the Secretary has not specifically denied the exception contained in I.R.C. § 358(h)(2)(A). As Treas. Reg. § 1.752-6(b)(1) explains, except for the express denial of the use of I.R.C. § 358(h)(2)(B), all other exceptions to the assumption for liability apply as codified in I.R.C. § 358(h)(2). This specific grant of the exception in I.R.C. § 358(h)(2)(A) allows Clearmeadow Capital to exclude from its reduction of adjusted basis the alleged assumption of liability by Clearmeadow LLC for the assumption of the trade or business of the Clearmeadow LLC in conjunction with the alleged assumption of liability.

*1. The activities of Clearmeadow LLC constituted an "active trade or business."*

As the Supreme Court, in C.I.R. v. Groetzinger, explains, the "phrase 'trade or business has been in § 162(a) and in that section's predecessors for may years….Despite

this, the Code has never contained a definition of the words 'trade or business' for general application and no regulation has been issued expounding its meaning for all purposes." Id., Groetzinger, 480 U.S. 23 at 27, (1987). In Groetzinger, the Supreme Court, after examining the cases defining trade or business, held that "to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby or an amusement diversion does not qualify." Id., 480 U.S. at 35. The Supreme Court also determined that the "resolution of this issue requires an examination of the facts in each case." Id., 480 U.S. at 36.

In this case, Clearmeadow LLC's activities constitute an active trade or business because it continuously and regularly conducted the investment and management of investment activities. Clearmeadow LLC's Amended and Restated Operating Agreement provides that Clearmeadow LLC's purposes were:

> 1) to engage in the acquisition maintenance, and disposition of foreign currency investments and foreign currency derivatives; 2) to acquire, invest in, and sell other investments for the mutual benefit of the members; 3) to enable the Class B Member to consolidate and manage various foreign currency and foreign currency derivative instruments of the Members within the current ownership and management structure of the Company consistent with the investment strategy which the Class B Member deems in its sole discretion to provide the greatest yield for the Members in light of the risks of such investments; and 4) to conduct any other business or joint enterprise which shall be legal for a limited liability company to conduct under the Act. (See Stoddart Decl. Ex. 22, App. B. at 63-87)

In accord with its purpose, Clearmeadow LLC continued to acquire and sell foreign currency investments even after the MLD transaction (See Stoddart Decl. Ex. 10, App. B at 39-41). This subsequent sale coupled with Clearmeadow LLC's investments in currency funds through Deutsche Bank indicate a continuous and regularly conducted

active trade or business in the investment and management of foreign currency and foreign currency derivatives throughout 2001. (See Stoddart Decl. Ex. 7-9, App. B at 27-38). Because Clearmeadow LLC continuously and regularly conducted its investment and management of investment activities, Clearmeadow LLC is an active trade or business.

Additionally, Clearmeadow LLC conducted the investment and management of investments involving foreign currency and foreign currency derivatives with the sole purpose of deriving a profit. See Clearmeadow LLC's purpose statement above. As stated in its operating agreement, Clearmeadow LLC's primary purpose was to produce a profit through the acquisition, maintenance, and disposition of foreign currency investments and foreign currency derivatives. Because Clearmeadow LLC's primary purpose was to achieve a profit motive, Clearmeadow LLC's activities, coupled with Clearmeadow LLC's continuous and regularly conducted efforts, constitute an active trade or business.

Because a genuine issue of material fact is still in dispute, whether Clearmeadow LLC was an active trade or business, this Court should deny Defendant's Summary Judgment Motion.

*2. Defendant's potential arguments that Clearmeadow LLC was not an activity engaged in for profit are without merit because Defendant's application of Treas. Reg. § 1.752-7 are improper.*

It is anticipated that Defendant in its reply will argue that Clearmeadow LLC was not an active trade or business. Defendant will base its argument on the fact that Treas. Reg. § 1.752-7(b)(10) states in pertinent part: "A trade or business is a specific group of activities carried on by a person for the purpose of earning income or profit, other than a

group of activities consisting of acquiring, holding, dealing in, or disposing of financial instruments." Defendant will claim that this treasury regulation specifically states that an active trade or business does not include investments in financial instruments, and that Clearmeadow LLC's activities solely involved the exchange of financial instruments.

However, Defendant's arguments would be without merit. In Treasury Decision 9207, the final treasury decision authorizing Treas. Reg. § 1.752-7, published on May 23, 2005, the Treasury Department explains that Treas. Reg. §1.752-7, which includes the definitions of trade or business, only affects liabilities incurred or assumed by a partnership on or after June 23, 2003. TD 9207 provides in pertinent part: "The final §1.752-6 regulations apply to assumptions of liabilities by a partnership occurring after October 18, 1999, and before June 24, 2003. All of the other final regulations in this Treasury Decision apply to liabilities assumed on or after June 24, 2003, except as otherwise noted." See TD 9207, effective May 23, 2005. Furthermore, Treas. Reg. §1.752-7(k) explains the effective date for Treas. Reg. § 1.752-7 as:

> This section applies to §1.752-7 liability transfers occurring on or after June 24, 2003. For assumptions occurring after October 18, 1999, and before June 24, 2003, see §1.752-6. For §1.752-7 liability transfers occurring on or after June 24, 2003 and before May 26, 2005, taxpayers may rely on the exception for trading and investment partnerships in paragraph (b)(8)(ii) of 1.752-7.

As Treas. Reg. § 1.752-7(k) explains, Treas. Reg. § 1.752-7 only applies to liability transfers occurring on or after June 24, 2003. In this case, the transaction at issue occurred on October 19, 2001 when CF Advisors was admitted as a partner of Clearmeadow LLC. Clearly, the date of the transaction at issue occurred before Treas. Reg. § 1.752-7 was finalized and causes the definition of trade or business in Treas. Reg. § 1.752-7(b)(10) to be inoperative in this case. Because the definition of trade or

business in Treas. Reg. § 1.752-7(b)(10), as finalized in TD 9207 in May 23, 2005, is inoperative, Defendant's anticipated argument that Clearmeadow LLC is not a trade or business would be without merit.

Since a genuine issue of material fact exists regarding whether Clearmeadow LLC is an active trade or business engaged in for profit, this Court should deny Defendant's Motion for Summary Judgment.

*II. The 40% gross valuation misstatement penalty does not apply to the transactions and tax reporting of Clearmeadow LLC.*

Defendant merely lists the four penalties asserted by the IRS, in the alternative, against Clearmeadow LLC in the FPAA.

Plaintiff responds that Defendant's portrayal of the penalties listed in the FPAA is accurate.

*A. Despite Defendant's claim that the Court need only to focus on the gross valuation misstatement penalty and not the other penalties, the other penalties are still not "applicable" due to reasonable cause.*

Defendant claims that since the 40% gross valuation misstatement penalty applies, the Court need not consider the other penalties because the penalties are not cumulative. Defendant further reserves its right to address the other penalties should the Court decide that the 40% gross valuation misstatement penalty does not apply.

Plaintiff's response is that it has complied with the literal provisions of the Internal Revenue Code as of the time that the MLD investment was made and at the time the 2001 tax return was filed. Subsequent to plaintiff's investment, the IRS issued regulations and applied them retroactively that would question the viability of the MLD investment by the Plaintiff had such regulations existed at the time the investment was

made and the tax return been filed. Plaintiff's position is that all the penalties asserted in the FPAA would not apply to Plaintiff due to reasonable cause.

Because a genuine issue of material fact is still in dispute, whether Clearmeadow LLC had reasonable cause in entering the MLD transaction, this Court should deny Defendant's Summary Judgment Motion.

*B. In this case, the gross valuation misstatement is not "applicable."*

The gross valuation misstatement penalty is not applicable, in this case, for the following reasons: 1) genuine issues of material facts exist which would not allow the Court to find for Defendant regarding the gross valuation misstatement penalty; 2) Gross valuation misstatement penalty cannot apply if a transaction is simply to be disregarded for lack of economic substance; 3) Gross valuation misstatement penalty cannot apply when the IRS totally disallows the deduction /losses for which the penalty would apply; 4) Gross valuation misstatement penalty cannot apply because there was reasonable reliance. Based on these reasons, the Court should deny Defendant's Motion for Summary Judgment with respect to the gross valuation misstatement penalties.

*1. Genuine issues of material fact exists which would not allow the Court to find for Defendant regarding the gross valuation misstatement penalty.*

Defendant claims that the Court only has jurisdiction to determine whether the penalty applies in a partnership context, through the Court's determination that the alleged assumption of liability by Clearmeadow LLC resulted in a basis adjustment which would trigger the 40% gross valuation misstatement penalty. Defendant also asserts that this basis adjustment will result in a greater than 400 percent difference in

Clearmeadow Capital's basis in Clearmeadow LLC as reported on Clearmeadow LLC's returns.

As stated above, there are genuine issues of material fact with respect to the determination of the basis of Clearmeadow LLC. To the extend the Court determines there is no genuine issue of material fact, the gross valuation misstatement penalty does not apply as stated below. Because genuine issues of material facts are still in dispute, this Court should deny Defendant's Summary Judgment Motion with respect to the gross valuation misstatement penalties.

*2. Gross valuation misstatement penalty cannot apply if a transaction is simply to be disregarded for lack of economic substance.*

The plaintiff's position is simply that at the time that it filed its 2001 tax return, the tax return reflected that it properly applied I.R.C. § 752 in determining Clearmeadow Capital's basis in the partnership, and, therefore, any underpayment would not be attributable to an overstatement of basis. The plaintiff relies on the law and regulations as they existed at the time Clearmeadow LLC, Clearmeadow Capital and Hutton engaged in the MLD investment and at the time Clearmeadow LLC, Clearmeadow Capital and Hutton filed their tax returns for 2001. Also, the IRS position, as stated in the FPAA, is that the MLD investment and the related loan transactions lacked economic substance. As stated in Plaintiff's Cross Motion for Summary Judgment, and solely for the purpose of the Cross Motion for Summary Judgment, the plaintiff will concede for the moment that the IRS is correct with respect to the MLD transaction lacking economic substance, then the underpayment of tax is not "attributable to" any gross valuation misstatement (or

substantial valuation misstatement). Instead, the underpayment would be attributable to the disregard of the transactions.

Because a genuine issue of material fact is still in dispute, whether the IRS is disallowing the entire transaction due to a lack of economic substance, this Court should deny Defendant's Summary Judgment Motion with respect to the gross valuation misstatement penalties.

*3. Gross valuation misstatement penalty cannot apply when the IRS totally disallows the deduction /losses for which the penalty would apply.*

In addition, as a matter of law, an overvaluation penalty cannot apply when the IRS totally disallows a deduction or credit, and this case is similar to the situation in which the IRS totally disallows a deduction or credit. Heasley v. Commissioner, 902 F.2d 380, 383 (5th Cir. 1990); Weiner v. U.S., 389 F.3d 152, 161-62 (5th Cir. 2004). In Heasley, the taxpayers took an investment tax credit based on a valuation of some equipment they purchased. Id., 902 F.2d at 381-82. The IRS totally disallowed the credit. Id. 902 F.2d at 382. The IRS also applied a valuation overstatement penalty because the taxpayers overvalued the basis of the equipment. Id., 902 F.2d at 382. The taxpayers did not dispute the disallowance, but challenged the imposition of penalties. Id., 902 F.2d at 382. The court concluded that the valuation overstatement penalty did not apply. Id., 902 F.2d at 383. The court reasoned that the underpayment of tax was attributable to an improper deduction or credit, not the valuation overstatement. Id., 902 F.2d at 383. Specifically, the court stated "[w]henever the I.R.S. totally disallows a deduction or credit, the I.R.S. may not penalize the taxpayer for a valuation overstatement included in that deduction or credit." Id., 902 F.2d at 383. Heasley is controlling in this case.

Accordingly, a penalty for a gross valuation misstatement (or substantial valuation misstatement) cannot apply when the IRS totally disregards a transaction as lacking economic substance.

Because a genuine issue of material fact is still in dispute, whether the IRS is disallowing the entire deduction or credit under the lack of economic substance, this Court should deny Defendant's Summary Judgment Motion with respect to the gross valuation misstatement penalties.

*4. Gross valuation misstatement penalty cannot apply because there was reasonable reliance.*

The defendant in this matter may argue that the "Investor Representation" letter received by Hutton along with the tax opinion letter received on January 23, 2002, stating that "the opinion letter may not be relied upon unless and until we have received the … Investor Representations fully executed by you, the LLC and the Corp…." (DPFUF No. 72 ) Despite the fact that by the time that Hutton signed the letter on March 11, 2002, the facts had changed such that he was no longer investing in the MLD transactions in such a way that he was going to receive a reasonable economic return on his investment, he, and his advisors, Hanning and Hewitt, did rely on the opinions and representations of Cantley & Sedacca from the beginning of the investigatory stage of this investment. The defendant is likely to simply argue that the point in time to determine whether the plaintiff relied on the advice and representation of Cantley & Sedacca is at the end, when the representation letter was signed, rather than at the time the initial contact was made and all subsequent phone contacts and representations were made by the law firm Cantley & Sedacca were made. It would be silly to allow Cantley & Sedacca to control for their

liability purpose when in fact a client, and their advisors, can rely on the advice that they have given.

However, it cannot be ignored, that Hutton did not act alone. In his capacity as both an investor and partner, he immediately sought the advice and counsel of his CPA, Scott Hewitt. (PPAFUF No. 9) Well versed in tax law with years of experience, Hewitt, participated in telephone conversations with Cantley and Sedacca asking questions in an effort to understand the transactions and potential tax consequences associated with the transaction. (PPAFUF No. 33) Hewitt testified that he did his own independent research and saw nothing adverse with the MLD investment to advise his client, Hutton, not to invest in the MLD transaction. (PPAFUF No. 33) In fact, at the time or preparing the tax return, Hewitt, independently completed the tax return, making only one small adjustment when confirming with Cantley and Sedacca, how such tax consequences were to be reflected on the tax return. (PPAFUF No. 46)

Because a genuine issue of material fact is still in dispute, whether the Clearmeadow LLC reasonably relied on the advice of its advisors and tax counsel, this Court should deny Defendant's Summary Judgment Motion with respect to the gross valuation misstatement penalties.

*C. Reasonable cause exists in this case because Clearmeadow LLC reasonably relied on Cantley & Sedacca's opinion.*

Defendant argues that Clearmeadow LLC does not have any defense which would prevent the imposition of penalties; and further argues that Clearmeadow LLC could not have reasonably relied on the Cantley & Sedacca opinion.

Plaintiff disputes Defendant's assertions because reasonable cause exists to prevent the IRS from asserting the penalties; and Clearmeadow LLC could reasonably rely on the Cantley & Sedacca opinion letter.

A taxpayer may defeat the imposition of any of those penalties if he demonstrates reasonable cause. The defense, found in IRC § 6664(c), provides: No penalty shall be imposed under this part with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.

The plaintiffs bear the burden of production and proof on their reasonable cause defenses. Long Term Capital Holdings, Ltd. v. U.S., 330 F.Supp. 2d 122, 205 (D. Conn. 2004) (citing H.R. Conf. Rep. 105-599 at 241); Montgomery v. Commissioner, 127 T.C. 43, 66 (2006). The most important factor is the extent of the taxpayer's effort to assess his proper tax liability in light of all the circumstances. Treas. Reg. § 1.6664-4(b). Reliance on the advice of a professional tax advisor does not necessarily demonstrate reasonable cause and good faith. Id., Treas. Reg. § 1.6664-4(b). However, a taxpayer is not required to challenge the advisor's conclusions, seek a second opinion, or check the advice himself. U.S. v. Boyle, 469 U.S. 241, 250-51 (1985). The validity of the reliance turns on "the quality and objectivity of the professional advice obtained." Swayze v. Commissioner, 785 F.2d 715, 719 (9th Cir. 1986). Although it might be argued that there was a conflict of interest by Cantley and Sedacca in providing the legal advice and in promoting the MLD investment, any such perceived conflict would have been unknown to the Plaintiffs at the time the investment was made or at the time the 2001 tax

return was filed. The plaintiffs simply paid for legal advice as they might in every other situation involving a complex investment involving tax consequences.

Reliance is also unreasonable if the taxpayer failed to supply the professional with all the necessary information to assess the tax matter. Neonatology Associates v. Commissioner, 299 F.3d 221, 234 (3rd Cir. 2002); Treas. Reg. § 1.6664-4(c); Boyle, 469 U.S. at 250-51. Hutton provided all the advice provided to him from Cantley & Sedacca to Scott Hewitt. (PPAFUF No. 52) Hutton completed the Cantley & Sedacca client intake form with the help of his business advisor, Bryan Hanning. (PPAFUF No. 48) He participated in numerous teleconferences providing the necessary information requested and asked numerous questions regarding the transaction. (PPAFUF No. 50) Cantley & Sedacca are well aware of all transactions undertaken by Clearmeadow LLC, Clearmeadow Capital, as they formed these entities on behalf of Hutton and assisted in the transaction involving the MLD investment.

Hutton may not have completely understood the complexity of the tax consequences that would result from the MLD investment, but he was certainly aware and willing to embrace the risk in order to obtain the potential reward from the MLD investment. (PPAFUF No. 9) The written opinion that was ultimately issued on January 23, 2002 and was issued after the fact, but reflected the facts as they existed at or near the time that plaintiff entered into the transaction. (PPAFUF No. 49)

However, in addition to the Cantley and Sedacca written opinion, the plaintiff, through Hutton, sought out the assistance and advice of his CPA, Scott Hewitt, to evaluate the MLD investment. (PPAFUF No. 44) Hewitt was involved in telephone conversations, examined promotional materials, asked questions, and sought the advice

of the law firm Cantley and Sedacca at the time of the preparation of the firm. (PPAFUF No. 50) In fact, Hewitt, based upon his own research and understanding of the Internal Revenue Code in the preparation of the tax return, independent of the advice of Cantley and Sedacca in the preparation of the return. (PPAFUF Nos. 45, 51) He made one small modification to the return after the advice was sought. What more could Plaintiff do than follow the advice of his CPA, who was sought out to give a second opinion as to the MLD investment. (PPAFUF No. 46) Furthermore, Hewitt reviewed the promotional material and legal opinion and concluded that the plaintiffs could reasonably rely on them for purposes of both an investment vehicle and for purposes of the tax benefits that may flow from such an investment. (PPAFUF No. 52) As was the practice between Hutton and Hewitt, if Hewitt was suspicious of the transaction as an investment or of the discussed tax consequences he would have advised Hutton of such. (PPAFUF No. 32) The fact that Hewitt did not discourage Hutton from the investment was in fact the approval Hutton needed to go forward with the transaction. (PPAFUF No. 30)

The detailed opinions of Cantley and Sedacca certainly provide a reasonable interpretation of the law as of the time the opinion was issued. The IRS has since issued new regulations and applied such regulations retroactively as to the plaintiffs' investment in the MLD investment and the tax benefits that flowed from such investment. But at the time, the opinion and advice provided to the plaintiff was reasonable.

Therefore, the plaintiffs relied in good faith on the advice of qualified tax accountants and tax lawyers. Accordingly, they have fulfilled the criteria under the reasonable cause exception of IRC § 6664(c) and no accuracy-related penalties are to be imposed.

Because a genuine issue of material fact is still in dispute, whether reasonable cause exists with respect to Clearmeadow LLC, this Court should deny Defendant's Summary Judgment Motion.

*D. This Court has jurisdiction to determine whether reasonable cause existed for Clearmeadow LLC; and its partners reasonably relied on the Cantley & Sedacca opinion.*

Defendant claims that this Court lacks jurisdiction to determine whether reasonable cause existed for the partnership because the reasonable cause defense is solely a partner level defense.

Defendant's claims are mistaken. This court has jurisdiction over the reasonable cause defense. This case is governed by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), IRC §§ 6221-6233. Under TEFRA, "the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level." IRC § 6221. A "partnership item" generally includes items that are "more appropriately determined at the partnership level at the partner level." IRC § 6231(a)(3). A "partnership item" can be distinguished from an "affected item," which is defined as any item affected by a "partnership item." IRC § 6231(a)(5). The scope of judicial review in a TEFRA proceeding is set forth in IRC § 6226(f): A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount with relates to an adjustment to a partnership item. (emphasis added).

Prior to filing Clearmeadow LLC's petition in this court and in accordance with IRC § 6226(e)(1), the plaintiff in this case deposited with the Internal Revenue Service the amount by which their tax liability would be increased if the partnership items on its tax returns were made consistent with the treatment of partnership items on the partnership return, as adjusted by the final partnership administrative adjustment. Accordingly, pursuant to 28 U.S.C. § 1346(e) and IRC § 6226(f), this court has jurisdiction to determine all partnership items and the applicability of any penalty "which relates to an adjustment to a partnership item."

Prior to The Taxpayer Relief Act of 1997, penalties were not "partnership items" and could not be considered until the completion of partnership-level proceedings; Crystal Beach Development of Destin Ltd. v. Commissioner, 79 T.C.M. (CCH) 2068. It might be argued that the reasonable cause defense is a "partner level defense," and TEFRA provides that the exclusive forum for asserting such defenses is through a refund proceeding. However, the TEFRA refund provision (§ 6230(c)(4)) is permissive, rather than mandatory. In fact the IRS position, as stated in the FPAA, is based upon the transactions entered by the *partners.* As a result, the partnership items to be determined in this case are the proper tax base of Plaintiff, and the proper allocation to the respective partners. Therefore, the court has jurisdiction to determine the applicability of any penalties related to any adjustment to these partnership items, it may consider whether the reasonable cause exception applies to the activities of the plaintiff, Clearmeadow Capital and Hutton in this matter.

Although unclear, the regulations provide that "[p]artner-level defenses are limited to those that are personal to the partner or dependent on the partner's separate

return and cannot be determined at the partnership level." Treas. Reg. § 301.6221-1(d). Examples of partner-level defenses include the applicable threshold underpayment of tax with respect to a partner or whether a partner has met the criteria under the reasonable cause exception. Id., Treas. Reg. § 301.6221-1(d). The regulation suggests that the reasonable cause exception is a "partner-level defense." However, the case law, does not read the statute and regulation so narrow. In the circumstances of a given case, the reasonable cause exception maybe considered at the partnership-level if it involves actions, as in this case, by the managing member partner. See Santa Monica Pictures v. Commissioner, 89 T.C.M. (CCH) 1157. In Santa Monica Pictures, Santa Monica Pictures ("SMP") through its tax matters partner, contested adjustments made by the IRS to SMP's tax returns. Id. 89 T.C.M. 1157. In evaluating the applicability of defenses to accuracy-related penalties, such as the reasonable cause exception, the tax court considered the experience of its tax matters partner and the opinions he relied upon as the tax matters partner. Id. 89 T.C.M. 1157.

Similarly, this case involves Mark Hutton's reliance on Cantley and Sedacca and CPA Scott Hewitt with respect to his investment in the MLD transaction. (See Pliske Decl. Ex. 1 at 108, App. B at 180B and Pliske Decl. Ex. 1 at 26, App. B at 171.) The FPAA was based, in part, on the agreements between Mark Hutton, the plaintiff and Clearmeadow Capital. (DFUF No. 129) The determination of the partners' proper basis in the partnership is affected by the court's decision. However, assuming for purposes of Plaintiff's cross motion for summary judgment, the Court believes that the parties improperly computed the partner's basis, it could determine that the parties reasonably relied on Cantley and Sedacca, Scott Hewitt and Bryan Hanning in their representations

to the plaintiff. It would serve no purpose and would amount to judicial inefficiency to determine that penalties apply to the plaintiff, wait for them to be assessed by the IRS, subsequently paid by the partners of plaintiff, only to allow them to come back to this court and argue reasonable reliance pursuant to IRC § 6664.

Because a genuine issue of material fact is still in dispute, whether Clearmeadow LLC can raise a defense of reasonable cause against the imposition of penalties, this Court should deny Defendant's Summary Judgment Motion.

*III. Clearmeadow LLC's transaction lacked business purpose and economic substance; however in 2001, when the transaction was entered into, Clearmeadow LLC' transaction did not lack economic substance or business purpose.*

Defendant raises the argument that the FPAA makes adjustments to Clearmeadow LLC's tax attributes based on the doctrines of lack of economic substance and lack of business purpose. Defendant also claims that Plaintiff will not be able to carry its burden that the transactions did not lack economic substance or business purpose by directing this Court's attention to the complaint Hutton filed in another case not currently before the Court. Defendant summarily concludes that by filing the other case Hutton will fail its burden.

Plaintiff, echoing its response to Defendant's Proposed Findings of Uncontroverted Facts Nos. 131- 142 raising claims from Hutton's RICO case, responds that the allegations by the plaintiff in another court matter does not make the alleged fact an undisputed fact in this court proceeding. Furthermore, Defendant has failed to prove that there are no genuine issues of material fact in its determination that Clearmeadow LLC's transactions lacked economic substance or business purpose. In reality, issues of fact remain regarding whether the transaction lacked economic substance or business

purpose because Plaintiff followed the black letter of the law as it was written during the time the transaction was entered and at the time the 2001 tax return was prepared and filed with the Internal Revenue Service.

Notwithstanding Plaintiff's response to Defendant's claims that Clearmeadow LLC's transactions lacked economic substance and business purpose, for purposes of the Defendant's Motion for Summary Judgment, it can be assumed that the plaintiff structured its transaction in the MLD investment, upon the suggestion and advice of legal counsel and with the approval of his independent CPA and tax advisor. Although the transaction, the MLD investment, followed the black letter of the law as it was written during the time the transaction was entered and at the time the 2001 tax return was prepared and filed with the Internal Revenue Service, the plaintiff will concede for its cross-motion that the underlying transaction lacked economic substance as stated within the FPAA as issued by the Internal Revenue Service.

## CONCLUSION

For the reasons given, the plaintiff asks to the Court to make the following determinations: 1) that there are issues of material fact such that this Court cannot rule for Summary Judgment in the favor of Defendant with respect to the liability amount of $2,769,200 with respect to Clearmeadow Capital's contribution of the short MLD position; and 2) with respect to the 40% gross valuation misstatement penalty. To the extent this Court determines that there are no genuine issues of material fact; then Plaintiff asks the Court to determine: 1) the partnership did not assume a liability of $2,769,200; and 2) the gross valuation misstatement penalty does not apply.

/s/ THOMAS C. PLISKE
THOMAS C. PLISKE
Stientjes & Pliske, LLC
1120 Olivette Executive Parkway
Suite 220
St. Louis, MO 63132
Tel: (314) 872 -3988
Fax: (314) 872-7374

Attorney for Plaintiff

Date : October 24, 2007