No. 05-1223 T
(Judge Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CLEARMEADOW INVESTMENTS, LLC,
CLEARMEADOW CAPITAL CORP.,
Tax Matters Partner,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# BRIEF IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

THOMAS C. PLISKE
Stientjes & Pliske, LLC
1120 Olivette Executive Parkway
Suite 220
St. Louis, MO 63132
Tel: (314) 872 -3988
Fax: (314) 872-7374

Attorney for Plaintiff

**TABLE OF CONTENTS**

Page

Questions Presented ....................................................................................1

Statement of the Case....................................................................................3

A. *Hutton reasonably believed that the MLD investment was a high risk/high reward transaction. Hutton was not promised any tax benefits as alleged by Defendant.* ....................................................6

B. *Hutton, upon learning of the MLD investment took all actions one could reasonably be expected to take.* ..........................................7

Jurisdiction ....................................................................................................8

Argument ......................................................................................................9

I. *For purposes of this cross-motion for summary judgment, the plaintiff concedes, six years after Defendant invested in the MLD investment, that the investment lacked economic substance.* ....................................................9

II. *The Court has jurisdiction to determine if partnership and partner level defenses apply to penalties asserted in the FPAA.* ..........................................9

III. *The plaintiffs assert that the penalties stated in the FPAA do not apply in this matter.* ....................................................................................12

A. *The plaintiffs assert that the Gross Valuation Misstatement / Substantial Valuation Misstatement penalty stated in the FPAA do not apply in this matter.* . ....................................................................13

B. *The plaintiffs assert that the Substantial Understatement of Income Tax penalty stated in the FPAA does not apply in this matter.* ...........16

C. *The plaintiffs assert that the Negligence or Disregard of Rules or Regulations penalty stated in the FPAA does not apply in this matter.* ....................................................................................19

[Table of Contents, continued] Page

IV. *Both the* *partnership* *and the* *partner* *have a common defense against the penalty as there is reasonable reliance under Section 6664 with respect to the reliance on: (i) the advice of Cantley & Sedacca, (ii) the advice and representation of CPA Scott Hewitt, and (iii) on the advice and position of investment advisor Bryan Hanning.* ....20

Conclusion ....23

Appendix A

Internal Revenue Code of 1986 (26 U.S.C.) ....25

Treasury Regulations (26 C.F.R.) ....50

Miscellaneous:

28 U.S.C. § 1346(e) ....97
Notice 2000-44, 2000-2 CB 255 (August, 2000) ....98
Notice of Election to Participate in Announcement 2004-46 ....101
Treasury Decision, TD 9207, May 24, 2005 ....105

Appendix B, Vol. 1 (Separately Bound):

Declaration of Thomas C. Pliske in Support of Plaintiff's Cross Motion for Summary Judgment ....1

Exhibit 1: Complete Condensed Deposition Transcript and Exhibits of Mark E. Hutton taken on May 8, 2007. ....3

Exhibit 2: Complete Condensed Deposition Transcript and Exhibits of Bryan S. Hanning taken on May 8, 2007. ....54

Exhibit 3: Complete Condensed Deposition Transcript and Exhibits of Scott R. Hewitt taken on May 8, 2007. ....73

Exhibit 4: Notice of Final Partnership Administrative Adjustment for Clearmeadow LLC. ....128

Exhibit 5: January 22, 2002 Opinion Letter from Cantley & Sedacca ....141

# TABLE OF AUTHORITIES

Cases: Page

Crystal Beach Development of Destin Ltd. v. Commissioner, 79 T.C.M. (CCH) 2068 (2000) ....10
Denver & Rio Grande Western Railroad Co. v. United States, 505 F.2d 1266 (Ct. Cl. 1974) ....18
Heasley v. Commissioner, 902 F.2d 380, 383 (5th Cir. 1990) ....15, 19
Lemery v. Commissioner, 52 T.C. 367 (1969), aff'd 451 F.2d 173 (9th Cir. 1971)....19
Long v. Commissioner, 660 F.2d 416 (10th Cir. 1981), aff'g 71 T.C. 1 (1979)....19
Long Term Capital Holdings, Ltd. v. U.S., 330 F.Supp. 2d 122, 205 (D. Conn. 2004) (citing H.R. Conf. Rep. 105-599 at 241) ....21
Montgomery v. Commissioner, 127 T.C. 43, 66 (2006)....21
Neonatology Associates v. Commissioner, 299 F.3d 221, 234 (3rd Cir. 2002) .... 21-22
Santa Monica Pictures v. Commissioner, 89 T.C.M. (CCH) 1157 (2005)....11
Swayze v. Commissioner, 785 F.2d 715, 719 (9th Cir. 1986)....21
Weiner v. U.S., 389 F.3d 152, 161-62 (5th Cir. 2004) ....15

Statutes:

Internal Revenue Code of 1986:

§ 752 ....14, 18
§ 6221....9
§ 6226(e)(1) ....10
§ 6226(f)....9, 10
§ 6230(c)(4) ....12
§ 6231(a)(3) ....10
§ 6231(a)(5) ....9
§ 6662....9
§ 6662 (2001)....13
§ 6662(b)(1). ....13
§ 6662(b)(2) and (d)....13
§ 6662(b)(3) and (e)....13
§ 6662(b)(3) and (h)....13
§ 6662(c) ....19
§ 6662(d)(2)(B)(i) ....17
§ 6662(d)....17
§ 6662(d)(2)(C)....17
§ 6662(e)(1)(A) (2001) ....14
§ 6662(h)(1) ....13
§ 6662(h)(2) ....13
§ 6664....2, 12, 20
§ 6664(c) ....21, 23

[Table of Authorities, continued] Page

Treasury Regulations (26 C.F.R.):

Temporary Treas. Reg. § 1.752-6T........................................................19
§ 1.752-1 ........................................................................................18, 19
§ 1.752-6 ........................................................................................19
§ 1.6662-4(d)(2) ..............................................................................17, 20
§ 301.6221-1(d)................................................................................11
§ 1.6662-3(b)(1) ..............................................................................19, 20
§ 1.6662-3(b)(1)(ii) ..........................................................................20
§ 1.6662-3(b)(3) ..............................................................................20
§ 1.6662-4(d)(3)(i) ...........................................................................17
§ 1.6662-4(d)(3)(iii)..........................................................................18, 20
§ 1.6664-4(b)....................................................................................21
§ 1.6664-4(c)....................................................................................22

Miscellaneous:

28 U.S.C. § 1346(e) ........................................................................10, 12
Pub. L. 108-357, Title VIII, § 812(f), Oct. 22, 2004, 118 Stat. 1580 ..............17
Notice of Election to Participate in Announcement 2004-46 ............................8
The Taxpayer Relief Act of 1997 ........................................................10
Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), I.R.C. §§ 6221-6233 ..................................................................................9, 10

**IN THE UNITED STATES COURT OF FEDERAL CLAIM**

---

**No. 05-1223 T**
**(Judge Allegra)**

**CLEARMEADOW INVESTMENTS, LLC,**
**CLEARMEADOW CAPITAL CORP.,**
**Tax Matters Partner,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

BRIEF IN SUPPORT OF PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT

---

The plaintiff, Clearmeadow Investments, LLC, Clearmeadow Capital Corp., Tax Matters Partner, presents the following brief in support of its cross-motion for summary judgment. All relevant statutes, regulations and other non-case authorities are set out in Appendix A, infra. All exhibits are set forth in the Declaration of Thomas C. Pliske in support of Plaintiff's Cross Motion for Summary Judgment, separately bound as Appendix B.

QUESTIONS PRESENTED

1. For purposes of this cross-motion for summary judgment, does the MLD investment lack economic substance?

2. Do the penalties stated in the Notice of Final Partnership Administrative Adjustment (hereinafter referred to as "FPAA") apply to the Plaintiff and the related parties in this matter?

3. Does this court have jurisdiction to determine if partnership and partner level defenses apply to penalties asserted in the FPAA?

4. Does the common defense of reasonable reliance under Section 6664 of the partnership and the partner against the penalty of with respect to the reliance on: (i) the advice of Cantley & Sedacca, (ii) the advice and representation of CPA Scott Hewitt, and (iii) on the advice and position of investment advisor Bryan Hanning?

STATEMENT OF THE CASE

In 2001, the taxpayer, Mark Hutton (hereinafter "Hutton"), made an investment in a complex transaction for which it was represented to him there was an opportunity to make a large return on his investment. In addition, he was advised, like in every other investment transaction, there were tax consequences (benefits/detriments) that could flow from this investment.

The MLD transaction is a very complex investment transaction. The tax benefits that flowed from the transactions are pursuant to the black letter of the law, i.e. the Internal Revenue Code as it existed at the time the transaction took place and at the time the tax return was filed. The Internal Revenue Service, recognizing that certain investors were obtaining tax benefits in an MLD type investment, issued Notice 2000-44, putting taxpayers on notice that it would challenge this type of investment based upon lack of economic substance. The Internal Revenue Service, like a taxpayer, has the power to interpret the law and the facts associated with certain transactions, but does not have the power to write the law or determine whether an investment is a viable investment or not. Only Congress and the Courts have such power. The Notice issued by the Service simply informed the public that it would challenge the viability of the transaction.

In 2001, Hutton was initially approached by his long time investment advisor, Bryan Hanning (hereinafter referred to as "Hanning"), informing him of an opportunity to invest in a complicated transaction which has been referred to as a Market Linked Deposit (hereinafter referred to as "MLD") Investment. (Plaintiff's Proposed Uncontroverted Facts (hereinafter referred to as "PFUF") No. 7 ) Hanning has been an investment advisor for Hutton from 1992 through today. (PFUF No. 3 ) Hanning has

brought to Hutton's attention different investments that he believes will be beneficial to Hutton. (PFUF No. 4) Hutton trusts Hanning because his background in selling life insurance and investment products and because of their long term relationship. (PFUF No. 5) Hanning is a representative member and agent of AGH Wealth Advisors and employed with Massachusetts Mutual Life. (PFUF No. 6 ) In the past, Hanning has brought Plaintiffs investment ideas and investment opportunities such as split dollar life insurance, key-person insurance policies and 401(k) plans. (PFUF No. 4) In all cases, Hanning receives compensation if Hutton takes advantages of the investment opportunity being offered. (PFUF No. 6 ) Hanning approached Hutton in 2001 with respect to the MLD investment opportunity because Hutton was interested in different investment opportunities. (PFUF No. 7 )

Scott Hewitt (hereinafter referred to as "Hewitt") has been Hutton's certified public accountant since 1993. (PFUF No. 24) Hutton considers Hewitt to be a financial advisor who had sufficient knowledge and experience in financial and business matters to evaluate the MLD transaction. (PFUF No. 24) Hewitt prepared and continues to prepare Hutton's personal and business tax returns from 1994 though 2006. (PFUF No. 25) Hewitt is an independent and trusted advisor. (PFUF No. 25) Hewitt assisted Hutton in making his business successful through the years. (PFUF No. 26) Hewitt never gave Hutton any reason to think that he did not have the financial and business knowledge needed to evaluate the merits of trading options on foreign currencies. (PFUF No. 26)

Because of the complexity of this MLD investment, Hutton requested that Hanning and Hewitt participate in a conference call with Cantley & Sedacca, the law firm with intricate knowledge of the MLD investment. (PFUF No. 9) During this initial call,

Mr. Sedacca (hereinafter referred to as "Sedacca"), from Cantley & Sedacca, explained the mechanics of the MLD investment opportunity, the risks involved, and the reward scenarios. (PFUF No. 9) Following Mr. Sedacca's presentation, Hutton posed questions regarding the transaction, followed by Hanning's and Hutton's questions. (PFUF No. 9)

A subsequent teleconference was held with Hutton, Hanning, Hewitt, Sedacca, and Mark Kaplan (hereinafter referred to as "Kaplan"). (PFUF No.10) During this second call, Hanning also had another CPA that he works with, Kaplan, accompany him to explain the partnership aspects of the MLD investment transaction to Hutton. (PFUF No. 10) The second call was to clarify the information Hutton, Hanning and Hewitt received in the first call from Sedacca (PFUF No. 10)

Typically, Hutton sought Hewitt's advice regarding various business and tax related transactions. (PFUF No. 27) Hutton relied, and Hewitt understood, that if he did not approve of the transaction, he would advise Hutton, that it would not be in his best interest to pursue such an investment. (PFUF No. 28) Hewitt, after review of the MLD investment material, participating in telephone conferences with Cantley and Sedacca, and performing independent research never advised Hutton that the MLD transaction would not be in his best interest. (PFUF No. 9, 26, and 27 ) Following the telephone calls, Hewitt went back to his office to do research before advising Hutton that the investment looked good. (PFUF No. 26) Because of the nature of Hutton's and Hewitt's relationship, if Hewitt had a concern or a comment about the MLD transaction, Hewitt would have expressed his concerns or comments. (PFUF No. 28) Hewitt never made any comment or expressed his concerns regarding the MLD transaction. (PFUF No. 28) Because of Hewitt's silence, Hutton took Hewitt's silence on the subject as a statement

that the MLD transaction actually did provide a reasonable opportunity for profit and with respect to the represented tax consequences. (PFUF No. 28)

*A. Hutton reasonably believed that the MLD investment was a high risk/high reward transaction. Hutton was* *<u>not</u>* *promised any tax benefits as alleged by Defendant.*

Hutton, as investor and managing member partner, was advised of the nature of the risk of the MLD investment. (PFUF No. 9) He understood that it was a *high* risk investment that had a high possible reward. (PFUF No. 23) Hutton has invested in oil wells and other high risks investments and has obtained tax benefits from such investments as intangible drilling costs. (PFUF No. 2) His trusted advisors, Hanning, an investment advisor, presented Hutton with investment opportunities in the past and Hutton's personal and business certified public accountant (CPA) Hewitt were involved in the review and analysis of those transactions, as well as the MLD investment. (PFUF No. 7, 11, 37) Neither of these trusted advisors ever advised Hutton that the MLD transaction was not a good investment or that the represented tax consequences, good or bad, were being improperly represented. (PFUF No. 28, 34) Both of these individuals are experienced financial advisors and have worked with Hutton many years prior to 2001 and are still working with him through today. (PFUF No. 4, 5, 24, 27, 28) They continue to provide him with both financial and tax advice as might be applicable with respect to certain investments. (PFUF No. 4, 27) They participated in the initial conferences with the law firm that introduced the MLD transaction to Hanning, they participated in subsequent follow up conferences with Cantley and Sedacca and they did their own independent research. (PFUF No. 9, 10, 26) To the extent that Defendant concludes in its statement of facts for Defendant's Motion for Summary Judgment, Hutton or his

financial advisors possessed knowledge and experience in financial and business matters sufficient to ensure his (or his financial advisor's) capability to evaluate the merits and risks of the MLD transaction was false, is absolutely wrong. (DFUF No. 21, 28) Hutton had every reason to believe, based on the facts that his financial advisors properly evaluated the merits and risks of the MLD transactions. (PFUF No. 28, 34) The mere fact that Hanning brought the MLD investment to Hutton, led Hutton to believe it had merit. Hanning never brought an investment to Hutton that did not have merit. (PFUF No.4, 34) Same with Hewitt, in that he was involved in all conferences with Hutton and did his own independent research. (PFUF No. 9, 26, 30) He never told Hutton that that the investment did not have merit and their working relationship was such that if the investment did not have merit, or if he was unable to properly analyze the investment, he would have told Hutton such. (PFUF No. 28)

*B. Hutton, upon learning of the MLD investment took all actions one could reasonably be expected to take.*

Hutton, as stated above, relied on his own independent CPA and tax advisor, Scott Hewitt, to evaluate the investment transaction. (PFUF No. 33) Hewitt participated in telephone conferences with the law firm Cantley and Sedacca, the experts in foreign currency transactions, and satisfied himself at the time that he understood the transaction. (PFUF No. 9) Hewitt did his own independent research with respect to any tax consequences that might result from the MLD investment. (PFUF No. 30) Hutton ultimately obtained the signed written opinion from a law firm, Cantley and Sedacca, stating the legal basis for all representations that had been made to him and his advisors since their initial contact. (PFUF No. 40)

Hutton, in 2005, after being contacted by the IRS and learning that this transaction was being challenged, hired an attorney, Anthony S. Gasaway, and filed amended tax returns. (PFUF No. 40) Prior to being contacted by the IRS, neither Hutton nor Hewitt, were ever aware that the MLD investment, was what might be considered a listed transaction by the IRS, or that such investment might be included in Notice 2000-44 that was issued by the IRS. (PFUF No. 41) In addition to amending the 2001 tax returns and adjusting for any tax benefits that might have flowed from the MLD investment, Hutton paid any additional tax liability that was due. (PFUF No. 42) In addition, he took advantage of the Settlement Initiative being offered by the IRS with respect to investors in the MLD type investments. (PFUF No.42) He completed Form 13582, Notice of Election to Participate in Announcement 2004-46 Settlement Initiative, for his attorney, Gasaway, which was subsequently filed with the Service. (PFUF No. 43) Upon the IRS seeking follow up information, Hutton provided such information to his attorney. (PFUF No. 44) Today, the Service states that it never received a response for Hutton with respect to their follow up questions and that is the reason it did not enter a settlement with Hutton. (PFUF No. 45) However, Hutton did not hesitate to provide any information requested by the Defendant as part of this Court case. Clearly, Hutton has done everything possible to comply with the law and the payment of tax that could be reasonably expected of any taxpayer.

## JURISDICTION

This Court has Jurisdiction to determine if partnership and partner level defenses apply to penalties asserted in the FPAA. For a discussion of this Court’s Jurisdiction see below in Section II of Plaintiff’s Argument.

## ARGUMENT

I. *For purposes of this cross-motion for summary judgment, the plaintiff concedes, six years after Defendant invested in the MLD investment, that the investment lacked economic substance.*

For purposes of the Cross Motion for Summary Judgment, it can be assumed that the MLD investment, upon the suggestion and advice of legal counsel and with the approval of his independent CPA and tax advisor, lacked economic substance or business purpose. Although the transaction, the MLD investment, followed the black letter of the law as it was written during the time the transaction was entered and at the time the 2001 tax return was prepared and filed with the Internal Revenue Service, the plaintiff will concede for this motion that the underlying transaction lacked economic substance as stated within the FPAA as issued by the Internal Revenue Service.

II. *This Court has jurisdiction to determine if partnership and partner level penalties apply, as asserted in the FPAA.*

This case is governed by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), IRC §§ 6221-6233. Under TEFRA, "the tax treatment of any partnership item (and the applicability of any <u>penalty</u>, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level." IRC § 6221. A "partnership item" generally includes items that are "more appropriately determined at the partnership level at the partner level." IRC § 6231(a)(3). A "partnership item" can be distinguished from an "affected item," which is defined as any item affected by a "partnership item." IRC § 6231(a)(5). The scope of judicial review in a TEFRA proceeding is set forth in IRC § 6226(f): A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all

partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount with relates to an adjustment to a partnership item. (emphasis added).

Prior to filing the petition in this Court, and in accordance with IRC § 6226(e)(1), Hutton deposited with the Internal Revenue Service the amount by which his tax liability would be increased if the partnership items on the tax returns were made consistent with the treatment of partnership items on the partnership return, as adjusted by the final partnership administrative adjustment. (PFUF No. 46) Accordingly, pursuant to 28 U.S.C. § 1346(e) and IRC § 6226(f), this Court has jurisdiction to determine all partnership items and the applicability of any penalty "which relates to an adjustment to a partnership item."

Prior to The Taxpayer Relief Act of 1997, penalties were not "partnership items" and could not be considered until the completion of partnership-level proceedings; Crystal Beach Development of Destin Ltd. v. Commissioner, 79 T.C.M. (CCH) 2068 (2000). It might be argued that the reasonable cause defense is a "partner level defense," and TEFRA provides that the exclusive forum for asserting such defenses is through a refund proceeding. However, the TEFRA refund provision (§ 6230(c)(4)) is permissive, rather than mandatory. In fact, the IRS position, as stated in the FPAA, is based upon the transactions entered by the *partners.* As a result, the partnership items to be determined in this case are the proper tax base of Plaintiff, and the proper allocation to the respective partners. Therefore, the Court has jurisdiction to determine the applicability of any penalties related to any adjustment to these partnership items, it may consider whether the

reasonable cause exception applies to the activities of the Plaintiff, Clearmeadow Capital, and Hutton in this matter.

Although unclear, the regulations provide that "[p]artner-level defenses are limited to those that are personal to the partner or dependent on the partner's separate return and cannot be determined at the partnership level." Treas. Reg. § 301.6221-1(d). Examples of partner-level defenses include the applicable threshold underpayment of tax with respect to a partner or whether a partner has met the criteria under the reasonable cause exception. Id., Treas. Reg. § 301.6221-1(d). The regulation suggests that the reasonable cause exception is a "partner-level defense." However, the case law, does not read the statute and regulation so narrow. In the circumstances of a given case, the reasonable cause exception maybe considered at the partnership-level if it involves actions, as in this case, by the managing member partner. See Santa Monica Pictures v. Commissioner, 89 T.C.M. (CCH) 1157 (2005). In Santa Monica Pictures, Santa Monica Pictures ("SMP") through its tax matters partner, contested adjustments made by the IRS to SMP's tax returns. Id., 89 T.C.M. 1157. In evaluating the applicability of defenses to accuracy-related penalties, such as the reasonable cause exception, the tax court considered the experience of its tax matters partner and the opinions he relied upon as the tax matters partner. Id., 89 T.C.M. 1157.

Similarly, this case involves Hutton’s, Plaintiff’s managing member partner’s, reliance on Cantley and Sedacca and CPA Scott Hewitt with respect to his investment in the MLD transaction. (PFUF No. 33) The FPAA was based, in part, on the agreements between Mark Hutton, the plaintiff and Clearmeadow. (PFUF No. 46) The determination of the partners' proper basis in the partnership is affected by this Court's decision.

However, assuming for purposes of this cross-motion for summary judgment, this Court believes that the parties improperly computed the partner's basis, it could determine that the parties reasonably relied on Cantley and Sedacca, Scott Hewitt and Bryan Hanning in their representations to the plaintiff. It would serve no purpose and would amount to judicial inefficiency to determine that penalties apply to the plaintiff, wait for them to be assessed by the IRS, subsequently paid by the partners of plaintiff, only to allow them to come back to this Court and argue reasonable reliance pursuant to IRC § 6664.

III. *The Plaintiff asserts that the penalties stated in the FPAA do not apply in this matter.*

First of all, it is the position of the plaintiff that it has complied with the literal provisions of the Internal Revenue Code and the regulations thereunder as of the time that the MLD investment was made and at the time the 2001 tax returns were filed. Subsequent to plaintiff's investment, the IRS issued regulations and applied them retroactively that would question the viability of the MLD investment by the Plaintiff had such regulations existed at the time the investment was made and the tax return been filed.

Pursuant to 28 U.S.C. § 1346(e) and IRC § 6226(f), this court has jurisdiction to determine the applicability of any penalty which relates to an adjustment to a partnership issue. Whether the penalty applies to the partnership or to the individual partner, is one and the same, as the same individual, Mark Hutton, took all the actions and followed all the advice of the professionals with respect to the MLD transaction. It is impossible to bifurcate the applicability of the penalties at the partnership level or the partner level. In the FPAA issued by the Internal Revenue Service, the Service asserted the following four accuracy-related penalties in this case:

1) a 40% penalty for gross valuation misstatement. IRC § 6662(b)(3) and (h);

2) a 20% penalty for substantial valuation misstatement. IRC § 6662(b)(3) and (e);

3) a 20% penalty for substantial understatement of income tax. IRC § 6662(b)(2) and (d); and

4) a 20% penalty for negligence or disregard of rules and regulations. IRC § 6662(b)(1). (PFUF No. 46)

The penalties, proposed in the alternative, as stated in the FPAA, would be imposed at the partnership level and the partner level. Although unclear in the FPAA, penalties may arguably be imposed/not be imposed based upon the actions of Plaintiff, Hutton, in his role as the managing partner acting on behalf of the partnership (i.e. president of Clearmeadow Capital) and on himself as a partner.

A. *The Plaintiff asserts that the Gross Valuation Misstatement / Substantial Valuation Misstatement penalty stated in the FPAA do not apply in this matter.*

The IRS may impose a 40% penalty "to the extent that a portion of the underpayment to which IRC § 6662 applies is attributable to one or more gross valuation misstatements." IRC § 6662(h)(1) A gross valuation misstatement occurs if the value of any property (or the adjusted basis of any property) claimed on any return is 400 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis. IRC § 6662(h)(2).

Additionally, The IRS may impose a 20% penalty to the extent that the portion of any underpayment which is attributable to any substantial valuation misstatement. I.R.C. § 6662 (2001). A substantial valuation misstatement occurs when “the value of any

property (or the adjusted basis of any property) claimed on any return of tax imposed by chapter l is 200 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be)." I.R.C. § 6662(e)(1)(A) (2001).

In the FPAA issued by the Internal Revenue Service, the Service's position is that the 400 percent threshold is met because the partnership incorrectly assumed Clearmeadow Capital's basis in the liability of $2,769,200 on the short MLD position. (PFUF No. 48) Therefore, the IRS' position is that the understatement of basis satisfies the 400 percent ratio and the IRS properly asserted the penalty in the FPAA. (PFUF No. 48) Alternatively, the IRS has raised the position that the understatement of basis satisfies the 200 percent ratio for the substantial understatement valuation penalty and the IRS properly asserted the penalty in the FPAA. (PFUF No. 46)

The plaintiff's position is simply that its tax return at the time that it filed its 2001 tax return, reflected that it properly applied I.R.C. § 752 in determining their basis in the partnership, and, therefore, any underpayment would not be attributable to an overstatement of basis. The plaintiff relies on the law and regulations as they existed at the time it engaged in the MLD investment and at the time it filed its tax return for 2001. Also, the IRS position, as stated in the FPAA, is that the MLD investment and the related loan transactions lacked economic substance. As stated in this Cross Motion for Summary Judgment, and solely for the purpose of the Cross Motion for Summary Judgment, the Plaintiff will concede for the moment that the IRS is correct, then the underpayment of tax is not "attributable to" any gross valuation misstatement or substantial valuation misstatement. Instead, the underpayment would be attributable to the disregard of the transactions.

In addition, as a matter of law, an overvaluation penalty cannot apply when the IRS totally disallows a deduction or credit, and this case is similar to the situation in which the IRS totally disallows a deduction or credit. Heasley v. Commissioner, 902 F.2d 380, 383 (5th Cir. 1990); Weiner v. U.S., 389 F.3d 152, 161-62 (5th Cir. 2004). In Heasley, the taxpayers took an investment tax credit based on a valuation of some equipment they purchased. Id., 902 F.2d at 381-82. The IRS totally disallowed the credit. Id. at 382. The IRS also applied a valuation overstatement penalty because the taxpayers overvalued the basis of the equipment. Id., 902 F.2d at 382. The taxpayers did not dispute the disallowance, but challenged the imposition of penalties. Id., 902 F.2d at 382. The court concluded that the valuation overstatement penalty did not apply. Id., 902 F.2d at 383. The court reasoned that the underpayment of tax was attributable to an improper deduction or credit, not the valuation overstatement. Id., 902 F.2d at 383. Specifically, the court stated "[w]henever the I.R.S. totally disallows a deduction or credit, the I.R.S. may not penalize the taxpayer for a valuation overstatement included in that deduction or credit." Id., 902 F.2d at 383. Heasley is controlling in this case. Accordingly, a penalty for a gross valuation misstatement or substantial valuation misstatement cannot apply when the IRS totally disregards a transaction as lacking economic substance.

The defendant in this matter may argue that the “Investor Representation” letter received by Hutton along with the tax opinion letter received on January 23, 2002, stating that “the opinion letter may not be relied upon unless and until we have received the … Investor Representations fully executed by you, the LLC and the Corp….” Despite the fact that by the time that Hutton signed the letter on March 11, 2002, the facts had changed such that he was no longer investing in the MLD transactions in such a way that

he was going to receive a reasonable economic return on his investment, he, and his advisors, Hanning and Hewitt, did rely on the opinions and representations of Cantley and Sedacca from the beginning of the investigatory stage of this investment. The defendant is likely to simply argue that the point in time to determine whether the plaintiff relied on the advice and representation of Cantley and Sedacca is at the end, when the representation letter was signed, rather than at the time the initial contact was made and all subsequent phone contacts were made. It would be silly to allow Cantley and Sedacca to control for their liability purpose when in fact a client, and their advisors, can rely on the advice that they have given.

However, it cannot be ignored, that Hutton did not act alone. In his capacity as both an investor and partner, he immediately sought the advice and counsel of his CPA, Scott Hewitt. (PFUF No. 9, 10, 23) Well versed in tax law with years of experience, Hewitt, participated in telephone conversations with Cantley and Sedacca asking questions in an effort to understand the transactions and potential tax consequences associated with the transaction. (PFUF No. 9) Hewitt testified that he did his own independent research and saw nothing adverse with the MLD investment to advise his client, Hutton, not to invest in the MLD transaction. (PFUF No. 30) In fact at the time or preparing the tax return, Hewitt, independently completed the tax return, making only one small adjustment when confirming with Cantley and Sedacca, how such tax consequences were to be reflected on the tax return. (PFUF No. 38)

B. *The Plaintiff asserts that the Substantial Understatement of Income Tax penalty stated in the FPAA does not apply in this matter.*

The third penalty proposed in the FPAA is for the substantial understatement of income tax. The IRS may impose a 20% penalty for a substantial understatement of

income tax. A "substantial understatement of income tax" occurs if the amount of understatement exceeds the greater of 1) 10 percent of the tax required to be shown on the return, or 2) $5,000. IRC § 6662(d). Notwithstanding the mathematical test, the statute provides an exception to the penalty. "The amount of the understatement ... shall be reduced by that portion of the understatement which is attributable to . . . the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment." IRC § 6662(d)(2)(B)(i).

There was "substantial authority" for the treatment of the plaintiff's tax position at the time plaintiff filed their 2001 tax return. The substantial authority standard is an objective standard involving an analysis of the law and application of the law to relevant facts. The substantial authority standard is less stringent than the more likely than not standard (the standard that is met when there is a greater than 50-percent likelihood of the position being upheld), but more stringent than the reasonable basis standard." Treas. Reg. § 1.6662-4(d)(2). It should be noted that in 2004, the law was changed that eliminated the substantial authority exception altogether in cases that have been determined to be tax shelters. IRC § 6662(d)(2)(C). The amendment, however, is not effective for the tax year at issue. *See* Pub. L. 108-357, Title VIII, § 812(f), Oct. 22, 2004, 118 Stat. 1580.

For substantial authority to exist, "the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary treatment." Treas. Reg. § 1.6662-4(d)(3)(i). Although the plaintiff received opinions, written and oral, from attorneys (Cantley & Sedacca) and his own trusted and independent CPA (Scott Hewitt), the opinions rendered by tax professionals are not

authority. Treas. Reg. § 1.6662-4(d)(3)(iii). However, the authorities underlying such opinions, if applicable to the facts of a particular case, may give rise to substantial authority for the tax treatment of an item. Id.

Substantial authority does in fact exist in this case for a number of reasons. First, the plaintiffs obtained a comprehensive opinion of counsel, Cantley and Sedacca, before they filed their returns. (PFUF No. 39) This opinion letter relied on the relevant authority at the time the MLD investment was made by the plaintiff and prior to the filing of the plaintiffs' 2001 tax return. (PFUF No. 40) The plaintiff also relied on his CPA, Hewitt, who did independent research with respect to the tax issues. (PFUF No. 30) In addition, in the independent preparation of the plaintiff's 2001 tax return, Hewitt contacted Cantley and Sedacca law firm to question them on their position prior to finalizing of the plaintiff's 2001 tax return, and in fact, completed the tax return in a manner for which he believed was proper and correct prior to questioning Cantley & Sedacca. (PFUF No. 39)

In 2001, I.R.C. § 752 did not require Clearmeadow LLC to adjust the basis of Clearmeadow Capital's partnership interest for Clearmeadow LLC's alleged assumption of contingent liabilities. Treas. Reg. § 1.752-1, in defining liabilities did not include "contingent liabilities" and does not define "obligation." Because contingent liabilities were not included in the definition of liability or obligation, caselaw is controlling on whether contingent liabilities reduce the basis of the partner's partnership basis. The prior caselaw holds that courts have been reluctant to include contingent liabilities in basis adjustments because of their speculative nature. See generally, Denver & Rio Grande Western Railroad Co. v. United States, 505 F.2d 1266 (Ct. Cl. 1974); Lemery v.

Commissioner, 52 T.C. 367 (1969), aff'd 451 F.2d 173 (9th Cir. 1971); and Long v. Commissioner, 660 F.2d 416 (10th Cir. 1981), aff'g 71 T.C. 1 (1979). However, subsequent Congressional action, Treasury Department Decisions and Proposed Treasury Regulations have retroactively changed Treas. Reg. § 1.752-1 to include the definition of contingent liability in defining liabilities through: (1) Temporary Treas. Reg. § 1.752-6T in June 24, 2003, for liabilities from October 18, 1999 to June 24, 2003 to include contingent liabilities under I.R.C § 358(h)(3); (2) Treas. Reg. § 1.752-6 in May 23, 2005, finalizing Treas. Reg. § 1.752-6T; and (3) amending Treas. Reg. & 1.752-1 on May 23, 2005, to include contingent liabilities in its definition of liabilities and obligations for transaction entered on or after June 24, 2003. In this case, the subsequent changes were not in place in 2001 when Mark Hutton, Clearmeadow LLC, or Clearmeadow Capital Corp. entered into the MLD transaction and filed the 2001 tax returns.

The plaintiff, Mark Hutton, is neither an attorney nor an accountant. He relied, as he always does, on the professionals, their research, and the advice that was provided to him as well as the law and the regulations that existed at the time. (PFUF No. 33)

C. *The Plaintiff asserts that the Negligence or Disregard of Rules or Regulations penalty stated in the FPAA do not apply in this matter.*

In the FPAA that was issued to the Plaintiff in this matter, the IRS imposed, in the alternative, a fourth penalty-for negligence or disregard of rules or regulations. Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Code, to exercise ordinary and reasonable care in the preparation of a tax return, to keep adequate books and records, or to substantiate items properly. IRC § 6662(c); Treas. Reg. § 1.6662-3(b)(1). It also includes the failure to do what a reasonable and ordinarily, prudent person would do under the circumstances. Heasley, 902 F.2d at

383. Negligence is strongly indicated if a taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction or credit which would seem "too good to be true" to a reasonable and prudent person. Treas. Reg. § 1.6662-3(b)(1)(ii). In this case, the taxpayer, immediately upon learning of the MLD investment sought out the advice of his independent CPA that has provided him with guidance in tax and investment matters since 1993. (PFUF No. 24, 26-28) CPA Scott Hewitt continues to provide the plaintiff both personal and business tax advice. (PFUF No. 25, 26)

There can be no finding of negligence if there was a reasonable basis for a return position. Treas. Reg. § 1.6662-3(b)(1). Reasonable basis is a significantly higher standard than not frivolous or not patently improper; it cannot be merely arguable or a merely colorable claim. Treas. Reg. § 1.6662-3(b)(3). Reasonable basis requires reliance on legal authorities and not on opinions rendered by tax professionals. *Id.;* Treas. Reg. § 1.6662-4(d)(3)(iii). The Court may, however, examine the authorities relied upon in a tax opinion to determine if a reasonable basis exists. Treas. Reg. § 1.6662-4(d)(3)(iii).

The "reasonable basis" standard for reliance on opinions is lower than the "substantial authority" standard. Treas. Reg. § 1.6662-4(d)(2). As discussed in the previous section, there was "substantial authority" to rely on the Cantley and Sedacca opinion along with the opinion of CPA Scott Hewitt, and, therefore, the "reasonable basis" standard has been met. Accordingly, a penalty for negligence is not applicable in this case.

IV. *Both the partnership and the partners have a common defense against the penalty as there is reasonable reliance under Section 6664 with respect to the reliance on (i) the advice of Cantley & Sedacca, (ii) the advice and representation of CPA Scott Hewitt, and (iii) on the advice and position of investment advisor Bryan Hanning.*

A taxpayer may defeat the imposition of any of those penalties if he demonstrates reasonable cause. The defense, found in IRC § 6664(c), provides: "No penalty shall be imposed under this part with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion."

The plaintiffs bear the burden of production and proof on their reasonable cause defenses. Long Term Capital Holdings, Ltd. v. U.S., 330 F.Supp. 2d 122, 205 (D. Conn. 2004) (citing H.R. Conf. Rep. 105-599 at 241); Montgomery v. Commissioner, 127 T.C. 43, 66 (2006). The most important factor is the extent of the taxpayer's effort to assess his proper tax liability in light of all the circumstances. Treas. Reg. § 1.6664-4(b). Reliance on the advice of a professional tax advisor does not necessarily demonstrate reasonable cause and good faith. Id., Treas. Reg. § 1.6664-4(b). However, a taxpayer is not required to challenge the advisor's conclusions, seek a second opinion, or check the advice himself. U.S. v. Boyle, 469 U.S. 241, 250-51 (1985). The validity of the reliance turns on "the quality and objectivity of the professional advice obtained." Swayze v. Commissioner, 785 F.2d 715, 719 (9th Cir. 1986). Although it might be argued that there was a conflict of interest by Cantley and Sedacca in providing the legal advice and in promoting the MLD investment, any such perceived conflict would have been unknown to the Plaintiffs at the time the investment was made or at the time the 2001 tax return was filed. The plaintiffs simply paid for legal advice as they might in every other situation involving a complex investment involving tax consequences.

Reliance is also unreasonable if the taxpayer failed to supply the professional with all the necessary information to assess the tax matter. Neonatology Associates v.

Commissioner, 299 F.3d 221, 234 (3rd Cir. 2002); Treas. Reg. § 1.6664-4(c); Boyle, 469 U.S. at 250-51. Hutton provided all the advice provided to him from Cantley & Sedacca to Scott Hewitt. Hutton completed the Cantley & Sedacca client intake form with the help of his business advisor. He participated in numerous teleconferences providing the necessary information requested and asked numerous questions regarding the transaction. Cantley & Sedacca are well aware of all transactions undertaken by Clearmeadow LLC, Clearmeadow Capital, as they formed these entities on behalf of Hutton and assisted in the transaction involving the MLD investment.

The plaintiffs may not have completely understood the complexity of the tax consequences that would result from the MLD investment, but he was certainly aware and willing to embrace the risk in order to obtain the potential reward from the MLD investment. (PFUF No. 23) The written opinion that was ultimately issued on January 23, 2002 and was issued after the fact, but reflected the facts as they existed at or near the time that plaintiff entered into the transaction. (PFUF No. 39, 47)

However, in addition to the Cantley and Sedacca written opinion, the plaintiff, through Hutton, sought out the assistance and advice of his CPA, Scott Hewitt, to evaluate the MLD investment. (PFUF No. 23) Hewitt was involved in telephone conversations, examined promotional materials, asked questions, and sought the advice of the law firm Cantley and Sedacca at the time of the preparation of the firm. (PFUF No. 9, 10) In fact, Hewitt, based upon his own research and understanding of the Internal Revenue Code in the preparation of the tax return, independent of the advice of Cantley and Sedacca in the preparation of the return. (PFUF No. 30) He made one small modification to the return after the advice was sought. (PFUF No. 38) What more could

Plaintiff do than follow the advice of his CPA, who was sought out to give a second opinion as to the MLD investment. Furthermore, Hewitt reviewed the promotional material and legal opinion and concluded that the plaintiffs could reasonably rely on them for purposes of both an investment vehicle and for purposes of the tax consequences that may flow from such an investment. (PFUF No. 27) As was the practice between Hutton and Hewitt, if Hewitt was suspicious of the transaction as an investment or of the discussed tax consequences he would have advised Hutton of such. (PFUF No. 28) The fact that Hewitt did not discourage Hutton from the investment was in fact the approval Hutton needed to go forward with the transaction. (PFUF No. 28)

The detailed opinions of Cantley and Sedacca certainly provide a reasonable interpretation of the law as of the time the opinion was issued. The IRS has since issued new regulations and applied such regulations retroactively as to the plaintiffs' investment in the MLD investment and the tax benefits that flowed from such investment. But at the time, the opinion and advice provided to the plaintiff was reasonable.

Therefore, the plaintiffs relied in good faith on the advice of qualified tax accountants and tax lawyers. Accordingly, they have fulfilled the criteria under the reasonable cause exception of IRC § 6664(c) and no accuracy-related penalties are to be imposed.

CONCLUSION

For the reasons given, the plaintiff asks the Court to grant Plaintiff's Cross Motion for Summary Judgment and make the following determinations: 1) that it has jurisdiction to determine if the penalties, as set out in the FPAA, apply to the plaintiff, 2) that the penalties do not apply to the plaintiff, that if the penalties apply to the plaintiffs

or to partner Hutton, 3) that it has the jurisdiction to consider if any of the defenses apply, and 4) that if this Court determines that penalties are applicable to the partnership/partner, that it determines that it has jurisdiction to consider all defenses, and 5) that upon considering the defenses, that the penalties do not apply. The plaintiff believes that the determinations as set out above resolve the case completely.

Respectfully Submitted,

/s/ THOMAS C. PLISKE

THOMAS C. PLISKE
Stientjes & Pliske, LLC
1120 Olivette Executive Parkway
Suite 220
St. Louis, MO 63132
Tel: (314) 872 -3988
Fax: (314) 872-7374

Attorney for Plaintiff

Date : October 24, 2007

## APPENDIX A

Internal Revenue Code of 1986 (26 U.S.C. ):

## § 162. Trade or business expenses

(a) In general
There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
….

## § 351. Transfer to corporation controlled by transferor

**(a) General rule**
No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation.
**(b) Receipt of property**
If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock permitted to be received under subsection (a), other property or money, then—
**(1)** gain (if any) to such recipient shall be recognized, but not in excess of—
**(A)** the amount of money received, plus
**(B)** the fair market value of such other property received; and
**(2)** no loss to such recipient shall be recognized.
**(c) Special rules where distribution to shareholders**
**(1) In general**
In determining control for purposes of this section, the fact that any corporate transferor distributes part or all of the stock in the corporation which it receives in the exchange to its shareholders shall not be taken into account.
**(2) Special rule for section 355**
If the requirements of section 355 (or so much of section 356 as relates to section 355) are met with respect to a distribution described in paragraph (1), then, solely for purposes of determining the tax treatment of the transfers of property to the controlled corporation by the distributing corporation, the fact that the shareholders of the distributing corporation dispose of part or all of the distributed stock, or the fact that the corporation whose stock was distributed issues additional stock, shall not be taken into account in determining control for purposes of this section.
**(d) Services, certain indebtedness, and accrued interest not treated as property**
For purposes of this section, stock issued for—
**(1)** services,
**(2)** indebtedness of the transferee corporation which is not evidenced by a security, or

**(3)** interest on indebtedness of the transferee corporation which accrued on or after the beginning of the transferor's holding period for the debt,
shall not be considered as issued in return for property.
**(e) Exceptions**
This section shall not apply to—
**(1) Transfer of property to an investment company**
A transfer of property to an investment company. For purposes of the preceding sentence, the determination of whether a company is an investment company shall be made—
**(A)** by taking into account all stock and securities held by the company, and
**(B)** by treating as stock and securities—
**(i)** money,
**(ii)** stocks and other equity interests in a corporation, evidences of indebtedness, options, forward or futures contracts, notional principal contracts and derivatives,
**(iii)** any foreign currency,
**(iv)** any interest in a real estate investment trust, a common trust fund, a regulated investment company, a publicly-traded partnership (as defined in section 7704 (b)) or any other equity interest (other than in a corporation) which pursuant to its terms or any other arrangement is readily convertible into, or exchangeable for, any asset described in any preceding clause, this clause or clause (v) or (viii),
**(v)** except to the extent provided in regulations prescribed by the Secretary, any interest in a precious metal, unless such metal is used or held in the active conduct of a trade or business after the contribution,
**(vi)** except as otherwise provided in regulations prescribed by the Secretary, interests in any entity if substantially all of the assets of such entity consist (directly or indirectly) of any assets described in any preceding clause or clause (viii),
**(vii)** to the extent provided in regulations prescribed by the Secretary, any interest in any entity not described in clause (vi), but only to the extent of the value of such interest that is attributable to assets listed in clauses (i) through (v) or clause (viii), or
**(viii)** any other asset specified in regulations prescribed by the Secretary.
The Secretary may prescribe regulations that, under appropriate circumstances, treat any asset described in clauses (i) through (v) as not so listed.
**(2) Title 11 or similar case**
A transfer of property of a debtor pursuant to a plan while the debtor is under the jurisdiction of a court in a title 11 or similar case (within the meaning of section 368 (a)(3)(A)), to the extent that the stock received in the exchange is used to satisfy the indebtedness of such debtor.
**(f) Treatment of controlled corporation**
If—
**(1)** property is transferred to a corporation (hereinafter in this subsection referred to as the "controlled corporation") in an exchange with respect to which gain or loss is not recognized (in whole or in part) to the transferor under this section, and
**(2)** such exchange is not in pursuance of a plan of reorganization,
section 311 shall apply to any transfer in such exchange by the controlled corporation in the same manner as if such transfer were a distribution to which subpart A of part I applies.
**(g) Nonqualified preferred stock not treated as stock**

**(1) In general**
In the case of a person who transfers property to a corporation and receives nonqualified preferred stock—
**(A)** subsection (a) shall not apply to such transferor, and
**(B)** if (and only if) the transferor receives stock other than nonqualified preferred stock—
**(i)** subsection (b) shall apply to such transferor; and
**(ii)** such nonqualified preferred stock shall be treated as other property for purposes of applying subsection (b).
**(2) Nonqualified preferred stock**
For purposes of paragraph (1)—
**(A) In general**
The term "nonqualified preferred stock" means preferred stock if—
**(i)** the holder of such stock has the right to require the issuer or a related person to redeem or purchase the stock,
**(ii)** the issuer or a related person is required to redeem or purchase such stock,
**(iii)** the issuer or a related person has the right to redeem or purchase the stock and, as of the issue date, it is more likely than not that such right will be exercised, or
**(iv)** the dividend rate on such stock varies in whole or in part (directly or indirectly) with reference to interest rates, commodity prices, or other similar indices.
**(B) Limitations**
Clauses (i), (ii), and (iii) of subparagraph (A) shall apply only if the right or obligation referred to therein may be exercised within the 20-year period beginning on the issue date of such stock and such right or obligation is not subject to a contingency which, as of the issue date, makes remote the likelihood of the redemption or purchase.
**(C) Exceptions for certain rights or obligations**
**(i)** In general A right or obligation shall not be treated as described in clause (i), (ii), or (iii) of subparagraph (A) if—
**(I)** it may be exercised only upon the death, disability, or mental incompetency of the holder, or
**(II)** in the case of a right or obligation to redeem or purchase stock transferred in connection with the performance of services for the issuer or a related person (and which represents reasonable compensation), it may be exercised only upon the holder's separation from service from the issuer or a related person.
**(ii)** Exception Clause (i)(I) shall not apply if the stock relinquished in the exchange, or the stock acquired in the exchange is in—
**(I)** a corporation if any class of stock in such corporation or a related party is readily tradable on an established securities market or otherwise, or
**(II)** any other corporation if such exchange is part of a transaction or series of transactions in which such corporation is to become a corporation described in subclause (I).
**(3) Definitions**
For purposes of this subsection—
**(A) Preferred stock**
The term "preferred stock" means stock which is limited and preferred as to dividends and does not participate in corporate growth to any significant extent. Stock shall not be treated as participating in corporate growth to any significant extent unless there is a real

and meaningful likelihood of the shareholder actually participating in the earnings and growth of the corporation. If there is not a real and meaningful likelihood that dividends beyond any limitation or preference will actually be paid, the possibility of such payments will be disregarded in determining whether stock is limited and preferred as to dividends.

**(B) Related person**

A person shall be treated as related to another person if they bear a relationship to such other person described in section 267 (b) or 707 (b).

**(4) Regulations**

The Secretary may prescribe such regulations as may be necessary or appropriate to carry out the purposes of this subsection and sections 354 (a)(2)(C), 355 (a)(3)(D), and 356 (e). The Secretary may also prescribe regulations, consistent with the treatment under this subsection and such sections, for the treatment of nonqualified preferred stock under other provisions of this title.

**(h) Cross references**

**(1)** For special rule where another party to the exchange assumes a liability, see section 357.

**(2)** For the basis of stock or property received in an exchange to which this section applies, see sections 358 and 362.

**(3)** For special rule in the case of an exchange described in this section but which results in a gift, see section 2501 and following.

**(4)** For special rule in the case of an exchange described in this section but which has the effect of the payment of compensation by the corporation or by a transferor, see section 61 (a)(1).

**(5)** For coordination of this section with section 304, see section 304 (b)(3).

§ **358**. Basis to distributees

**(a) General rule**
In the case of an exchange to which section 351, 354, 355, 356, or 361 applies—
**(1) Nonrecognition property**
The basis of the property permitted to be received under such section without the recognition of gain or loss shall be the same as that of the property exchanged—
**(A)** decreased by—
**(i)** the fair market value of any other property (except money) received by the taxpayer,
**(ii)** the amount of any money received by the taxpayer, and
**(iii)** the amount of loss to the taxpayer which was recognized on such exchange, and
**(B)** increased by—
**(i)** the amount which was treated as a dividend, and
**(ii)** the amount of gain to the taxpayer which was recognized on such exchange (not including any portion of such gain which was treated as a dividend).
**(2) Other property**
The basis of any other property (except money) received by the taxpayer shall be its fair market value.
**(b) Allocation of basis**
**(1) In general**
Under regulations prescribed by the Secretary, the basis determined under subsection (a)(1) shall be allocated among the properties permitted to be received without the recognition of gain or loss.
**(2) Special rule for section 355**
In the case of an exchange to which section 355 (or so much of section 356 as relates to section 355) applies, then in making the allocation under paragraph (1) of this subsection, there shall be taken into account not only the property so permitted to be received without the recognition of gain or loss, but also the stock or securities (if any) of the distributing corporation which are retained, and the allocation of basis shall be made among all such properties.
**(c) Section 355 transactions which are not exchanges**
For purposes of this section, a distribution to which section 355 (or so much of section 356 as relates to section 355) applies shall be treated as an exchange, and for such purposes the stock and securities of the distributing corporation which are retained shall be treated as surrendered, and received back, in the exchange.
**(d) Assumption of liability**
**(1) In general**
Where, as part of the consideration to the taxpayer, another party to the exchange assumed a liability of the taxpayer, such assumption shall, for purposes of this section, be treated as money received by the taxpayer on the exchange.
**(2) Exception**
Paragraph (1) shall not apply to the amount of any liability excluded under section 357 (c)(3).
**(e) Exception**
This section shall not apply to property acquired by a corporation by the exchange of its stock or securities (or the stock or securities of a corporation which is in control of the acquiring corporation) as consideration in whole or in part for the transfer of the property to it.
**(f) Definition of nonrecognition property in case of section 361 exchange**

For purposes of this section, the property permitted to be received under section 361 without the recognition of gain or loss shall be treated as consisting only of stock or securities in another corporation a party to the reorganization.

**(g) Adjustments in intragroup transactions involving section 355**

In the case of a distribution to which section 355 (or so much of section 356 as relates to section 355) applies and which involves the distribution of stock from 1 member of an affiliated group (as defined in section 1504 (a) without regard to subsection (b) thereof) to another member of such group, the Secretary may, notwithstanding any other provision of this section, provide adjustments to the adjusted basis of any stock which—

**(1)** is in a corporation which is a member of such group, and

**(2)** is held by another member of such group,

to appropriately reflect the proper treatment of such distribution.

**(h) Special rules for assumption of liabilities to which subsection (d) does not apply**

**(1) In general**

If, after application of the other provisions of this section to an exchange or series of exchanges, the basis of property to which subsection (a)(1) applies exceeds the fair market value of such property, then such basis shall be reduced (but not below such fair market value) by the amount (determined as of the date of the exchange) of any liability—

**(A)** which is assumed by another person as part of the exchange, and

**(B)** with respect to which subsection (d)(1) does not apply to the assumption.

**(2) Exceptions**

Except as provided by the Secretary, paragraph (1) shall not apply to any liability if—

**(A)** the trade or business with which the liability is associated is transferred to the person assuming the liability as part of the exchange, or

**(B)** substantially all of the assets with which the liability is associated are transferred to the person assuming the liability as part of the exchange.

**(3) Liability**

For purposes of this subsection, the term “liability” shall include any fixed or contingent obligation to make payment, without regard to whether the obligation is otherwise taken into account for purposes of this title.

....

§ **752**. Treatment of certain liabilities

**(a) Increase in partner's liabilities**
Any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities, shall be considered as a contribution of money by such partner to the partnership.

**(b) Decrease in partner's liabilities**
Any decrease in a partner's share of the liabilities of a partnership, or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities, shall be considered as a distribution of money to the partner by the partnership.

**(c) Liability to which property is subject**
For purposes of this section, a liability to which property is subject shall, to the extent of the fair market value of such property, be considered as a liability of the owner of the property.

**(d) Sale or exchange of an interest**
In the case of a sale or exchange of an interest in a partnership, liabilities shall be treated in the same manner as liabilities in connection with the sale or exchange of property not associated with partnerships.

## § 6221. Tax treatment determined at partnership level

Except as otherwise provided in this subchapter, the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level.

# § 6226. Judicial review of final partnership administrative adjustments

**(a) Petition by tax matters partner**
Within 90 days after the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable year with—
**(1)** the Tax Court,
**(2)** the district court of the United States for the district in which the partnership's principal place of business is located, or
**(3)** the Court of Federal Claims.
**(b) Petition by partner other than tax matters partner**
**(1) In general**
If the tax matters partner does not file a readjustment petition under subsection (a) with respect to any final partnership administrative adjustment, any notice partner (and any 5-percent group) may, within 60 days after the close of the 90-day period set forth in subsection (a), file a petition for a readjustment of the partnership items for the taxable year involved with any of the courts described in subsection (a).
**(2) Priority of the Tax Court action**
If more than 1 action is brought under paragraph (1) with respect to any partnership for any partnership taxable year, the first such action brought in the Tax Court shall go forward.
**(3) Priority outside the Tax Court**
If more than 1 action is brought under paragraph (1) with respect to any partnership for any taxable year but no such action is brought in the Tax Court, the first such action brought shall go forward.
**(4) Dismissal of other actions**
If an action is brought under paragraph (1) in addition to the action which goes forward under paragraph (2) or (3), such action shall be dismissed.
**(5) Treatment of premature petitions**
If—
**(A)** a petition for a readjustment of partnership items for the taxable year involved is filed by a notice partner (or a 5-percent group) during the 90-day period described in subsection (a), and
**(B)** no action is brought under paragraph (1) during the 60-day period described therein with respect to such taxable year which is not dismissed,
such petition shall be treated for purposes of paragraph (1) as filed on the last day of such 60-day period.
**(6) Tax matters partner may intervene**
The tax matters partner may intervene in any action brought under this subsection.
**(c) Partners treated as parties**
If an action is brought under subsection (a) or (b) with respect to a partnership for any partnership taxable year—
**(1)** each person who was a partner in such partnership at any time during such year shall be treated as a party to such action, and
**(2)** the court having jurisdiction of such action shall allow each such person to participate in the action.
**(d) Partner must have interest in outcome**
**(1) In order to be party to action**
Subsection (c) shall not apply to a partner after the day on which—

**(A)** the partnership items of such partner for the partnership taxable year became nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231, or

**(B)** the period within which any tax attributable to such partnership items may be assessed against that partner expired.

Notwithstanding subparagraph (B), any person treated under subsection (c) as a party to an action shall be permitted to participate in such action (or file a readjustment petition under subsection (b) or paragraph (2) of this subsection) solely for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired with respect to such person, and the court having jurisdiction of such action shall have jurisdiction to consider such assertion.

**(2) To file petition**

No partner may file a readjustment petition under subsection (b) unless such partner would (after the application of paragraph (1) of this subsection) be treated as a party to the proceeding.

**(e) Jurisdictional requirement for bringing action in district court or Court of Federal Claims**

**(1) In general**

A readjustment petition under this section may be filed in a district court of the United States or the Court of Federal Claims only if the partner filing the petition deposits with the Secretary, on or before the day the petition is filed, the amount by which the tax liability of the partner would be increased if the treatment of partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the final partnership administrative adjustment. In the case of a petition filed by a 5-percent group, the requirement of the preceding sentence shall apply to each member of the group. The court may by order provide that the jurisdictional requirements of this paragraph are satisfied where there has been a good faith attempt to satisfy such requirements and any shortfall in the amount required to be deposited is timely corrected.

**(2) Refund on request**

If an action brought in a district court of the United States or in the Court of Federal Claims is dismissed by reason of the priority of a Tax Court action under paragraph (2) of subsection (b), the Secretary shall, at the request of the partner who made the deposit, refund the amount deposited under paragraph (1).

**(3) Interest payable**

Any amount deposited under paragraph (1), while deposited, shall not be treated as a payment of tax for purposes of this title (other than chapter 67).

**(f) Scope of judicial review**

A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

**(g) Determination of court reviewable**

Any determination by a court under this section shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Court of Federal Claims, as the case may be, and shall be reviewable as such. With respect to the partnership, only the tax matters partner, a notice partner, or a 5-percent group may seek review of a determination by a court under this section.

**(h) Effect of decision dismissing action**

If an action brought under this section is dismissed (other than under paragraph (4) of subsection (b)), the decision of the court dismissing the action shall be considered as its decision that the notice of final partnership administrative adjustment is correct, and an appropriate order shall be entered in the records of the court.

# § 6230. Additional administrative provisions

**(a) Coordination with deficiency proceedings**
**(1) In general**
Except as provided in paragraph (2) or (3), subchapter B of this chapter shall not apply to the assessment or collection of any computational adjustment.
**(2) Deficiency proceedings to apply in certain cases**
**(A)** Subchapter B shall apply to any deficiency attributable to—
**(i)** affected items which require partner level determinations (other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items), or
**(ii)** items which have become nonpartnership items (other than by reason of section 6231 (b)(1)(C)) and are described in section 6231 (e)(1)(B).
**(B)** Subchapter B shall be applied separately with respect to each deficiency described in subparagraph (A) attributable to each partnership.
**(C)** Notwithstanding any other law or rule of law, any notice or proceeding under subchapter B with respect to a deficiency described in this paragraph shall not preclude or be precluded by any other notice, proceeding, or determination with respect to a partner’s tax liability for a taxable year.
**(3) Special rule in case of assertion by partner’s spouse of innocent spouse relief**
**(A)** Notwithstanding section 6404 (b), if the spouse of a partner asserts that section 6013 (e) applies with respect to a liability that is attributable to any adjustment to a partnership item (including any liability for any penalties, additions to tax, or additional amounts relating to such adjustment), then such spouse may file with the Secretary within 60 days after the notice of computational adjustment is mailed to the spouse a request for abatement of the assessment specified in such notice. Upon receipt of such request, the Secretary shall abate the assessment. Any reassessment of the tax with respect to which an abatement is made under this subparagraph shall be subject to the deficiency procedures prescribed by subchapter B. The period for making any such reassessment shall not expire before the expiration of 60 days after the date of such abatement.
**(B)** If the spouse files a petition with the Tax Court pursuant to section 6213 with respect to the request for abatement described in subparagraph (A), the Tax Court shall only have jurisdiction pursuant to this section to determine whether the requirements of section 6013 (e) have been satisfied. For purposes of such determination, the treatment of partnership items (and the applicability of any penalties, additions to tax, or additional amounts) under the settlement, the final partnership administrative adjustment, or the decision of the court (whichever is appropriate) that gave rise to the liability in question shall be conclusive.
**(C)** Rules similar to the rules contained in subparagraphs (B) and (C) of paragraph (2) shall apply for purposes of this paragraph.
**(b) Mathematical and clerical errors appearing on partnership return**
**(1) In general**
Section 6225 shall not apply to any adjustment necessary to correct a mathematical or clerical error (as defined in section 6213 (g)(2)) appearing on the partnership return.
**(2) Exception**
Paragraph (1) shall not apply to a partner if, within 60 days after the day on which notice of the correction of the error is mailed to the partner, such partner files with the Secretary a request that the correction not be made.

**(c) Claims arising out of erroneous computations, etc.**
**(1) In general**
A partner may file a claim for refund on the grounds that—
**(A)** the Secretary erroneously computed any computational adjustment necessary—
**(i)** to make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return, or
**(ii)** to apply to the partner a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228 (a),
**(B)** the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228 (a), or
**(C)** the Secretary erroneously imposed any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.
**(2) Time for filing claim**
**(A) Under paragraph (1)(A) or (C)**
Any claim under subparagraph (A) or (C) of paragraph (1) shall be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner.
**(B) Under paragraph (1)(B)**
Any claim under paragraph (1)(B) shall be filed within 2 years after whichever of the following days is appropriate:
**(i)** the day on which the settlement is entered into,
**(ii)** the day on which the period during which an action may be brought under section 6226 with respect to the final partnership administrative adjustment expires, or
**(iii)** the day on which the decision of the court becomes final.
**(3) Suit if claim not allowed**
If any portion of a claim under paragraph (1) is not allowed, the partner may bring suit with respect to such portion within the period specified in subsection (a) of section 6532 (relating to periods of limitations on refund suits).
**(4) No review of substantive issues**
For purposes of any claim or suit under this subsection, the treatment of partnership items on the partnership return, under the settlement, under the final partnership administrative adjustment, or under the decision of the court (whichever is appropriate) shall be conclusive. In addition, the determination under the final partnership administrative adjustment or under the decision of the court (whichever is appropriate) concerning the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item shall also be conclusive. Notwithstanding the preceding sentence, the partner shall be allowed to assert any partner level defenses that may apply or to challenge the amount of the computational adjustment.
**(5) Rules for seeking innocent spouse relief**
**(A) In general**
The spouse of a partner may file a claim for refund on the ground that the Secretary failed to relieve the spouse under section 6015 from a liability that is attributable to an adjustment to a partnership item (including any liability for any penalties, additions to tax, or additional amounts relating to such adjustment).
**(B) Time for filing claim**
Any claim under subparagraph (A) shall be filed within 6 months after the day on which the Secretary mails to the spouse the notice of computational adjustment referred to in subsection (a)(3)(A).

**(C) Suit if claim not allowed**
If the claim under subparagraph (B) is not allowed, the spouse may bring suit with respect to the claim within the period specified in paragraph (3).
**(D) Prior determinations are binding**
For purposes of any claim or suit under this paragraph, the treatment of partnership items (and the applicability of any penalties, additions to tax, or additional amounts) under the settlement, the final partnership administrative adjustment, or the decision of the court (whichever is appropriate) that gave rise to the liability in question shall be conclusive.
**(d) Special rules with respect to credits or refunds attributable to partnership items**
**(1) In general**
Except as otherwise provided in this subsection, no credit or refund of an overpayment attributable to a partnership item (or an affected item) for a partnership taxable year shall be allowed or made to any partner after the expiration of the period of limitation prescribed in section 6229 with respect to such partner for assessment of any tax attributable to such item.
**(2) Administrative adjustment request**
If a request for an administrative adjustment under section 6227 with respect to a partnership item is timely filed, credit or refund of any overpayment attributable to such partnership item (or an affected item) may be allowed or made at any time before the expiration of the period prescribed in section 6228 for bringing suit with respect to such request.
**(3) Claim under subsection (c)**
If a timely claim is filed under subsection (c) for a credit or refund of an overpayment attributable to a partnership item (or affected item), credit or refund of such overpayment may be allowed or made at any time before the expiration of the period specified in section 6532 (relating to periods of limitations on suits) for bringing suit with respect to such claim.
**(4) Timely suit**
Paragraph (1) shall not apply to any credit or refund of any overpayment attributable to a partnership item (or an item affected by such partnership item) if a partner brings a timely suit with respect to a timely administrative adjustment request under section 6228 or a timely claim under subsection (c) relating to such overpayment.
**(5) Overpayments refunded without requirement that partner file claim**
In the case of any overpayment by a partner which is attributable to a partnership item (or an affected item) and which may be refunded under this subchapter, to the extent practicable credit or refund of such overpayment shall be allowed or made without any requirement that the partner file a claim therefor.
**(6) Subchapter B of chapter 66 not applicable**
Subchapter B of chapter 66 (relating to limitations on credit or refund) shall not apply to any credit or refund of an overpayment attributable to a partnership item.
**(e) Tax matters partner required to furnish names of partners to Secretary**
If the Secretary mails to any partnership the notice specified in paragraph (1) of section 6223 (a) with respect to any partnership taxable year, the tax matters partner shall furnish to the Secretary the name, address, profits interest, and taxpayer identification number of each person who was a partner in such partnership at any time during such taxable year. If the tax matters partner later discovers that the information furnished to the Secretary was incorrect or incomplete, the tax matters partner shall furnish such revised or additional information as may be necessary.
**(f) Failure of tax matters partner, etc., to fulfill responsibility does not affect applicability of proceeding**

The failure of the tax matters partner, a pass-thru partner, the representative of a notice group, or any other representative of a partner to provide any notice or perform any act required under this subchapter or under regulations prescribed under this subchapter on behalf of such partner does not affect the applicability of any proceeding or adjustment under this subchapter to such partner.

**(g) Date decision of court becomes final**

For purposes of section 6229 (d)(1) and section **6230** (c)(2)(B), the principles of section 7481 (a) shall be applied in determining the date on which a decision of a district court or the Court of Federal Claims becomes final.

**(h) Examination authority not limited**

Nothing in this subchapter shall be construed as limiting the authority granted to the Secretary under section 7602.

**(i) Time and manner of filing statements, making elections, etc.**

Except as otherwise provided in this subchapter, each—

**(1)** statement,

**(2)** election,

**(3)** request, and

**(4)** furnishing of information,

shall be filed or made at such time, in such manner, and at such place as may be prescribed in regulations.

**(j) Partnerships having principal place of business outside the United States**

For purposes of sections 6226 and 6228, a principal place of business located outside the United States shall be treated as located in the District of Columbia.

**(k) Regulations**

The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subchapter. Any reference in this subchapter to regulations is a reference to regulations prescribed by the Secretary.

**(l) Court rules**

Any action brought under any provision of this subchapter shall be conducted in accordance with such rules of practice and procedure as may be prescribed by the Court in which the action is brought.

## § 6231. Definitions and special rules

**(a) Definitions**
For purposes of this subchapter—
**(1) Partnership**
**(A) In general**
Except as provided in subparagraph (B), the term "partnership" means any partnership required to file a return under section 6031 (a).
**(B) Exception for small partnerships**
**(i)** In general The term "partnership" shall not include any partnership having 10 or fewer partners each of whom is an individual (other than a nonresident alien), a C corporation, or an estate of a deceased partner. For purposes of the preceding sentence, a husband and wife (and their estates) shall be treated as 1 partner.
**(ii)** Election to have subchapter apply A partnership (within the meaning of subparagraph (A)) may for any taxable year elect to have clause (i) not apply. Such election shall apply for such taxable year and all subsequent taxable years unless revoked with the consent of the Secretary.
**(2) Partner**
The term "partner" means—
**(A)** a partner in the partnership, and
**(B)** any other person whose income tax liability under subtitle A is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership.
**(3) Partnership item**
The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.
**(4) Nonpartnership item**
The term "nonpartnership item" means an item which is (or is treated as) not a partnership item.
**(5) Affected item**
The term "affected item" means any item to the extent such item is affected by a partnership item.
**(6) Computational adjustment**
The term "computational adjustment" means the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item. All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments.
**(7) Tax matters partner**
The tax matters partner of any partnership is—
**(A)** the general partner designated as the tax matters partner as provided in regulations, or
**(B)** if there is no general partner who has been so designated, the general partner having the largest profits interest in the partnership at the close of the taxable year involved (or, where there is more than 1 such partner, the 1 of such partners whose name would appear first in an alphabetical listing).
If there is no general partner designated under subparagraph (A) and the Secretary determines that it is impracticable to apply subparagraph (B), the partner selected

by the Secretary shall be treated as the tax matters partner. The Secretary shall, within 30 days of selecting a tax matters partner under the preceding sentence, notify all partners required to receive notice under section 6223(a) of the name and address of the person selected.

**(8) Notice partner**

The term "notice partner" means a partner who, at the time in question, would be entitled to notice under subsection (a) of section 6223 (determined without regard to subsections (b)(2) and (e)(1)(B) thereof).

**(9) Pass-thru partner**

The term "pass-thru partner" means a partnership, estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership with respect to which proceedings under this subchapter are conducted.

**(10) Indirect partner**

The term "indirect partner" means a person holding an interest in a partnership through 1 or more pass-thru partners.

**(11) 5-percent group**

A 5-percent group is a group of partners who for the partnership taxable year involved had profits interests which aggregated 5 percent or more.

**(12) Husband and wife**

Except to the extent otherwise provided in regulations, a husband and wife who have a joint interest in a partnership shall be treated as 1 person.

**(b) Items cease to be partnership items in certain cases**

**(1) In general**

For purposes of this subchapter, the partnership items of a partner for a partnership taxable year shall become nonpartnership items as of the date—

**(A)** the Secretary mails to such partner a notice that such items shall be treated as nonpartnership items,

**(B)** the partner files suit under section 6228 (b) after the Secretary fails to allow an administrative adjustment request with respect to any of such items,

**(C)** the Secretary or the Attorney General (or his delegate) enters into a settlement agreement with the partner with respect to such items, or

**(D)** such change occurs under subsection (e) of section 6223 (relating to effect of Secretary's failure to provide notice) or under subsection (c) of this section.

**(2) Circumstances in which notice is permitted**

The Secretary may mail the notice referred to in subparagraph (A) of paragraph (1) to a partner with respect to partnership items for a partnership taxable year only if—

**(A)** such partner—

**(i)** has complied with subparagraph (B) of section 6222 (b)(1) (relating to notification of inconsistent treatment) with respect to one or more of such items, and

**(ii)** has not, as of the date on which the Secretary mails the notice, filed a request for administrative adjustments which would make the partner's treatment of the item or items with respect to which the partner complied with subparagraph (B) of section 6222 (b)(1) consistent with the treatment of such item or items on the partnership return, or

**(B)**

**(i)** such partner has filed a request under section 6227 (d) for administrative adjustment of one or more of such items, and

**(ii)** the adjustments requested would not make such partner's treatment of such items consistent with the treatment of such items on the partnership return.

**(3) Notice must be mailed before beginning of partnership proceeding**

Any notice to a partner under subparagraph (A) of paragraph (1) with respect to partnership items for a partnership taxable year shall be mailed before the day on

which the Secretary mails to the tax matters partner a notice of the beginning of an administrative proceeding at the partnership level with respect to such items.

**(c) Regulations with respect to certain special enforcement areas**

**(1) Applicability of subsection**

This subsection applies in the case of—

**(A)** assessments under section 6851 (relating to termination assessments of income tax) or section 6861 (relating to jeopardy assessments of income, estate, gift, and certain excise taxes),

**(B)** criminal investigations,

**(C)** indirect methods of proof of income,

**(D)** foreign partnerships, and

**(E)** other areas that the Secretary determines by regulation to present special enforcement considerations.

**(2) Items may be treated as nonpartnership items**

To the extent that the Secretary determines and provides by regulations that to treat items as partnership items will interfere with the effective and efficient enforcement of this title in any case described in paragraph (1), such items shall be treated as nonpartnership items for purposes of this subchapter.

**(3) Special rules**

The Secretary may prescribe by regulation such special rules as the Secretary determines to be necessary to achieve the purposes of this subchapter in any case described in paragraph (1).

**(d) Time for determining partner's profits interest in partnership**

**(1) In general**

For purposes of section 6223 (b) (relating to special rules for partnerships with more than 100 partners) and paragraph (11) of subsection (a) (relating to 5-percent group), the interest of a partner in the profits of a partnership for a partnership taxable year shall be determined—

**(A)** in the case of a partner whose entire interest in the partnership is disposed of during such partnership taxable year, as of the moment immediately before such disposition, or

**(B)** in the case of any other partner, as of the close of the partnership taxable year.

**(2) Indirect partners**

The Secretary shall prescribe regulations consistent with the principles of paragraph (1) to be applied in the case of indirect partners.

**(e) Effect of judicial decisions in certain proceedings**

**(1) Determinations at partner level**

No judicial determination with respect to the income tax liability of any partner not conducted under this subchapter shall be a bar to any adjustment in such partner's income tax liability resulting from—

**(A)** a proceeding with respect to partnership items under this subchapter, or

**(B)** a proceeding with respect to items which become nonpartnership items—

**(i)** by reason of 1 or more of the events described in subsection (b), and

**(ii)** after the appropriate time for including such items in any other proceeding with respect to nonpartnership items.

**(2) Proceedings under section 6228 (a)**

No judicial determination in any proceeding under subsection (a) of section 6228 with respect to any partnership item shall be a bar to any adjustment in any other partnership item.

**(f) Special rule for deductions, losses, and credits of foreign partnerships**

Except to the extent otherwise provided in regulations, in the case of any partnership the tax matters partner of which resides outside the United States or the books of which are maintained outside the United States, no deduction, loss, or credit shall be

allowable to any partner unless section 6031 is complied with for the partnership's taxable year in which such deduction, loss, or credit arose at such time as the Secretary prescribes by regulations.

**(g) Partnership return to be determinative of whether subchapter applies**

**(1) Determination that subchapter applies**

If, on the basis of a partnership return for a taxable year, the Secretary reasonably determines that this subchapter applies to such partnership for such year but such determination is erroneous, then the provisions of this subchapter are hereby extended to such partnership (and its items) for such taxable year and to partners of such partnership.

**(2) Determination that subchapter does not apply**

If, on the basis of a partnership return for a taxable year, the Secretary reasonably determines that this subchapter does not apply to such partnership for such year but such determination is erroneous, then the provisions of this subchapter shall not apply to such partnership (and its items) for such taxable year or to partners of such partnership.

§ **6662**. Imposition of accuracy-related penalty on underpayments

**(a) Imposition of penalty**

If this section applies to any portion of an underpayment of tax required to be shown on a return, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies.

**(b) Portion of underpayment to which section applies**

This section shall apply to the portion of any underpayment which is attributable to 1 or more of the following:

**(1)** Negligence or disregard of rules or regulations.

**(2)** Any substantial understatement of income tax.

**(3)** Any substantial valuation misstatement under chapter 1.

**(4)** Any substantial overstatement of pension liabilities.

**(5)** Any substantial estate or gift tax valuation understatement.

This section shall not apply to any portion of an underpayment on which a penalty is imposed under section 6663. Except as provided in paragraph (1) or (2)(B) of section **6662**A (e), this section shall not apply to the portion of any underpayment which is attributable to a reportable transaction understatement on which a penalty is imposed under section **6662**A.

**(c) Negligence**

For purposes of this section, the term “negligence” includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term “disregard” includes any careless, reckless, or intentional disregard.

**(d) Substantial understatement of income tax**

**(1) Substantial understatement**

**(A) In general**

For purposes of this section, there is a substantial understatement of income tax for any taxable year if the amount of the understatement for the taxable year exceeds the greater of—

**(i)** 10 percent of the tax required to be shown on the return for the taxable year, or

**(ii)** $5,000.

**(B) Special rule for corporations**

In the case of a corporation other than an S corporation or a personal holding company (as defined in section 542), there is a substantial understatement of income tax for any taxable year if the amount of the understatement for the taxable year exceeds the lesser of—

**(i)** 10 percent of the tax required to be shown on the return for the taxable year (or, if greater, $10,000), or

**(ii)** $10,000,000.

**(2) Understatement**

**(A) In general**

For purposes of paragraph (1), the term “understatement” means the excess of—

**(i)** the amount of the tax required to be shown on the return for the taxable year, over

**(ii)** the amount of the tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211 (b)(2)).

The excess under the preceding sentence shall be determined without regard to items to which section **6662**A applies.

**(B) Reduction for understatement due to position of taxpayer or disclosed item**

The amount of the understatement under subparagraph (A) shall be reduced by that portion of the understatement which is attributable to—

**(i)** the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or
**(ii)** any item if—
**(I)** the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return, and
**(II)** there is a reasonable basis for the tax treatment of such item by the taxpayer.
For purposes of clause (ii)(II), in no event shall a corporation be treated as having a reasonable basis for its tax treatment of an item attributable to a multiple-party financing transaction if such treatment does not clearly reflect the income of the corporation.
**(C) Reduction not to apply to tax shelters**
**(i)** In general Subparagraph (B) shall not apply to any item attributable to a tax shelter.
**(ii)** Tax shelter For purposes of clause (i), the term "tax shelter" means—
**(I)** a partnership or other entity,
**(II)** any investment plan or arrangement, or
**(III)** any other plan or arrangement,
if a significant purpose of such partnership, entity, plan, or arrangement is the avoidance or evasion of Federal income tax.
**(3) Secretarial list**
The Secretary may prescribe a list of positions which the Secretary believes do not meet 1 or more of the standards specified in paragraph (2)(B)(i), section 6664 (d)(2), and section 6694 (a)(1). Such list (and any revisions thereof) shall be published in the Federal Register or the Internal Revenue Bulletin.
**(e) Substantial valuation misstatement under chapter 1**
**(1) In general**
For purposes of this section, there is a substantial valuation misstatement under chapter 1 if—
**(A)** the value of any property (or the adjusted basis of any property) claimed on any return of tax imposed by chapter 1 is 200 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be), or
**(B)**
**(i)** the price for any property or services (or for the use of property) claimed on any such return in connection with any transaction between persons described in section 482 is 200 percent or more (or 50 percent or less) of the amount determined under section 482 to be the correct amount of such price, or
**(ii)** the net section 482 transfer price adjustment for the taxable year exceeds the lesser of $5,000,000 or 10 percent of the taxpayer's gross receipts.
**(2) Limitation**
No penalty shall be imposed by reason of subsection (b)(3) unless the portion of the underpayment for the taxable year attributable to substantial valuation misstatements under chapter 1 exceeds $5,000 ($10,000 in the case of a corporation other than an S corporation or a personal holding company (as defined in section 542)).
**(3) Net section 482 transfer price adjustment**
For purposes of this subsection—
**(A) In general**
The term "net section 482 transfer price adjustment" means, with respect to any taxable year, the net increase in taxable income for the taxable year (determined without regard to any amount carried to such taxable year from another taxable year) resulting from adjustments under section 482 in the price for any property or services (or for the use of property).

**(B) Certain adjustments excluded in determining threshold**
For purposes of determining whether the threshold requirements of paragraph (1)(B)(ii) are met, the following shall be excluded:
**(i)** Any portion of the net increase in taxable income referred to in subparagraph (A) which is attributable to any redetermination of a price if—
**(I)** it is established that the taxpayer determined such price in accordance with a specific pricing method set forth in the regulations prescribed under section 482 and that the taxpayer's use of such method was reasonable,
**(II)** the taxpayer has documentation (which was in existence as of the time of filing the return) which sets forth the determination of such price in accordance with such a method and which establishes that the use of such method was reasonable, and
**(III)** the taxpayer provides such documentation to the Secretary within 30 days of a request for such documentation.
**(ii)** Any portion of the net increase in taxable income referred to in subparagraph (A) which is attributable to a redetermination of price where such price was not determined in accordance with such a specific pricing method if—
**(I)** the taxpayer establishes that none of such pricing methods was likely to result in a price that would clearly reflect income, the taxpayer used another pricing method to determine such price, and such other pricing method was likely to result in a price that would clearly reflect income,
**(II)** the taxpayer has documentation (which was in existence as of the time of filing the return) which sets forth the determination of such price in accordance with such other method and which establishes that the requirements of subclause (I) were satisfied, and
**(III)** the taxpayer provides such documentation to the Secretary within 30 days of request for such documentation.
**(iii)** Any portion of such net increase which is attributable to any transaction solely between foreign corporations unless, in the case of any such corporations, the treatment of such transaction affects the determination of income from sources within the United States or taxable income effectively connected with the conduct of a trade or business within the United States.
**(C) Special rule**
If the regular tax (as defined in section 55 (c)) imposed by chapter 1 on the taxpayer is determined by reference to an amount other than taxable income, such amount shall be treated as the taxable income of such taxpayer for purposes of this paragraph.
**(D) Coordination with reasonable cause exception**
For purposes of section 6664 (c) the taxpayer shall not be treated as having reasonable cause for any portion of an underpayment attributable to a net section 482 transfer price adjustment unless such taxpayer meets the requirements of clause (i), (ii), or (iii) of subparagraph (B) with respect to such portion.
**(f) Substantial overstatement of pension liabilities**
**(1) In general**
For purposes of this section, there is a substantial overstatement of pension liabilities if the actuarial determination of the liabilities taken into account for purposes of computing the deduction under paragraph (1) or (2) of section 404 (a) is 200 percent or more of the amount determined to be the correct amount of such liabilities.
**(2) Limitation**
No penalty shall be imposed by reason of subsection (b)(4) unless the portion of the underpayment for the taxable year attributable to substantial overstatements of pension liabilities exceeds $1,000.
**(g) Substantial estate or gift tax valuation understatement**

**(1) In general**
For purposes of this section, there is a substantial estate or gift tax valuation understatement if the value of any property claimed on any return of tax imposed by subtitle B is 50 percent or less of the amount determined to be the correct amount of such valuation.
**(2) Limitation**
No penalty shall be imposed by reason of subsection (b)(5) unless the portion of the underpayment attributable to substantial estate or gift tax valuation understatements for the taxable period (or, in the case of the tax imposed by chapter 11, with respect to the estate of the decedent) exceeds $5,000.
**(h) Increase in penalty in case of gross valuation misstatements**
**(1) In general**
To the extent that a portion of the underpayment to which this section applies is attributable to one or more gross valuation misstatements, subsection (a) shall be applied with respect to such portion by substituting “40 percent” for “20 percent”.
**(2) Gross valuation misstatements**
The term “gross valuation misstatements” means—
**(A)** any substantial valuation misstatement under chapter 1 as determined under subsection (e) by substituting—
**(i)** “400 percent” for “200 percent” each place it appears,
**(ii)** “25 percent” for “50 percent”, and
**(iii)** in paragraph (1)(B)(ii)—
**(I)** “$20,000,000” for “$5,000,000”, and
**(II)** “20 percent” for “10 percent”.
**(B)** any substantial overstatement of pension liabilities as determined under subsection (f) by substituting “400 percent” for “200 percent”, and
**(C)** any substantial estate or gift tax valuation understatement as determined under subsection (g) by substituting “25 percent” for “50 percent”.

# § 6664. Definitions and special rules

**(a) Underpayment**
For purposes of this part, the term "underpayment" means the amount by which any tax imposed by this title exceeds the excess of—
**(1)** the sum of—
**(A)** the amount shown as the tax by the taxpayer on his return, plus
**(B)** amounts not so shown previously assessed (or collected without assessment), over
**(2)** the amount of rebates made.
For purposes of paragraph (2), the term "rebate" means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed was less than the excess of the amount specified in paragraph (1) over the rebates previously made.
**(b) Penalties applicable only where return filed**
The penalties provided in this part shall apply only in cases where a return of tax is filed (other than a return prepared by the Secretary under the authority of section 6020 (b)).
**(c) Reasonable cause exception for underpayments**
**(1) In general**
No penalty shall be imposed under section 6662 or 6663 with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.
**(2) Special rule for certain valuation overstatements**
In the case of any underpayment attributable to a substantial or gross valuation overstatement under chapter 1 with respect to charitable deduction property, paragraph (1) shall not apply unless—
**(A)** the claimed value of the property was based on a qualified appraisal made by a qualified appraiser, and
**(B)** in addition to obtaining such appraisal, the taxpayer made a good faith investigation of the value of the contributed property.
**(3) Definitions**
For purposes of this subsection—
**(A) Charitable deduction property**
The term "charitable deduction property" means any property contributed by the taxpayer in a contribution for which a deduction was claimed under section 170. For purposes of paragraph (2), such term shall not include any securities for which (as of the date of the contribution) market quotations are readily available on an established securities market.
**(B) Qualified appraiser**
The term "qualified appraiser" means any appraiser meeting the requirements of the regulations prescribed under section 170 (a)(1).
**(C) Qualified appraisal**
The term "qualified appraisal" means any appraisal meeting the requirements of the regulations prescribed under section 170 (a)(1).
**(d) Reasonable cause exception for reportable transaction understatements**
**(1) In general**
No penalty shall be imposed under section 6662A with respect to any portion of a reportable transaction understatement if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.

**(2) Special rules**
Paragraph (1) shall not apply to any reportable transaction understatement unless—
**(A)** the relevant facts affecting the tax treatment of the item are adequately disclosed in accordance with the regulations prescribed under section 6011,
**(B)** there is or was substantial authority for such treatment, and
**(C)** the taxpayer reasonably believed that such treatment was more likely than not the proper treatment.
A taxpayer failing to adequately disclose in accordance with section 6011 shall be treated as meeting the requirements of subparagraph (A) if the penalty for such failure was rescinded under section 6707A (d).
**(3) Rules relating to reasonable belief**
For purposes of paragraph (2)(C)—
**(A) In general**
A taxpayer shall be treated as having a reasonable belief with respect to the tax treatment of an item only if such belief—
**(i)** is based on the facts and law that exist at the time the return of tax which includes such tax treatment is filed, and
**(ii)** relates solely to the taxpayer's chances of success on the merits of such treatment and does not take into account the possibility that a return will not be audited, such treatment will not be raised on audit, or such treatment will be resolved through settlement if it is raised.
**(B) Certain opinions may not be relied upon**
**(i)** In general An opinion of a tax advisor may not be relied upon to establish the reasonable belief of a taxpayer if—
**(I)** the tax advisor is described in clause (ii), or
**(II)** the opinion is described in clause (iii).
**(ii)** Disqualified tax advisors A tax advisor is described in this clause if the tax advisor—
**(I)** is a material advisor (within the meaning of section 6111 (b)(1)) and participates in the organization, management, promotion, or sale of the transaction or is related (within the meaning of section 267 (b) or 707 (b)(1)) to any person who so participates,
**(II)** is compensated directly or indirectly by a material advisor with respect to the transaction,
**(III)** has a fee arrangement with respect to the transaction which is contingent on all or part of the intended tax benefits from the transaction being sustained, or
**(IV)** as determined under regulations prescribed by the Secretary, has a disqualifying financial interest with respect to the transaction.
**(iii)** Disqualified opinions For purposes of clause (i), an opinion is disqualified if the opinion—
**(I)** is based on unreasonable factual or legal assumptions (including assumptions as to future events),
**(II)** unreasonably relies on representations, statements, findings, or agreements of the taxpayer or any other person,
**(III)** does not identify and consider all relevant facts, or
**(IV)** fails to meet any other requirement as the Secretary may prescribe.

26 C.F.R. § 1.752-6

Treas. Reg. § 1.752-6

Code of Federal Regulations
Title 26. Internal Revenue
Chapter I. Internal Revenue Service, Department of the Treasury
Subchapter A. Income Tax
Part 1. Income Taxes
Normal Taxes and Surtaxes
Partners and Partnerships K, Chapter 1 of the Code

**§ 1.752-6 Partnership assumption of partner's section 358(h)(3) liability after October 18, 1999, and before June 24, 2003.**

**(a) In general.** If, in a transaction described in section 721(a), a partnership assumes a liability (defined in section 358(h)(3)) of a partner (other than a liability to which section 752(a) and (b) apply), then, after application of section 752(a) and (b), the partner's basis in the partnership is reduced (but not below the adjusted value of such interest) by the amount (determined as of the date of the exchange) of the liability. For purposes of this section, the adjusted value of a partner's interest in a partnership is the fair market value of that interest increased by the partner's share of partnership liabilities under §§ 1.752-1 through 1.752-5.

**(b) Exceptions--(1) In general.** Except as provided in paragraph (b)(2) of this section, the exceptions contained in section 358(h)(2)(A) and (B) apply to this section.

**(2) Transactions described in Notice 2000-44.** The exception contained in section 358(h)(2)(B) does not apply to an assumption of a liability (defined in section 358(h)(3)) by a partnership as part of a transaction described in, or a transaction that is substantially similar to the transactions described in, Notice 2000-44 (2000-2 C.B. 255). See § 601.601(d)(2) of this chapter.

**(c) Example.** The following example illustrates the principles of paragraph (a) of this section:

**Example.** In 1999, A and B form partnership PRS. A contributes property with a value and basis of $200, subject to a nonrecourse debt obligation of $50 and a fixed or contingent obligation of $100 that is not a liability to which section 752(a) and (b) applies, in exchange for a 50% interest in PRS. Assume that, after the contribution, A's share of partnership liabilities under §§ 1.752-1 through 1.752-5 is $25. Also assume that the $100 liability is not associated with a trade or business contributed by A to PRS or with assets contributed by A to PRS. After the contribution, A's basis in PRS is $175 (A's basis in the contributed land ($200) reduced by the nonrecourse debt assumed by PRS ($50), increased by A's share of partnership liabilities under §§ 1.752-1 through 1.752-5 ($25)). Because A's basis in the PRS interest is greater than the adjusted value of A's interest, $75 (the fair market value of A's interest ($50) increased by A's share of partnership liabilities ($25)), paragraph (a) of this section operates to reduce A's basis in the PRS interest (but not below the adjusted value of that interest) by the amount of liabilities described in section 358(h)(3) (other than liabilities to which section 752(a) and (b) apply) assumed by PRS. Therefore, A's basis in PRS is reduced to $75.

**(d) Effective date--(1) In general.** This section applies to assumptions of liabilities occurring after October 18, 1999, and before June 24, 2003.

**(2) Election to apply § 1.752-7.** The partnership may elect, under § 1.752-7(k)(2), to apply the provisions referenced in § 1.752-7(k)(2)(ii) to all assumptions of liabilities by the partnership occurring after October 18, 1999, and before June 24, 2003. Section 1.752-7(k)(2) describes the manner in which the election

26 C.F.R. § 1.752-1

Treas. Reg. § 1.752-1

Code of Federal Regulations

Title 26. Internal Revenue
Chapter I. Internal Revenue Service, Department of the Treasury
Subchapter A. Income Tax

**§ 1.752-1 Treatment of partnership liabilities.**

**(a) Definitions.** For purposes of section 752, the following definitions apply:

**(1) Recourse liability defined.** A partnership liability is a recourse liability to the extent that any partner or related person bears the economic risk of loss for that liability under § 1.752-2.

**(2) Nonrecourse liability defined.** A partnership liability is a nonrecourse liability to the extent that no partner or related person bears the economic risk of loss for that liability under § 1.752-2.

**(3) Related person.** Related person means a person having a relationship to a partner that is described in § 1.752-4(b).

**(4) Liability defined--(i) In general.** An obligation is a liability for purposes of section 752 and the regulations thereunder (§ 1.752-1 liability), only if, when, and to the extent that incurring the obligation--

(A) Creates or increases the basis of any of the obligor's assets (including cash);

(B) Gives rise to an immediate deduction to the obligor; or

(C) Gives rise to an expense that is not deductible in computing the obligor's taxable income and is not properly chargeable to capital.

**(ii) Obligation.** For purposes of this paragraph and § 1.752-7, an obligation is any fixed or contingent obligation to make payment without regard to whether the obligation is otherwise taken into account for purposes of the Internal Revenue Code. Obligations include, but are not limited to, debt obligations, environmental obligations, tort obligations, contract obligations, pension obligations, obligations under a short sale, and obligations under derivative financial instruments such as options, forward contracts, futures contracts, and swaps.

**(iii) Other liabilities.** For obligations that are not § 1.752-1 liabilities, see §§ 1.752-6 and 1.752-7.

**(iv) Effective date.** Except as otherwise provided in § 1.752-7(k), this paragraph (a)(4) applies to liabilities that are incurred or assumed by a partnership on or after June 24, 2003.

**(b) Increase in partner's share of liabilities.** Any increase in a partner's share of partnership liabilities, or any increase in a partner's individual liabilities by reason of the partner's assumption of partnership liabilities, is treated as a contribution of money by

that partner to the partnership.

**(c) Decrease in partner's share of liabilities.** Any decrease in a partner's share of partnership liabilities, or any decrease in a partner's individual liabilities by reason of the partnership's assumption of the individual liabilities of the partner, is treated as a distribution of money by the partnership to that partner.

**(d) Assumption of liability.** Except as otherwise provided in paragraph (e) of this section, a person is considered to assume a liability only to the extent that:

**(1)** The assuming person is personally obligated to pay the liability; and

**(2)** If a partner or related person assumes a partnership liability, the person to whom the liability is owed knows of the assumption and can directly enforce the partner's or related person's obligation for the liability, and no other partner or person that is a related person to another partner would bear the economic risk of loss for the liability immediately after the assumption.

**(e) Property subject to a liability.** If property is contributed by a partner to the partnership or distributed by the partnership to a partner and the property is subject to a liability of the transferor, the transferee is treated as having assumed the liability, to the extent that the amount of the liability does not exceed the fair market value of the property at the time of the contribution or distribution.

**(f) Netting of increases and decreases in liabilities resulting from same transaction.** If, as a result of a single transaction, a partner incurs both an increase in the partner's share of the partnership liabilities (or the partner's individual liabilities) and a decrease in the partner's share of the partnership liabilities (or the partner's individual liabilities), only the net decrease is treated as a distribution from the partnership and only the net increase is treated as a contribution of money to the partnership. Generally, the contribution to or distribution from a partnership of property subject to a liability or the termination of the partnership under section 708(b) will require that increases and decreases in liabilities associated with the transaction be netted to determine if a partner will be deemed to have made a contribution or received a distribution as a result of the transaction. When two or more partnerships merge or consolidate under section 708(b)(2)(A), as described in § 1.708-1(c)(3)(i), increases and decreases in partnership liabilities associated with the merger or consolidation are netted by the partners in the terminating partnership and the resulting partnership to determine the effect of the merger under section 752.

**(g) Example.** The following example illustrates the principles of paragraphs (b), (c), (e), and (f) of this section.

**Example 1.** Property contributed subject to a liability; netting of increase and decrease in partner's share of liability. B contributes property with an adjusted basis of $1,000 to a general partnership in exchange for a one-third interest in the partnership. At the time of the contribution, the partnership does not have any liabilities outstanding and the property is subject to a recourse debt of $150 and has a fair market value in excess of $150. After the contribution, B remains personally liable to the creditor and none of the other partners bears any of the economic risk of loss for the liability under state law or otherwise. Under paragraph (e) of this section, the partnership is treated as having assumed the $150 liability. As a result, B's individual liabilities decrease by $150. At the same time, however, B's share of liabilities of the partnership increases by $150. Only the net increase or decrease in B's share of the liabilities of the partnership and B's individual liabilities is taken into account in applying section 752. Because there is no net change, B is not treated as having contributed money to the partnership or as having

received a distribution of money from the partnership under paragraph (b) or (c) of this section. Therefore B's basis for B's partnership interest is $1,000 (B's basis for the contributed property).

**Example 2.** Merger or consolidation of partnerships holding property encumbered by liabilities. (i) B owns a 70 percent interest in partnership T. Partnership T's sole asset is property X, which is encumbered by a $900 liability. Partnership T's adjusted basis in property X is $600, and the value of property X is $1,000. B's adjusted basis in its partnership T interest is $420. B also owns a 20 percent interest in partnership S. Partnership S's sole asset is property Y, which is encumbered by a $100 liability. Partnership S's adjusted basis in property Y is $200, the value of property Y is $1,000, and B's adjusted basis in its partnership S interest is $40.

(ii) Partnership T and partnership S merge under section 708(b)(2)(A). Under section 708(b)(2)(A) and § 1.708-1(c)(1), partnership T is considered terminated and the resulting partnership is considered a continuation of partnership S. Partnerships T and S undertake the form described in § 1.708-1(c)(3)(i) for the partnership merger. Under § 1.708-1(c)(3)(i), partnership T contributes property X and its $900 liability to partnership S in exchange for an interest in partnership S. Immediately thereafter, partnership T distributes the interests in partnership S to its partners in liquidation of their interests in partnership T. B owns a 25 percent interest in partnership S after partnership T distributes the interests in partnership S to B.

(iii) Under paragraph (f) of this section, B nets the increases and decreases in its share of partnership liabilities associated with the merger of partnership T and partnership S. Before the merger, B's share of partnership liabilities was $650 (B had a $630 share of partnership liabilities in partnership T and a $20 share of partnership liabilities in partnership S immediately before the merger). B's share of S's partnership liabilities after the merger is $250 (25 percent of S's total partnership liabilities of $1,000). Accordingly, B has a $400 net decrease in its share of S's partnership liabilities. Thus, B is treated as receiving a $400 distribution from partnership S under section 752(b). Because B's adjusted basis in its partnership S interest before the deemed distribution under section 752(b) is $460 ($420 + $40), B will not recognize gain under section 731. After the merger, B's adjusted basis in its partnership S interest is $60.

**(h) Sale or exchange of a partnership interest.** If a partnership interest is sold or exchanged, the reduction in the transferor partner's share of partnership liabilities is treated as an amount realized under section 1001 and the regulations thereunder. For example, if a partner sells an interest in a partnership for $750 cash and transfers to the purchaser the partner's share of partnership liabilities in the amount of $250, the seller realizes $1,000 on the transaction.

**(i) Bifurcation of partnership liabilities.** If one or more partners bears the economic risk of loss as to part, but not all, of a partnership liability represented by a single contractual obligation, that liability is treated as two or more separate liabilities for purposes of section 752. The portion of the liability as to which one or more partners bear the economic risk of loss is a recourse liability and the remainder of the liability, if any, is a nonrecourse liability.

[T.D. 8380, 56 FR 66351, Dec. 23, 1991; T.D. 8925, 66 FR 723, Jan. 4, 2001; T.D. 9207, 70 FR 30343, May 26, 2005]

26 C.F.R. § 1.752-7

Treas. Reg. § 1.752-7

Code of Federal Regulations
Title 26. Internal Revenue
Chapter I. Internal Revenue Service, Department of the Treasury
Subchapter A. Income Tax
Part 1. Income Taxes
§ 1.752-7 Partnership assumption of partner's § 1.752-7 liability on or after June 24, 2003.

(a) Purpose and structure. The purpose of this section is to prevent the acceleration or duplication of loss through the assumption of obligations not described in § 1.752-1(a)(4)(i) in transactions involving partnerships. Under paragraph (c) of this section, any such obligation that is assumed by a partnership from a partner in a transaction governed by section 721(a) is treated as section 704(c) property. Paragraphs (e), (f), and (g) of this section provide rules for situations where a partnership assumes such an obligation from a partner and, subsequently, that partner transfers all or part of the partnership interest, that partner receives a distribution in liquidation of the partnership interest, or another partner assumes part or all of that obligation from the partnership. These rules prevent the duplication of loss by prohibiting the partnership and any person other than the partner from whom the obligation was assumed from claiming a deduction, loss, or capital expense to the extent of the built-in loss associated with the obligation. These rules also prevent the acceleration of loss by deferring the partner's deduction or loss attributable to the obligation (if any) until the satisfaction of the § 1.752-7 liability (within the meaning of paragraph (b)(8) of this section). Paragraph (d) of this section provides a number of exceptions to paragraphs (e), (f), and (g) of this section, including a de minimis exception. Paragraph (i) provides a special rule for situations in which an amount paid to satisfy a § 1.752-7 liability is capitalized into other partnership property. Paragraph (j) of this section provides special rules for tiered partnership transactions.

(b) Definitions. For purposes of this section, the following definitions apply:
(1) Assumption. The principles of § 1.752-1(d) and (e) apply in determining if a § 1.752-7 liability has been assumed.

(2) Adjusted value. The adjusted value of a partner's interest in a partnership is the fair market value of that interest increased by the partner's share of partnership liabilities under §§ 1.752-1 through 1.752-5.

(3) § 1.752-7 liability--(i) In general. A § 1.752-7 liability is an obligation described in § 1.752-1(a)(4)(ii) to the extent that either--

(A) The obligation is not described in § 1.752-1(a)(4)(i); or

(B) The amount of the obligation (under paragraph (b)(3)(ii) of this section) exceeds the amount taken into account under § 1.752-1(a)(4)(i).

(ii) Amount and share of § 1.752-7 liability. The amount of a § 1.752-7 liability (or, for purposes of paragraph (b)(3)(i) of this section, the amount of an obligation) is the amount of cash that a willing assignor would pay to a willing assignee to assume the § 1.752-7 liability in an arm's-length transaction. If the obligation arose under a

contract in exchange for rights granted to the obligor under that contract, and those contractual rights are contributed to the partnership in connection with the partnership's assumption of the contractual obligation, then the amount of the § 1.752-7 liability or obligation is the amount of cash, if any, that a willing assignor would pay to a willing assignee to assume the entire contract. A partner's share of a partnership's § 1.752-7 liability is the amount of deduction that would be allocated to the partner with respect to the § 1.752-7 liability if the partnership disposed of all of its assets, satisfied all of its liabilities (other than § 1.752-7 liabilities), and paid an unrelated person to assume all of its § 1.752-7 liabilities in a fully taxable arm's-length transaction (assuming such payment would give rise to an immediate deduction to the partnership).

(iii) Example. In 2005, A, B, and C form partnership PRS. A contributes $10,000,000 in exchange for a 25% interest in PRS and PRS's assumption of a debt obligation. The debt obligation was issued for cash and the issue price was equal to the stated redemption price at maturity ($5,000,000). The debt obligation bears interest, payable quarterly, at a fixed rate of interest, which was a market rate of interest when the debt obligation was issued. At the time of the assumption, all accrued interest has been paid. Prior to the partnership assuming the obligation, interest rates decrease, resulting in the debt obligation bearing an above-market interest rate. Assume that, as a result of the decline in interest rates, A would have had to pay a willing assignee $6,000,000 to assume the debt obligation. The assumption of the debt obligation by PRS from A is treated as an assumption of a § 1.752-1(a)(4)(i) liability in the amount of $5,000,000 (the portion of the total amount of the debt obligation that has created basis in A's assets, that is, the $5,000,000 that was issued in exchange for the debt obligation ) and an assumption of a § 1.752-7 liability in the amount of $1,000,000 (the difference between the total obligation, $6,000,000, and the § 1.752-1(a)(4)(i)liability, $5,000,000).

(4) § 1.752-7 liability transfer--(i) In general. Except as provided in paragraph (b)(4)(ii) of this section, a § 1.752-7 liability transfer is any assumption of a § 1.752-7 liability by a partnership from a partner in a transaction governed by section 721(a).

(ii) Terminations under section 708(b)(1)(B). In determining if a deemed contribution of assets and assumption of liability as a result of a technical termination is treated as a § 1.752-7 liability transfer, only § 1.752-7 liabilities that were assumed by the terminating partnership as part of an earlier § 1.752-7 liability transfer are taken into account and, then, only to the extent of the remaining built-in loss associated with that § 1.752-7 liability.

(5) § 1.752-7 liability partner--(i) In general. A § 1.752-7 liability partner is a partner from whom a partnership assumes a § 1.752-7 liability as part of a § 1.752-7 liability transfer or any person who acquires a partnership interest from the § 1.752-7 liability partner in a transaction to which paragraph (e)(3) of this section applies.

(ii) Tiered partnerships--(A) Assumption by a lower-tier partnership. If, in a § 1.752-7 liability transfer, a partnership (lower-tier partnership) assumes a § 1.752-7 liability from another partnership (upper-tier partnership), then both the upper-tier partnership and the partners of the upper-tier partnership are § 1.752-7 liability partners. Therefore, paragraphs (e) and (f) of this section apply on a sale or liquidation of any partner's interest in the upper-tier partnership and on a sale or

liquidation of the upper-tier partnership's interest in the lower-tier partnership. See paragraph (j)(3) of this section. If, in a § 1.752-7 liability transfer, the upper-tier partnership assumes a § 1.752-7 liability from a partner, and, subsequently, in another § 1.752-7 liability transfer, a lower-tier partnership assumes that § 1.752-7 liability from the upper-tier partnership, then the partner from whom the upper-tier partnership assumed the § 1.752-7 liability continues to be the § 1.752-7 liability partner of the lower-tier partnership with respect to the remaining built-in loss associated with that § 1.752-7 liability. Any new built-in loss associated with the § 1.752-7 liability that is created on the assumption of the § 1.752-7 liability from the upper-tier partnership by the lower-tier partnership is shared by all the partners of the upper-tier partnership in accordance with their interests in the upper-tier partnership, and each partner of the upper-tier partnership is treated as a § 1.752-7 liability partner with respect to that new built-in loss. See paragraph (e)(3)(ii), Example 3 of this section.

(B) Distribution of partnership interest. If, in a transaction described in § 1.752-7(e)(3), an interest in a partnership (lower-tier partnership) that has assumed a § 1.752-7 liability is distributed by a partnership (upper- tier partnership) that is the § 1.752-7 liability partner with respect to that liability, then the persons receiving interests in the lower-tier partnership are § 1.752-7 liability partners with respect to the lower-tier partnership to the same extent that they were prior to the distribution.

(6) Remaining built-in loss associated with a § 1.752-7 liability. (i) In general. The remaining built-in loss associated with a § 1.752-7 liability equals the amount of the § 1.752-7 liability as of the time of the assumption of the § 1.752-7 liability by the partnership, reduced by the portion of the § 1.752-7 liability previously taken into account by the § 1.752-7 liability partner under paragraph (j)(3) of this section and adjusted as provided in paragraph (c) of this section and § 1.704-3 for--

(A) Any portion of that built-in loss associated with the § 1.752-7 liability that is satisfied by the partnership on or prior to the testing date (whether capitalized or deducted); and

(B) Any assumption of all or part of the § 1.752-7 liability by the § 1.752-7 liability partner (including any assumption that occurs on the testing date).

(ii) Partial dispositions and assumptions. In the case of a partial disposition of the § 1.752-7 liability partner's partnership interest or a partial assumption of the § 1.752-7 liability by another partner, the remaining built-in loss associated with § 1.752-7 liability is pro rated based on the portion of the interest sold or the portion of the § 1.752-7 liability assumed.

(7) § 1.752-7 liability reduction--(i) In general. The § 1.752-7 liability reduction is the amount by which the § 1.752-7 liability partner is required to reduce the basis in the partner's partnership interest by operation of paragraphs (e), (f), and (g) of this section. The § 1.752-7 liability reduction is the lesser of--

(A) The excess of the § 1.752-7 liability partner's basis in the partnership interest over the adjusted value of that interest (as defined in paragraph (b)(2) of this section); or

(B) The remaining built-in loss associated with the § 1.752-7 liability (as defined in paragraph (b)(6) of this section without regard to paragraph (b)(6)(ii) of this section).

(ii) Partial dispositions and assumptions. In the case of a partial disposition of the § 1.752-7 liability partner's partnership interest or a partial assumption of the § 1.752-7 liability by another partner, the § 1.752-7 liability reduction is pro rated based on the portion of the interest sold or the portion of the § 1.752-7 liability assumed.

(8) Satisfaction of § 1.752-7 liability--In general. A § 1.752-7 liability is treated as satisfied (in whole or in part) on the date on which the partnership (or the assuming partner) would have been allowed to take the § 1.752-7 liability into account for federal tax purposes but for this section. For example, a § 1.752-7 liability is treated as satisfied when, but for this section, the § 1.752-7 liability would give rise to--

(i) An increase in the basis of the partnership's or the assuming partner's assets (including cash);

(ii) An immediate deduction to the partnership or to the assuming partner;

(iii) An expense that is not deductible in computing the partnership's or the assuming partner's taxable income and not properly chargeable to capital account; or

(iv) An amount realized on the sale or other disposition of property subject to that liability if the property was disposed of by the partnership or the assuming partner at that time.

(9) Testing date. The testing date is--

(i) For purposes of paragraph (e) of this section, the date of the sale, exchange, or other disposition of part or all of the § 1.752-7 liability partner's partnership interest;

(ii) For purposes of paragraph (f) of this section, the date of the partnership's distribution in liquidation of the § 1.752-7 liability partner's partnership interest; and

(iii) For purposes of paragraph (g) of this section, the date of the assumption (or partial assumption) of the § 1.752-7 liability by a partner other than the § 1.752-7 liability partner.

(10) Trade or business--(i) In general. A trade or business is a specific group of activities carried on by a person for the purpose of earning income or profit, other than a group of activities consisting of acquiring, holding, dealing in, or disposing of financial instruments, if the activities included in that group include every operation that forms a part of, or a step in, the process of earning income or profit. Such group of activities ordinarily includes the collection of income and the payment of expenses. The group of activities must constitute the carrying on of a trade or business under section 162(a) (determined as though the activities were conducted by an individual).

(ii) Examples. The following examples illustrate the provisions of this paragraph (b)(10):

Example 1. Corporation Y owns, manages, and derives rental income from an office building and also owns vacant land that may be subject to environmental liabilities. Corporation Y contributes the land subject to the environmental liabilities to PRS in a transaction governed by section 721(a). PRS plans to develop the land as a landfill. The contribution of the vacant land does not constitute the contribution of a trade or business because Corporation Y did not conduct any significant business or development activities with respect to the land prior to the contribution.

Example 2. For the past 5 years, Corporation X has owned and operated gas stations in City A, City B, and City C. Corporation X transfers all of the assets associated with the operation of the gas station in City A to PRS for interests in PRS and the assumption by PRS of the § 1.752-7 liabilities associated with that gas station. PRS continues to operate the gas station in City A after the contribution. The contribution of the gas station to PRS constitutes the contribution of a trade or business.

Example 3. For the past 7 years, Corporation Z has engaged in the manufacture and sale of household products. Throughout this period, Corporation Z has maintained a research department for use in connection with its manufacturing activities. The research department has 10 employees actively engaged in the development of new products. Corporation Z contributes the research department to PRS in exchange for a PRS interest and the assumption by PRS of pension liabilities with respect to the employees of the research department. PRS continues the research operations on a contractual basis with several businesses, including Corporation Z. The contribution of the research operations to PRS constitutes a contribution of a trade or business.

(c) Application of section 704(b) and (c) to assumed § 1.752-7 liabilities--(1) In general--(i) Section 704(c). Except as otherwise provided in this section, sections 704(c)(1)(A) and (B), section 737, and the regulations thereunder, apply to § 1.752-7 liabilities. See § 1.704-3(a)(12). However, § 1.704-3(a)(7) does not apply to any person who acquired a partnership interest from a § 1.752-7 liability partner in a transaction to which paragraph (e)(1) of this section applies.
(ii) Section 704(b). Section 704(b) and § 1.704-1(b) apply to a post-contribution change in the value of a § 1.752-7 liability. If there is a decrease in the value of a § 1.752-7 liability that is reflected in the capital accounts of the partners under § 1.704-1(b)(2)(iv)(f), the amount of the decrease constitutes an item of income for purposes of section 704(b) and § 1.704-1(b). Conversely, if there is an increase in the value of a § 1.752-7 liability that is reflected in the capital accounts of the partners under § 1.704-1(b)(2)(iv)(f), the amount of the increase constitutes an item of loss for purposes of section 704(b) and § 1.704- 1(b).

(2) Example. The following example illustrates the provisions of this paragraph (c):

Example--(i) Facts. In 2004, A, B, and C form partnership PRS. A contributes Property 1 with a fair market value and basis of $400X, subject to a § 1.752-7 liability of $100X, for a 25% interest in PRS. B contributes $300X cash for a 25% interest in PRS, and C contributes $600X cash for a 50% interest in PRS. Assume that the partnership complies with the substantial economic effect safe harbor of § 1.704-1(b)(2). Under § 1.704-1(b)(2)(iv)(b), A's capital account is credited with $300X (the fair market value of Property 1, $400X, less the § 1.752-7 liability assumed by PRS, $100X). In accordance with §§ 1.752-7(c)(1)(i) and 1.704-3, the partnership can use any reasonable method for section 704(c) purposes. In this case, the partnership elects the traditional method under § 1.704-3(b) and also elects to treat the deductions or losses attributable to the § 1.752-7 liability as

coming first from the built-in loss. In 2005, PRS earns $200X of income and uses it to satisfy the § 1.752-7 liability which has increased in value to $200X. Assume that the cost to PRS of satisfying the § 1.752-7 liability is deductible by PRS. The $200X of partnership income is allocated according to the partnership agreement, $50X to A, $50X to B, and $100X to C.

Image 1 (1.25" X 6") Available for Offline Print

(ii) Analysis. Pursuant to paragraph (c) of this section, $100X of the deduction attributable to the satisfaction of the § 1.752-7 liability is specially allocated to A, the § 1.752-7 liability partner, under section 704(c)(1)(A) and § 1.704-3. No book item corresponds to this tax allocation. The remaining $100X of deduction attributable to the satisfaction of the § 1.752-7 liability is allocated, for both book and tax purposes, according to the partnership agreement, $25X to A, $25X to B, and $50X to C. If the partnership, instead, satisfied the § 1.752-7 liability over a number of years, the first $100X of deduction with respect to the § 1.752-7 liability would be allocated to A, the § 1.752-7 liability partner, before any deduction with respect to the § 1.752-7 liability would be allocated to the other partners. For example, if PRS were to satisfy $50X of the § 1.752-7 liability, the $50X deduction with respect to the § 1.752-7 liability would be allocated to A for tax purposes only. No deduction would arise for book purposes. If PRS later paid a further $100X in satisfaction of the § 1.752-7 liability, $50X of the deduction with respect to the § 1.752-7 liability would be allocated, solely for tax purposes, to A and the remaining $50X would be allocated, for both book and tax purposes, according to the partnership agreement. Under these circumstances, the partnership's method of allocating the built-in loss associated with the § 1.752-7 liability is reasonable.

(d) Special rules for transfers of partnership interests, distributions of partnership assets, and assumptions of the § 1.752-7 liability after a § 1.752-7 liability transfer--
(1) In general. Except as provided in paragraphs (d)(2) and (i) of this section, paragraphs (e), (f), and (g) of this section apply to certain partnership transactions occurring after a § 1.752-7 liability transfer.
(2) Exceptions--(i) In general. Paragraphs (e), (f), and (g) of this section do not apply--

(A) If the partnership assumes the § 1.752-7 liability as part of a contribution to the partnership of the trade or business with which the liability is associated, and the partnership continues to carry on that trade or business after the contribution (for the definition of a trade or business, see paragraph (b)(10) of this section); or

(B) If, immediately before the testing date, the amount of the remaining built-in loss with respect to all § 1.752-7 liabilities assumed by the partnership (other than § 1.752-7 liabilities assumed by the partnership with an associated trade or business) in one or more § 1.752-7 liability transfers is less than the lesser of 10% of the gross value of partnership assets or $1,000,000.

(ii) Examples. The following examples illustrate the principles of this paragraph (d)(2):

Example 1. For the past 5 years, Corporation X, a C corporation, has been engaged in Business A and Business B. In 2004, Corporation X contributes Business A, in a transaction governed by section 721(a), to PRS in exchange for a PRS interest and the assumption by PRS of pension liabilities with respect to the employees engaged

in Business A. PRS plans to carry on Business A after the contribution. Because PRS has assumed the pension liabilities as part of a contribution to PRS of the trade or business with which the liabilities are associated, the treatment of the pension liabilities is not affected by paragraphs (e), (f), and (g) of this section with respect to any transaction occurring after the § 1.752-7 liability transfer of the pension liabilities.

Example 2. (i) Facts. The facts are the same as in Example 1, except that PRS also assumes from Corporation X certain pension liabilities with respect to the employees of Business B. At the time of the assumption, the amount of the pension liabilities with respect to the employees of Business A is $3,000,000 (the A liabilities) and the amount of the pension liabilities associated with the employees of Business B (the B liabilities) is $2,000,000. Two years later, Corporation X sells its interest in PRS to Y for $9,000,000. At the time of the sale, the remaining built-in loss associated with the A liabilities is $2,100,000, the remaining built-in loss associated with the B liabilities is $900,000, and the gross value of PRS's assets (excluding § 1.752-7 liabilities) is $20,000,000. Assume that PRS has no § 1.752-7 liabilities other than those assumed from Corporation X.

(ii) Analysis. The only liabilities assumed by PRS from Corporation X that were not assumed as part of Corporation X's contribution of Business A were the B liabilities. Immediately before the testing date, the remaining built-in loss associated with the B liabilities ($900,000) was less than the lesser of 10% of the gross value of PRS's assets ($2,000,000) or $1,000,000. Therefore, paragraph (d)(2)(i)(B) of this section applies to exclude Corporation X's sale of the PRS interest to Y from the application of paragraph (e) of this section.

(e) Transfer of § 1.752-7 liability partner's partnership interest--(1) In general. Except as provided in paragraphs (d)(2), (e)(3), and (i) of this section, immediately before the sale, exchange, or other disposition of all or a part of a § 1.752-7 liability partner's partnership interest, the § 1.752-7 liability partner's basis in the partnership interest is reduced by the § 1.752-7 liability reduction (as defined in paragraph (b)(7) of this section). No deduction, loss, or capital expense is allowed to the partnership on the satisfaction of the § 1.752-7 liability (within the meaning of paragraph (b)(8) of this section) to the extent of the remaining built-in loss associated with the § 1.752-7 liability (as defined in paragraph (b)(6) of this section). For purposes of section 705(a)(2)(B) and § 1.704- 1(b)(2)(ii)(b) only, the remaining built-in loss associated with the § 1.752-7 liability is not treated as a nondeductible, noncapital expenditure of the partnership. Therefore, the remaining partners' capital accounts and bases in their partnership interests are not reduced by the remaining built-in loss associated with the § 1.752-7 liability. If the partnership (or any successor) notifies the § 1.752-7 liability partner of the satisfaction of the § 1.752-7 liability, then the § 1.752-7 liability partner is entitled to a loss or deduction. The amount of that deduction or loss is, in the case of a partial satisfaction of the § 1.752-7 liability, the amount that the partnership would, but for this section, take into account on the partial satisfaction of the § 1.752-7 liability (but not, in total, more than the § 1.752-7 liability reduction) or, in the case of a complete satisfaction of the § 1.752-7 liability, the remaining § 1.752-7 liability reduction. To the extent of the amount that the partnership would, but for this section, take into account on the satisfaction of the § 1.752-7 liability, the character of that deduction or loss is determined as if the § 1.752-7 liability partner had satisfied the liability. To the extent that the § 1.752-7 liability reduction exceeds the amount that the partnership

would, but for this section, take into account on the satisfaction of the § 1.752-7 liability, the character of the § 1.752-7 liability partner's loss is capital.
(2) Examples. The following examples illustrate the principles of paragraph (e)(1) of this section:

Example 1. (i) Facts. In 2004, A, B, and C form partnership PRS. A contributes Property 1 with a fair market value of $5,000,000 and basis of $4,000,000 subject to a § 1.752-7 liability of $2,000,000 in exchange for a 25% interest in PRS. B contributes $3,000,000 cash in exchange for a 25% interest in PRS, and C contributes $6,000,000 cash in exchange for a 50% interest in PRS. In 2006, when PRS has a section 754 election in effect, A sells A's interest in PRS to D for $3,000,000. At the time of the sale, the basis of A's PRS interest is $4,000,000, the remaining built-in loss associated with the § 1.752-7 liability is $2,000,000, and PRS has no liabilities (as defined in § 1.752-1(a)(4)). Assume that none of the exceptions of paragraph (d)(2) of this section apply and that the satisfaction of the § 1.752-7 liability would have given rise to a deductible expense to A. In 2007, PRS pays $3,000,000 to satisfy the liability.

(ii) Sale of A's PRS interest. Immediately before the sale of the PRS interest to D, A's basis in the PRS interest is reduced (to $3,000,000) by the § 1.752-7 liability reduction, i.e., the lesser of the excess of A's basis in the PRS interest ($4,000,000) over the adjusted value of that interest ($3,000,000), $1,000,000, or the remaining built-in loss associated with the § 1.752-7 liability, $2,000,000. Therefore, A neither realizes nor recognizes any gain or loss on the sale of the PRS interest to D. D's basis in the PRS interest is $3,000,000. D's share of the adjusted basis of partnership property, as determined under § 1.743-1(d), equals D's interest in the partnership's previously taxed capital of $2,000,000 (the amount of cash that D would receive on a liquidation of the partnership, $3,000,000, increased by the amount of tax loss that would be allocated to D in the hypothetical transaction, $0, and reduced by the amount of tax gain that would be allocated to D in the hypothetical transaction, $1,000,000). Therefore, the positive basis adjustment under section 743(b) is $1,000,000.

Image 4 (3" X 5.25") Available for Offline Print

(iii) Satisfaction of § 1.752-7 liability. Neither PRS nor any of its partners is entitled to a deduction, loss, or capital expense upon the satisfaction of the § 1.752-7 liability to the extent of the remaining built-in loss associated with the § 1.752-7 liability ($2,000,000). PRS is entitled to a deduction, however, for the amount by which the cost of satisfying the § 1.752-7 liability exceeds the remaining built-in loss associated with the § 1.752-7 liability. Therefore, in 2007, PRS may deduct $1,000,000 (cost to satisfy the § 1.752-7 liability, $3,000,000, less the remaining built-in loss associated with the § 1.752-7 liability, $2,000,000). If PRS notifies A of the satisfaction of the § 1.752-7 liability, then A is entitled to an ordinary deduction in 2007 of $1,000,000 (the § 1.752-7 liability reduction).

Example 2. The facts are the same as in Example 1 except that, at the time of A's sale of the PRS interest to D, PRS has a nonrecourse liability of $4,000,000, of which A's share is $1,000,000. A's basis in PRS is $5,000,000. At the time of the sale of the PRS interest to D, the adjusted value of A's interest is $4,000,000 (the fair market value of the interest ($3,000,000), increased by A's share of partnership liabilities ($1,000,000)). The difference between the basis of A's interest ($5,000,000) and the

adjusted value of that interest ($4,000,000) is $1,000,000. Therefore, the § 1.752-7 liability reduction is $1,000,000 (the lesser of this difference or the remaining built-in loss associated with the § 1.752-7 liability, $2,000,000). Immediately before the sale of the PRS interest to D, A's basis is reduced from $5,000,000 to $4,0000,000. A's amount realized on the sale of the PRS interest to D is $4,000,000 ($3,000,000 paid by D, increased under section 752(d) by A's share of partnership liabilities, or $1,000,000). Therefore, A neither realizes nor recognizes any gain or loss on the sale. D's basis in the PRS interest is $4,000,000. Because D's share of the adjusted basis of partnership property is $3,000,000 (D's share of the partnership's previously taxed capital, $2,000,000, plus D's share of partnership liabilities, $1,000,000), the basis adjustment under section 743(b) is $1,000,000.

Example 3. The facts are the same as in Example 1, except that the satisfaction of the § 1.752-7 liability would have given rise to a capital expense to A or PRS. Neither PRS nor any of its partners are entitled to a capital expense upon the satisfaction of the § 1.752-7 liability to the extent of the remaining built-in loss associated with the § 1.752-7 liability ($2,000,000). PRS may, however, increase the basis of appropriate partnership assets by the amount by which the cost of satisfying the § 1.752-7 liability exceeds the remaining built-in loss associated with the § 1.752-7 liability. Therefore, in 2007, PRS may capitalize $1,000,000 (cost to satisfy the § 1.752-7 liability, $3,000,000, less the remaining built-in loss associated with the § 1.752-7 liability, $2,000,000) to the appropriate partnership assets. If A is notified by PRS that the § 1.752-7 liability has been satisfied, then A is entitled to a capital loss in 2007 as provided in paragraph (e)(1) of this section, the year of the satisfaction of the § 1.752-7 liability.

(3) Exception for nonrecognition transactions--(i) In general. Paragraph (e)(1) of this section does not apply where a § 1.752-7 liability partner transfers all or part of the partner's partnership interest in a transaction in which the transferee's basis in the partnership interest is determined in whole or in part by reference to the transferor's basis in the partnership interest. In addition, paragraph (e)(1) of this section does not apply to a distribution of an interest in the partnership (lower-tier partnership) that has assumed the § 1.752-7 liability by a partnership that is the § 1.752-7 liability partner (upper-tier partnership) if the partners of the upper-tier partnership that were § 1.752-7 liability partners with respect to the lower-tier partnership prior to the distribution continue to be § 1.752-7 liability partners with respect to the lower-tier partnership after the distribution. See paragraphs (b)(4)(ii) and (j)(3) of this section for rules on the application of this section to partners of the § 1.752-7 liability partner.

(ii) Examples. The following examples illustrate the provisions of this paragraph (e)(3):

Example 1. Transfer of partnership interest to lower-tier partnership. (i) Facts. In 2004, X contributes undeveloped land with a value and basis of $2,000,000 and subject to environmental liabilities of $1,500,000 to partnership LTP in exchange for a 50% interest in LTP. LTP develops the land as a landfill. In 2005, in a transaction governed by section 721(a), X contributes the LTP interest to UTP in exchange for a 50% interest in UTP. In 2008, X sells the UTP interest to A for $500,000. At the time of the sale, X's basis in UTP is $2,000,000, the remaining built-in loss associated with the environmental liability is $1,500,000, and the gross value of UTP's assets is $2,500,000. The environmental liabilities were not assumed by LTP as part of a

contribution by X to LTP of a trade or business with which the liabilities were associated. (See paragraph (b)(10)(ii), Example 1 of this section.)

(ii) Analysis. Because UTP's basis in the LTP interest is determined by reference to X's basis in the LTP interest, X's contribution of the LTP interest to UTP is exempted from the rules of paragraph (e)(1) of this section. Under paragraph (j)(1) of this section, X's contribution of the LTP interest to UTP is treated as a contribution of X's share of the assets of LTP and UTP's assumption of X's share of the LTP liabilities (including § 1.752- 7 liabilities). Therefore, X's transfer of the LTP interest to UTP is a § 1.752-7 liability transfer. The § 1.752-7 liabilities deemed transferred by X to UTP are not associated with a trade or business transferred to UTP for purposes of paragraph (d)(2)(i)(A) of this section, because they were not associated with a trade or business transferred by X to LTP as part of the original § 1.752-7 liability transfer. See paragraph (j)(2) of this section. Because none of the exceptions described in paragraph (d)(2) of this section apply to X's taxable sale of the UTP interest to A in 2008, paragraph (e)(1) of this section applies to that sale.

Example 2. Transfer of partnership interest to corporation. The facts are the same as in Example 1, except that, rather than transferring the LTP interest to UTP in 2005, X contributes the LTP interest to Corporation Y in an exchange to which section 351 applies. Because Corporation Y's basis in the LTP interest is determined by reference to X's basis in that interest, X's contribution of the LTP interest is exempted from the rules of paragraph (e)(1) of this section. But see section 358(h) and § 1.358-7 for appropriate basis adjustments.

Example 3. Partnership merger. (i) Facts. In 2004, A, B, C, and D form equal partnership PRS1. A contributes Blackacre with a value and basis of $2,000,000 to PRS1 and PRS1 assumes from A $1,500,000 of pension liabilities unrelated to Blackacre. B, C, and D each contribute $500,000 cash to PRS1. PRS1 uses the cash contributed by B, C, and D ($1,500,000) to purchase Whiteacre. In 2006, PRS1 merges into PRS2 in an assets-over merger under § 1.708-1(c)(3). Assume that, under § 1.708-1(c), PRS2 is the surviving partnership and PRS1 is the terminating partnership. At the time of the merger, the value of Blackacre is still $2,000,000, the remaining built-in loss with respect to the pension liabilities is still $1,500,000, but the value of Whiteacre has declined to $500,000.

(ii) Deemed assumption by PRS2 of PRS1 liabilities. Under § 1.708-1(c)(3), the merger is treated as a contribution of the assets and liabilities of PRS1 to PRS2, followed by a distribution of the PRS2 interests by PRS1 in liquidation of PRS1. Because PRS2 assumes a § 1.752-7 liability (the pension liabilities) of PRS1, PRS1 is a § 1.752-7 liability partner of PRS2. Under paragraph (b)(5)(ii)(A) of this section, A is also § 1.752-7 liability partner of PRS2 to the extent of the remaining $1,500,000 built-in loss associated with the pension liabilities. B, C, and D are not § 1.752-7 liability partners with respect to PRS1. If the amount of the pension liabilities had increased between the date of PRS1's assumption of those liabilities from A and the date of the merger of PRS1 into PRS2, then B, C, and D would be § 1.752-7 liability partners with respect to PRS2 to the extent of their respective shares of that increase. See paragraph (b)(5)(ii) of this section.

(iii) Deemed distribution of PRS2 interests. Paragraph (e)(1) does not apply to PRS1's deemed distribution of the PRS2 interests, because, under paragraph (b)(5)(ii)(B) of this section, all of the partners that were § 1.752-7 liability partners with respect to PRS2 before the distribution, i.e., A, continue to be § 1.752-7 liability

partners after the distribution. After the distribution, A's share of the pension liabilities now held by PRS2 will continue to be $1,500,000.

Example 4. Partnership division; no shifting of § 1.752-7 liability. The facts are the same as in Example 3, except that PRS1 does not merge with PRS2, but instead contributes Blackacre to PRS2 in exchange for PRS2 interests and the assumption by PRS2 of the pension liabilities. Immediately thereafter, PRS1 distributes the PRS2 interests to A and B in liquidation of their interests in PRS1. The analysis is the same as in Example 3. After the assumption of the pension liabilities by PRS2, A is a § 1.752-7 liability partner with respect to PRS2. After the distribution of a PRS2 interest to A, A continues to be a § 1.752-7 liability partner with respect to PRS2, and the amount of A's built-in loss with respect to the § 1.752-7 liabilities continues to be $1,500,000. Therefore, paragraph (e)(1) of this section does not apply to the distribution of the PRS2 interests to A and B.

Example 5. Partnership division; shifting of § 1.752-7 liability. The facts are the same as in Example 4, except that PRS1 distributes the PRS2 interests not to A and B, but to C and D, in liquidation of their interests in PRS1. After this distribution, A does not continue to be a § 1.752-7 liability partner of PRS2, because A no longer has an interest in PRS2. Therefore, paragraph (e)(1) of this section applies to the distribution of the PRS2 interests to C and D.

(f) Distribution in liquidation of § 1.752-7 liability partner's partnership interest--(1) In general. Except as provided in paragraphs (d)(2) and (i) of this section, immediately before a distribution in liquidation of a § 1.752- 7 liability partner's partnership interest, the § 1.752-7 liability partner's basis in the partnership interest is reduced by the § 1.752-7 liability reduction (as defined in paragraph (b)(7) of this section). This rule applies before section 737. No deduction, loss, or capital expense is allowed to the partnership on the satisfaction of the § 1.752-7 liability (within the meaning of paragraph (b)(8) of this section) to the extent of the remaining built-in loss associated with the § 1.752-7 liability (as defined in paragraph (b)(6) of this section). For purposes of section 705(a)(2)(B) and § 1.704-1(b)(2)(ii)(b) only, the remaining built-in loss associated with the § 1.752-7 liability is not treated as a nondeductible, noncapital expenditure of the partnership. Therefore, the remaining partners' capital accounts and bases in their partnership interests are not reduced by the remaining built-in loss associated with the § 1.752-7 liability. If the partnership (or any successor) notifies the § 1.752-7 liability partner of the satisfaction of the § 1.752-7 liability, then the § 1.752-7 liability partner is entitled to a loss or deduction. The amount of that deduction or loss is, in the case of a partial satisfaction of the § 1.752-7 liability, the amount that the partnership would, but for this section, take into account on the partial satisfaction of the § 1.752-7 liability (but not, in total, more than the § 1.752-7 liability reduction) or, in the case of a complete satisfaction of the § 1.752-7 liability, the remaining § 1.752-7 liability reduction. To the extent of the amount that the partnership would, but for this section, take into account on satisfaction of the § 1.752-7 liability, the character of that deduction or loss is determined as if the § 1.752-7 liability partner had satisfied the liability. To the extent that the § 1.752-7 liability reduction exceeds the amount that the partnership would, but for this section, take into account on satisfaction of the § 1.752-7 liability, the character of the § 1.752-7 liability partner's loss is capital.
(2) Example. The following example illustrates the provision of this paragraph (f):

Example. (i) Facts. In 2004, A, B, and C form partnership PRS. A contributes Property 1 with a fair market value and basis of $5,000,000 subject to a § 1.752-7

liability of $2,000,000 for a 25% interest in PRS. B contributes $3,000,000 cash for a 25% interest in PRS, and C contributes $6,000,000 cash for a 50% interest in PRS. In 2012, when PRS has a section 754 election in effect, PRS distributes Property 2, which has a basis and fair market value of $3,000,000, to A in liquidation of A's PRS interest. At the time of the distribution, the fair market value of A's PRS interest is still $3,000,000, the basis of that interest is still $5,000,000, and the remaining built-in loss associated with the § 1.752-7 liability is still $2,000,000. Assume that none of the exceptions of paragraph (d)(2) of this section apply to the distribution and that the satisfaction of the § 1.752-7 liability would have given rise to a deductible expense to A. In 2013, PRS pays $1,000,000 to satisfy the entire § 1.752-7 liability.

(ii) Liquidation of A's PRS interest. Immediately before the distribution of Property 2 to A, A's basis in the PRS interest is reduced (to $3,000,000) by the § 1.752-7 liability reduction, i.e., the lesser of the excess of A's basis in the PRS interest ($5,000,000) over the adjusted value ($3,000,000) of that interest ($2,000,000) or the remaining built-in loss associated with the § 1.752-7 liability ($2,000,000). Therefore, A's basis in Property 2 under section 732(b) is $3,000,000. Because this is the same as the partnership's basis in Property 2 immediately before the distribution, the partnership's basis adjustment under section 734(b) is $0.

(iii) Satisfaction of § 1.752-7 liability. PRS is not entitled to a deduction, loss, or capital expense on the satisfaction of the § 1.752-7 liability to the extent of the remaining built-in loss associated with the § 1.752-7 liability ($2,000,000). Because this amount exceeds the amount paid by PRS to satisfy the § 1.752-7 liability ($1,000,000), PRS is not entitled to any deduction for the § 1.752-7 liability in 2013. If, however, PRS notifies A of the satisfaction of the § 1.752-7 liability, A is entitled to an ordinary deduction in 2013 of $1,000,000 (the amount paid in satisfaction of the § 1.752-7 liability) and a capital loss of $1,000,000 (the remaining § 1.752-7 liability reduction).

(g) Assumption of § 1.752-7 liability by a partner other than § 1.752-7 liability partner--(1) In general. If this paragraph (g) applies, section 704(c)(1)(B) does not apply to an assumption of a § 1.752-7 liability from a partnership by a partner other than the § 1.752-7 liability partner. The rules of paragraph (g)(2) of this section apply only if the § 1.752-7 liability partner is a partner in the partnership at the time of the assumption of the § 1.752-7 liability from the partnership. The rules of paragraphs (g)(3) and (4) of this section apply to any assumption of the § 1.752-7 liability by a partner other than the § 1.752-7 liability partner, whether or not the § 1.752-7 liability partner is a partner in the partnership at the time of the assumption from the partnership.
(2) Consequences to § 1.752-7 liability partner. If, at the time of an assumption of a § 1.752-7 liability from a partnership by a partner other than the § 1.752-7 liability partner, the § 1.752-7 liability partner remains a partner in the partnership, then the § 1.752-7 liability partner's basis in the partnership interest is reduced by the § 1.752-7 liability reduction (as defined in paragraph (b)(7) of this section). If the assuming partner (or any successor) notifies the § 1.752-7 liability partner of the satisfaction of the § 1.752-7 liability (within the meaning of paragraph (b)(8) of this section), then the § 1.752-7 liability partner is entitled to a deduction or loss. The amount of that deduction or loss is, in the case of a partial satisfaction of the § 1.752-7 liability, the amount that the assuming partner would, but for this section, take into account on the satisfaction of the § 1.752-7 liability (but not, in total, more than the § 1.752-7 liability reduction) or, in the case of a complete satisfaction of the

§ 1.752-7 liability, the remaining § 1.752-7 liability reduction. To the extent of the amount that the assuming partner would, but for this section, take into account on the satisfaction of the § 1.752-7 liability, the character of that deduction or loss is determined as if the § 1.752-7 liability partner had satisfied the liability. To the extent that the § 1.752-7 liability reduction exceeds the amount that the assuming partner would, but for this section, take into account on the satisfaction of the § 1.752-7 liability, the character of the § 1.752-7 liability partner's loss is capital.

(3) Consequences to partnership. Immediately after the assumption of the § 1.752-7 liability from the partnership by a partner other than the § 1.752-7 liability partner, the partnership must reduce the basis of partnership assets by the remaining built-in loss associated with the § 1.752-7 liability (as defined in paragraph (b)(6) of this section). The reduction in the basis of partnership assets must be allocated among partnership assets as if that adjustment were a basis adjustment under section 734(b).

(4) Consequences to assuming partner. No deduction, loss, or capital expense is allowed to an assuming partner (other than the § 1.752-7 liability partner) on the satisfaction of the § 1.752-7 liability assumed from a partnership to the extent of the remaining built-in loss associated with the § 1.752-7 liability. Instead, upon the satisfaction of the § 1.752-7 liability, the assuming partner must adjust the basis of the partnership interest, any assets (other than cash, accounts receivable, or inventory) distributed by the partnership to the partner, or gain or loss on the disposition of the partnership interest, as the case may be. These adjustments are determined as if the assuming partner's basis in the partnership interest at the time of the assumption were increased by the lesser of the amount paid (or to be paid) to satisfy the § 1.752-7 liability or the remaining built-in loss associated with the § 1.752-7 liability. However, the assuming partner cannot take into account any adjustments to depreciable basis, reduction in gain, or increase in loss until the satisfaction of the § 1.752-7 liability.

(5) Example. The following example illustrates the provisions of this paragraph (g):

Example. (i) Facts. In 2004, A, B, and C form partnership PRS. A contributes Property 1, a nondepreciable capital asset with a fair market value and basis of $5,000,000, in exchange for a 25% interest in PRS and assumption by PRS of a § 1.752-7 liability of $2,000,000. B contributes $3,000,000 cash for a 25% interest in PRS, and C contributes $6,000,000 cash for a 50% interest in PRS. PRS uses the cash contributed to purchase Property 2. In 2007, PRS distributes Property 1, subject to the § 1.752-7 liability to B in liquidation of B's interest in PRS. At the time of the distribution, A's interest in PRS still has a value of $3,000,000 and a basis of $5,000,000, and B's interest in PRS still has a value and basis of $3,000,000. Also at that time, Property 1 still has a value and basis of $5,000,000, Property 2 still has a value and basis of $9,000,000, and the remaining built-in loss associated with the § 1.752-7 liability still is $2,000,000. Assume that none of the exceptions of paragraph (d)(2)(i) of this section apply to the assumption of the § 1.752-7 liability by B and that the satisfaction of the § 1.752-7 liability by A would have given rise to a deductible expense to A. In 2010, B pays $1,000,000 to satisfy the entire § 1.752-7 liability. At that time, B still owns Property 1, which has a basis of $3,000,000.

(ii) Assumption of § 1.752-7 liability by B. Section 704(c)(1)(B) does not apply to the assumption of the § 1.752-7 liability by B. Instead, A's basis in the PRS interest is reduced (to $3,000,000) by the § 1.752-7 liability reduction, i.e., the lesser of the

excess of A's basis in the PRS interest ($5,000,000) over the adjusted value ($3,000,000) of that interest ($2,000,000), or the remaining built-in loss associated with the § 1.752-7 liability as of the time of the assumption ($2,000,000). PRS's basis in Property 2 is reduced (to $7,000,000) by the $2,000,000 remaining built-in loss associated with the § 1.752-7 liability. B's basis in Property 1 under section 732(b) is $3,000,000 (B's basis in the PRS interest). This is $2,000,000 less than PRS's basis in Property 1 before the distribution of Property 1 to B. If PRS has a section 754 election in effect for 2007, PRS may increase the basis of Property 2 under section 734(b) by $2,000,000.

(iii) Satisfaction of § 1.752-7 liability. B is not entitled to a deduction on the satisfaction of the § 1.752-7 liability in 2010 to the extent of the remaining built-in loss associated with the § 1.752-7 liability ($2,000,000). As this amount exceeds the amount paid by B to satisfy the § 1.752-7 liability, B is not entitled to any deduction on the satisfaction of the § 1.752-7 liability in 2010. B may, however, increase the basis of Property 1 by the lesser of the remaining built-in loss associated with the § 1.752-7 liability ($2,000,000) or the amount paid to satisfy the § 1.752-7 liability ($1,000,000). Therefore, B's basis in Property 1 is increased to $4,000,000. If B notifies A of the satisfaction of the § 1.752-7 liability, then A is entitled to an ordinary deduction in 2010 of $1,000,000 (the amount paid in satisfaction of the § 1.752-7 liability) and a capital loss of $1,000,000 (the remaining § 1.752-7 liability reduction).

B's Basis in Property 1 After Satisfaction of Liability
[In millions]

| | |
|---|---|
| 1. Basis in Property 1 after distribution | $3 |
| 2. Plus lesser of remaining built-in loss. ($2) or amount paid to satisfy liability ($1) | 1 |
| 3. Basis in Property 1 after satisfaction of liability | $4 |

(h) Notification by the partnership (or successor) of the satisfaction of the § 1.752-7 liability. For purposes of paragraphs (e), (f), and (g) of this section, notification by the partnership (or successor) of the satisfaction of the § 1.752-7 liability must be attached to the § 1.752-7 liability partner's return (whether an original or an amended return) for the year in which the loss is being claimed and must include--
(1) The amount paid in satisfaction of the § 1.752-7 liability, and whether the amounts paid were in partial or complete satisfaction of the § 1.752-7 liability;

(2) The name and address of the person satisfying the § 1.752-7 liability;

(3) The date of the payment on the § 1.752-7 liability; and

(4) The character of the loss to the § 1.752-7 liability partner with respect to the § 1.752-7 liability.

(i) Special rule for amounts that are capitalized prior to the occurrence of an event described in paragraphs (e), (f), or (g)--(1) In general. If all or a portion of a § 1.752-7 liability is properly capitalized (capitalized basis) prior to an event described in paragraph (e), (f), or (g) of this section, then, before an event described in paragraph (e), (f), or (g) of this section, the partnership may take the capitalized

basis into account for purposes of computing cost recovery and gain or loss on the sale of the asset to which the basis has been capitalized (and for any other purpose for which the basis of the asset is relevant), but after an event described in paragraph (e), (f), or (g) of this section, the partnership may not take any remaining capitalized basis into account for tax purposes.
(2) Example. The following example illustrates the provisions of this paragraph (i):

Example. (i) Facts. In 2004, A and B form partnership PRS. A contributes Property 1, a nondepreciable capital asset, with a fair market value and basis of 5,000,000, in exchange for a 25% interest in PRS and an assumption by PRS of a § 1.752-7 liability of $2,000,000. B contributes $9,000,000 in cash in exchange for a 75% interest in PRS. PRS uses $7,000,000 of the cash to purchase Property 2, also a nondepreciable capital asset. In 2007, when PRS's assets have not changed, PRS satisfies the § 1.752-7 liability by paying $2,000,000. Assume that PRS is required to capitalize the cost of satisfying the § 1.752-7 liability. In 2008, A sells his interest in PRS to C for $3,000,000. At the time of the sale, the basis of A's interest is still $5,000,000.

(ii) Analysis. On the sale of A's interest to C, A realizes a loss of $2,000,000 on the sale of the PRS interest (the excess of $5,000,000, the basis of the partnership interest, over $3,000,000, the amount realized on sale). The remaining built-in loss associated with the § 1.752-7 liability at that time is zero because all of the § 1.752-7 liability as of the time of the assumption of the § 1.752-7 liability by the partnership was capitalized by the partnership. The partnership may not take any remaining capitalized basis into account for tax purposes.

(iii) Partial Satisfaction. Assume that, prior to the sale of A's interest in PRS to C, PRS had paid $1,500,000 to satisfy a portion of the § 1.752-7 liability. Therefore, immediately before the sale of the PRS interest to C, A's basis in the PRS interest would be reduced (to $4,500,000) by the $500,000 remaining built-in loss associated with the § 1.752-7 liability ($2,000,000 less the 1,500,000 portion capitalized by the partnership as that time). On the sale of the PRS interest, A realizes a loss of $1,500,000 (the excess of $4,500,000, the basis of the PRS interest, over $3,000,000, the amount realized on the sale). Neither PRS nor any of its partners is entitled to a deduction, loss, or capital expense upon the satisfaction of the § 1.752-7 liability to the extent of the remaining built-in loss associated with the § 1.752-7 liability ($500,000). If PRS notifies A of the satisfaction of the remaining portion of the § 1.752-7 liability, then A is entitled to a deduction or loss of $500,000 (the remaining § 1.752-7 liability reduction). The partnership may not take any remaining capitalized basis into account for tax purposes.

(j) Tiered partnerships--(1) Look-through treatment. For purposes of this section, a contribution by a partner of an interest in a partnership (lower-tier partnership) to another partnership (upper-tier partnership) is treated as a contribution by the partner of the partner's share of each of the lower-tier partnership's assets and an assumption by the upper-tier partnership of the partner's share of the lower-tier partnership's liabilities (including § 1.752-7 liabilities). See paragraph (e)(3)(ii) Example 1 of this section. In addition, a partnership is treated as having its share of any § 1.752-7 liabilities of the partnerships in which it has an interest.
(2) Trade or business exception. If a partnership (upper-tier partnership) assumes a § 1.752-7 liability of a partner, and, subsequently, another partnership (lower-tier partnership) assumes that § 1.752-7 liability from the upper-tier partnership, then the § 1.752-7 liability is treated as associated only with any trade or business

contributed to the upper-tier partnership by the § 1.752-7 liability partner. The same rule applies where a partnership assumes a § 1.752-7 liability of a partner, and, subsequently, the § 1.752-7 liability partner transfers that partnership interest to another partnership. See paragraph (e)(3)(ii) Example 1 of this section.

(3) Partnership as a § 1.752-7 liability partner. If a transaction described in paragraph (e), (f), or (g) of this section occurs with respect to a partnership (upper-tier partnership) that is a § 1.752-7 liability partner of another partnership (lower-tier partnership), then such transaction will also be treated as a transaction described in paragraph (e), (f), or (g) of this section, as appropriate, with respect to the partners of the upper-tier partnership, regardless of whether the upper-tier partnership assumed the § 1.752-7 liability from those partners. (See paragraph (b)(5) of this section for rules relating to the treatment of transactions by the partners of the upper-tier partnership). In such a case, each partner's share of the § 1.752-7 liability reduction in the upper-tier partnership is equal to that partner's share of the § 1.752-7 liability. The partners of the upper-tier partnership at the time of the transaction described in paragraph (e), (f), or (g) of this section, and not the upper-tier partnership, are entitled to the deduction or loss on the satisfaction of the § 1.752-7 liability. Similar principles apply where the upper-tier partnership is itself owned by one or a series of partnerships. This paragraph does not apply to the extent that § 1.752-7(j)(4) applied to the assumption of the § 1.752-7 liability by the lower-tier partnership.

(4) Transfer of § 1.752-7 liability by partnership to another partnership or corporation after a transaction described in paragraph (e), (f), or (g)--(i) In general. If, after a transaction described in paragraph (e), (f), or (g) of this section with respect to a § 1.752-7 liability assumed by a partnership (the upper-tier partnership), another partnership or a corporation assumes the § 1.752-7 liability from the upper-tier partnership (or the assuming partner) in a transaction in which the basis of property is determined, in whole or in part, by reference to the basis of the property in the hands of the upper-tier partnership (or assuming partner), then--

(A) The upper-tier partnership (or assuming partner) must reduce its basis in any corporate stock or partnership interest received by the remaining built-in loss associated with the § 1.752-7 liability, at the time of the transaction described in paragraph (e), (f), or (g) of this section (but the partners of the upper-tier partnership do not reduce their bases or capital accounts in the upper-tier partnership); and

(B) No deduction, loss, or capital expense is allowed to the assuming partnership or corporation on the satisfaction of the § 1.752-7 liability to the extent of the remaining built-in loss associated with the § 1.752-7 liability.

(ii) Subsequent transfers. Similar rules apply to subsequent assumptions of the § 1.752-7 liability in transactions in which the basis of property is determined, in whole or in part, by reference to the basis of the property in the hands of the transferor. If, subsequent to an assumption of the § 1.752-7 liability by a partnership in a transaction to which paragraph (j)(4)(i) of this section applies, the § 1.752-7 liability is assumed from the partnership by a partner other than the partner from whom the partnership assumed the § 1.752-7 liability, then the rules of paragraph (g) of this section apply.

(5) Example. The following example illustrates the provisions of paragraphs (j)(3) and (4) of this section:

Example. (i) Assumption of § 1.752-7 liability by UTP and transfer of § 1.752-7 liability partner's interest in UTP. In 2004, A, B, and C form partnership UTP. A contributes Property 1 with a fair market value and basis of $5,000,000 subject to a § 1.752-7 liability of $2,000,000 in exchange for a 25% interest in UTP. B contributes $3,000,000 cash in exchange for a 25% interest in UTP, and C contributes $6,000,000 cash in exchange for a 50% interest in UTP. UTP invests the $9,000,000 cash in Property 2. In 2006, A sells A's interest in UTP to D for $3,000,000. At the time of the sale, the basis of A's UTP interest is $5,000,000, the remaining built-in loss associated with the § 1.752-7 liability is $2,000,000, and UTP has no liabilities other than the § 1.752-7 liabilities assumed from A. Assume that none of the exceptions of paragraph (d)(2) of this section apply and that the satisfaction of the § 1.752-7 liability would give rise to a deductible expense to A and to UTP. Under paragraph (e) of this section, immediately before the sale of the UTP interest to D, A's basis in UTP is reduced to $3,000,000 by the $2,000,000 § 1.752-7 liability reduction. Therefore, A neither realizes nor recognizes any gain or loss on the sale of the UTP interest to D. D's basis in the UTP interest is $3,000,000.

(ii) Assumption of § 1.752-7 liability by LTP from UTP. In 2008, at a time when the estimated amount of the § 1.752-7 liability has increased to $3,500,000, UTP contributes Property 1 and Property 2, subject to the § 1.752-7 liability, to LTP in exchange for a 50% interest in LTP. At the time of the contribution, Property 1 still has a value and basis of $5,000,000 and Property 2 still has a value and basis of $9,000,000. UTP's basis in LTP under section 722 is $14,000,000. Under paragraph (j)(4)(i) of this section, UTP must reduce its basis in LTP by the $2,000,000 remaining built-in loss associated with the § 1.752-7 liability (as of the time of the sale of the UTP interest by A). The partners in UTP are not required to reduce their bases in UTP by this amount. UTP is a § 1.752-7 liability partner of LTP with respect to the entire $3,500,000 § 1.752-7 liability assumed by LTP. However, as A is no longer a partner of UTP, none of the partners of UTP (as of the time of the assumption of the § 1.752-7 liability by LTP) are § 1.752-7 liability partners of LTP with respect to the $2,000,000 remaining built-in loss associated with the § 1.752-7 liability (as of the time of the sale of the UTP interest by A). The UTP partners (as of the time of the assumption of the § 1.752-7 liability by LTP) are § 1.752-7 liability partners of LTP with respect to the $1,500,000 increase in the amount of the § 1.752-7 liability of UTP since the assumption of that § 1.752-7 liability by UTP from A.

(iii) Sale by UTP of LTP interest. In 2010, UTP sells its interest in LTP to E for $10,500,000. At the time of the sale, the LTP interest still has a value of $10,500,000 and a basis of $12,000,000, and the remaining built-in loss associated with the § 1.752-7 liability is $3,500,000. Under paragraph (e) of this section, immediately before the sale, UTP must reduce its basis in the LTP interest by the § 1.752-7 liability reduction. Under paragraph (a)(4) of this section, the remaining built-in loss associated with the § 1.752-7 liability is $1,500,000 (remaining built-in loss associated with the § 1.752-7 liability, $3,500,000, reduced by the amount of the § 1.752-7 liability taken into account under paragraph (j)(4) of this section, $2,000,000). The difference between the basis of the LTP interest held by UTP ($12,000,000) and the adjusted value of that interest ($10,500,000) is also $1,500,000. Therefore, the § 1.752-7 liability reduction is $1,500,000 and UTP's

basis in the LTP interest must be reduced to $10,500,000. In addition, UTP's partners must reduce their bases in their UTP interests by their proportionate shares of the § 1.752-7 liability reduction. Thus, the basis of each of B's and D's interest in UTP must be reduced by $375,000 and the basis of C's interest in UTP must be reduced by $750,000. In 2011, D sells the UTP interest to F.

(iv) Deduction, expense, or loss associated with the § 1.752-7 liability by LTP. In 2012, LTP pays $3,500,000 to satisfy the § 1.752-7 liability. Under paragraphs (e) and (j)(4) of this section, LTP is not entitled to any deduction with respect to the § 1.752-7 liability. Under paragraph (j)(3) of this section, UTP also is not entitled to any deduction with respect to the § 1.752-7 liability. If LTP notifies A, B, C and D of the satisfaction of the § 1.752-7 liability, then A is entitled to a deduction in 2012 of $2,000,000, B and D are each entitled to deductions in 2012 of $375,000, and C is entitled to a deduction in 2012 of $750,000.

(k) Effective dates--(1) In general. This section applies to § 1.752-7 liability transfers occurring on or after June 24, 2003. For assumptions occurring after October 18, 1999, and before June 24, 2003, see § 1.752-6. For § 1.752-7 liability transfers occurring on or after June 24, 2003 and before May 26, 2005, taxpayers may rely on the exception for trading and investment partnerships in paragraph (b)(8)(ii) of § 1.752.7 (2003-28 I.R.B. 46; 68 FR 37434).
(2) Election to apply this section to assumptions of liabilities occurring after October 18, 1999 and before June 24, 2003--(i) In general. A partnership may elect to apply this section to all assumptions of liabilities (including § 1.752-7 liabilities) occurring after October 18, 1999, and before June 24, 2003. Such an election is binding on the partnership and all of its partners. A partnership making such an election must apply all of the provisions of § 1.752-1 and § 1.752-7, including § 1.358-5T, § 1.358-7, § 1.704- 1(b)(1)(ii) and (b)(2)(iv)(b), § 1.704-2(b)(3), § 1.704-3(a)(7), (a)(8)(iv), and (a)(12), § 1.704-4(d)(1)(iv), § 1.705-1(a)(8), § 1.732-2(d)(3)(iv), and § 1.737-5.

(ii) Manner of making election. A partnership makes an election under this paragraph (k)(2) by attaching the following statement to its timely filed return: [Insert name and employer identification number of electing partnership] elects under § 1.752-7 of the Income Tax Regulations to be subject to the rules of § 1.358-5T, § 1.358-7, § 1.704-1(b)(1)(ii) and (b)(2)(iv)(b), § 1.704-2(b)(3), § 1.704-3(a)(7), (a)(8)(iv), and (a)(12), § 1.704-4(d)(1)(iv), § 1.705-1(a)(8), § 1.732- 2(d)(3)(iv), and § 1.737-5 with respect to all liabilities (including § 1.752-7 liabilities) assumed by the partnership after October 18, 1999 and before June 24, 2003. In the statement, the partnership must list, with respect to each liability (including each § 1.752-7 liability) assumed by the partnership after October 18, 1999 and before June 24, 2003--

(A) The name, address, and taxpayer identification number of the partner from whom the liability was assumed;

(B) The date on which the liability was assumed by the partnership;

(C) The amount of the liability as of the time of its assumption; and

(D) A description of the liability.

(iii) Filing of amended returns. An election under this paragraph (k)(2) will be valid only if the partnership and its partners promptly amend any returns for open taxable years that would be affected by the election.

(iv) Time for making election. An election under this paragraph (k)(2) must be filed with any timely filed Federal income tax return filed by the partnership on or after September 24, 2003 and on or before December 31, 2005.

26 C.F.R. § 301.6221-1

Treas. Reg. § 301.6221-1

Code of Federal Regulations

Title 26. Internal Revenue
Chapter I. Internal Revenue Service, Department of the Treasury
Subchapter F. Procedure and Administration
Part 301. Procedure and Administration

**➡§ 301.6221-1 Tax treatment determined at partnership level.**

**(a) In general.** A partner's treatment of partnership items on the partner's return may not be changed except as provided in sections 6222 through 6231 and the regulations thereunder. Thus, for example, if a partner treats an item on the partner's return consistently with the treatment of the item on the partnership return, the IRS generally cannot adjust the treatment of that item on the partner's return except through a partnership-level proceeding. Similarly, the taxpayer may not put partnership items in issue in a proceeding relating to nonpartnership items. For example, the taxpayer may not offset a potential increase in taxable income based on changes to nonpartnership items by a potential decrease based on partnership items.

**(b) Restrictions inapplicable after items become nonpartnership items.** Section 6221 and paragraph (a) of this section cease to apply to items arising from a partnership with respect to a partner when those items cease to be partnership items with respect to that partner under section 6231(b).

**(c) Penalties determined at partnership level.** Any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item shall be determined at the partnership level. Partner-level defenses to such items can only be asserted through refund actions following assessment and payment. Assessment of any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item shall be made based on partnership-level determinations. Partnership-level determinations include all the legal and factual determinations that underlie the determination of any penalty, addition to tax, or additional amount, other than partner-level defenses specified in paragraph (d) of this section.

**(d) Partner-level defenses.** Partner-level defenses to any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item may not be asserted in the partnership-level proceeding, but may be asserted through separate refund actions following assessment and payment. See section 6230(c)(4). Partner-level defenses are limited to those that are personal to the partner or are dependent upon the partner's separate return and cannot be determined at the partnership level. Examples of these determinations are whether any applicable threshold underpayment of tax has been met with respect to the partner or whether the partner has met the criteria of section 6664(b) (penalties applicable only where return is filed), or section 6664(c)(1) (reasonable cause exception) subject to partnership-level determinations as to the applicability of section 6664(c)(2).

**(e) Cross-references.** See §§ 301.6231(c)-1 and 301.6231(c)-2 for special rules relating to certain applications and claims for refund based on losses, deductions, or credits from abusive tax shelter partnerships.

**(f) Effective date.** This section is applicable to partnership taxable years beginning on or after October 4, 2001. For years beginning prior to October 4, 2001, see § 301.6221-1T contained in 26 CFR part 1, revised April 1, 2001.

26 C.F.R. § 1.6662-3

Treas. Reg. § 1.6662-3

Code of Federal Regulations

Title 26. Internal Revenue
Chapter I. Internal Revenue Service, Department of the Treasury
Subchapter A. Income Tax
Part 1. Income Taxes

**§ 1.6662-3 Negligence or disregard of rules or regulations.**

**(a) In general.** If any portion of an underpayment, as defined in section 6664(a) and § 1.6664-2, of any income tax imposed under subtitle A of the Internal Revenue Code that is required to be shown on a return is attributable to negligence or disregard of rules or regulations, there is added to the tax an amount equal to 20 percent of such portion. The penalty for disregarding rules or regulations does not apply, however, if the requirements of paragraph (c)(1) of this section are satisfied and the position in question is adequately disclosed as provided in paragraph (c)(2) of this section (and, if the position relates to a reportable transaction as defined in § 1.6011-4(b) (or § 1.6011-4T(b), as applicable), the transaction is disclosed in accordance with § 1.6011-4 (or § 1.6011-4T, as applicable)), or to the extent that the reasonable cause and good faith exception to this penalty set forth in § 1.6664-4 applies. In addition, if a position with respect to an item (other than with respect to a reportable transaction, as defined in § 1.6011-4(b) or § 1.6011-4T(b), as applicable) is contrary to a revenue ruling or notice (other than a notice of proposed rulemaking) issued by the Internal Revenue Service and published in the Internal Revenue Bulletin (see § 601.601(d)(2) of this chapter), this penalty does not apply if the position has a realistic possibility of being sustained on its merits. See § 1.6694-2(b) of the income tax return preparer penalty regulations for a description of the realistic possibility standard.

**(b) Definitions and rules--(1) Negligence.** The term negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return. "Negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. A return position that has a reasonable basis as defined in paragraph (b)(3) of this section is not attributable to negligence. Negligence is strongly indicated where--

**(i)** A taxpayer fails to include on an income tax return an amount of income shown on an information return, as defined in section 6724(d)(1);

**(ii)** A taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit or exclusion on a return which would seem to a reasonable and prudent person to be "too good to be true" under the circumstances;

**(iii)** A partner fails to comply with the requirements of section 6222, which requires that a partner treat partnership items on its return in a manner that is consistent with the treatment of such items on the partnership return (or notify the Secretary of the inconsistency); or

**(iv)** A shareholder fails to comply with the requirements of section 6242, which requires that an S corporation shareholder treat subchapter S items on its return in a manner that

is consistent with the treatment of such items on the corporation's return (or notify the Secretary of the inconsistency).

**(2) Disregard of rules or regulations.** The term disregard includes any careless, reckless or intentional disregard of rules or regulations. The term "rules or regulations" includes the provisions of the Internal Revenue Code, temporary or final Treasury regulations issued under the Code, and revenue rulings or notices (other than notices of proposed rulemaking) issued by the Internal Revenue Service and published in the Internal Revenue Bulletin. A disregard of rules or regulations is "careless" if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. A disregard is "reckless" if the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe. A disregard is "intentional" if the taxpayer knows of the rule or regulation that is disregarded. Nevertheless, a taxpayer who takes a position (other than with respect to a reportable transaction, as defined in § 1.6011-4(b) or § 1.6011-4T(b), as applicable) contrary to a revenue ruling or notice has not disregarded the ruling or notice if the contrary position has a realistic possibility of being sustained on its merits.

**(3) Reasonable basis.** Reasonable basis is a relatively high standard of tax reporting, that is, significantly higher than not frivolous or not patently improper. The reasonable basis standard is not satisfied by a return position that is merely arguable or that is merely a colorable claim. If a return position is reasonably based on one or more of the authorities set forth in § 1.6662-4(d)(3)(iii) (taking into account the relevance and persuasiveness of the authorities, and subsequent developments), the return position will generally satisfy the reasonable basis standard even though it may not satisfy the substantial authority standard as defined in § 1.6662-4(d)(2). (See § 1.6662-4(d)(3)(ii) for rules with respect to relevance, persuasiveness, subsequent developments, and use of a well-reasoned construction of an applicable statutory provision for purposes of the substantial understatement penalty.) In addition, the reasonable cause and good faith exception in § 1.6664-4 may provide relief from the penalty for negligence or disregard of rules or regulations, even if a return position does not satisfy the reasonable basis standard.

**(c) Exception for adequate disclosure--(1) In general.** No penalty under section 6662(b)(1) may be imposed on any portion of an underpayment that is attributable to a position contrary to a rule or regulation if the position is disclosed in accordance with the rules of paragraph (c)(2) of this section (and, if the position relates to a reportable transaction as defined in § 1.6011-4(b) (or § 1.6011-4T(b), as applicable), the transaction is disclosed in accordance with § 1.6011-4 (or § 1.6011-4T, as applicable)) and, in case of a position contrary to a regulation, the position represents a good faith challenge to the validity of the regulation. This disclosure exception does not apply, however, in the case of a position that does not have a reasonable basis or where the taxpayer fails to keep adequate books and records or to substantiate items properly.

**(2) Method of disclosure.** Disclosure is adequate for purposes of the penalty for disregarding rules or regulations if made in accordance with the provisions of §§ 1.6662-4(f)(1), (3), (4), and (5), which permit disclosure on a properly completed and filed Form 8275 or 8275-R, as appropriate. In addition, the statutory or regulatory provision or ruling in question must be adequately identified on the Form 8275 or 8275-R, as appropriate. The provisions of § 1.6662-4(f)(2), which permit disclosure in accordance with an annual revenue procedure for purposes of the substantial understatement penalty, do not apply for purposes of this section.

**(d) Special rules in the case of carrybacks and carryovers--(1) In general.** The

penalty for negligence or disregard of rules or regulations applies to any portion of an underpayment for a year to which a loss, deduction or credit is carried, which portion is attributable to negligence or disregard of rules or regulations in the year in which the carryback or carryover of the loss, deduction or credit arises (the "loss or credit year").

**(2) Transition rule for carrybacks to pre-1990 years.** A 20 percent penalty under section 6662(b)(1) is imposed on any portion of an underpayment for a carryback year, the return for which is due (without regard to extensions) before January 1, 1990, if--

**(i)** That portion is attributable to negligence or disregard of rules or regulations in a loss or credit year; and

**(ii)** The return for the loss or credit year is due (without regard to extensions) after December 31, 1989.

**(3) Example.** The following example illustrates the provisions of paragraph (d) of this section. This example does not take into account the reasonable cause exception under § 1.6664-4.

**Example.** Corporation M is a C corporation. In 1990, M had a loss of $200,000 before taking into account a deduction of $350,000 that M claimed as an expense in careless disregard of the capitalization requirements of section 263 of the Code. M failed to make adequate disclosure of the item for 1990. M reported a $550,000 loss for 1990 and carried back the loss to 1987 and 1988. M had reported taxable income of $400,000 for 1987 and $200,000 for 1988, before application of the carryback. The carryback eliminated all of M's taxable income for 1987 and $150,000 of taxable income for 1988. After disallowance of the $350,000 expense deduction and allowance of a $35,000 depreciation deduction with respect to the capitalized amount, the correct loss for 1990 was determined to be $235,000. Because there is no underpayment for 1990, the penalty for negligence or disregard of rules or regulations does not apply for 1990. However, as a result of the 1990 adjustments, the loss carried back to 1987 is reduced from $550,000 to $235,000. After application of the $235,000 carryback, M has taxable income of $165,000 for 1987 and $200,000 for 1988. This adjustment results in underpayments for 1987 and 1988 that are attributable to the disregard of rules or regulations on the 1990 return. Therefore, the 20 percent penalty rate applies to the 1987 and 1988 underpayments attributable to the disallowed carryback.

26 C.F.R. § 1.6662-4

Treas. Reg. § 1.6662-4

Code of Federal Regulations

Title 26. Internal Revenue
Chapter I. Internal Revenue Service, Department of the Treasury
Subchapter A. Income Tax
Part 1. Income Taxes

**§ 1.6662-4 Substantial understatement of income tax.**

**(a) In general.** If any portion of an underpayment, as defined in section 6664(a) and § 1.6664-2, of any income tax imposed under subtitle A of the Code that is required to be shown on a return is attributable to a substantial understatement of such income tax, there is added to the tax an amount equal to 20 percent of such portion. Except in the case of any item attributable to a tax shelter (as defined in paragraph (g)(2) of this section), an understatement is reduced by the portion of the understatement that is attributable to the tax treatment of an item for which there is substantial authority, or with respect to which there is adequate disclosure. General rules for determining the amount of an understatement are set forth in paragraph (b) of this section and more specific rules in the case of carrybacks and carryovers are set forth in paragraph (c) of this section. The rules for determining when substantial authority exists are set forth in § 1.6662-4(d). The rules for determining when there is adequate disclosure are set forth in § 1.6662-4(e) and (f). This penalty does not apply to the extent that the reasonable cause and good faith exception to this penalty set forth in § 1.6664-4 applies.

**(b) Definitions and computational rules--(1) Substantial.** An understatement (as defined in paragraph (b)(2) of this section) is "substantial" if it exceeds the greater of--

**(i)** 10 percent of the tax required to be shown on the return for the taxable year (as defined in paragraph (b)(3) of this section); or

**(ii)** $5,000 ($10,000 in the case of a corporation other than an S corporation (as defined in section 1361(a)(1)) or a personal holding company (as defined in section 542)).

**(2) Understatement.** Except as provided in paragraph (c)(2) of this section (relating to special rules for carrybacks), the term "understatement" means the excess of--

**(i)** The amount of the tax required to be shown on the return for the taxable year (as defined in paragraph (b)(3) of this section), over

**(ii)** The amount of the tax imposed which is shown on the return for the taxable year (as defined in paragraph (b)(4) of this section), reduced by any rebate (as defined in paragraph (b)(5) of this section).

The definition of understatement also may be expressed as--

Understatement = X - (Y - Z)

where X = the amount of the tax required to be shown on the return; Y = the amount of the tax imposed which is shown on the return; and Z = any rebate.

**(3) Amount of the tax required to be shown on the return.** The "amount of the tax required to be shown on the return" for the taxable year has the same meaning as the "amount of income tax imposed" as defined in § 1.6664-2(b).

**(4) Amount of the tax imposed which is shown on the return.** The "amount of the tax imposed which is shown on the return" for the taxable year has the same meaning as the "amount shown as the tax by the taxpayer on his return," as defined in § 1.6664-2(c), except that--

**(i)** There is no reduction for the excess of the amount described in § 1.6664-2(c)(1)(i) over the amount described in § 1.6664-2(c)(1)(ii), and

**(ii)** The tax liability shown by the taxpayer on his return is recomputed as if the following items had been reported properly:

(A) Items (other than tax shelter items as defined in § 1.6662-4(g)(3)) for which there is substantial authority for the treatment claimed (as provided in § 1.6662-4(d)).

(B) Items (other than tax shelter items as defined in § 1.6662-4(g)(3)) with respect to which there is adequate disclosure (as provided in § 1.6662-4(e) and (f)).

(C) Tax shelter items (as defined in § 1.6662-4(g)(3)) for which there is substantial authority for the treatment claimed (as provided in § 1.6662- 4(d)), and with respect to which the taxpayer reasonably believed that the tax treatment of the items was more likely than not the proper tax treatment (as provided in § 1.6662-4(g)(4)).

**(5) Rebate.** The term rebate has the meaning set forth in § 1.6664-2(e), except that--

**(i)** "Amounts not so shown previously assessed (or collected without assessment)" includes only amounts not so shown previously assessed (or collected without assessment) as a deficiency, and

**(ii)** The amount of the rebate is determined as if any items to which the rebate is attributable that are described in paragraph (b)(4) of this section had received the proper tax treatment.

**(6) Examples.** The following examples illustrate the provisions of paragraph (b) of this section. These examples do not take into account the reasonable cause exception under § 1.6664-4:

**Example 1.** In 1990, Individual A, a calendar year taxpayer, files a return for 1989, which shows taxable income of $18,200 and tax liability of $2,734. Subsequent adjustments on audit for 1989 increase taxable income to $51,500 and tax liability to $12,339. There was substantial authority for an item resulting in an adjustment that increases taxable income by $5,300. The item is not a tax shelter item. In computing the amount of the understatement, the amount of tax shown on A's return is determined as if the item for which there was substantial authority had been given the proper tax treatment. Thus, the amount of tax that is treated as shown on A's return is $4,176, i.e., the tax on $23,500 ($18,200 taxable income actually shown on A's return plus $5,300, the amount of the adjustment for which there was substantial authority). The amount of the understatement is $8,163, i.e., $12,339 (the amount of tax required to be shown) less $4,176 (the amount of tax treated as shown on A's return after adjustment for the item for which there was substantial authority). Because the $8,163 understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the year, i.e., $1,234 ($12,339 x .10) or $5,000, A has a substantial understatement of income tax for the year.

**Example 2.** Individual B, a calendar year taxpayer, files a return for 1990 that fails to include income reported on an information return, Form 1099, that was furnished to B. The Service detects this omission through its document matching program and assesses $3,000 in unreported tax liability. B's return is later examined and as a result of the examination the Service makes an adjustment to B's return of $4,000 in additional tax liability. Assuming there was neither substantial authority nor adequate disclosure with respect to the items adjusted, there is an understatement of $7,000 with respect to B's return. There is also an underpayment of $7,000. (See § 1.6664-2.) The amount of the understatement is not reduced by imposition of a negligence penalty on the $3,000 portion of the underpayment that is attributable to the unreported income. However, if the Service does impose the negligence penalty on this $3,000 portion, the Service may only impose the substantial understatement penalty on the remaining $4,000 portion of the underpayment. (See § 1.6662-2(c), which prohibits stacking of accuracy-related penalty components.)

**(c) Special rules in the case of carrybacks and carryovers--(1) In general.** The penalty for a substantial understatement of income tax applies to any portion of an underpayment for a year to which a loss, deduction or credit is carried that is attributable to a "tainted item" for the year in which the carryback or carryover of the loss, deduction or credit arises (the "loss or credit year"). The determination of whether an understatement is substantial for a carryback or carryover year is made with respect to the return of the carryback or carryover year. "Tainted items" are taken into account with items arising in a carryback or carryover year to determine whether the understatement is substantial for that year.

**(2) Understatements for carryback years not reduced by amount of carrybacks.** The amount of an understatement for a carryback year is not reduced on account of a carryback of a loss, deduction or credit to that year.

**(3) Tainted items defined--(i) In general.** Except in the case of a tax shelter item (as defined in paragraph (g)(3) of this section), a "tainted item" is any item for which there is neither substantial authority nor adequate disclosure with respect to the loss or credit year.

**(ii) Tax shelter items.** In the case of a tax shelter item (as defined in paragraph (g)(3) of this section), a "tainted item" is any item for which there is not, with respect to the loss or credit year, both substantial authority and a reasonable belief that the tax treatment is more likely than not the proper treatment.

**(4) Transition rule for carrybacks to pre-1990 years.** A 20 percent penalty under section 6662(b)(2) is imposed on any portion of an underpayment for a carryback year, the return for which is due (without regard to extensions) before January 1, 1990, if--

**(i)** That portion is attributable to one or more "tainted items" (as defined in paragraph (c)(3) of this section) arising in a loss or credit year; and

**(ii)** The return for the loss or credit year is due (without regard to extensions) after December 31, 1989.

The preceding sentence applies only if the understatement in the carryback year is substantial. See Example 2 in paragraph (c)(5) of this section.

**(5) Examples.** The following examples illustrate the rules of paragraph (c) of this section regarding carrybacks and carryovers. These examples do not take into account the reasonable cause exception under § 1.6664-4.

**Example 1.** (i) Corporation N, a calendar year taxpayer, is a C corporation. N was formed on January 1, 1987, and timely filed the following income tax returns:

[In dollars]

| | Tax Year | | | |
|---|---|---|---|---|
| | 1987 | 1988 | 1989 | 1990 (before NOLCO) |
| Taxable income ...... | 30,000 | 100,000 | (300,000) | 50,000 |
| Tax liability ........ | 4,575 | 22,250 | ........ | 7,500 |

(ii) During 1990, N files Form 1139, Corporation Application for Tentative Refund, to carry back the NOL generated in 1989 (NOLCB). N received refunds of $4,575 for 1987 and $22,250 for 1988.

(iii) For tax year 1990, N carries over $50,000 of the 1989 loss to offset $50,000 of income earned in 1990 and reduce taxable income to zero. N would have reported $7,500 of tax liability for 1990 if it were not for use of the net operating loss carryover (NOLCO). N assumes there is a remaining NOLCO of $120,000 to be applied for tax year 1991.

(iv) In June 1991, the Service completes its examination of the 1989 loss year return and makes the following adjustment:

| | |
|---|---|
| Taxable income per 1989 return ...................... | ($300,000) |
| Adjustment: Unreported income ......................... | 310,000 |
| | ---------- |
| Corrected taxable income .............................. | $10,000 |
| Corrected tax liability ............................... | $1,500 |

(v) There was not substantial authority for N's treatment of the items comprising the 1989 adjustment and N did not make adequate disclosure.

(vi) As a result of the adjustment to the 1989 return, N had an understatement of $4,575 for tax year 1987; an understatement of $22,250 for tax year 1988; an understatement of $1,500 for tax year 1989; and an understatement of $7,500 for tax year 1990. Only the $22,250 understatement for 1988 is a substantial understatement, i.e., it exceeds the greater of (a) $2,225 (10 percent of the tax required to be shown on the return for the taxable year (.10 X $22,250)) or (b) $10,000. The underpayment for 1988 is subject to a penalty rate of 20 percent.

**Example 2.** The facts are the same as in Example 1, except that in addition to examining the 1989 return, the Service also examines the 1987 return and makes an adjustment that results in an understatement. (This adjustment is unrelated to the adjustment on the 1987 return for the disallowance of the NOLCB from 1989.) If the understatement resulting from the adjustment to the 1987 return, when combined with the understatement resulting from the disallowance of the NOLCB from 1989, exceeds the greater of (a) 10 percent of the tax required to be shown on the return for 1987 or (b) $10,000, the underpayment for 1987 will also be subject to a substantial understatement penalty. The portion of the underpayment attributable to the adjustment unrelated to the disallowance of the NOLCB will be subject to a penalty rate of 25 percent under former section 6661. The portion of the underpayment attributable to the disallowance of the NOLCB will be subject to a penalty rate of 20 percent under section 6662.

**Example 3.** Individual P, a calendar year single taxpayer, files his 1990 return reporting taxable income of $10,000 and a tax liability of $1,504. An examination of the 1990 return results in an adjustment for unreported income of $25,000. There was not substantial authority for P's failure to report the income, and P did not make adequate disclosure with respect to the unreported income. P's correct tax liability for 1990 is determined to be $7,279, resulting in an understatement of $5,775 (the difference between the amount of tax required to be shown on the return ($7,279) and the tax shown on the return ($1,504)). Because the understatement exceeds the greater of (a) $728 (10 percent of the tax required to be shown on the return (.10 x $7,279)) or (b) $5,000, the understatement is substantial. Subsequently, P files his 1993 return showing a net operating loss. The loss is carried back to his 1990 return, reducing his taxable income for 1990 to zero. However, the amount of the understatement for 1990 is not reduced on account of the NOLCB to that year. P is subject to the 20 percent penalty rate under section 6662 on the underpayment attributable to the substantial understatement for 1990, notwithstanding that the tax required to be shown on the return for that year, after application of the NOLCB, is zero.

**(d) Substantial authority--(1) Effect of having substantial authority.** If there is substantial authority for the tax treatment of an item, the item is treated as if it were shown properly on the return for the taxable year in computing the amount of the tax shown on the return. Thus, for purposes of section 6662(d), the tax attributable to the item is not included in the understatement for that year. (For special rules relating to tax shelter items see § 1.6662-4(g).)

**(2) Substantial authority standard.** The substantial authority standard is an objective standard involving an analysis of the law and application of the law to relevant facts. The substantial authority standard is less stringent than the more likely than not standard (the standard that is met when there is a greater than 50-percent likelihood of the position being upheld), but more stringent than the reasonable basis standard as defined in § 1.6662- 3(b)(3). The possibility that a return will not be audited or, if audited, that an item will not be raised on audit, is not relevant in determining whether the substantial authority standard (or the reasonable basis standard) is satisfied.

**(3) Determination of whether substantial authority is present --(i) Evaluation of authorities.** There is substantial authority for the tax treatment of an item only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary treatment. All authorities relevant to the tax treatment of an item, including the authorities contrary to the treatment, are taken into account in determining whether substantial authority exists. The weight of authorities is determined in light of the pertinent facts and circumstances in the manner prescribed by paragraph (d)(3)(ii) of this section. There may be substantial authority for more than one position with respect to the same item. Because the substantial authority standard is an objective standard, the taxpayer's belief that there is substantial authority for the tax treatment of an item is not relevant in determining whether there is substantial authority for that treatment.

**(ii) Nature of analysis.** The weight accorded an authority depends on its relevance and persuasiveness, and the type of document providing the authority. For example, a case or revenue ruling having some facts in common with the tax treatment at issue is not particularly relevant if the authority is materially distinguishable on its facts, or is otherwise inapplicable to the tax treatment at issue. An authority that merely states a conclusion ordinarily is less persuasive than one that reaches its conclusion by cogently relating the applicable law to pertinent facts. The weight of an authority from which information has been deleted, such as a private letter ruling, is diminished to the extent that the deleted information may have affected the authority's conclusions. The type of

document also must be considered. For example, a revenue ruling is accorded greater weight than a private letter ruling addressing the same issue. An older private letter ruling, technical advice memorandum, general counsel memorandum or action on decision generally must be accorded less weight than a more recent one. Any document described in the preceding sentence that is more than 10 years old generally is accorded very little weight. However, the persuasiveness and relevance of a document, viewed in light of subsequent developments, should be taken into account along with the age of the document. There may be substantial authority for the tax treatment of an item despite the absence of certain types of authority. Thus, a taxpayer may have substantial authority for a position that is supported only by a well-reasoned construction of the applicable statutory provision.

**(iii) Types of authority.** Except in cases described in paragraph (d)(3)(iv) of this section concerning written determinations, only the following are authority for purposes of determining whether there is substantial authority for the tax treatment of an item: Applicable provisions of the Internal Revenue Code and other statutory provisions; proposed, temporary and final regulations construing such statutes; revenue rulings and revenue procedures; tax treaties and regulations thereunder, and Treasury Department and other official explanations of such treaties; court cases; congressional intent as reflected in committee reports, joint explanatory statements of managers included in conference committee reports, and floor statements made prior to enactment by one of a bill's managers; General Explanations of tax legislation prepared by the Joint Committee on Taxation (the Blue Book); private letter rulings and technical advice memoranda issued after October 31, 1976; actions on decisions and general counsel memoranda issued after March 12, 1981 (as well as general counsel memoranda published in pre-1955 volumes of the Cumulative Bulletin); Internal Revenue Service information or press releases; and notices, announcements and other administrative pronouncements published by the Service in the Internal Revenue Bulletin. Conclusions reached in treatises, legal periodicals, legal opinions or opinions rendered by tax professionals are not authority. The authorities underlying such expressions of opinion where applicable to the facts of a particular case, however, may give rise to substantial authority for the tax treatment of an item. Notwithstanding the preceding list of authorities, an authority does not continue to be an authority to the extent it is overruled or modified, implicitly or explicitly, by a body with the power to overrule or modify the earlier authority. In the case of court decisions, for example, a district court opinion on an issue is not an authority if overruled or reversed by the United States Court of Appeals for such district. However, a Tax Court opinion is not considered to be overruled or modified by a court of appeals to which a taxpayer does not have a right of appeal, unless the Tax Court adopts the holding of the court of appeals. Similarly, a private letter ruling is not authority if revoked or if inconsistent with a subsequent proposed regulation, revenue ruling or other administrative pronouncement published in the Internal Revenue Bulletin.

**(iv) Special rules--**(A) Written determinations. There is substantial authority for the tax treatment of an item by a taxpayer if the treatment is supported by the conclusion of a ruling or a determination letter (as defined in § 301.6110-2(d) and (e)) issued to the taxpayer, by the conclusion of a technical advice memorandum in which the taxpayer is named, or by an affirmative statement in a revenue agent's report with respect to a prior taxable year of the taxpayer ("written determinations"). The preceding sentence does not apply, however, if--

(1) There was a misstatement or omission of a material fact or the facts that subsequently develop are materially different from the facts on which the written determination was based, or

(2) The written determination was modified or revoked after the date of issuance by--

(i) A notice to the taxpayer to whom the written determination was issued,

(ii) The enactment of legislation or ratification of a tax treaty,

(iii) A decision of the United States Supreme Court,

(iv) The issuance of temporary or final regulations, or

(v) The issuance of a revenue ruling, revenue procedure, or other statement published in the Internal Revenue Bulletin.

Except in the case of a written determination that is modified or revoked on account of § 1.6662-4(d)(3)(iv)(A)(1), a written determination that is modified or revoked as described in § 1.6662-4(d)(3)(iv)(A)(2) ceases to be authority on the date, and to the extent, it is so modified or revoked. See section 6404(f) for rules which require the Secretary to abate a penalty that is attributable to erroneous written advice furnished to a taxpayer by an officer or employee of the Internal Revenue Service.

(B) Taxpayer's jurisdiction. The applicability of court cases to the taxpayer by reason of the taxpayer's residence in a particular jurisdiction is not taken into account in determining whether there is substantial authority for the tax treatment of an item. Notwithstanding the preceding sentence, there is substantial authority for the tax treatment of an item if the treatment is supported by controlling precedent of a United States Court of Appeals to which the taxpayer has a right of appeal with respect to the item.

(C) When substantial authority determined. There is substantial authority for the tax treatment of an item if there is substantial authority at the time the return containing the item is filed or there was substantial authority on the last day of the taxable year to which the return relates.

**(v) Substantial authority for tax returns due before January 1, 1990.** There is substantial authority for the tax treatment of an item on a return that is due (without regard to extensions) after December 31, 1982 and before January 1, 1990, if there is substantial authority for such treatment under either the provisions of paragraph (d)(3)(iii) of this section (which set forth an expanded list of authorities) or of § 1.6661-3(b)(2) (which set forth a narrower list of authorities). Under either list of authorities, authorities both for and against the position must be taken into account.

**(e) Disclosure of certain information--(1) Effect of adequate disclosure.** Items for which there is adequate disclosure as provided in this paragraph (e) and in paragraph (f) of this section are treated as if such items were shown properly on the return for the taxable year in computing the amount of the tax shown on the return. Thus, for purposes of section 6662(d), the tax attributable to such items is not included in the understatement for that year.

**(2) Circumstances where disclosure will not have an effect.** The rules of paragraph (e)(1) of this section do not apply where the item or position on the return--

**(i)** Does not have a reasonable basis (as defined in § 1.6662-3(b)(3));

**(ii)** Is attributable to a tax shelter (as defined in section 6662(d)(2)(C)(iii) and paragraph (g)(2) of this section); or

**(iii)** Is not properly substantiated, or the taxpayer failed to keep adequate books and records with respect to the item or position.

**(3) Restriction for corporations.** For purposes of paragraph (e)(2)(i) of this section, a corporation will not be treated as having a reasonable basis for its tax treatment of an item attributable to a multi-party financing transaction entered into after August 5, 1997, if the treatment does not clearly reflect the income of the corporation.

**(f) Method of making adequate disclosure--(1) Disclosure statement.** Disclosure is adequate with respect to an item (or group of similar items, such as amounts paid or incurred for supplies by a taxpayer engaged in business) or a position on a return if the disclosure is made on a properly completed form attached to the return or to a qualified amended return (as defined in § 1.6664-2(c)(3)) for the taxable year. In the case of an item or position other than one that is contrary to a regulation, disclosure must be made on Form 8275 (Disclosure Statement); in the case of a position contrary to a regulation, disclosure must be made on Form 8275-R (Regulation Disclosure Statement).

**(2) Disclosure on return.** The Commissioner may by annual revenue procedure (or otherwise) prescribe the circumstances under which disclosure of information on a return (or qualified amended return) in accordance with applicable forms and instructions is adequate. If the revenue procedure does not include an item, disclosure is adequate with respect to that item only if made on a properly completed Form 8275 or 8275-R, as appropriate, attached to the return for the year or to a qualified amended return.

**(3) Recurring item.** Disclosure with respect to a recurring item, such as the basis of recovery property, must be made for each taxable year in which the item is taken into account.

**(4) Carrybacks and carryovers.** Disclosure is adequate with respect to an item which is included in any loss, deduction or credit that is carried to another year only if made in connection with the return (or qualified amended return) for the taxable year in which the carryback or carryover arises (the "loss or credit year"). Disclosure is not also required in connection with the return for the taxable year in which the carryback or carryover is taken into account.

**(5) Pass-through entities.** Disclosure in the case of items attributable to a pass-through entity (pass-through items) is made with respect to the return of the entity, except as provided in this paragraph (f)(5). Thus, disclosure in the case of pass-through items must be made on a Form 8275 or 8275-R, as appropriate, attached to the return (or qualified amended return) of the entity, or on the entity's return in accordance with the revenue procedure described in paragraph (f)(2) of this section, if applicable. A taxpayer (i.e., partner, shareholder, beneficiary, or holder of a residual interest in a REMIC) also may make adequate disclosure with respect to a pass-through item, however, if the taxpayer files a properly completed Form 8275 or 8275-R, as appropriate, in duplicate, one copy attached to the taxpayer's return (or qualified amended return) and the other copy filed with the Internal Revenue Service Center with which the return of the entity is required to be filed. Each Form 8275 or 8275-R, as appropriate, filed by the taxpayer should relate to the pass-through items of only one entity. For purposes of this paragraph (f)(5), a pass-through entity is a partnership, S corporation (as defined in section 1361(a)(1)), estate, trust, regulated investment company (as defined in section 851(a)), real estate investment trust (as defined in section 856(a)), or real estate mortgage investment conduit ("REMIC") (as defined in section 860D(a)).

**(g) Items relating to tax shelters--(1) In general--(i) Noncorporate taxpayers.** Tax shelter items (as defined in paragraph (g)(3) of this section) of a taxpayer other than a corporation are treated for purposes of this section as if such items were shown properly on the return for a taxable year in computing the amount of tax shown on the

return, and thus the tax attributable to such items is not included in the understatement for the year, if--

(A) There is substantial authority (as provided in paragraph (d) of this section) for the tax treatment of that item; and

(B) The taxpayer reasonably believed at the time the return was filed that the tax treatment of that item was more likely than not the proper treatment.

**(ii) Corporate taxpayers--**(A) In general. Except as provided in paragraph (g)(1)(ii)(B) of this section, all tax shelter items (as defined in paragraph (g)(3) of this section) of a corporation are taken into account in computing the amount of any understatement.

(B) Special rule for transactions occurring prior to December 9, 1994. The tax shelter items of a corporation arising in connection with transactions occurring prior to December 9, 1994 are treated for purposes of this section as if such items were shown properly on the return if the requirements of paragraph (g)(1)(i) are satisfied with respect to such items.

**(iii) Disclosure irrelevant.** Disclosure made with respect to a tax shelter item of either a corporate or noncorporate taxpayer does not affect the amount of an understatement.

**(iv) Cross-reference.** See § 1.6664-4(f) for certain rules regarding the availability of the reasonable cause and good faith exception to the substantial understatement penalty with respect to tax shelter items of corporations.

**(2) Tax shelter--(i) In general.** For purposes of section 6662(d), the term "tax shelter" means--

(A) A partnership or other entity (such as a corporation or trust),

(B) An investment plan or arrangement, or

(C) Any other plan or arrangement,

if the principal purpose of the entity, plan or arrangement, based on objective evidence, is to avoid or evade Federal income tax. The principal purpose of an entity, plan or arrangement is to avoid or evade Federal income tax if that purpose exceeds any other purpose. Typical of tax shelters are transactions structured with little or no motive for the realization of economic gain, and transactions that utilize the mismatching of income and deductions, overvalued assets or assets with values subject to substantial uncertainty, certain nonrecourse financing, financing techniques that do not conform to standard commercial business practices, or the mischaracterization of the substance of the transaction. The existence of economic substance does not of itself establish that a transaction is not a tax shelter if the transaction includes other characteristics that indicate it is a tax shelter.

**(ii) Principal purpose.** The principal purpose of an entity, plan or arrangement is not to avoid or evade Federal income tax if the entity, plan or arrangement has as its purpose the claiming of exclusions from income, accelerated deductions or other tax benefits in a manner consistent with the statute and Congressional purpose. For example, an entity, plan or arrangement does not have as its principal purpose the avoidance or evasion of Federal income tax solely as a result of the following uses of tax benefits provided by the Internal Revenue Code: the purchasing or holding of an obligation bearing interest that is excluded from gross income under section 103; taking an accelerated depreciation allowance under section 168; taking the percentage depletion allowance under section

613 or section 613A; deducting intangible drilling and development costs as expenses under section 263(c); establishing a qualified retirement plan under sections 401-409; claiming the possession tax credit under section 936; or claiming tax benefits available by reason of an election under 992 to be taxed as a domestic international sales corporation ("DISC"), under section 927(f)(1) to be taxed as a foreign sales corporation ("FSC"), or under section 1362 to be taxed as an S corporation.

**(3) Tax shelter item.** An item of income, gain, loss, deduction or credit is a "tax shelter item" if the item is directly or indirectly attributable to the principal purpose of a tax shelter to avoid or evade Federal income tax. Thus, if a partnership is established for the principal purpose of avoiding or evading Federal income tax by acquiring and overstating the basis of property for purposes of claiming accelerated depreciation, the depreciation with respect to the property is a tax shelter item. However, a deduction claimed in connection with a separate transaction carried on by the same partnership is not a tax shelter item if the transaction does not constitute a plan or arrangement the principal purpose of which is to avoid or evade tax.

**(4) Reasonable belief--(i) In general.** For purposes of section 6662(d) and paragraph (g)(1)(i)(B) of this section (pertaining to tax shelter items of noncorporate taxpayers), a taxpayer is considered reasonably to believe that the tax treatment of an item is more likely than not the proper tax treatment if (without taking into account the possibility that a return will not be audited, that an issue will not be raised on audit, or that an issue will be settled)--

(A) The taxpayer analyzes the pertinent facts and authorities in the manner described in paragraph (d)(3)(ii) of this section, and in reliance upon that analysis, reasonably concludes in good faith that there is a greater than 50- percent likelihood that the tax treatment of the item will be upheld if challenged by the Internal Revenue Service; or

(B) The taxpayer reasonably relies in good faith on the opinion of a professional tax advisor, if the opinion is based on the tax advisor's analysis of the pertinent facts and authorities in the manner described in paragraph (d)(3)(ii) of this section and unambiguously states that the tax advisor concludes that there is a greater than 50-percent likelihood that the tax treatment of the item will be upheld if challenged by the Internal Revenue Service.

**(ii) Facts and circumstances; reliance on professional tax advisor.** All facts and circumstances must be taken into account in determining whether a taxpayer satisfies the requirements of paragraph (g)(4)(i) of this section. However, in no event will a taxpayer be considered to have reasonably relied in good faith on the opinion of a professional tax advisor for purposes of paragraph (g)(4)(i)(B) of this section unless the requirements of § 1.6664-4(c)(1) are met. The fact that the requirements of § 1.6664-4(c)(1) are satisfied will not necessarily establish that the taxpayer reasonably relied on the opinion in good faith. For example, reliance may not be reasonable or in good faith if the taxpayer knew, or should have known, that the advisor lacked knowledge in the relevant aspects of Federal tax law.

**(5) Pass-through entities.** In the case of tax shelter items attributable to a pass-through entity, the actions described in paragraphs (g)(4)(i)(A) and (B) of this section, if taken by the entity, are deemed to have been taken by the taxpayer and are considered in determining whether the taxpayer reasonably believed that the tax treatment of an item was more likely than not the proper tax treatment.

26 C.F.R. § 301.7701-3

Treas. Reg. § 301.7701-3

## § 301.7701-3 Classification of certain business entities.

**(a) In general.** A business entity that is not classified as a corporation under § 301.7701-2(b)(1), (3), (4), (5), (6), (7), or (8) (an eligible entity) can elect its classification for federal tax purposes as provided in this section. An eligible entity with at least two members can elect to be classified as either an association (and thus a corporation under § 301.7701-2(b)(2)) or a partnership, and an eligible entity with a single owner can elect to be classified as an association or to be disregarded as an entity separate from its owner. Paragraph (b) of this section provides a default classification for an eligible entity that does not make an election. Thus, elections are necessary only when an eligible entity chooses to be classified initially as other than the default classification or when an eligible entity chooses to change its classification. An entity whose classification is determined under the default classification retains that classification (regardless of any changes in the members' liability that occurs at any time during the time that the entity's classification is relevant as defined in paragraph (d) of this section) until the entity makes an election to change that classification under paragraph (c)(1) of this section. Paragraph (c) of this section provides rules for making express elections. Paragraph (d) of this section provides special rules for foreign eligible entities. Paragraph (e) of this section provides special rules for classifying entities resulting from partnership terminations and divisions under section 708(b). Paragraph (f) of this section sets forth the effective date of this section and a special rule relating to prior periods.

**(b) Classification of eligible entities that do not file an election--(1) Domestic eligible entities.** Except as provided in paragraph (b)(3) of this section, unless the entity elects otherwise, a domestic eligible entity is--

**(i)** A partnership if it has two or more members; or

**(ii)** Disregarded as an entity separate from its owner if it has a single owner.

**(2) Foreign eligible entities--(i) In general.** Except as provided in paragraph (b)(3) of this section, unless the entity elects otherwise, a foreign eligible entity is--

(A) A partnership if it has two or more members and at least one member does not have limited liability;

(B) An association if all members have limited liability; or

(C) Disregarded as an entity separate from its owner if it has a single owner that does not have limited liability.

**(ii) Definition of limited liability.** For purposes of paragraph (b)(2)(i) of this section, a member of a foreign eligible entity has limited liability if the member has no personal liability for the debts of or claims against the entity by reason of being a member. This determination is based solely on the statute or law pursuant to which the entity is organized, except that if the underlying statute or law allows the entity to specify in its organizational documents whether the members will have limited liability, the

organizational documents may also be relevant. For purposes of this section, a member has personal liability if the creditors of the entity may seek satisfaction of all or any portion of the debts or claims against the entity from the member as such. A member has personal liability for purposes of this paragraph even if the member makes an agreement under which another person (whether or not a member of the entity) assumes such liability or agrees to indemnify that member for any such liability.

**(3) Existing eligible entities--(i) In general.** Unless the entity elects otherwise, an eligible entity in existence prior to the effective date of this section will have the same classification that the entity claimed under §§ 301.7701-1 through 301.7701-3 as in effect on the date prior to the effective date of this section; except that if an eligible entity with a single owner claimed to be a partnership under those regulations, the entity will be disregarded as an entity separate from its owner under this paragraph (b)(3)(i). For special rules regarding the classification of such entities prior to the effective date of this section, see paragraph (h)(2) of this section.

**(ii) Special rules.** For purposes of paragraph (b)(3)(i) of this section, a foreign eligible entity is treated as being in existence prior to the effective date of this section only if the entity's classification was relevant (as defined in paragraph (d) of this section) at any time during the sixty months prior to the effective date of this section. If an entity claimed different classifications prior to the effective date of this section, the entity's classification for purposes of paragraph (b)(3)(i) of this section is the last classification claimed by the entity. If a foreign eligible entity's classification is relevant prior to the effective date of this section, but no federal tax or information return is filed or the federal tax or information return does not indicate the classification of the entity, the entity's classification for the period prior to the effective date of this section is determined under the regulations in effect on the date prior to the effective date of this section.

**(c) Elections--(1) Time and place for filing--(i) In general.** Except as provided in paragraphs (c)(1)(iv) and (v) of this section, an eligible entity may elect to be classified other than as provided under paragraph (b) of this section, or to change its classification, by filing Form 8832, Entity Classification Election, with the service center designated on Form 8832. An election will not be accepted unless all of the information required by the form and instructions, including the taxpayer identifying number of the entity, is provided on Form 8832. See § 301.6109-1 for rules on applying for and displaying Employer Identification Numbers.

**(ii) Further notification of elections.** An eligible entity required to file a Federal tax or information return for the taxable year for which an election is made under § 301.7701-3(c)(1)(i) must attach a copy of its Form 8832 to its Federal tax or information return for that year. If the entity is not required to file a return for that year, a copy of its Form 8832 ("Entity Classification Election") must be attached to the Federal income tax or information return of any direct or indirect owner of the entity for the taxable year of the owner that includes the date on which the election was effective. An indirect owner of the entity does not have to attach a copy of the Form 8832 to its return if an entity in which it has an interest is already filing a copy of the Form 8832 with its return. If an entity, or one of its direct or indirect owners, fails to attach a copy of a Form 8832 to its return as directed in this section, an otherwise valid election under § 301.7701-3(c)(1)(i) will not be invalidated, but the non-filing party may be subject to penalties, including any applicable penalties if the Federal tax or information returns are inconsistent with the entity's election under § 301.7701-3(c)(1)(i). In the case of returns for taxable years beginning after December 31, 2002, the copy of Form 8832 attached to a return pursuant to this paragraph (c)(1)(ii) is not required to be a signed copy.

**(iii) Effective date of election.** An election made under paragraph (c)(1)(i) of this section will be effective on the date specified by the entity on Form 8832 or on the date

filed if no such date is specified on the election form. The effective date specified on Form 8832 can not be more than 75 days prior to the date on which the election is filed and can not be more than 12 months after the date on which the election is filed. If an election specifies an effective date more than 75 days prior to the date on which the election is filed, it will be effective 75 days prior to the date it was filed. If an election specifies an effective date more than 12 months from the date on which the election is filed, it will be effective 12 months after the date it was filed. If an election specifies an effective date before January 1, 1997, it will be effective as of January 1, 1997. If a purchasing corporation makes an election under section 338 regarding an acquired subsidiary, an election under paragraph (c)(1)(i) of this section for the acquired subsidiary can be effective no earlier than the day after the acquisition date (within the meaning of section 338(h)(2)).

**(iv) Limitation.** If an eligible entity makes an election under paragraph (c)(1)(i) of this section to change its classification (other than an election made by an existing entity to change its classification as of the effective date of this section), the entity cannot change its classification by election again during the sixty months succeeding the effective date of the election. However, the Commissioner may permit the entity to change its classification by election within the sixty months if more than fifty percent of the ownership interests in the entity as of the effective date of the subsequent election are owned by persons that did not own any interests in the entity on the filing date or on the effective date of the entity's prior election. An election by a newly formed eligible entity that is effective on the date of formation is not considered a change for purposes of this paragraph (c)(1)(iv).

**(v) Deemed elections--**(A) Exempt organizations. An eligible entity that has been determined to be, or claims to be, exempt from taxation under section 501(a) is treated as having made an election under this section to be classified as an association. Such election will be effective as of the first day for which exemption is claimed or determined to apply, regardless of when the claim or determination is made, and will remain in effect unless an election is made under paragraph (c)(1)(i) of this section after the date the claim for exempt status is withdrawn or rejected or the date the determination of exempt status is revoked.

(B) Real estate investment trusts. An eligible entity that files an election under section 856(c)(1) to be treated as a real estate investment trust is treated as having made an election under this section to be classified as an association. Such election will be effective as of the first day the entity is treated as a real estate investment trust.

(C) S corporations. An eligible entity that timely elects to be an S corporation under section 1362(a)(1) is treated as having made an election under this section to be classified as an association, provided that (as of the effective date of the election under section 1362(a)(1)) the entity meets all other requirements to qualify as a small business corporation under section 1361(b). Subject to § 301.7701-3(c)(1)(iv), the deemed election to be classified as an association will apply as of the effective date of the S corporation election and will remain in effect until the entity makes a valid election, under § 301.7701-3(c)(1)(i), to be classified as other than an association.

**(vi) Examples.** The following examples illustrate the rules of this paragraph (c)(1):

**Example 1.** On July 1, 1998, X, a domestic corporation, purchases a 10% interest in Y, an eligible entity formed under Country A law in 1990. The entity's classification was not relevant to any person for federal tax or information purposes prior to X's acquisition of an interest in Y. Thus, Y is not considered to be in existence on the effective date of this section for purposes of paragraph (b)(3) of this section. Under the applicable Country A statute, all members of Y have limited liability as defined in paragraph (b)(2)(ii) of this

section. Accordingly, Y is classified as an association under paragraph (b)(2)(i)(B) of this section unless it elects under this paragraph (c) to be classified as a partnership. To be classified as a partnership as of July 1, 1998, Y must file a Form 8832 by September 14, 1998. See paragraph (c)(1)(i) of this section. Because an election cannot be effective more than 75 days prior to the date on which it is filed, if Y files its Form 8832 after September 14, 1998, it will be classified as an association from July 1, 1998, until the effective date of the election. In that case, it could not change its classification by election under this paragraph (c) during the sixty months succeeding the effective date of the election.

**Example 2.** (i) Z is an eligible entity formed under Country B law and is in existence on the effective date of this section within the meaning of paragraph (b)(3) of this section. Prior to the effective date of this section, Z claimed to be classified as an association. Unless Z files an election under this paragraph (c), it will continue to be classified as an association under paragraph (b)(3) of this section.

(ii) Z files a Form 8832 pursuant to this paragraph (c) to be classified as a partnership, effective as of the effective date of this section. Z can file an election to be classified as an association at any time thereafter, but then would not be permitted to change its classification by election during the sixty months succeeding the effective date of that subsequent election.

**(2) Authorized signatures--(i) In general.** An election made under paragraph (c)(1)(i) of this section must be signed by--

(A) Each member of the electing entity who is an owner at the time the election is filed; or

(B) Any officer, manager, or member of the electing entity who is authorized (under local law or the entity's organizational documents) to make the election and who represents to having such authorization under penalties of perjury.

**(ii) Retroactive elections.** For purposes of paragraph (c)(2)(i) of this section, if an election under paragraph (c)(1)(i) of this section is to be effective for any period prior to the time that it is filed, each person who was an owner between the date the election is to be effective and the date the election is filed, and who is not an owner at the time the election is filed, must also sign the election.

**(iii) Changes in classification.** For paragraph (c)(2)(i) of this section, if an election under paragraph (c)(1)(i) of this section is made to change the classification of an entity, each person who was an owner on the date that any transactions under paragraph (g) of this section are deemed to occur, and who is not an owner at the time the election is filed, must also sign the election. This paragraph (c)(2)(iii) applies to elections filed on or after November 29, 1999.

**(d) Special rules for foreign eligible entities--(1) Definition of relevance-- (i) General rule.** For purposes of this section, a foreign eligible entity's classification is relevant when its classification affects the liability of any person for federal tax or information purposes. For example, a foreign entity's classification would be relevant if U.S. income was paid to the entity and the determination by the withholding agent of the amount to be withheld under chapter 3 of the Internal Revenue Code (if any) would vary depending upon whether the entity is classified as a partnership or as an association. Thus, the classification might affect the documentation that the withholding agent must receive from the entity, the type of tax or information return to file, or how the return must be prepared. The date that the classification of a foreign eligible entity is relevant is the date an event occurs that creates an obligation to file a federal tax return,

information return, or statement for which the classification of the entity must be determined. Thus, the classification of a foreign entity is relevant, for example, on the date that an interest in the entity is acquired which will require a U.S. person to file an information return on Form 5471.

**(ii) Deemed relevance--**(A) General rule. For purposes of this section, except as provided in paragraph (d)(1)(ii)(B) of this section, the classification for Federal tax purposes of a foreign eligible entity that files Form 8832, "Entity Classification Election", shall be deemed to be relevant only on the date the entity classification election is effective.

(B) Exception. If the classification of a foreign eligible entity is relevant within the meaning of paragraph (d)(1)(i) of this section, then the rule in paragraph (d)(1)(ii)(A) of this section shall not apply.

**(2) Entities the classification of which has never been relevant.** If the classification of a foreign eligible entity has never been relevant (as defined in paragraph (d)(1) of this section), then the entity's classification will initially be determined pursuant to the provisions of paragraph (b)(2) of this section when the classification of the entity first becomes relevant (as defined in paragraph (d)(1)(i) of this section).

**(3) Special rule when classification is no longer relevant.** If the classification of a foreign eligible entity is not relevant (as defined in paragraph (d)(1) of this section) for 60 consecutive months, then the entity's classification will initially be determined pursuant to the provisions of paragraph (b)(2) of this section when the classification of the foreign eligible entity becomes relevant (as defined in paragraph (d)(1)(i) of this section). The date that the classification of a foreign entity is not relevant is the date an event occurs that causes the classification to no longer be relevant, or, if no event occurs in a taxable year that causes the classification to be relevant, then the date is the first day of that taxable year.

**(4) Effective date.** Paragraphs (d)(1)(ii), (d)(2), and (d)(3) of this section apply on or after October 22, 2003.

**(e) Coordination with section 708(b).** Except as provided in § 301.7701- 2(d)(3) (regarding termination of grandfather status for certain foreign business entities), an entity resulting from a transaction described in section 708(b)(1)(B) (partnership termination due to sales or exchanges) or section 708(b)(2)(B) (partnership division) is a partnership.

**(f) Changes in number of members of an entity--(1) Associations.** The classification of an eligible entity as an association is not affected by any change in the number of members of the entity.

**(2) Partnerships and single member entities.** An eligible entity classified as a partnership becomes disregarded as an entity separate from its owner when the entity's membership is reduced to one member. A single member entity disregarded as an entity separate from its owner is classified as a partnership when the entity has more than one member. If an elective classification change under paragraph (c) of this section is effective at the same time as a membership change described in this paragraph (f)(2), the deemed transactions in paragraph (g) of this section resulting from the elective change preempt the transactions that would result from the change in membership.

**(3) Effect on sixty month limitation.** A change in the number of members of an entity does not result in the creation of a new entity for purposes of the sixty month limitation on elections under paragraph (c)(1)(iv) of this section.

**(4) Examples.** The following examples illustrate the application of this paragraph (f):

**Example 1.** A, a U.S. person, owns a domestic eligible entity that is disregarded as an entity separate from its owner.

On January 1, 1998, B, a U.S. person, buys a 50 percent interest in the entity from A. Under this paragraph (f), the entity is classified as a partnership when B acquires an interest in the entity. However, A and B elect to have the entity classified as an association effective on January 1, 1998. Thus, B is treated as buying shares of stock on January 1, 1998. (Under paragraph (c)(1)(iv) of this section, this election is treated as a change in classification so that the entity generally cannot change its classification by election again during the sixty months succeeding the effective date of the election.) Under paragraph (g)(1) of this section, A is treated as contributing the assets and liabilities of the entity to the newly formed association immediately before the close of December 31, 1997. Because A does not retain control of the association as required by section 351, A's contribution will be a taxable event. Therefore, under section 1012, the association will take a fair market value basis in the assets contributed by A, and A will have a fair market value basis in the stock received. A will have no additional gain upon the sale of stock to B, and B will have a cost basis in the stock purchased from A.

**Example 2.** (i) On April 1, 1998, A and B, U.S. persons, form X, a foreign eligible entity. X is treated as an association under the default provisions of paragraph (b)(2)(i) of this section, and X does not make an election to be classified as a partnership. A subsequently purchases all of B's interest in X.

(ii) Under paragraph (f)(1) of this section, X continues to be classified as an association. X, however, can subsequently elect to be disregarded as an entity separate from A. The sixty month limitation of paragraph (c)(1)(iv) of this section does not prevent X from making an election because X has not made a prior election under paragraph (c)(1)(i) of this section.

**Example 3.** (i) On April 1, 1998, A and B, U.S. persons, form X, a foreign eligible entity. X is treated as an association under the default provisions of paragraph (b)(2)(i) of this section, and X does not make an election to be classified as a partnership. On January 1, 1999, X elects to be classified as a partnership effective on that date. Under the sixty month limitation of paragraph (c)(1)(iv) of this section, X cannot elect to be classified as an association until January 1, 2004 (i.e., sixty months after the effective date of the election to be classified as a partnership).

(ii) On June 1, 2000, A purchases all of B's interest in X. After A's purchase of B's interest, X can no longer be classified as a partnership because X has only one member. Under paragraph (f)(2) of this section, X is disregarded as an entity separate from A when A becomes the only member of X. X, however, is not treated as a new entity for purposes of paragraph (c)(1)(iv) of this section. As a result, the sixty month limitation of paragraph (c)(1)(iv) of this section continues to apply to X, and X cannot elect to be classified as an association until January 1, 2004 (i.e., sixty months after January 1, 1999, the effective date of the election by X to be classified as a partnership).

**(5) Effective date.** This paragraph (f) applies as of November 29, 1999.

**(g) Elective changes in classification--(1) Deemed treatment of elective change--(i) Partnership to association.** If an eligible entity classified as a partnership elects under paragraph (c)(1)(i) of this section to be classified as an association, the following is deemed to occur: The partnership contributes all of its assets and liabilities to the

association in exchange for stock in the association, and immediately thereafter, the partnership liquidates by distributing the stock of the association to its partners.

**(ii) Association to partnership.** If an eligible entity classified as an association elects under paragraph (c)(1)(i) of this section to be classified as a partnership, the following is deemed to occur: The association distributes all of its assets and liabilities to its shareholders in liquidation of the association, and immediately thereafter, the shareholders contribute all of the distributed assets and liabilities to a newly formed partnership.

**(iii) Association to disregarded entity.** If an eligible entity classified as an association elects under paragraph (c)(1)(i) of this section to be disregarded as an entity separate from its owner, the following is deemed to occur: The association distributes all of its assets and liabilities to its single owner in liquidation of the association.

**(iv) Disregarded entity to an association.** If an eligible entity that is disregarded as an entity separate from its owner elects under paragraph (c)(1)(i) of this section to be classified as an association, the following is deemed to occur: The owner of the eligible entity contributes all of the assets and liabilities of the entity to the association in exchange for stock of the association.

**(2) Effect of elective changes--(i) In general.** The tax treatment of a change in the classification of an entity for federal tax purposes by election under paragraph (c)(1)(i) of this section is determined under all relevant provisions of the Internal Revenue Code and general principles of tax law, including the step transaction doctrine.

**(ii) Adoption of plan of liquidation.** For purposes of satisfying the requirement of adoption of a plan of liquidation under section 332, unless a formal plan of liquidation that contemplates the election to be classified as a partnership or to be disregarded as an entity separate from its owner is adopted on an earlier date, the making, by an association, of an election under paragraph (c)(1)(i) of this section to be classified as a partnership or to be disregarded as an entity separate from its owner is considered to be the adoption of a plan of liquidation immediately before the deemed liquidation described in paragraph (g)(1)(ii) or (iii) of this section. This paragraph (g)(2)(ii) applies to elections filed on or after December 17, 2001. Taxpayers may apply this paragraph (g)(2)(ii) retroactively to elections filed before December 17, 2001, if the corporate owner claiming treatment under section 332 and its subsidiary making the election take consistent positions with respect to the federal tax consequences of the election.

**(3) Timing of election--(i) In general.** An election under paragraph (c)(1)(i) of this section that changes the classification of an eligible entity for federal tax purposes is treated as occurring at the start of the day for which the election is effective. Any transactions that are deemed to occur under this paragraph (g) as a result of a change in classification are treated as occurring immediately before the close of the day before the election is effective. For example, if an election is made to change the classification of an entity from an association to a partnership effective on January 1, the deemed transactions specified in paragraph (g)(1)(ii) of this section (including the liquidation of the association) are treated as occurring immediately before the close of December 31 and must be reported by the owners of the entity on December 31. Thus, the last day of the association's taxable year will be December 31 and the first day of the partnership's taxable year will be January 1.

**(ii) Coordination with section 338 election.** A purchasing corporation that makes a qualified stock purchase of an eligible entity taxed as a corporation may make an election under section 338 regarding the acquisition if it satisfies the requirements for the election, and may also make an election to change the classification of the target

corporation. If a taxpayer makes an election under section 338 regarding its acquisition of another entity taxable as a corporation and makes an election under paragraph (c) of this section for the acquired corporation (effective at the earliest possible date as provided by paragraph (c)(1)(iii) of this section), the transactions under paragraph (g) of this section are deemed to occur immediately after the deemed asset purchase by the new target corporation under section 338.

**(iii) Application to successive elections in tiered situations.** When elections under paragraph (c)(1)(i) of this section for a series of tiered entities are effective on the same date, the eligible entities may specify the order of the elections on Form 8832. If no order is specified for the elections, any transactions that are deemed to occur in this paragraph (g) as a result of the classification change will be treated as occurring first for the highest tier entity's classification change, then for the next highest tier entity's classification change, and so forth down the chain of entities until all the transactions under this paragraph (g) have occurred. For example, Parent, a corporation, wholly owns all of the interest of an eligible entity classified as an association (S1), which wholly owns another eligible entity classified as an association (S2), which wholly owns another eligible entity classified as an association (S3). Elections under paragraph (c)(1)(i) of this section are filed to classify S1, S2, and S3 each as disregarded as an entity separate from its owner effective on the same day. If no order is specified for the elections, the following transactions are deemed to occur under this paragraph (g) as a result of the elections, with each successive transaction occurring on the same day immediately after the preceding transaction S1 is treated as liquidating into Parent, then S2 is treated as liquidating into Parent, and finally S3 is treated as liquidating into Parent.

**(4) Effective date.** Except as otherwise provided in paragraph (g)(2)(ii) of this section, this paragraph (g) applies to elections that are filed on or after November 29, 1999. Taxpayers may apply this paragraph (g) retroactively to elections filed before November 29, 1999 if all taxpayers affected by the deemed transactions file consistently with this paragraph (g).

**(h) Effective date--(1) In general.** Except as otherwise provided in this section, the rules of this section are applicable as of January 1, 1997.

**(2) Prior treatment of existing entities.** In the case of a business entity that is not described in § 301.7701-2(b)(1), (3), (4), (5), (6), or (7), and that was in existence prior to January 1, 1997, the entity's claimed classification(s) will be respected for all periods prior to January 1, 1997, if--

**(i)** The entity had a reasonable basis (within the meaning of section 6662) for its claimed classification;

**(ii)** The entity and all members of the entity recognized the federal tax consequences of any change in the entity's classification within the sixty months prior to January 1, 1997; and

**(iii)** Neither the entity nor any member was notified in writing on or before May 8, 1996, that the classification of the entity was under examination (in which case the entity's classification will be determined in the examination).

**(3) Deemed elections for S corporations.** Paragraph (c)(1)(v)(C) of this section applies to timely S corporation elections under section 1362(a) filed on or after July 20, 2004. Eligible entities that filed timely S elections before July 20, 2004 may also rely on the provisions of the regulation.

28 U.S.C. § 1346(e):

**(e)** The district courts shall have original jurisdiction of any civil action against the United States provided in section 6226, 6228(a), 7426, or 7428 (in the case of the United States district court for the District of Columbia) or section 7429 of the Internal Revenue Code of 1986.

# Notice 2000-44, 2000-2 CB 255, 8/14/2000, IRC Sec(s). 6700

## Promoting abusive tax shelters.

## Headnote:

IRS is cautioning taxpayers about arrangements that are being marketed to taxpayers for generating artificial deductible losses. Variations include borrowing at premium, with partnership assuming debt and taxpayer contributing proceeds to partnership, and, taxpayer buying and writing options, and creating positive basis in partnership interest by transferring positions to partnership. Possible penalties for promoting and participating in shelters were also discussed.

***Reference(s):*** ¶ 67,004; Code Sec. 6700;

## Full Text:

Tax Avoidance Using Artificially High Basis

In Notice 99-59, 1999-52 I.R.B. 761, the Internal Revenue Service and the Treasury Department described certain transactions that were being marketed to taxpayers for the purpose of generating artificial tax losses. This notice concerns other similar transactions that purport to generate tax losses for taxpayers.

As stated in Notice 99-59, a loss is allowable as a deduction for federal income tax purposes only if it is bona fide and reflects actual economic consequences. An artificial loss lacking economic substance is not allowable. See ACM Partnership v. Commissioner, 157 F.3d 231, 252 [82 AFTR 2d 98-6682] (3d Cir. 1998), cert. denied, 526 U.S. 1017 (1999) ("Tax losses such as these ...which do not correspond to any actual economic losses, do not constitute the type of "bona fide" losses that are deductible under the Internal Revenue Code and regulations."); Scully v. United States, 840 F.2d 478, 486 [61 AFTR 2d 88-706] (7th Cir. 1988) (to be deductible, a loss must be a "genuine economic loss"); Shoenberg v. Commissioner, 77 F.2d 446, 448 [16 AFTR 95] (8th Cir. 1935) (to be deductible, a loss must be "actual and real"); section 1.165- 1(b) of the Income Tax Regulations ("Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss.").

Notice 99-59 describes an arrangement that purported to give rise to deductible losses on disposition of stock by applying the rules relating to distributions of encumbered property to shareholders in order to create artificially high basis in the stock. The Service and the Treasury have become aware of similar arrangements that have been designed to produce noneconomic tax losses on the disposition of partnership interests. These arrangements purport to give taxpayers artificially high basis in partnership interests and thereby give rise to deductible losses on disposition of those partnership interests.

One variation involves a taxpayer's borrowing at a premium and a partnership's subsequent assumption of that indebtedness. As an example of this variation, a taxpayer may receive $3,000X in cash from a lender under a loan agreement that provides for an

inflated stated rate of interest and a stated principal amount of only $2,000X. The taxpayer contributes the $3,000X to a partnership, and the partnership assumes the indebtedness. The partnership thereafter engages in investment activities. At a later time, the taxpayer sells the partnership interest.

Under the position advanced by the promoters of this arrangement, the taxpayer claims that only the stated principal amount of the indebtedness, $2,000X in this example, is considered a liability assumed by the partnership that is treated as a distribution of money to the taxpayer that reduces the basis of the taxpayer's partnership interest under section 752 of the Internal Revenue Code. Therefore, disregarding any additional amounts the taxpayer may contribute to the partnership, transaction costs, and any income realized or expenses incurred at the partnership level, the taxpayer purports to have a basis in the partnership interest equal to the excess of the cash contributed over the stated principal amount of the indebtedness, even though the taxpayer's net economic outlay to acquire the partnership interest and the value of the partnership interest are nominal or zero. In this example, the taxpayer purports to have a basis in the partnership interest of $1,000X (the excess of the cash contributed ($3,000X) over the stated principal amount of the indebtedness ($2,000X)). On disposition of the partnership interest, the taxpayer claims a tax loss with respect to that basis amount, even though the taxpayer has incurred no corresponding economic loss.

In another variation, a taxpayer purchases and writes options and purports to create substantial positive basis in a partnership interest by transferring those option positions to a partnership. For example, a taxpayer might purchase call options for a cost of $1,000X and simultaneously write offsetting call options, with a slightly higher strike price but the same expiration date, for a premium of slightly less than $1,000X. Those option positions are then transferred to a partnership which, using additional amounts contributed to the partnership, may engage in investment activities.

Under the position advanced by the promoters of this arrangement, the taxpayer claims that the basis in the taxpayer's partnership interest is increased by the cost of the purchased call options but is not reduced under section 752 as a result of the partnership's assumption of the taxpayer's obligation with respect to the written call options. Therefore, disregarding additional amounts contributed to the partnership, transaction costs, and any income realized and expenses incurred at the partnership level, the taxpayer purports to have a basis in the partnership interest equal to the cost of the purchased call options ($1,000X in this example), even though the taxpayer's net economic outlay to acquire the partnership interest and the value of the partnership interest are nominal or zero. On the disposition of the partnership interest, the taxpayer claims a tax loss ($1,000X in this example), even though the taxpayer has incurred no corresponding economic loss.

The purported losses resulting from the transactions described above do not represent bona fide losses reflecting actual economic consequences as required for purposes of section 165. The purported losses from these transactions (and from any similar arrangements designed to produce noneconomic tax losses by artificially overstating basis in partnership interests) are not allowable as deductions for federal income tax purposes. The purported tax benefits from these transactions may also be subject to disallowance under other provisions of the Code and regulations. In particular, the transactions may be subject to challenge under section 752, or under section 1.701-2 or other anti-abuse rules. In addition, in the case of individuals, these transactions may be subject to challenge under section 165(c)(2). See Fox v. Commissioner, 82 T.C. 1001 (1984). Furthermore, tax losses from similar transactions designed to produce noneconomic tax losses by artificially overstating basis in corporate stock or other property are not allowable as deductions for federal income tax purposes.

Appropriate penalties may be imposed on participants in these transactions or, as applicable, on persons who participate in the promotion or reporting of these transactions, including the accuracy-related penalty under section 6662, the return preparer penalty under section 6694, the promoter penalty under section 6700, and the aiding and abetting penalty under section 6701.

Transactions that are the same as or substantially similar to the transactions described in this Notice 2000-44 are identified as "listed transactions" for the purposes of section 1.6011-4T(b)(2) of the Temporary Income Tax Regulations and section 301.6111-2T(b)(2) of the Temporary Procedure and Administration Regulations. See also section 301.6112-1T, A-4. It should be noted that, independent of their classification as "listed transactions" for purposes of sections 1.6011-4T(b)(2) and 301.6111-2T(b)(2), the transactions described in this Notice 2000-44 may already be subject to the tax shelter registration and list maintenance requirements of sections 6111 and 6112 under the regulations issued in February 2000 ( sections 301.6111-2T and 301.6112-1T, A-4), as well as the regulations issued in 1984 and amended in 1986 ( sections 301.6111-1T and 301.6112-1T, A-3). Persons required to register these tax shelters who have failed to register the shelters may be subject to the penalty under section 6707(a) and to the penalty under section 6708(a) if the requirements of section 6112 are not satisfied.

In addition, the Service and the Treasury have learned that certain persons who have promoted participation in transactions described in this notice have encouraged individual taxpayers to participate in such transactions in a manner designed to avoid the reporting of large capital gains from unrelated transactions on their individual income tax returns (Form 1040). Certain promoters have recommended that taxpayers participate in these transactions through grantor trusts and use the same grantor trusts as vehicles to realize the capital gains. Further, although each separate capital gain and loss attributable to a portion of a trust that is treated as owned by a grantor under the grantor trust provisions of the Code ( section 671 and following) is properly reported as a separate item on the grantor's individual income tax return (see section 1.671-2(c) and the Instructions to Form 1041, U.S. Income Tax Return for Estates and Trusts), the Service and the Treasury understand that these promoters have advised that the capital gains and losses from these transactions may be netted, so that only a small net capital gain or loss is reported on the taxpayer's individual income tax return. In addition to other penalties, any person who willfully conceals the amount of capital gains and losses in this manner, or who willfully counsels or advises such concealment, may be guilty of a criminal offense under sections 7201, 7203, 7206, or 7212(a) or other provisions of federal law.

The principal authors of this notice are David A. Shulman of the Office of Associate Chief Counsel (Passthroughs and Special Industries) and Victoria S. Balacek of the Office of Associate Chief Counsel (Financial Instruments and Products). For further information regarding this notice, contact Mr. Shulman at (202) 622-3080 or Ms. Balacek at (202) 622-3930 (not toll free calls).

**Notices**

# Notice 2004-46, 2004-29 IRB 46, 07/07/2004, IRC Sec(s). 132

## Fringe benefits—transportation fringe—cash reimbursement for transit pass—debit card use.

## Headnote:

IRS is seeking public comment on specified issues surrounding use of debit cards by employers to provide Code Sec. 132(f); qualified transportation fringe benefits. Comments, written and electronic, must be submitted by 10/19/2004.

***Reference(s):*** ¶ 1324.08; Code Sec. 132;

## Full Text:

### Purpose

Employers and others have asked for clarification of their ability to use debit cards to provide their employees with qualified transportation fringes described under § 132(f). Qualified transportation fringes include transportation in a commuter highway vehicle (vanpooling), any transit pass, and qualified parking (collectively referred to herein as "transit benefits") meeting the requirements of § 132(f). Qualified transportation fringes are excluded from the employee's gross income and from wages for purposes of employment tax.

A qualified transportation fringe includes cash reimbursement for transportation in a commuter highway vehicle and qualified parking. However, under § 132(f)(3), a qualified transportation fringe does not include cash reimbursement for a transit pass if a voucher or similar item that may be exchanged only for a transit pass is readily available for direct distribution by the employer to the employer's employees. Thus, in circumstances where vouchers are readily available, an employer must provide vouchers to its employees in order for a transit pass benefit to be excludable from gross income and wages under § 132(f). If a qualified transportation fringe can be provided through cash reimbursement, the employer must use a bona fide reimbursement arrangement. To meet the requirements for such an arrangement, first the payment must be a reimbursement, and not an advance. See § 1.132-9(b) Q/A-16(a). Second, the employee must substantiate to the employer that an expense for a transit benefit was actually incurred. See § 1.132-9(b) Q/A-16(c). There are monthly limits on the dollar value of qualified transportation fringe benefits that an employer may provide to an employee and exclude from the employee's income and wages. The monthly limits vary depending upon the type of benefit, and are currently $195 per month for qualified parking and $100 per month for transit passes.

Treasury and the Service are seeking information about how debit card technology works. The operation of the technology is directly relevant to answering a number of questions that arise when applying the qualified transportation fringe benefit regulations. For example, should a debit card be considered a voucher that may be exchanged exclusively

for a transit pass? If so, should employers be barred from using cash reimbursement to provide transit passes to their employees as qualified transportation fringe benefits, even if vouchers are not otherwise readily available? If a debit card can be used to purchase more than one kind of fringe benefit, does an employer provide an advance or a reimbursement when it provides a debit card for use in purchasing various transportation benefits? Can a debit card system be established to keep amounts designated for different types of transit benefits separate to ensure that the statutory monthly limits applicable to the different types of benefits are not exceeded?

The Service and Treasury request comments on the issues described below, and any other comments on the use of a debit card to provide transit benefits, from all persons affected by this issue, including employers, employees, transit operators, voucher providers, debit card providers, and third party administrators.

## Background

Section 132(a)(5) provides that any fringe benefit that is a qualified transportation fringe is excluded from gross income.

Section 132(f)(1) provides that the term “qualified transportation fringe” means (1) transportation in a commuter highway vehicle between home and work, (2) any transit pass, and (3) qualified parking. The amount of the fringe benefit which may be excluded from gross income and wages is currently limited to $100 per month for the aggregate of transportation in a commuter highway vehicle and transit passes, and $195 per month for qualified parking. See § 132(f)(2); Rev. Proc. 2003-85, 2003-49 I.R.B. 1184.

Section 132(f)(5)(A) provides that a transit pass means any pass, token, farecard, voucher or similar item entitling a person to transportation (or transportation at a reduced price) if such transportation is on mass transit facilities or is provided by any person in the business of transporting persons for compensation or hire in a commuter highway vehicle. See § 132(f)(5)(B) for the definition of a commuter highway vehicle.

Section 132(f)(3) provides that a qualified transportation fringe includes a cash reimbursement by an employer to an employee for transit benefits. However, a qualified transportation fringe includes cash reimbursement by an employer to an employee for a transit pass only if a voucher or similar item which may be exchanged only for a transit pass is not readily available for direct distribution by the employer to the employee.

Income Tax Regulations § 1.132-9(b) Q/A-16(b)(2) provides that a transit system voucher is an instrument that may be purchased by employers from a voucher provider that is accepted by one or more mass transit operators in an area as fare media or in exchange for fare media. Under § 1.132-9(b) Q/A-16(b)(3), a voucher provider is any person in the trade or business of selling transit system vouchers to employers, or any transit system operator that sells vouchers to employers for the purpose of direct distribution to employees.

Section 1.132-9(b) Q/A-16(b)(4) provides that a voucher or similar item is readily available for direct distribution by an employer to employees if and only if the employer can obtain it from a voucher provider who does not impose fare media charges greater than 1 percent of the average annual value of the voucher for a transit system, or does not impose other restrictions causing the voucher not to be considered readily available. See § 1.132-9(b) Q/A-16(b)(5) and (b)(6).

Section 1.132-9(b) Q/A-16(a) provides that the term qualified transportation fringe includes cash reimbursement for transportation in a commuter highway vehicle, transit passes (if permitted), and qualified parking, provided the reimbursement is made under a bona fide reimbursement arrangement. A payment made before the date an expense has been incurred or paid is not a reimbursement, even if the employee certifies in advance that the employee will incur expenses at some future date. Under § 1.132-9(b) Q/A-16(c), a bona fide reimbursement arrangement is an arrangement under which the employee must substantiate to the employer within a reasonable period of time that an expense for transit benefits has been paid.

Section 1.132-9(b) Q/A-18 provides that no substantiation is required if the employer distributes a transit pass (including a voucher) in-kind to the employer's employees.

In Rev. Rul. 2003-43, 2003-21 I.R.B. 935, the Service held that under certain circumstances employer-provided expense reimbursements may be made through a debit or credit card, or certain other electronic media, and be excludable from gross income under § 105. The use of a debit card, by itself, generally was not found to be sufficient to meet the substantiation requirement under § 105(b). Instead, in addition to requiring that the Merchant Codes for the debit cards be restricted, the employee is required to substantiate the expense incurred, albeit after the initial transaction. In addition, under certain circumstances the substantiation requirement can be met without additional substantiation. First, a payment made at a doctor's office in the amount of a copayment is deemed to satisfy the substantiation requirement. Second, recurring expenses that have been previously actually substantiated are deemed to meet the substantiation requirement. Third, real-time verification at the point of sale is deemed to meet the substantiation requirement. Other than copayments, recurring expenses, and real-time substantiation, the revenue ruling requires that expenses paid through a debit card be treated as conditional pending confirmation of the charge.

## Issues On Which Comments Are Specifically Requested

1. Given existing technology, under what circumstances, if any, should a debit card be considered the equivalent of a voucher or similar item described in § 132(f)(5)(A)? We understand that a debit card may be restricted for use only at merchants with certain Merchant Codes or specific merchant card terminals. Would a rule that required use of a debit card to be limited to merchants with certain Merchant Codes or merchant card terminals be administrable? Would such a rule provide adequate controls consistent with the statutory objective of ensuring that amounts are only used to provide transit pass benefits within the meaning of § 132(f)(5)(A)? For example, under what circumstances could a debit card with Merchant Code restrictions be used to purchase something other than a transit pass within the meaning of § 132(f)(5)(A)? In addition, under what circumstances should a debit card be restricted for use only at a particular merchant card terminal in order to be considered a voucher or similar item for purposes of § 132(f)(3)?

2. If a debit card is a voucher or similar item, should the availability of the debit card in an area in which a voucher or similar item is otherwise not readily available preclude cash reimbursement for a transit pass in that area? For example, in Metropolitan Area A, a voucher or similar item is not considered readily available because fare media charges imposed by voucher providers in A exceed 1 percent of the average annual value of vouchers for a transit system. However, the charges associated with using a debit card in A that is the equivalent of a voucher or similar item are less than 1 percent of the annual value of the debit card for the transit system. Should the debit card be considered a readily available voucher in A for purposes of § 132(f)(3), and thus preclude cash reimbursement for a transit pass in A?

3. Is it appropriate to allow the use of recurring transaction substantiation such as that described in Rev. Rul. 2003-43 to meet the requirement under § 132(f)(3) that a transit pass benefit be provided through distribution of a voucher or similar item instead of cash reimbursement? For example, in circumstances in which fare media may be purchased from a merchant who is not in the trade or business of providing transportation services, and thus does not have a Merchant Category Code indicating that the merchant sells only transit passes, e.g., a convenience store, under what circumstances, if any, should recurring transaction substantiation be deemed to satisfy the requirement that a voucher or similar item be distributed?

4. Under what circumstances should an expense related to transportation in a commuter highway vehicle, a transit pass (assuming cash reimbursement is permitted), or qualified parking paid with a debit card be considered to be a bona fide reimbursement (i.e., not an advance), and considered adequately substantiated within the meaning of § 1.132-9(b) Q/A-16(c)?

5. Under what circumstances, if any, could a debit card be used to provide multiple qualified transportation fringes (e.g., qualified parking and a transit pass), and adequately ensure that the respective applicable statutory monthly limits for qualified transportation fringes are not exceeded? Given existing technology (such as multiple purses on a debit card, and Merchant Code technology), is it possible, and, if so, how is it possible, to ensure that amounts designated for a particular benefit are used for the intended benefit, and thus that the separate applicable statutory monthly limits for transportation in a commuter highway vehicle and transit passes, and qualified parking are not exceeded? For example, if an employer provides through the use of a debit card a $150 monthly benefit for parking and a $100 monthly benefit for transit passes, how may use of the debit card be restricted to ensure that the respective applicable statutory monthly limits for qualified parking and other qualified transportation fringes are not exceeded?

**DATES:** Written and electronic comments must be submitted by October 19, 2004.

**ADDRESSES:** Send submissions to: CC:PA:LDP:PR ( Notice 2004-46), Room 5203, Internal Revenue Service, P.O.Box 7604, Ben Franklin Station, Washington, DC 20044. Submissions may also be hand-delivered Monday through Friday between the hours of 8 a.m. and 4 p.m. to the Courier's Desk at 1111 Constitution Avenue, NW., Washington, DC 20224, Attn: CC:PA:LPD:PR ( Notice 2004-46), Room 5203.

Alternatively, taxpayers may send submissions electronically directly to the Service at: Notice.comments@irscounsel.treas.gov. All materials submitted will be available for public inspection and copying.

## For Further Information Contact:

- Concerning submissions, Guy Traynor at (202) 622-7180.
- Concerning this notice, John Richards of the Office of the Associate Chief Counsel (Tax Exempt & Government Entities) at (202) 622-6040 (not toll-free calls).

**Treasury Decision**

# Treasury Decision 9207, 05/24/2005, IRC Sec(s). 752

## Treatment of certain liabilities—partnership's assumption of partner's liability.

## Headnote:

Final regs were issued concerning partnership's assumption of certain fixed and contingent obligations in connection with issuance of partnership interest, along with temporary regs relating to the assumption of certain liabilities under Code Sec. 358(h); . Reg § 1.752-6 applies to assumptions of liabilities by a partnership occurring after 10/18/1999, and before 6/24/2003. All other final regs, as well as the temporary regs under Code Sec. 358; , apply to liabilities assumed on or after 6/24/2003.

***Reference(s):*** ¶ 7524.01; Code Sec. 752;

## Full Text:

### Rin 1545-AX93

### Assumption of Partner Liabilities

**AGENCY:** Internal Revenue Service (IRS), Treasury.

**ACTION:** Final and temporary regulations; and removal of temporary regulations.

**SUMMARY:** This document contains final regulations relating to the definition of liabilities under section 752 of the Internal Revenue Code (Code). These regulations provide rules regarding a partnership's assumption of certain fixed and contingent obligations in connection with the issuance of a partnership interest and provide conforming changes to certain regulations. These regulations also provide rules under section 358(h) for assumptions of liabilities by corporations from partners and partnerships. Finally, this document also contains temporary regulations relating to the assumption of certain liabilities under section 358(h). The text of the temporary regulations also serves as the text of the proposed regulations set forth in the notice of proposed rulemaking on this subject in the proposed rules section in this issue of the Federal Register.

DATES: Effective Date: These regulations are effective May 26, 2005.

Applicability Dates: The final §1.752-6 regulations apply to assumptions of liabilities by a partnership occurring after October 18, 1999, and before June 24, 2003. All of the other final regulations in this Treasury Decision, as well as the temporary regulations under section 358, apply to liabilities assumed on or after June 24, 2003, except as otherwise noted.

**FOR FURTHER INFORMATION CONTACT:** Laura Fields at (202) 622-3050 (not a toll-free number).

## Supplementary Information:

## Paperwork Reduction Act

The collection of information contained in these final regulations has been reviewed and approved by the Office of Management and Budget in accordance with the Paperwork Reduction Act of 1995 (44 U.S.C. 3507(d)) under control number 1545-1843. Responses to these collections of information are mandatory and are required to obtain a benefit. The collections of information in this final regulation is in , , §1.752-7(e), (f), (g), and (h). This information is required for a former or current partner of a partnership to take deductions, losses, or capital expenses attributable to the satisfaction of the §1.752-7 liability. This information will be used by the partner in order to take a deduction, loss, or capital expense. An additional collection of information in this final regulation is in §1.752-7(k)(2). This information is required to inform the IRS of partnerships making the designated election and to report income appropriately. The collection of information is required to obtain a benefit, i.e., to elect to apply the provisions of §1.752-7 of the regulations in lieu of §1.752-6. The likely respondents are business or other for-profit institutions and small businesses or organizations.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid control number assigned by the Office of Management and Budget.

Estimated total annual reporting burden: 125 hours.

The estimated annual burden per respondent varies from 20 to 40 minutes, depending on individual circumstances, with an estimated average of 30 minutes.

Estimated number of respondents: 250.

Estimated annual frequency of responses: On occasion.

Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be sent to the **Internal Revenue Service**, Attn: IRS Reports Clearance Officer, SE:W:CAR:MP:T:T:SP Washington, DC 20224, and to the **Office of Management and Budget**, Attn: Desk Officer for the Department of the Treasury, Office of Information and Regulatory Affairs, Washington, DC 20503.

Books or records relating to this collection of information must be retained as long as their contents may become material in the administration of any internal revenue law. Generally, tax returns and tax return information are confidential, as required by 26 U.S.C. 6103.

## Background

This document contains amendments to 26 CFR part 1 under sections 358, 704, 705, 737 and 752 of the Internal Revenue Code (Code).

As part of the Community Renewal Tax Relief Act of 2000 (the Act)(114 Stat. 2763), Congress enacted, on December 15, 2000, section 358(h), effective October 18, 1999, to address certain situations in which property is transferred to a corporation in exchange for both stock and the corporation's assumption of certain obligations of the transferor. In

these situations, transferors took the position that the obligations were not liabilities within the meaning of section 357(c) or that they were described in section 357(c)(3), and, therefore, the obligations did not reduce the basis of the transferor's stock. These assumed obligations, however, did reduce the value of the stock. The transferors then sold the stock and claimed a loss. In this way, taxpayers attempted to duplicate a loss in corporate stock and to accelerate deductions that typically are allowed only on the economic performance of these types of obligations.

Section 358(h) addresses these transactions by requiring that, after the application of section 358(d), the basis in stock received in an exchange to which section 351, 354, 355, 356, or 361 applies be reduced (but not below the fair market value of the stock) by the amount of any liability assumed in the exchange. Exceptions to section 358(h) are provided where: (1) the trade or business with which the liability is associated is transferred to the person assuming the liability as part of the exchange; or (2) substantially all of the assets with which the liability is associated are transferred to the person assuming the liability as part of the exchange. The Secretary, however, has the authority to limit these exceptions. The term liability for purposes of section 358(h) includes any fixed or contingent obligation to make payment without regard to whether the obligation is otherwise taken into account for purposes of the Code.

Congress recognized that taxpayers were attempting to use partnerships and S corporations to carry out the same types of abuses that section 358(h) was designed to deter. Therefore, in sections 309(c) and (d)(2) of the Act, Congress directed the Secretary to prescribe rules to provide "appropriate adjustments under subchapter K of chapter 1 of the Code to prevent the acceleration or duplication of losses through the assumption of (or transfer of assets subject to) liabilities described in section 358(h)(3) . . . in transactions involving partnerships." Under the statute, these rules are to "apply to assumptions of liability after October 18, 1999, or such later date as may be prescribed in such rules."

In response to this directive, a notice of proposed rulemaking (REG-106736-00; 2003-28 I.R.B. 46) under sections 358, 704, 705, and 752 was published in the Federal Register (68 FR 37434) on June 24, 2003. In addition, temporary regulations (TD 9062) were published on that same day (68 FR 37414). The proposed and temporary regulations provide rules to prevent the duplication and acceleration of loss through the assumption by a partnership of certain liabilities from a partner. Section 1.752-6T of the temporary regulations (the temporary regulations) applies to liabilities assumed by a partnership after October 18, 1999, and before June 24, 2003. Section 1.752-7 of the proposed regulations (the proposed regulations) applies to liabilities assumed by a partnership on or after June 24, 2003. However, taxpayers may elect to apply the proposed regulations, instead of the temporary regulations, to liabilities assumed by a partnership after October 18, 1999, and before June 24, 2003.

The temporary regulations adopt the approach of section 358(h), with some modifications. For example, the exception for contributions of "substantially all of the assets with which the liability is associated" does not apply to certain abusive transactions described in Notice 2000-44, released to the public on August 11, 2000, and published on September 5, 2000 (2000-2 C.B. 255).

The proposed regulations deviate somewhat from the rules of section 358(h). In particular, the proposed regulations do not reduce the partner's basis in the partnership at the time of the assumption of a §1.752-7 liability by the partnership, but delay that reduction until an event occurs that separates the partner from the liability (triggering event). The triggering events are: (1) a disposition (or partial disposition) of the partnership interest by the partner; (2) a liquidation of the partner's interest in the

partnership; and (3) the assumption of the liability by another partner. After a triggering event, the partnership's (or the assuming partner's) deduction on the economic performance of the §1.752-7 liability is limited. However, if the partnership (or the assuming partner) notifies the partner of the economic performance of the §1.752-7 liability, then the partner may take a loss or deduction in the amount of the prior basis reduction.

The proposed regulations include an exception, similar to the exception in section 358(h)(2)(A), for transactions in which the partner contributes to the partnership the trade or business with which the liability is associated as part of the exchange (the trade or business exception), but do not include an exception, similar to the exception in section 358(h)(2)(B), for transactions in which the partner contributes to the partnership substantially all of the assets associated with the liability as part of the exchange. The proposed regulations also include an additional exception for situations in which, immediately before the triggering event, the amount of the remaining built-in loss with respect to all §1.752-7 liabilities assumed by the partnership (other than §1.752-7 liabilities assumed by the partnership with an associated trade or business) in one or more §1.752-7 liability transfers is less than the lesser of 10% of the gross value of partnership assets or $1,000,000 (the de minimis exception).

In addition, the proposed regulations provide detailed rules to address the treatment of the liability between the date of the assumption of that liability by the partnership and the date of a triggering event and to address tiered entity situations.

The proposed regulations distinguish between a §1.752-1 liability, for which a basis reduction is required when the liability is assumed by the partnership from a partner, and a §1.752-7 liability, for which a basis reduction is not required until the occurrence of a triggering event. Under the proposed regulations, an obligation is a §1.752-1 liability to the extent the obligation creates or increases the basis of any of the obligor's assets (including cash), gives rise to an immediate deduction to the obligor, or gives rise to an expense that is not deductible in computing the obligor's taxable income and is not properly chargeable to capital. All remaining obligations are §1.752-7 liabilities. Under the proposed regulations, §1.752-7 liabilities are subject to the rules of section 704(c) and the regulations thereunder.

The American Jobs Creation Act of 2004, Public Law 108-357 (118 Stat. 1418) (the Act), was enacted on October 22, 2004. Section 833(a) of the Act amended section 704(c) of the Code by adding section 704(c)(1)(C), effective for contributions of property to a partnership after October 22, 2004. Under new section 704(c)(1)(C), if “built-in loss” property is contributed to a partnership, the built-in loss shall be taken into account only in determining the items allocated to the contributing partner, and, except as provided in regulations, in determining the amount of items allocated to the other partners, the basis of the contributed property shall be treated as being equal to its fair market value at the time of contribution. For this purpose, a “built-in loss” is defined to mean the excess of the adjusted basis of the property in the hands of the contributing partner over its fair market value at the time of its contribution to the partnership.

Section 833(b) of the Act requires basis adjustments to be made following certain transfers of interests in partnerships for which no section 754 election is in effect. As amended by the Act, section 743 (a) and (b) of the Code requires a partnership to reduce the basis of partnership property upon the transfer of an interest in the partnership by sale or exchange or upon the death of a partner, if, at the time of the relevant transfer, the partnership has a “substantial built-in loss.” Section 743(d)(1) provides that, for purposes of section 743, a partnership has a substantial built-in loss with respect to a transfer of a partnership interest if the partnership's adjusted basis in the partnership's

property exceeds by more than $250,000 the fair market value of such property. Exceptions are provided for electing investment partnerships and for securitization partnerships, as defined in the Act. See also sections 734(b) and (d), as amended by section 833(c) of the Act (requiring a basis adjustment to be made following a distribution from a partnership for which no section 754 election is in effect in the case of a "substantial basis reduction").

The IRS and the Treasury Department are aware of certain similarities between the treatment of §1.752-7 liabilities in these regulations and the treatment of built-in losses under sections 704(c)(1)(C), 734, and 743 of the Code, as added by the Act. For example, it is possible to view the contribution of property with an adjusted tax basis equal to the fair market value of the property, determined without regard to any §1.752-7 liabilities, as "built-in loss" property after the §1.752-7 liability is taken into account in those cases where the §1.752-7 liability is related to the contributed property. Although a partnership's assumption of a §1.752-7 liability as part of the contribution of property to the partnership can be analogized to a property with an adjusted tax basis greater than fair market value, the purposes of section 704(c)(1)(C) and §1.752-7 are different in certain respects. Section 704(c)(1)(C) and the other changes in section 833 of the Act are directed toward loss duplication whereas §1.752-7 is directed at both loss duplication and loss acceleration. Therefore, to the extent of any built-inloss attributable to a §1.752-7 liability, §1.752-7 shall be applied without regard to the amendments made by the Act, unless future guidance provides to the contrary. Any such guidance would be prospective in application.

Written comments were received in response to the notice of proposed rulemaking, and a public hearing was held on October 14, 2003. Two commentators requested to speak at that hearing. After consideration of the comments, the proposed and temporary regulations are adopted as modified by this Treasury decision.

## Explanation of Provisions

These final regulations generally follow the proposed and temporary regulations with the changes described below.

1. Comments on §1.752-6T

Several commentators suggested that the issuance of §1.752-6T exceeded the authority granted to the Secretary in section 309 of the Act. More specifically, some commentators suggested that §1.752-6T results in the inappropriate denial of a bona fide loss, that §1.752-6T was issued to bootstrap the IRS's litigating position regarding transactions described in Notice 2000-44 (2000-2 C.B. 255), and that section 309 of the Act only granted the Secretary the authority to prescribe rules to address situations in which a partnership liability is assumed by a corporation. In addition, several commentators argued that the Treasury Department and the IRS exceeded their authority in providing that §1.752-6T applies retroactively to assumptions of liabilities occurring after October 18, 1999, and before June 24, 2003, the date the regulations were issued.

The Treasury Department and the IRS believe that §1.752-6T does not result in the inappropriate denial of a bona fide loss. The exceptions in §1.752-6T generally limit the application of the regulations to transactions that are abusive in nature and that lack a business purpose. In addition, the regulations allow taxpayers to elect into §1.752-7 so as to avoid the immediate basis reduction under §1.752-6T. Recognizing, however, that some taxpayers may not have expected the approach taken in §1.752-7 when engaging

in transactions in prior years, §1.752-6T employs rules similar to section 358(h) for partnership transactions.

Those commentators who suggested that the IRS issued §1.752-6T to “bootstrap” its litigating position in Notice 2000-44 pointed to the fact that Notice 2000-44 did not mention that regulations would be issued in the future to challenge the transactions described in that notice. As discussed earlier, the Act was enacted with a retroactive effective date and granted the Treasury Department and the IRS the authority to issue retroactive regulations. The Treasury Department and the IRS believe that they have appropriately exercised this grant of authority. Also, Notice 2000-44 was released on August 11, 2000. The Act was not enacted into law until December 15, 2000, after the release of Notice 2000-44. Therefore, the Treasury Department and the IRS could not reference regulations promulgated under the Act in Notice 2000-44.

The Treasury Department and the IRS have concluded that the Secretary's authority under section 309(c) is not limited to addressing assumptions of liabilities by corporations from partnerships. The plain language of the legislative directive is not so limited and the legislative history does not support such a limitation.

To the contrary, the Treasury Department and the IRS believe that the rules of §1.752-6T carry out the explicit directive of section 309(c) of the Act by applying to partnership transactions rules that are analogous to the rules that apply to corporate transactions under section 358(h). For example, if the transactions described in Notice 2000-44 were effected through a contribution to a corporation, rather than a contribution to a partnership, section 358(h) would generally apply to such a transaction, causing a basis reduction identical to that provided by §1.752-6T.

Section 7805(b) addresses when a regulation (temporary, proposed, or final) may be effective retroactively. Section 7805(b)(1) generally provides that no temporary, proposed, or final regulations relating to the internal revenue laws shall apply to any taxable period ending before the earliest of the following dates: (A) the date on which such regulation is filed with the Federal Register; (B) in the case of any final regulation, the date on which any proposed or temporary regulation to which such final regulation relates was filed with the Federal Register; or (C) the date on which any notice substantially describing the expected contents of any temporary, proposed, or final regulation is issued to the public. However, section 7805(b) provides a list of exceptions to the general rule stated above. Included in that list, and relevant in this context, is section 7805(b)(6). Section 7805(b)(6) provides that the limitation may be superseded “by a legislative grant from Congress authorizing the Secretary to prescribe the effective date with respect to any regulation.” Also included among the exceptions to the general rule in section 7805(b)(1) is section 7805(b)(3). Section 7805(b)(3) states that the “Secretary may provide that any regulation may take effect or apply retroactively to prevent abuse.”

The retroactive effective date of §1.752-6T is in accordance with the directive in section 309(c) and (d)(2) of the Act and section 7805(b)(6). Furthermore, pursuant to section 7805(b)(3), the Secretary has determined that a retroactive effective date is appropriate to prevent abuse.

For these reasons, the Treasury Department and the IRS have concluded that §1.752-6T is a valid exercise of the Secretary's regulatory authority under the Code and section 309 of the Act.

2. <u>Extension of Time to Adopt the Provisions of §1.752-7 in lieu of §1.752-6T</u>

Section 1.752-6T(d)(2) provides that partnerships may elect to apply the provisions of §1.752-7 of the proposed regulations to all assumptions of liabilities by the partnership occurring after October 18, 1999, and before June 24, 2003, in lieu of applying §1.752-6T of the temporary regulations. The election must be filed with the first Federal income tax return filed by the partnership on or after September 24, 2003.

Several commentators expressed a need for additional time to make this election. In response to these comments, the election period described in §1.752-6T(d)(2) has been extended. Under the extension, an election to apply the regulations under §1.752-7, rather than the regulations under §1.752-6, to all liabilities assumed by a partnership after October 18, 1999, and before June 24, 2003, must be filed with a Federal income tax return filed by the partnership on or after September 24, 2003, and on or before December 31, 2005.

3. Section 1.358-5T, Special Rules For Assumption of Liabilities

The preamble to the proposed regulations advised taxpayers that, with respect to an exchange to which §358(a)(1) applies, the Treasury Department and the IRS were considering exercising their authority under §358(h)(2) to issue regulations that would limit the exceptions to §358(h)(1) to follow the exceptions set forth in the proposed regulations under §1.752-7 (other than the de minimis exception). The preamble indicated that such regulations would be retroactive to the extent necessary to prevent abuse. No comments were received regarding the appropriate scope or substance of such regulations. The Treasury Department and the IRS have determined that removing the exception of §358(h)(2)(B) (which applies where substantially all of the assets with which the liability is associated are transferred to the person assuming the liability as part of the exchange) is necessary to prevent the abuse that §358(h) was designed to prevent. Therefore, with respect to an exchange to which §358(a)(1) applies, this document contains temporary regulations providing that the exception contained in §358(h)(2)(B) does not apply to exchanges under §358(a)(1) in which liabilities are assumed on or after June 24, 2003.

4. Section 1752-7 Liability

Commentators have asked for clarification on whether an obligation could be a §1.752-1 liability in part and a §1.752-7 liability in part. Certain obligations that create liabilities under §1.752-1 may also create §1.752-7 liabilities. For example, a fixed obligation that gives rise to basis can have a component portion that changes in value between the time the obligation is first incurred by the partner and the time that the partnership assumes the obligation due to changes in interest rates, stock price, or other similar factors. In these and other cases, the value of the obligation to the holder has increased and, as a result, the cost to the obligor has increased by a like amount. The final regulations clarify that an obligation can be treated in part as a §1.752-7 liability and in part as a §1.752-1 liability.

5. Satisfaction Other than by Economic Performance

The proposed regulations allow the §1.752-7 liability partner to claim a loss or deduction upon “economic performance” of the obligation. Certain §1.752-7 liabilities may be settled in cash or in kind, extinguished, satisfied or otherwise resolved under circumstances where there may not be an “economic performance” of the obligation within the meaning of that term. See section 461(h) and §1.461-4. In addition, economic performance only applies to “liabilities” as defined in §1.446-1(c)(1)(ii)(B), and it is possible that some §1.752-7 liabilities may not come within the meaning of that term. As

a result, the final regulations allow the §1.752-7 liability partner to claim a loss or deduction under §1.752-7 upon the "satisfaction of the §1.752-7 liability". A §1.752-7 liability is treated as satisfied on the date upon which, but for §1.752-7, the partnership, or the assuming partner, would have been allowed to take the §1.752-7 liability into account for federal tax purposes. The final regulations provide a nonexclusive list of examples of when the §1.752-7 liability would be taken into account for these purposes.

6. Application of Section 704(c)

Under §1.752-7(c), any §1.752-7 liability assumed by a partnership in a §1.752-7 liability transfer is treated under section 704(c) principles as having a built-in loss equal to the amount of the §1.752-7 liability as of the date of the partnership's assumption of the §1.752-7 liability. The proposed regulations provide that, if a §1.752-7 liability is assumed from the partnership by a partner other than the §1.752-7 liability partner, and the trade or business or de minimis exceptions does not apply, then section 704(c)(1)(B) does not apply to the assumption and instead the rules of §1.752-7(g) apply. Commentators asked whether section 704(c)(1)(B) applies to the assumption of a §1.752-7 liability by another partner if the trade or business or de minimis exceptions apply to that assumption. In addition, commentators questioned whether the successor partner rule of §1.704-3(a)(7) applies to the built-in loss amount of the §1.752-7 liability. The successor partner rule provides that, if a contributing partner transfers a partnership interest, built-in gain or loss must be allocated to the transferee partner as it would have been allocated to the transferor partner.

The intent of the Treasury Department and the IRS was that all of the rules of section 704(c), §1.704-3, and §1.704-4, including section 704(c)(1)(B), apply to §1.752-7 liabilities unless otherwise specifically stated. The §1.752-7 regulations have been modified to make this clear. In addition, §1.704-3 has been amended to provide that §1.752-7 liabilities are section 704(c) property and to provide that in general, the successor partner rule does not apply to §1.752-7 liabilities.

Comments were also received regarding the application of section 704(c) principles to the extent that a §1.752-7 liability has decreased after the partnership's assumption of the liability. Consistent with the principles of §1.704-3, the final regulations provide that, if there is a post-assumption change in the value of the §1.752-7 liability, resulting in an obligation amount that is either greater or less than the initial amount of the obligation, the change in the amount will be treated as a section 704(b) and not a section 704(c) item, thereby creating book income or loss to be allocated to the partners. The final regulations also provide that, if the value of the §1.752-7 liability decreases after the assumption of the obligation by the partnership, the "ceiling rule" applies, and the partnership and the partners are entitled to adopt one of the reasonable methods specified in §1.704-3 to correct any ceiling rule disparities.

7. Section 1.752-7 Liabilities that are Capitalized and Not Deducted

The proposed regulations make reference in several places to a "deduction or capital expense", but no rules are provided as to how the capital expense is taken into account. For example, no rules are provided in the proposed regulations for situations where the contributing partner is still a partner in the partnership at the time that the obligation is recognized for federal tax purposes and capitalized into the tax basis of one or more assets of the partnership.

The final regulations add a rule to §1.704-3 providing that, to the extent a partnership properly capitalizes all or a portion of an item as described in paragraph §1.704-3(a)(12),

then the item or items to which such cost is properly capitalized is treated as section 704(c) property with the same amount of built-in loss as corresponds to the amount capitalized. Similar rules are provided under §§1.704-4 and 1.737-2.

In addition, the proposed regulations do not provide any guidance as to the appropriate tax treatment if a triggering event occurs after a §1.752-7 liability has been capitalized into the basis of one or more assets of the partnership. Under the final regulations, no reduction in the partner's basis in the partnership interest is required with respect to such a capitalized amount as a result of the triggering event, but, after the triggering event, neither the partnership nor the remaining partners may use the capitalized basis.

8. Exception for Trading and Investment Partnerships.

The proposed regulations contain an exception to , §1.752-7(e), (f), and (g) for assumptions of liabilities in connection with the contribution of an associated trade or business, provided that the partnership continues to carry on that trade or business after the contribution. The proposed regulations provide that, for this purpose, a trade or business generally does not include the activity of acquiring, holding, or disposing of financial instruments, unless such activity is carried on by an entity registered with the Securities and Exchange Commission as a management company under the Investment Company Act of 1940, as amended (15 U.S.C. 80a).

The exception for entities registered as management companies was intended to apply narrowly to master-feeder partnerships; however, it appears that the exception could apply to a broader range of entities, some of which could be carrying on the types of transactions that section 309 of the Act and these regulations were intended to address. Consequently, the Treasury Department and the IRS have removed the exception for entities registered as management companies.

The Treasury Department and the IRS do not believe that eliminating the exception will create a substantial burden for master-feeder partnerships, because interests in these partnerships are not regularly sold, and because distributions by these partnerships typically take the form of nonliquidating distributions of cash. Accordingly, master-feeder partnerships are unlikely to engage in triggering events that would implicate this regulation.

Therefore, under the final regulations, the activity of acquiring, holding, dealing in, or disposing of financial instruments is not treated as a trade or business even if engaged in by an entity registered as a management company. For assumptions of liabilities on or after June 24, 2003, and before May 26, 2005, however, entities registered as management companies may rely on the exception to the trade or business definition in the proposed regulations .

9. Technical Terminations, Mergers, and Divisions

Section 1.708-1(b)(4) provides that if a partnership is terminated under section 708(b)(1)(B) by a sale or exchange of an interest, the partnership is deemed to contribute all of its assets and liabilities to a new partnership in exchange for an interest in the new partnership; and, immediately thereafter, the terminated partnership is deemed to distribute interests in the new partnership to the purchasing partner and the other remaining partners.

A commentator asked whether the rules provided in §1.752-7 apply to the contribution and distribution of partnership interests deemed to occur under §1.708-1(b)(4). Rules

have been added to the final regulations to clarify how the regulations apply to technical terminations and partnership mergers and divisions. These rules are designed to ensure that, after a technical termination, merger, or division, the partners that were §1.752-7 liability partners of the prior partnership continue to be §1.752-7 liability partners of the new partnership, and that built-in loss associated with the §1.752-7 liability does not shift from one partner to another partner. In addition, these rules are designed to ensure that a deemed assumption of a liability as a result of a technical termination of a partnership does not create any new §1.752-7 liabilities that did not exist prior to the technical termination.

Accordingly, §1.752-7(b)(6)(ii) of the final regulations provides that, in determining if a deemed contribution of assets and assumption of liability as a result of a technical termination is treated as a §1.752-7 liability transfer, only liabilities that were §1.752-7 liabilities of the terminating partnership are taken into account and, then, only to the extent of the amount of the liability that was subject to §1.752-7 prior to the technical termination.

In addition, the definition of a §1.752-7 liability partner has been amended to clarify that, if, in a transaction described in §1.752-7(e)(3), a partnership (lower-tier partnership) assumes a §1.752-7 liability from another partnership (upper-tier partnership), then any partners that were §1.752-7 liability partners of the upper-tier partnership continue to be §1.752-7 liability partners of the lower-tier partnership with respect to the remaining built-in loss associated with the §1.752-7 liability at the time of the assumption of the §1.752-7 liability by the lower-tier partnership from the upper-tier partnership. Any new built-in loss associated with the §1.752-7 liability that is created on the assumption of the §1.752-7 liability from the upper-tier partnership by the lower-tier partnership is shared by all the partners of the upper-tier partnership in accordance with their interests in the upper-tier partnership, and each partner of the upper-tier partnership is treated as a §1.752-7 liability partner with respect to that new built-in loss.

The definition of §1.752-7 liability partner has also been amended to provide that, if, in a transaction described in §1.752-7(e)(3), an interest in a partnership (lower-tier partnership) that has assumed a §1.752-7 liability is distributed by a partnership (upper-tier partnership) that is the §1.752-7 liability partner with respect to that liability, then the persons receiving interests in the lower-tier partnership are §1.752-7 liability partners with respect to the lower-tier partnership to the same extent that they were prior to the distribution. In addition, §1.752-7(e)(3) has been amended to provide that a distribution of an interest in a lower-tier partnership is exempt from the application of §1.752-7(e) only if the partners that were §1.752-7 liability partners with respect to the lower-tier partnership prior to the distribution continue to be §1.752-7 liability partners with respect to the lower-tier partnership after the distribution.

10. Disguised Sale Rules

Section 707(a)(2)(B) provides that where there is a direct or indirect transfer of money or other property by a partner to a partnership and a related direct or indirect transfer of money or property by the partnership to such partner and the transfers, when viewed together, are properly characterized as a sale or exchange, such transfers shall be treated either as a transaction between the partnership and one who is not a partner, or as a transaction between two or more partners acting other than in their capacity as members of the partnership. Section 1.752-7(a)(2) of the proposed regulations provides that the assumption of a §1.752-7 liability is not treated as an assumption of a liability or as a transfer of cash for purposes of section 707(a)(2)(B). One commentator noted that the language contained in the proposed regulations was not consistent with §1.707-5(a),

which takes into account all liabilities, regardless of whether those liabilities are taken into account under section 752.

The intent of the proposed regulations under section 752 was not to override the disguised sale rules under section 707, which may include §1.752-7 liabilities as consideration. Therefore, §1.752-7(a)(2) has been removed.

11. Revisions to §1.704-1(b)(2)(iv)

Under section 704(b), a partner's distributive share of income, gain, loss, deduction, or credit (or item thereof) is determined in accordance with the partnership agreement provided that those allocations have substantial economic effect. If the allocations under the partnership agreement do not have substantial economic effect or the partnership agreement does not provide as to a partner's distributive share of partnership items, then the partner's distributive share of such items is determined in accordance with the partner's interest in the partnership (determined by taking into account all facts and circumstances).

Section 1.704-1(b) describes various requirements that must be met for partnership allocations to have substantial economic effect. Among these requirements is that (except as otherwise provided in §1.704-1(b)) the partnership agreement must provide for the determination and maintenance of capital accounts in accordance with the rules of §1.704-1(b)(2)(iv).

Section 1.704-1(b)(2)(iv)(b ) generally requires that a partner's capital account be increased by the value of property contributed by the partner to the partnership net of liabilities secured by such contributed property that the partnership is considered to assume or take subject to under section 752, and be decreased by the value of property distributed by the partnership to the partner net of liabilities secured by such distributed property that the partner is considered to assume or take subject to under section 752. Section 1.704-1(b)(2)(iv)(c) requires that a partner's capital account be increased by liabilities of the partnership that are assumed by such partner (other than liabilities described in §1.704-1(b)(2)(iv)(b)(5)), and be decreased by liabilities of the partner that are assumed by the partnership (other than liabilities described in §1.704-1(b)(2)(iv)(b)(2 )). The proposed regulations revised §1.704-1(b)(2)(iv)(b) to take into account all liabilities to which the contributed or distributed property is subject, not just liabilities described in section 752. The proposed regulations did not revise §1.704-1(b)(2)(iv)(c), because that section is not limited to assumptions of liabilities described in section 752.

A commentator suggested that, if all liabilities are covered by §1.704-1(b)(2)(iv)(b), then §1.704-1(b)(2)(iv)(c ) did not have any effect and should be removed. The final regulations do not adopt this comment, because the Treasury Department and the IRS believe that §1.704-1(b)(2)(iv)(c ) has significance even though §1.704-1(b)(2)(iv)(b) is no longer limited to liabilities described in section 752. Section 1.704-1(b)(2)(iv)(b) applies only to situations in which liabilities are assumed by the partnership or the partner in connection with the contribution or distribution of property, or contributed or distributed property is taken subject to liabilities. Section 1.704-1(b)(2)(iv)(b ) does not apply if liabilities are assumed by the partnership or a partner other than in connection with a contribution or distribution; these assumptions are covered by §1.704-1(b)(2)(iv)(c).

12. Notification upon Satisfaction of the §1.752-7 Liability

One commentator suggested that, to prevent the loss of a deduction to the §1.752-7 partner, the regulations should require the assuming partnership or partner to notify the §1.752-7 liability partner of the satisfaction of the §1.752-7 liability. The proposed regulations impose no penalty on the partnership for failure to notify the §1.752-7 liability partner. The commentator also suggested that the §1.752-7 liability partner be required to keep contact information current with the assuming partnership or partner.

The Treasury Department and the IRS do not believe that imposing additional requirements is necessary in these circumstances. It is anticipated that the §1.752-7 liability partner, upon entering the partnership, will negotiate with the partnership for the necessary notification. Therefore, this comment was not adopted.

13. Treatment of §1.752-7 Liabilities

Commentators have requested that the final regulations include guidance on the recourse or nonrecourse treatment of §1.752-7 liabilities for all purposes of subchapter K. Under the proposed regulations, a §1.752-7 liability is treated as a nonrecourse liability solely for purposes of §1.704-2, dealing with the allocation of nonrecourse deductions among the partners. The only other provision that the Treasury Department and the IRS are aware of for which the characterization of a §1.752-7 liability as recourse or nonrecourse is §1.707-5 (addressing the treatment of liabilities for purposes of the disguised sale rules of section 707(a)(2)(B)), and §1.707-5 already provides adequate rules for determining if a §1.752-7 liability is recourse or nonrecourse. Because a §1.752-7 liability is not, by definition, a §1.752-1 liability, the recourse or nonrecourse nature of a §1.752-7 liability is not relevant for purposes of §§1.752-1 through 1.752-5. For this reason, this comment was not adopted.

14. Valuation of §1.752-7 Liabilities

Comments were received requesting that the final regulations include guidance on acceptable methods for identifying and valuing §1.752-7 liabilities, as well as identifying the appropriate discount rate for determining the liability's present value.

The Treasury Department and the IRS believe that such matters are best left to the negotiation of the financial arrangement among the parties and are beyond the scope of this regulation. In an arm's length transaction, the parties will take the potential occurrence of these obligations into account in arriving at the agreement among the parties that will govern their affairs, including the appropriate valuation methodology to apply to these obligations. Accordingly, the final regulations do not adopt this comment.

However, the final regulations clarify that, if the obligation arose under a contract in exchange for rights granted to the obligor under that contract, and those contractual rights are contributed to the partnership in connection with the partnership's assumption of the contractual obligation, then the amount of the §1.752-7 liability is the amount of cash, if any, that a willing assignor would pay to a willing assignee to assume the entire contract.

## Effective Date

The final §1.752-6 regulations apply to assumptions of liabilities by a partnership occurring after October 18, 1999, and before June 24, 2003. All of the other final regulations in this Treasury decision apply to liabilities assumed on or after June 24, 2003, except as otherwise noted.

## Special Analyses

These final and temporary regulations are necessary to prevent abusive transactions involving transfers to partnerships and corporations of the type Section 358(h) was enacted to prevent. Accordingly, good cause is found for dispensing with notice and public procedure pursuant to 5 U.S.C. 553(b)(B) with respect to the temporary regulations, and for dispensing with a delayed effective date pursuant to 5 U.S.C. 553(d)(1) and (3) with respect to the final and temporary regulations.

It has been determined that this Treasury decision is not a significant regulatory action as defined in Executive Order 12866. Therefore, a regulatory assessment is not required. It is hereby certified that the final regulations in this document will not have a significant economic impact on a substantial number of small entities. This certification is based upon the fact that few partnerships engage in the type of transactions that are subject to these regulations (assumptions of liabilities not described in section 752(a) and (b) from a partner). In addition, available data indicates that most partnerships that engage in the type of transactions that are subject to these regulations are large partnerships. Certain broad exceptions to the application of these regulations (including a de minimis exception) further limit the economic impact of these regulations on small entities. Therefore, a Regulatory Flexibility Analysis under the Regulatory Flexibility Act (5 U.S.C. chapter 6) is not required. For the applicability of the Regulatory Flexibility Act to the temporary regulations in this document (§1.358-5T), refer to the cross-reference notice of proposed rulemaking published in the proposed rules section in this issue of the Federal Register. Pursuant to section 7805(f) of the Code, the notice of proposed rulemaking that preceded these regulations was submitted to the Chief Counsel for Advocacy of the Small Business Administration for comment on its impact on small business.

## Drafting Information

The principal author of these regulations is Laura Nash, Office of Associate Chief Counsel (Passthroughs and Special Industries), IRS. However, other personnel from the IRS and Treasury Department participated in their development.

## List of Subjects

## 26 CFR Part 1

Income taxes, Reporting and record keeping requirements.

<u>26 CFR Part 602</u>

Reporting and recordkeeping requirements.

## Adoption of Amendments to the Regulations

Accordingly, 26 CFR parts 1 and 602 are amended as follows:

## Part 1—Income Taxes

Paragraph 1. The authority citation for part 1 is amended by adding entries in numerical order to read, in part, as follows:

Authority: 26 U.S.C. 7805 ***

Section 1.358-5T also issued under 26 U.S.C. 358(h)(2). ***

Section 1.358-7 also issued under Public Law 106-554, 114 Stat. 2763, 2763A-638 (2001) ***

Section 1.752-1(a) also issued under Public Law 106-554, 114 Stat. 2763, 2763A-638 (2001).

Section 1.752-6 also issued under Public Law 106-554, 114 Stat. 2763, 2763A-638 (2001)

Section 1.752-7 also issued under Public Law 106-554, 114 Stat. 2763, 2763A-638 (2001). ***

Par. 2. Section 1.358-5T is added to read as follows:

<u>§1.358-5T Special rules for assumption of liabilities (temporary)</u>.

(a) <u>In general</u>. Section 358(h)(2)(B) does not apply to an exchange occurring on or after June 24, 2003.
(b) <u>Effective dates</u>. This section applies to exchanges occurring on or after June 24, 2003.

Par. 3. Section 1.358-7 is added to read as follows:

<u>§1.358-7 Transfers by partners and partnerships to corporations</u>.

(a) <u>Transfers by partners of partnership interests</u>. For purposes of section 358(h), a transfer of a partnership interest to a corporation is treated as a transfer of the partner's share of each of the partnership's assets and an assumption by the corporation of the partner's share of partnership liabilities (including section 358(h) liabilities, as defined in paragraph (d) of this section). See paragraph (e) <u>Example 2</u> of this section.
(b) <u>Transfers by partnerships</u>. If a corporation assumes a section 358(h) liability from a partnership in an exchange to which section 358(a) applies, then, for purposes of applying section 705 (determination of basis of partner's interest) and §1.704-1(b), any reduction, under section 358(h)(1), in the partnership's basis in corporate stock received in the transaction is treated as an expenditure of the partnership described in section 705(a)(2)(B). See paragraph (e) <u>Example 1</u> of this section. This expenditure must be allocated among the partners in accordance with section 704(b) and (c) and §1.752-7(c). If a partner's share of the reduction, under section 358(h)(1), in the partnership's basis in corporate stock exceeds the partner's basis in the partnership interest, then the partner recognizes gain equal to the excess, which is treated as gain from the sale or exchange of a partnership interest. This paragraph does not apply to the extent

that §1.752-7(j)(4) applies to the assumption of the §1.752-7 liability by the corporation.
(c) Assumption of section 358(h) liability by partnership followed by transfer of partnership interest or partnership property to a corporation—trade or business exception. Where a partnership assumes a section 358(h) liability from a partner and, subsequently, the partner transfers all or part of the partner's partnership interest to a corporation in an exchange to which section 358(a) applies, then, for purposes of applying section 358(h)(2), the section 358(h) liability is treated as associated only with the contribution made to the partnership by that partner. See paragraph (e) Example 2 of this section. Similar rules apply where a partnership assumes a section 358(h) liability of a partner and a corporation subsequently assumes that section 358(h) liability from the partnership in an exchange to which section 358(a) applies.
(d) Section 358(h) liabilities defined. For purposes of this section, section 358(h) liabilities are liabilities described in section 358(h)(3).
(e) Examples. The following examples illustrate the provisions of this section. Assume, for purposes of these examples, that the obligation assumed by the corporation does not reduce the shareholder's basis in the corporate stock under section 358(d). The examples are as follows:

Example 1. Transfer of partnership property to corporation.

In 2004, in an exchange to which section 351(a) applies, PRS, a cash basis taxpayer, transfers $2,000,000 cash to Corporation X, also a cash basis taxpayer, in exchange for Corporation X shares and the assumption by Corporation X of $1,000,000 of accounts payable incurred by PRS. At the time of the exchange, PRS has two partners, A, a 90% partner, who has a $2,000,000 basis in the PRS interest, and B, a 10% partner, who has a $50,000 basis in the PRS interest. Assume that, under section 358(h)(1), PRS's basis in the Corporation X stock is reduced by the accounts payable assumed by Corporation X ($1,000,000). Under paragraph (b) of this section, A's and B's bases in PRS must be reduced, but not below zero, by their respective shares of the section 358(h)(1) basis reduction. If either partner's share of the section 358(h)(1) basis reduction exceeds the partner's basis in the partnership interest, then the partner recognizes gain equal to the excess. A's share of the section 358(h) basis reduction is $900,000 (90% of $1,000,000). Therefore, A's basis in the PRS interest is reduced to $1,100,000 ($2,000,000 - $900,000). B's share of the section 358(h) basis reduction is $100,000 (10% of $1,000,000). Because B's share of the section 358(h) basis reduction ($100,000) exceeds B's basis in the PRS interest ($50,000), B's basis in the PRS interest is reduced to $0 and B recognizes $50,000 of gain. This gain is treated as gain from the sale of the PRS interest.

Example 2. Transfer of partnership interest to corporation. In 2004, A contributes undeveloped land with a value and basis of $4,000,000 in exchange for a 50% interest in PRS and an assumption by PRS of $2,000,000 of pension liabilities from a separate business that A conducts. A's basis in the PRS interest immediately after the contribution is A's basis in the land, $4,000,000, unreduced by the amount of the pension liabilities. PRS develops the land as a landfill. Before PRS has economically performed with respect to the pension liabilities, A transfers A's interest in PRS to Corporation X, in an exchange to which section 351 applies. At the time of the exchange, the value of A's PRS interest is $2,000,000, A's basis in PRS is $4,000,000, and A has no share of partnership liabilities other than the pension liabilities. For purposes of applying section 358(h), the transfer of the PRS interest to Corporation X is treated as a transfer to Corporation X of A's share of PRS assets and an assumption by Corporation X of A's share of the pension

liabilities of PRS ($2,000,000). Because the pension liabilities were not assumed by PRS from A in an exchange in which the trade or business associated with the liability was transferred to PRS, the transfer of the PRS interest to Corporation X is not excepted from section 358(h) under section 358(h)(2). See paragraph (c) of this section. Under section 358(h), A's basis in the Corporation X stock is reduced by the $2,000,000 of pension liabilities.

(f) Effective date. This section applies to assumptions of liabilities by a corporation occurring on or after June 24, 2003**.**

Par. 4. Section 1.704-1 is amended as follows:

1. Paragraph (b)(1)(ii)(a)is amended by removing the language The at the beginning of the first sentence and adding Except as otherwise provided in this section, the in its place.

2. Paragraph (b)(2)(iv)(b) is amended by adding a sentence at the end of the paragraph.

3. Paragraph (b)(2)(iv)(b)(2) is amended by removing the language secured by such contributed property in the parenthetical.

4. Paragraph (b)(2)(iv)(b)(2) is further amended by removing the language under section 752" in the parenthetical.

5. Paragraph (b)(2)(iv)(b)(5) is amended by removing the language secured by such distributed property in the parenthetical.

6. Paragraph (b)(2)(iv)(b)(5) is further amended by removing the language under section 752" in the parenthetical.

The addition reads as follows:

§1.704-1 Partner's distributive share. *****

(b) ***

(2) ***

(iv) *** (b) *** For liabilities assumed before June 24, 2003, references to liabilities in this paragraph (b)(2)(iv)(b) shall include only liabilities secured by the contributed or distributed property that are taken into account under section 752(a) and (b). *****

## §1.704-2 [Amended]

Par. 5. In §1.704-2, paragraph (b)(3) is amended by adding the language "or a §1.752-7 liability (as defined in §1.752-7(b)(3)(i)) assumed by the partnership from a partner on or after June 24, 2003 at the end of the sentence.

Par. 6. Section 1.704-3 is amended as follows:

1. The paragraph heading for (a)(7) is revised.

2. Two sentences are added to the end of paragraph (a)(7).

3. Paragraphs (a)(8)(ii) and (iii) are removed and reserved and paragraph (a)(8)(iv) is added.

4. Paragraph (a)(12) is added.

5. Two additional sentences are added at the end of paragraph (f).

The revisions and additions read as follows:

## §1.704-3 Contributed property.

(a) * * *

(7) Transfer of a partnership interest. * * * This rule does not apply to any person who acquired a partnership interest from a §1.752-7 liability partner in a transaction to which paragraph (e)(1) of §1.752-7 applies. See §1.752-7(c)(1).

(8) Special rules—

(i) Disposition in a nonrecognition transaction.
* * * (ii) [Reserved] (iii) [Reserved]

(iv) Capitalized amounts. To the extent that a partnership properly capitalizes all or a portion of an item as described in paragraph (a)(12) of this section, then the item or items to which such cost is properly capitalized is treated as section 704(c) property with the same amount of built-in loss as corresponds to the amount capitalized. * * * * *

(12) §1.752-7 liabilities. Except as otherwise provided in §1.752-7, §1.752-7 liabilities (within the meaning of §1.752-7(b)(2)) are section 704(c) property (built-in loss property that at the time of contribution has a book value that differs from the contributing partner's adjusted tax basis) for purposes of applying the rules of this section. See §1.752-7(c). To the extent that the built-in loss associated with the §1.752-7 liability exceeds the cost of satisfying the §1.752-7 liability (as defined in §1.752-7(b)(3)), the excess creates a “ceiling rule” limitation, within the meaning of §1.704-3(b)(1), subject to the methods of allocation set forth in , §1.704-3(b), (c) and (d). * * * * *

(f) Effective dates. * * * Except as otherwise provided in §1.752-7(k), paragraphs (a)(8)(iv) and (a)(12) apply to §1.752-7 liability transfers, as defined in §1.752-7(b)(4), occurring on or after June 24, 2003. See §1.752-7(k).

Par. 7. Section 1.704-4 is amended as follows:

1. The paragraph heading for (d)(1) is revised.

2. Paragraphs (d)(1)(ii) and (iii) are removed and reserved and paragraph (d)(1)(iv) is added.

3. Paragraph (g) is revised.

The additions and revisions read as follows:

§1.704-4 Distribution of contributed property.

(d) Special rules—

(1) Nonrecognition transactions, installment obligations, contributed contracts, and capitalized costs—
(i) Nonrecognition transactions.
* * *

(ii) [Reserved]

(iii) [Reserved]

(iv) Capitalized costs. Property to which the cost of section 704(c) property is properly capitalized is treated as section 704(c) property for purposes of section 704(c)(1)(B) and this section to the extent that such property is treated as section 704(c) property under §1.704-3(a)(8)(iv). See §1.737-2(d)(3) for a similar rule in the context of section 737.
* * * * *

(g) Effective dates. This section applies to distributions by a partnership to a partner on or after January 9, 1995, except that paragraph (d)(1)(iv) applies to distributions by a partnership to a partner on or after June 24, 2003.

Par. 8. Section 1.705-1 is amended by adding paragraph (a)(8) to read as follows:

§1.705-1 Determination of basis of partner's interest.

(a)
* * *

(8) For basis adjustments necessary to coordinate sections 705 and 358(h), see §1.358-7(b). For certain basis adjustments with respect to a §1.752-7 liability assumed by a partnership from a partner, see §1.752-7. * * * * *

Par. 9. Section 1.737-2 is amended as follows:

1. The paragraph heading for (d)(3) is revised.

2. Paragraphs (d)(3)(ii) and (iii) are removed and reserved and paragraph (d)(3)(iv) is added.

The additions and revisions read as follows:

§1.737-2 Exceptions and special rules.

(d) * * *

(3) Nonrecognition transactions, installment sales, contributed contracts, and capitalized costs- -(i) Nonrecognition transactions. * * * (ii) [Reserved] (iii) [Reserved]

(iv) Capitalized costs. Property to which the cost of section 704(c) property is properly capitalized is treated as section 704(c) property for purposes of section 737 to the extent

that such property is treated as section 704(c) property under §1.704-3(a)(8)(iv). See §1.704-4(d)(1) for a similar rule in the context of section 704(c)(1)(B). * * * * *

Par. 10. Section 1.737-5 is revised to read as follows:

<u>§1.737-5 Effective dates</u>.

Sections 1.737-1, 1.737-2, 1.737-3, and 1.737-4 apply to distributions by a partnership to a partner on or after January 9, 1995, except that §1.737-2(d)(3)(iv) applies to distributions by a partnership to a partner on or after June 24, 2003.

Par. 11. Section 1.752-0 is amended as follows:

1. The section heading and introductory text of §1.752-0 are revised.

2. An entry for §1.752-1(a)(4) is added.

3. Entries for , , §1.752-1(a)(4)(i), (ii), (iii), and (iv) are added.

4. Entries for §1.752-6 and §1.752-7 are added.

The revision and additions read as follows:

<u>§1.752-0 Table of contents</u>.

This section lists the major paragraphs that appear in §§1.752-1 through 1.752-7.

<u>§1.752-1 Treatment of partnership liabilities</u>.

(a) * * *

(4) Liability defined.

(i) In general.
(ii) Obligation.
(iii) Other liabilities.
(iv) Effective date.

* * * * *

<u>§1.752-6 Partnership assumption of partner's section 358(h)(3) liability after October 18, 1999, and before June 24, 2003</u>.

(a) In general.
(b) Exceptions.
(1) In general.
(2) Transactions described in Notice 2000-44.
(c) Example.
(d) Effective date.
(1) In general.
(2) Election to apply §1.752-7.

§1.752-7 Partnership assumption of partner's §1.752-7 liability on or after June 24, 2003.

(a) Purpose and structure.
(b) Definitions.
(1) Assumption.
(2) Adjusted value. (3) §1.752-7 liability.
(i) In general.
(ii) Amount and share of §1.752-7 liability.
(iii) Example. (4) §1.752-7 liability transfer.
(i) In general.
(ii) Terminations under section 708(b)(1)(B). (5) §1.752-7 liability partner.
(i) In general.
(ii) Tiered partnerships.
(A) Assumption by a lower-tier partnership.
(B) Distribution of partnership interest.
(6) Remaining built-in loss associated with a §1.752-7 liability.
(i) In general.
(ii) Partial dispositions and assumptions. (7) §1.752-7 liability reduction.
(i) In general.
(ii) Partial dispositions and assumptions.
(8) Satisfaction of §1.752-7 liability.
(9) Testing date.
(10) Trade or business.
(i) In general.
(ii) Examples.
(c) Application of section 704(b) and (c) to assumed §1.752-7 liabilities.
(1) In general.
(i) Section 704(c).
(ii) Section 704(b).
(2) Example.
(d) Special rules for transfers of partnership interests, distributions of partnership assets, and assumptions of the §1.752-7 liability after a §1.752-7 liability transfer.
(1) In general.
(2) Exceptions.
(i) In general.
(ii) Examples.
(e) Transfer of §1.752-7 liability partner's partnership interest.
(1) In general.
(2) Examples.
(3) Exception for nonrecognition transactions.
(i) In general.
(ii) Examples.
(f) Distribution in liquidation of §1.752-7 liability partner's partnership interest.
(1) In general.
(2) Example.
(g) Assumption of §1.752-7 liability by a partner other than §1.752-7 liability partner.
(1) In general.
(2) Consequences to §1.752-7 liability partner.
(3) Consequences to partnership.
(4) Consequences to assuming partner.
(5) Example.

(h) Notification by the partnership (or successor) of the satisfaction of the §1.752-7 liability.
(i) Special rule for amounts that are capitalized prior to the occurrence of an event described in paragraphs (e), (f), or (g).
(1) In general.
(2) Example.
(j) Tiered partnerships.
(1) Look-through treatment.
(2) Trade or business exception.
(3) Partnership as a §1.752-7 liability partner.
(4) Transfer of §1.752-7 liability by partnership to another partnership or corporation after a transaction described in paragraphs (e),(f), or (g).
(i) In general.
(ii) Subsequent transfers.
(5) Example.
(k) Effective dates.
(1) In general.
(2) Election to apply this section to assumptions of liabilities occurring after October 18, 1999 and before June 24, 2003.
(i) In general.
(ii) Manner of making election.
(iii) Filing of amended returns.
(iv) Time for making election.

Par. 12. In §1.752-1, paragraph (a)(4) is added to read as follows:

## §1.752-1 Treatment of partnership liabilities.

(a) * * *

(4) Liability defined—

(i) In general. An obligation is a liability for purposes of section 752 and the regulations thereunder ( §1.752-1 liability), only if, when, and to the extent that incurring the obligation—
(A) Creates or increases the basis of any of the obligor's assets (including cash);
(B) Gives rise to an immediate deduction to the obligor; or
(C) Gives rise to an expense that is not deductible in computing the obligor's taxable income and is not properly chargeable to capital.
(ii) Obligation. For purposes of this paragraph and §1.752-7, an obligation is any fixed or contingent obligation to make payment without regard to whether the obligation is otherwise taken into account for purposes of the Internal Revenue Code. Obligations include, but are not limited to, debt obligations, environmental obligations, tort obligations, contract obligations, pension obligations, obligations under a short sale, and obligations under derivative financial instruments such as options, forward contracts, futures contracts, and swaps.
(iii) Other liabilities. For obligations that are not §1.752-1 liabilities, see §§1.752-6 and 1.752-7.
(iv) Effective date. Except as otherwise provided in §1.752-7(k), this paragraph (a)(4) applies to liabilities that are incurred or assumed by a partnership on or after June 24, 2003.

* * * * *

## §1.752-5(a) [Amended]

Par. 13. In §1.752-5, paragraph (a) is amended by removing the language Unless at the beginning of the first sentence and adding Except as otherwise provided in §§1.752-1 through 1.752-4, unless in its place.

Par. 14. Section 1.752-6 is added to read as follows:

§1.752-6 Partnership assumption of partner's section 358(h)(3) liability after October 18, 1999, and before June 24, 2003.

(a) In general. If, in a transaction described in section 721(a), a partnership assumes a liability (defined in section 358(h)(3)) of a partner (other than a liability to which section 752(a) and (b) apply), then, after application of section 752(a) and (b), the partner's basis in the partnership is reduced (but not below the adjusted value of such interest) by the amount (determined as of the date of the exchange) of the liability. For purposes of this section, the adjusted value of a partner's interest in a partnership is the fair market value of that interest increased by the partner's share of partnership liabilities under §§1.752-1 through 1.752-5.
(b) Exceptions—
(1) In general. Except as provided in paragraph (b)(2) of this section, the exceptions contained in section 358(h)(2)(A) and (B) apply to this section.
(2) Transactions described in Notice 2000-44. The exception contained in section 358(h)(2)(B) does not apply to an assumption of a liability (defined in section 358(h)(3)) by a partnership as part of a transaction described in, or a transaction that is substantially similar to the transactions described in, Notice 2000-44 (2000-2 C.B. 255). See §601.601(d)(2) of this chapter.
(c) Example. The following example illustrates the principles of paragraph (a) of this section:

Example. In 1999, A and B form partnership PRS. A contributes property with a value and basis of $200, subject to a nonrecourse debt obligation of $50 and a fixed or contingent obligation of $100 that is not a liability to which section 752(a) and (b) applies, in exchange for a 50% interest in PRS. Assume that, after the contribution, A's share of partnership liabilities under §§1.752-1 through 1.752-5 is $25. Also assume that the $100 liability is not associated with a trade or business contributed by A to PRS or with assets contributed by A to PRS. After the contribution, A's basis in PRS is $175 (A's basis in the contributed land ($200) reduced by the nonrecourse debt assumed by PRS ($50), increased by A's share of partnership liabilities under §§1.752-1 through 1.752-5 ($25)). Because A's basis in the PRS interest is greater than the adjusted value of A's interest, $75 (the fair market value of A's interest ($50) increased by A's share of partnership liabilities ($25)), paragraph (a) of this section operates to reduce A's basis in the PRS interest (but not below the adjusted value of that interest) by the amount of liabilities described in section 358(h)(3) (other than liabilities to which section 752(a) and (b) apply) assumed by PRS. Therefore, A's basis in PRS is reduced to $75.

(d) Effective date—
(1) In general. This section applies to assumptions of liabilities occurring after October 18, 1999, and before June 24, 2003.
(2) Election to apply §1.752-7. The partnership may elect, under §1.752-7(k)(2), to apply the provisions referenced in §1.752-7(k)(2)(ii)to all assumptions of

liabilities by the partnership occurring after October 18, 1999, and before June 24, 2003. Section 1.752-7(k)(2) describes the manner in which the election is made.

## §1.752-6T [Removed]

Par. 15. Section 1.752-6T is removed.

Par. 16. Section 1.752-7 is added to read as follows:

§1.752-7 Partnership assumption of partner's §1.752-7 liability on or after June 24, 2003.

(a) Purpose and structure. The purpose of this section is to prevent the acceleration or duplication of loss through the assumption of obligations not described in §1.752-1(a)(4)(i) in transactions involving partnerships. Under paragraph (c) of this section, any such obligation that is assumed by a partnership from a partner in a transaction governed by section 721(a) is treated as section 704(c) property. Paragraphs (e), (f), and (g) of this section provide rules for situations where a partnership assumes such an obligation from a partner and, subsequently, that partner transfers all or part of the partnership interest, that partner receives a distribution in liquidation of the partnership interest, or another partner assumes part or all of that obligation from the partnership. These rules prevent the duplication of loss by prohibiting the partnership and any person other than the partner from whom the obligation was assumed from claiming a deduction, loss, or capital expense to the extent of the built-in loss associated with the obligation. These rules also prevent the acceleration of loss by deferring the partner's deduction or loss attributable to the obligation (if any) until the satisfaction of the §1.752-7 liability (within the meaning of paragraph (b)(8) of this section). Paragraph (d) of this section provides a number of exceptions to paragraphs (e), (f), and (g) of this section, including a de minimis exception. Paragraph (i) provides a special rule for situations in which an amount paid to satisfy a §1.752-7 liability is capitalized into other partnership property. Paragraph (j) of this section provides special rules for tiered partnership transactions.
(b) Definitions. For purposes of this section, the following definitions apply:
(1) Assumption. The principles of §1.752-1(d) and (e) apply in determining if a §1.752-7 liability has been assumed.
(2) Adjusted value. The adjusted value of a partner's interest in a partnership is the fair market value of that interest increased by the partner's share of partnership liabilities under §§1.752-1 through 1.752-5.
(3) §1.752-7 liability—
(i) In general. A §1.752-7 liability is an obligation described in §1.752-1(a)(4)(ii) to the extent that either —
(A) The obligation is not described in §1.752-1(a)(4)(i); or
(B) The amount of the obligation (under paragraph (b)(3)(ii) of this section) exceeds the amount taken into account under §1.752-1(a)(4)(i).
(ii) Amount and share of §1.752-7 liability. The amount of a §1.752-7 liability (or, for purposes of paragraph (b)(3)(i) of this section, the amount of an obligation) is the amount of cash that a willing assignor would pay to a willing assignee to assume the §1.752-7 liability in an arm's-length transaction. If the obligation arose under a contract in exchange for rights granted to the obligor under that contract, and those contractual rights are contributed to the partnership in connection with the partnership's assumption of the contractual obligation, then

the amount of the §1.752-7 liability or obligation is the amount of cash, if any, that a willing assignor would pay to a willing assignee to assume the entire contract. A partner's share of a partnership's §1.752-7 liability is the amount of deduction that would be allocated to the partner with respect to the §1.752-7 liability if the partnership disposed of all of its assets, satisfied all of its liabilities (other than §1.752-7 liabilities), and paid an unrelated person to assume all of its §1.752-7 liabilities in a fully taxable arm's-length transaction (assuming such payment would give rise to an immediate deduction to the partnership).

(iii) Example. In 2005, A, B, and C form partnership PRS. A contributes $10,000,000 in exchange for a 25% interest in PRS and PRS's assumption of a debt obligation. The debt obligation was issued for cash and the issue price was equal to the stated redemption price at maturity ($5,000,000). The debt obligation bears interest, payable quarterly, at a fixed rate of interest, which was a market rate of interest when the debt obligation was issued. At the time of the assumption, all accrued interest has been paid. Prior to the partnership assuming the obligation, interest rates decrease, resulting in the debt obligation bearing an above-market interest rate. Assume that, as a result of the decline in interest rates, A would have had to pay a willing assignee $6,000,000 to assume the debt obligation. The assumption of the debt obligation by PRS from A is treated as an assumption of a §1.752-1(a)(4)(i) liability in the amount of $5,000,000 (the portion of the total amount of the debt obligation that has created basis in A's assets, that is, the $5,000,000 that was issued in exchange for the debt obligation ) and an assumption of a §1.752-7 liability in the amount of $1,000,000 (the difference between the total obligation, $6,000,000, and the §1.752-1(a)(4)(i)liability, $5,000,000).

(4) §1.752-7 liability transfer—

(i) In general. Except as provided in paragraph (b)(4)(ii) of this section, a §1.752-7 liability transfer is any assumption of a §1.752-7 liability by a partnership from a partner in a transaction governed by section 721(a).

(ii) Terminations under section 708(b)(1)(B). In determining if a deemed contribution of assets and assumption of liability as a result of a technical termination is treated as a §1.752-7 liability transfer, only §1.752-7 liabilities that were assumed by the terminating partnership as part of an earlier §1.752-7 liability transfer are taken into account and, then, only to the extent of the remaining built-in loss associated with that §1.752-7 liability.

(5) §1.752-7 liability partner—

(i) In general. A §1.752-7 liability partner is a partner from whom a partnership assumes a §1.752-7 liability as part of a §1.752-7 liability transfer or any person who acquires a partnership interest from the §1.752-7 liability partner in a transaction to which paragraph (e)(3) of this section applies.

(ii) Tiered partnerships—

(A) Assumption by a lower-tier partnership. If, in a §1.752-7 liability transfer, a partnership (lower-tier partnership) assumes a §1.752-7 liability from another partnership (upper-tier partnership), then both the upper-tier partnership and the partners of the upper-tier partnership are §1.752-7 liability partners. Therefore, paragraphs (e) and (f) of this section apply on a sale or liquidation of any partner's interest in the upper-tier partnership and on a sale or liquidation of the upper-tier partnership's interest in the lower-tier partnership. See paragraph (j)(3) of this section. If, in a §1.752-7 liability transfer, the upper-tier partnership assumes a §1.752-7 liability from a partner, and, subsequently, in another §1.752-7 liability transfer, a lower-tier partnership assumes that §1.752-7 liability from the upper-tier partnership, then the partner from whom the upper-tier partnership assumed the §1.752-7 liability continues to be the §1.752-7 liability partner of the lower-tier partnership with respect to the remaining built-in loss associated with that §1.752-7 liability. Any new built-in loss associated with the §1.752-7 liability that is created on the assumption of the §1.752-7 liability from

the upper-tier partnership by the lower-tier partnership is shared by all the partners of the upper-tier partnership in accordance with their interests in the upper-tier partnership, and each partner of the upper-tier partnership is treated as a §1.752-7 liability partner with respect to that new built-in loss. See paragraph (e)(3)(ii), Example 3 of this section.
(B) Distribution of partnership interest. If, in a transaction described in §1.752-7(e)(3), an interest in a partnership (lower-tier partnership) that has assumed a §1.752-7 liability is distributed by a partnership (upper-tier partnership) that is the §1.752-7 liability partner with respect to that liability, then the persons receiving interests in the lower-tier partnership are §1.752-7 liability partners with respect to the lower-tier partnership to the same extent that they were prior to the distribution.
(6) Remaining built-in loss associated with a §1.752-7 liability. (i) In general. The remaining built-in loss associated with a §1.752-7 liability equals the amount of the §1.752-7 liability as of the time of the assumption of the §1.752-7 liability by the partnership, reduced by the portion of the §1.752-7 liability previously taken into account by the §1.752-7 liability partner under paragraph (j)(3) of this section and adjusted as provided in paragraph (c) of this section and §1.704-3 for—
(A) Any portion of that built-in loss associated with the §1.752-7 liability that is satisfied by the partnership on or prior to the testing date (whether capitalized or deducted); and
(B) Any assumption of all or part of the §1.752-7 liability by the §1.752-7 liability partner (including any assumption that occurs on the testing date).

(ii) Partial dispositions and assumptions. In the case of a partial disposition of the §1.752-7 liability partner's partnership interest or a partial assumption of the §1.752-7 liability by another partner, the remaining built-in loss associated with §1.752-7 liability is pro rated based on the portion of the interest sold or the portion of the §1.752-7 liability assumed.

(7) §1.752-7 liability reduction—
(i) In general. The §1.752-7 liability reduction is the amount by which the §1.752-7 liability partner is required to reduce the basis in the partner's partnership interest by operation of paragraphs (e), (f), and (g) of this section. The §1.752-7 liability reduction is the lesser of —
(A) The excess of the §1.752-7 liability partner's basis in the partnership interest over the adjusted value of that interest (as defined in paragraph (b)(2) of this section); or
(B) The remaining built-in loss associated with the §1.752-7 liability (as defined in paragraph (b)(6) of this section without regard to paragraph (b)(6)(ii) of this section).
(ii) Partial dispositions and assumptions. In the case of a partial disposition of the §1.752-7 liability partner's partnership interest or a partial assumption of the §1.752-7 liability by another partner, the §1.752-7 liability reduction is pro rated based on the portion of the interest sold or the portion of the §1.752-7 liability assumed.
(8) Satisfaction of §1.752-7 liability—In general. A §1.752-7 liability is treated as satisfied (in whole or in part) on the date on which the partnership (or the assuming partner) would have been allowed to take the §1.752-7 liability into account for federal tax purposes but for this section. For example, a §1.752-7 liability is treated as satisfied when, but for this section, the §1.752-7 liability would give rise to—
(i) An increase in the basis of the partnership's or the assuming partner's assets (including cash);

(ii) An immediate deduction to the partnership or to the assuming partner;
(iii) An expense that is not deductible in computing the partnership's or the assuming partner's taxable income and not properly chargeable to capital account; or
(iv) An amount realized on the sale or other disposition of property subject to that liability if the property was disposed of by the partnership or the assuming partner at that time.
(9) Testing date. The testing date is—
(i) For purposes of paragraph (e) of this section, the date of the sale, exchange, or other disposition of part or all of the §1.752-7 liability partner's partnership interest;
(ii) For purposes of paragraph (f) of this section, the date of the partnership's distribution in liquidation of the §1.752-7 liability partner's partnership interest; and
(iii) For purposes of paragraph (g) of this section, the date of the assumption (or partial assumption) of the §1.752-7 liability by a partner other than the §1.752-7 liability partner.
(10) Trade or business—
(i) In general. A trade or business is a specific group of activities carried on by a person for the purpose of earning income or profit, other than a group of activities consisting of acquiring, holding, dealing in, or disposing of financial instruments, if the activities included in that group include every operation that forms a part of, or a step in, the process of earning income or profit. Such group of activities ordinarily includes the collection of income and the payment of expenses. The group of activities must constitute the carrying on of a trade or business under section 162(a) (determined as though the activities were conducted by an individual).
(ii) Examples. The following examples illustrate the provisions of this paragraph (b)(10):

Example 1. Corporation Y owns, manages, and derives rental income from an office building and also owns vacant land that may be subject to environmental liabilities. Corporation Y contributes the land subject to the environmental liabilities to PRS in a transaction governed by section 721(a). PRS plans to develop the land as a landfill. The contribution of the vacant land does not constitute the contribution of a trade or business because Corporation Y did not conduct any significant business or development activities with respect to the land prior to the contribution.

Example 2. For the past 5 years, Corporation X has owned and operated gas stations in City A, City B, and City C. Corporation X transfers all of the assets associated with the operation of the gas station in City A to PRS for interests in PRS and the assumption by PRS of the §1.752-7 liabilities associated with that gas station. PRS continues to operate the gas station in City A after the contribution. The contribution of the gas station to PRS constitutes the contribution of a trade or business.

Example 3. For the past 7 years, Corporation Z has engaged in the manufacture and sale of household products. Throughout this period, Corporation Z has maintained a research department for use in connection with its manufacturing activities. The research department has 10 employees actively engaged in the development of new products. Corporation Z contributes the research department to PRS in exchange for a PRS interest and the assumption by PRS of pension liabilities with respect to the employees of the research department. PRS continues the research operations on a contractual basis with several businesses,

including Corporation Z. The contribution of the research operations to PRS constitutes a contribution of a trade or business.

(c) Application of section 704(b) and (c) to assumed §1.752-7 liabilities—
(1) In general—
(i) Section 704(c). Except as otherwise provided in this section, sections 704(c)(1)(A) and (B), section 737, and the regulations thereunder, apply to §1.752-7 liabilities. See §1.704-3(a)(12). However, §1.704-3(a)(7) does not apply to any person who acquired a partnership interest from a §1.752-7 liability partner in a transaction to which paragraph (e)(1) of this section applies.
(ii) Section 704(b). Section 704(b) and §1.704-1(b) apply to a post-contribution change in the value of a §1.752-7 liability. If there is a decrease in the value of a §1.752-7 liability that is reflected in the capital accounts of the partners under §1.704-1(b)(2)(iv)(f), the amount of the decrease constitutes an item of income for purposes of section 704(b) and §1.704-1(b). Conversely, if there is an increase in the value of a §1.752-7 liability that is reflected in the capital accounts of the partners under §1.704-1(b)(2)(iv)(f), the amount of the increase constitutes an item of loss for purposes of section 704(b) and §1.704-1(b).
(2) Example. The following example illustrates the provisions of this paragraph (c):

Example—

(i) Facts. In 2004, A, B, and C form partnership PRS. A contributes Property 1 with a fair market value and basis of $400X, subject to a §1.752-7 liability of $100X, for a 25% interest in PRS. B contributes $300X cash for a 25% interest in PRS, and C contributes $600X cash for a 50% interest in PRS. Assume that the partnership complies with the substantial economic effect safe harbor of §1.704-1(b)(2). Under §1.704-1(b)(2)(iv)(b), A's capital account is credited with $300X (the fair market value of Property 1, $400X, less the §1.752-7 liability assumed by PRS, $100X). In accordance with §§1.752-7(c)(1)(i) and 1.704-3, the partnership can use any reasonable method for section 704(c) purposes. In this case, the partnership elects the traditional method under §1.704-3(b) and also elects to treat the deductions or losses attributable to the §1.752-7 liability as coming first from the built-in loss. In 2005, PRS earns $200X of income and uses it to satisfy the §1.752-7 liability which has increased in value to $200X. Assume that the cost to PRS of satisfying the §1.752-7 liability is deductible by PRS. The $200X of partnership income is allocated according to the partnership agreement, $50X to A, $50X to B, and $100X to C.

| A | | B | | C | | |
|---|---|---|---|---|---|---|
| Book | Tax | Book | Tax | Book | Tax | |
| $300 | $400 | $300 | $300 | $600 | $600 | Initial Contribution |
| 50 | 50 | 50 | 50 | 100 | 100 | Income |
| (25) | (125) | (25) | (25) | (50) | (50) | Satisfaction of Liability |
| $325 | $325 | $325 | $325 | $650 | $650 | |

(ii) Analysis. Pursuant to paragraph (c) of this section, $100X of the deduction attributable to the satisfaction of the §1.752-7 liability is specially allocated to A, the §1.752-7 liability partner, under section 704(c)(1)(A) and §1.704-3. No book item corresponds to this tax allocation. The remaining $100X of deduction attributable to the satisfaction of the §1.752-7 liability is allocated, for both book and tax purposes,

according to the partnership agreement, $25X to A, $25X to B, and $50X to C. If the partnership, instead, satisfied the §1.752-7 liability over a number of years, the first $100X of deduction with respect to the §1.752-7 liability would be allocated to A, the §1.752-7 liability partner, before any deduction with respect to the §1.752-7 liability would be allocated to the other partners. For example, if PRS were to satisfy $50X of the §1.752-7 liability, the $50X deduction with respect to the §1.752-7 liability would be allocated to A for tax purposes only. No deduction would arise for book purposes. If PRS later paid a further $100X in satisfaction of the §1.752-7 liability, $50X of the deduction with respect to the §1.752-7 liability would be allocated, solely for tax purposes, to A and the remaining $50X would be allocated, for both book and tax purposes, according to the partnership agreement. Under these circumstances, the partnership's method of allocating the built-in loss associated with the §1.752-7 liability is reasonable.

(d) Special rules for transfers of partnership interests, distributions of partnership assets, and assumptions of the §1.752-7 liability after a §1.752-7 liability transfer—

(1) In general. Except as provided in paragraphs (d)(2) and (i) of this section, paragraphs (e), (f), and (g) of this section apply to certain partnership transactions occurring after a §1.752-7 liability transfer.
(2) Exceptions—
(i) In general. Paragraphs (e), (f), and (g) of this section do not apply—
(A) If the partnership assumes the §1.752-7 liability as part of a contribution to the partnership of the trade or business with which the liability is associated, and the partnership continues to carry on that trade or business after the contribution (for the definition of a trade or business, see paragraph (b)(10) of this section); or
(B) If, immediately before the testing date, the amount of the remaining built-in loss with respect to all §1.752-7 liabilities assumed by the partnership (other than §1.752-7 liabilities assumed by the partnership with an associated trade or business) in one or more §1.752-7 liability transfers is less than the lesser of 10% of the gross value of partnership assets or $1,000,000.
(ii) Examples. The following examples illustrate the principles of this paragraph (d)(2):

Example 1. For the past 5 years, Corporation X, a C corporation, has been engaged in Business A and Business B. In 2004, Corporation X contributes Business A, in a transaction governed by section 721(a), to PRS in exchange for a PRS interest and the assumption by PRS of pension liabilities with respect to the employees engaged in Business A. PRS plans to carry on Business A after the contribution. Because PRS has assumed the pension liabilities as part of a contribution to PRS of the trade or business with which the liabilities are associated, the treatment of the pension liabilities is not affected by paragraphs (e), (f), and (g) of this section with respect to any transaction occurring after the §1.752-7 liability transfer of the pension liabilities.

Example 2.

(i) Facts. The facts are the same as in Example 1, except that PRS also assumes from Corporation X certain pension liabilities with respect to the employees of Business B. At the time of the assumption, the amount of the pension liabilities with respect to the employees of Business A is $3,000,000 (the A liabilities) and the amount of the pension liabilities associated with the employees of Business B (the B liabilities) is $2,000,000. Two years later, Corporation X sells its interest in PRS to Y for $9,000,000. At the time of the sale, the remaining built-in loss associated with the A liabilities is $2,100,000, the remaining built-in loss

associated with the B liabilities is $900,000, and the gross value of PRS's assets (excluding §1.752-7 liabilities) is $20,000,000. Assume that PRS has no §1.752-7 liabilities other than those assumed from Corporation X.

PRS Balance Sheet at Time of X's Sale of PRS Interest
(in millions)

| Assets | Liabilities | |
|---|---|---|
| $20 | | Gross Assets (including Business A) |
| | ($2.1) | A Liabilities |
| | ( 0.9) | B Liabilities |

(ii) Analysis. The only liabilities assumed by PRS from Corporation X that were not assumed as part of Corporation X's contribution of Business A were the B liabilities. Immediately before the testing date, the remaining built-in loss associated with the B liabilities ($900,000) was less than the lesser of 10% of the gross value of PRS's assets ($2,000,000) or $1,000,000. Therefore, paragraph (d)(2)(i)(B) of this section applies to exclude Corporation X's sale of the PRS interest to Y from the application of paragraph (e) of this section.

(e) Transfer of §1.752-7 liability partner's partnership interest—

(1) In general. Except as provided in paragraphs (d)(2), (e)(3), and (i) of this section, immediately before the sale, exchange, or other disposition of all or a part of a §1.752-7 liability partner's partnership interest, the §1.752-7 liability partner's basis in the partnership interest is reduced by the §1.752-7 liability reduction (as defined in paragraph (b)(7) of this section). No deduction, loss, or capital expense is allowed to the partnership on the satisfaction of the §1.752-7 liability (within the meaning of paragraph (b)(8) of this section) to the extent of the remaining built-in loss associated with the §1.752-7 liability (as defined in paragraph (b)(6) of this section). For purposes of section 705(a)(2)(B) and §1.704-1(b)(2)(ii)(b) only, the remaining built-in loss associated with the §1.752-7 liability is not treated as a nondeductible, noncapital expenditure of the partnership. Therefore, the remaining partners' capital accounts and bases in their partnership interests are not reduced by the remaining built-in loss associated with the §1.752-7 liability. If the partnership (or any successor) notifies the §1.752-7 liability partner of the satisfaction of the §1.752-7 liability, then the §1.752-7 liability partner is entitled to a loss or deduction. The amount of that deduction or loss is, in the case of a partial satisfaction of the §1.752-7 liability, the amount that the partnership would, but for this section, take into account on the partial satisfaction of the §1.752-7 liability (but not, in total, more than the §1.752-7 liability reduction) or, in the case of a complete satisfaction of the §1.752-7 liability, the remaining §1.752-7 liability reduction. To the extent of the amount that the partnership would, but for this section, take into account on the satisfaction of the §1.752-7 liability, the character of that deduction or loss is determined as if the §1.752-7 liability partner had satisfied the liability. To the extent that the §1.752-7 liability reduction exceeds the amount that the partnership would, but for this section, take into account on the satisfaction of the §1.752-7 liability, the character of the §1.752-7 liability partner's loss is capital.

(2) Examples. The following examples illustrate the principles of paragraph (e)(1) of this section:

Example 1.

(i) Facts. In 2004, A, B, and C form partnership PRS. A contributes Property 1 with a fair market value of $5,000,000 and basis of $4,000,000 subject to a §1.752-7 liability of $2,000,000 in exchange for a 25% interest in PRS. B contributes $3,000,000 cash in exchange for a 25% interest in PRS, and C contributes $6,000,000 cash in exchange for a 50% interest in PRS. In 2006, when PRS has a section 754 election in effect, A sells A's interest in PRS to D for $3,000,000. At the time of the sale, the basis of A's PRS interest is $4,000,000, the remaining built-in loss associated with the §1.752-7 liability is $2,000,000, and PRS has no liabilities (as defined in §1.752-1(a)(4)). Assume that none of the exceptions of paragraph (d)(2) of this section apply and that the satisfaction of the §1.752-7 liability would have given rise to a deductible expense to A. In 2007, PRS pays $3,000,000 to satisfy the liability.

PRS Balance Sheet (in millions)

| Assets Value | Basis | | Liabilities/Equity Value | Basis | |
|---|---|---|---|---|---|
| $5 | $4 | Property 1 | | | |
| $9 | $9 | Cash | | | |
| | | | $2 | - | §1.752-7 Liability |
| | | | | | Partner's Equity: |
| | | | $3 | $4 | A |
| | | | $3 | $3 | B |
| | | | $6 | $6 | C |

(ii) Sale of A's PRS interest. Immediately before the sale of the PRS interest to D, A's basis in the PRS interest is reduced (to $3,000,000) by the §1.752-7 liability reduction, i.e., the lesser of the excess of A's basis in the PRS interest ($4,000,000) over the adjusted value of that interest ($3,000,000), $1,000,000, or the remaining built-in loss associated with the §1.752-7 liability, $2,000,000. Therefore, A neither realizes nor recognizes any gain or loss on the sale of the PRS interest to D. D's basis in the PRS interest is $3,000,000. D's share of the adjusted basis of partnership property, as determined under §1.743-1(d), equals D's interest in the partnership's previously taxed capital of $2,000,000 (the amount of cash that D would receive on a liquidation of the partnership, $3,000,000, increased by the amount of tax loss that would be allocated to D in the hypothetical transaction, $0, and reduced by the amount of tax gain that would be allocated to D in the hypothetical transaction, $1,000,000). Therefore, the positive basis adjustment under section 743(b) is $1,000,000.

Computation of §1.752-7 Liability Reduction (in millions)

| | |
|---|---|
| 1. Basis of A's PRS interest | $4 |
| 2. Less adjusted value of A's PRS interest | (3) |
| | --- |
| 3. Difference | $1 |
| 4. Remaining built-in loss from §1.752-7 liability | 2 |
| | - |
| 5. §1.752-7 liability reduction (lesser of 3 or 4) | $1 |

Gain/Loss on Sale of A's PRS Interest (in millions)

| | |
|---|---|
| 1. Amount realized on sale | $3 |
| 2. Less basis of PRS interest | |
| Original | 4 |
| §1.752-7 liability reduction | 1 |

-

(iii) Satisfaction of §1.752-7 liability. Neither PRS nor any of its partners is entitled to a deduction, loss, or capital expense upon the satisfaction of the §1.752-7 liability to the extent of the remaining built-in loss associated with the §1.752-7 liability ($2,000,000). PRS is entitled to a deduction, however, for the amount by which the cost of satisfying the §1.752-7 liability exceeds the remaining built-in loss associated with the §1.752-7 liability. Therefore, in 2007, PRS may deduct $1,000,000 (cost to satisfy the §1.752-7 liability, $3,000,000, less the remaining built-in loss associated with the §1.752-7 liability, $2,000,000). If PRS notifies A of the satisfaction of the §1.752-7 liability, then A is entitled to an ordinary deduction in 2007 of $1,000,000 (the §1.752-7 liability reduction).

PRS's Deduction on Satisfaction of Liability (in millions)

| | |
|---|---|
| 1. Amount paid by PRS to satisfy §1.752-7 liability | $3 |
| 2. Remaining built-in loss for §1.752-7 liability | (2) |
| 3. Difference | $1 |

Example 2. The facts are the same as in Example 1 except that, at the time of A's sale of the PRS interest to D, PRS has a nonrecourse liability of $4,000,000, of which A's share is $1,000,000. A's basis in PRS is $5,000,000. At the time of the sale of the PRS interest to D, the adjusted value of A's interest is $4,000,000 (the fair market value of the interest ($3,000,000), increased by A's share of partnership liabilities ($1,000,000)). The difference between the basis of A's interest ($5,000,000) and the adjusted value of that interest ($4,000,000) is $1,000,000. Therefore, the §1.752-7 liability reduction is $1,000,000 (the lesser of this difference or the remaining built-in loss associated with the §1.752-7 liability, $2,000,000). Immediately before the sale of the PRS interest to D, A's basis is reduced from $5,000,000 to $4,0000,000. A's amount realized on the sale of the PRS interest to D is $4,000,000 ($3,000,000 paid by D, increased under section 752(d) by A's share of partnership liabilities, or $1,000,000). Therefore, A neither realizes nor recognizes any gain or loss on the sale. D's basis in the PRS interest is $4,000,000. Because D's share of the adjusted basis of partnership property is $3,000,000 (D's share of the partnership's previously taxed capital, $2,000,000, plus D's share of partnership liabilities, $1,000,000), the basis adjustment under section 743(b) is $1,000,000.

PRS Balance Sheet (in millions)

| Assets Value | Assets Basis | | Liabilities/Equity Value | Liabilities/Equity Basis | |
|---|---|---|---|---|---|
| $ 5 | $ 4 | Property 1 | | | |
| $13 | $13 | Cash | | | |
| | | | $4 | - | Nonrecourse Debt |
| | | | $2 | - | §1.752-7 Liability |
| | | | | | Partner's Equity: |
| | | | $3 | $5 | A |
| | | | $3 | $4 | B |
| | | | $6 | $8 | C |

Computation of §1.752-7 Liability Reduction (in millions)

| | |
|---|---|
| 1. Basis of A's PRS interest | $5 |
| 2. Less adjusted value of A's PRS interest | |
| Value of PRS interest | 3 |

| | | |
|---|---|---|
| | A's share of nonrecourse debt | 1 -- |
| | Total | (4) === |
| 3. | Difference between 1 and 2 | 1 |
| 4. | Remaining built-in loss from §1.752-7 liability | 2 -- |
| 5. | §1.752-7 liability reduction (lesser of 3 or 4) | $1 |

Gain/Loss on Sale of A's PRS Interest (in millions)

| | | |
|---|---|---|
| 1. | Amount realized on sale | |
| | Value of PRS interest | $3 |
| | A's share of nonrecourse debt | 1 |
| | Total | $4 |
| 2. | Less basis of PRS interest | |
| | Original | $5 |
| | §1.752-7 liability reduction | $1 -- |
| | Difference | ($4) ==== |
| 3. | Gain/Loss | 0 |

Example 3. The facts are the same as in Example 1, except that the satisfaction of the §1.752-7 liability would have given rise to a capital expense to A or PRS. Neither PRS nor any of its partners are entitled to a capital expense upon the satisfaction of the §1.752-7 liability to the extent of the remaining built-in loss associated with the §1.752-7 liability ($2,000,000). PRS may, however, increase the basis of appropriate partnership assets by the amount by which the cost of satisfying the §1.752-7 liability exceeds the remaining built-in loss associated with the §1.752-7 liability. Therefore, in 2007, PRS may capitalize $1,000,000 (cost to satisfy the §1.752-7 liability, $3,000,000, less the remaining built-in loss associated with the §1.752-7 liability, $2,000,000) to the appropriate partnership assets. If A is notified by PRS that the §1.752-7 liability has been satisfied, then A is entitled to a capital loss in 2007 as provided in paragraph (e)(1) of this section, the year of the satisfaction of the §1.752-7 liability.

(3) Exception for nonrecognition transactions—

(i) In general. Paragraph (e)(1) of this section does not apply where a §1.752-7 liability partner transfers all or part of the partner's partnership interest in a transaction in which the transferee's basis in the partnership interest is determined in whole or in part by reference to the transferor's basis in the partnership interest. In addition, paragraph (e)(1) of this section does not apply to a distribution of an interest in the partnership (lower-tier partnership) that has assumed the §1.752-7 liability by a partnership that is the §1.752-7 liability partner (upper-tier partnership) if the partners of the upper-tier partnership that were §1.752-7 liability partners with respect to the lower-tier partnership prior to the distribution continue to be §1.752-7 liability partners with respect to the lower-tier partnership after the distribution. See paragraphs (b)(4)(ii) and (j)(3) of this section for rules on the application of this section to partners of the §1.752-7 liability partner.

(ii) Examples. The following examples illustrate the provisions of this paragraph (e)(3):

Example 1. Transfer of partnership interest to lower-tier partnership.

(i) Facts. In 2004, X contributes undeveloped land with a value and basis of $2,000,000 and subject to environmental liabilities of $1,500,000 to partnership LTP in exchange for a 50% interest in LTP. LTP develops the land as a landfill. In 2005, in a transaction governed by section 721(a), X contributes the LTP interest to UTP in exchange for a 50% interest in UTP. In 2008, X sells the UTP interest to A for $500,000. At the time of the sale, X's basis in UTP is $2,000,000, the remaining built-in loss associated with the environmental liability is $1,500,000, and the gross value of UTP's assets is $2,500,000. The environmental liabilities were not assumed by LTP as part of a contribution by X to LTP of a trade or business with which the liabilities were associated. (See paragraph (b)(10)(ii), Example 1 of this section.)
(ii) Analysis. Because UTP's basis in the LTP interest is determined by reference to X's basis in the LTP interest, X's contribution of the LTP interest to UTP is exempted from the rules of paragraph (e)(1) of this section. Under paragraph (j)(1) of this section, X's contribution of the LTP interest to UTP is treated as a contribution of X's share of the assets of LTP and UTP's assumption of X's share of the LTP liabilities (including §1.752-7 liabilities). Therefore, X's transfer of the LTP interest to UTP is a §1.752-7 liability transfer. The §1.752-7 liabilities deemed transferred by X to UTP are not associated with a trade or business transferred to UTP for purposes of paragraph (d)(2)(i)(A) of this section, because they were not associated with a trade or business transferred by X to LTP as part of the original §1.752-7 liability transfer. See paragraph (j)(2) of this section. Because none of the exceptions described in paragraph (d)(2) of this section apply to X's taxable sale of the UTP interest to A in 2008, paragraph (e)(1) of this section applies to that sale.

Example 2. Transfer of partnership interest to corporation. The facts are the same as in Example 1, except that, rather than transferring the LTP interest to UTP in 2005, X contributes the LTP interest to Corporation Y in an exchange to which section 351 applies. Because Corporation Y's basis in the LTP interest is determined by reference to X's basis in that interest, X's contribution of the LTP interest is exempted from the rules of paragraph (e)(1) of this section. But see section 358(h) and §1.358-7 for appropriate basis adjustments.

Example 3. Partnership merger. (i) Facts . In 2004, A, B, C, and D form equal partnership PRS1. A contributes Blackacre with a value and basis of $2,000,000 to PRS1 and PRS1 assumes from A $1,500,000 of pension liabilities unrelated to Blackacre. B, C, and D each contribute $500,000 cash to PRS1. PRS1 uses the cash contributed by B, C, and D ($1,500,000) to purchase Whiteacre. In 2006, PRS1 merges into PRS2 in an assets-over merger under §1.708-1(c)(3). Assume that, under §1.708-1(c), PRS2 is the surviving partnership and PRS1 is the terminating partnership. At the time of the merger, the value of Blackacre is still $2,000,000, the remaining built-in loss with respect to the pension liabilities is still $1,500,000, but the value of Whiteacre has declined to $500,000.

(ii) Deemed assumption by PRS2 of PRS1 liabilities. Under §1.708-1(c)(3), the merger is treated as a contribution of the assets and liabilities of PRS1 to PRS2, followed by a distribution of the PRS2 interests by PRS1 in liquidation of PRS1. Because PRS2 assumes a §1.752-7 liability (the pension liabilities) of PRS1, PRS1 is a §1.752-7 liability partner of PRS2. Under paragraph (b)(5)(ii)(A) of this section, A is also §1.752-7 liability partner of PRS2 to the extent of the remaining $1,500,000 built-in loss associated with the pension liabilities. B, C, and D are not §1.752-7 liability partners with respect to PRS1. If the amount of the pension

liabilities had increased between the date of PRS1's assumption of those liabilities from A and the date of the merger of PRS1 into PRS2, then B, C, and D would be §1.752-7 liability partners with respect to PRS2 to the extent of their respective shares of that increase. See paragraph (b)(5)(ii) of this section.
(iii) Deemed distribution of PRS2 interests. Paragraph (e)(1) does not apply to PRS1's deemed distribution of the PRS2 interests, because, under paragraph (b)(5)(ii)(B) of this section, all of the partners that were §1.752-7 liability partners with respect to PRS2 before the distribution, i.e., A, continue to be §1.752-7 liability partners after the distribution. After the distribution, A's share of the pension liabilities now held by PRS2 will continue to be $1,500,000.

Example 4. Partnership division; no shifting of §1.752-7 liability. The facts are the same as in Example 3, except that PRS1 does not merge with PRS2, but instead contributes Blackacre to PRS2 in exchange for PRS2 interests and the assumption by PRS2 of the pension liabilities. Immediately thereafter, PRS1 distributes the PRS2 interests to A and B in liquidation of their interests in PRS1. The analysis is the same as in Example 3. After the assumption of the pension liabilities by PRS2, A is a §1.752-7 liability partner with respect to PRS2. After the distribution of a PRS2 interest to A, A continues to be a §1.752-7 liability partner with respect to PRS2, and the amount of A's built-in loss with respect to the §1.752-7 liabilities continues to be $1,500,000. Therefore, paragraph (e)(1) of this section does not apply to the distribution of the PRS2 interests to A and B.

Example 5. Partnership division; shifting of §1.752-7 liability. The facts are the same as in Example 4, except that PRS1 distributes the PRS2 interests not to A and B, but to C and D, in liquidation of their interests in PRS1. After this distribution, A does not continue to be a §1.752-7 liability partner of PRS2, because A no longer has an interest in PRS2. Therefore, paragraph (e)(1) of this section applies to the distribution of the PRS2 interests to C and D.

(f) Distribution in liquidation of §1.752-7 liability partner's partnership interest—

(1) In general. Except as provided in paragraphs (d)(2) and (i) of this section, immediately before a distribution in liquidation of a §1.752-7 liability partner's partnership interest, the §1.752-7 liability partner's basis in the partnership interest is reduced by the §1.752-7 liability reduction (as defined in paragraph (b)(7) of this section). This rule applies before section 737. No deduction, loss, or capital expense is allowed to the partnership on the satisfaction of the §1.752-7 liability (within the meaning of paragraph (b)(8) of this section) to the extent of the remaining built-in loss associated with the §1.752-7 liability (as defined in paragraph (b)(6) of this section). For purposes of section 705(a)(2)(B) and §1.704-1(b)(2)(ii)(b) only, the remaining built-in loss associated with the §1.752-7 liability is not treated as a nondeductible, noncapital expenditure of the partnership. Therefore, the remaining partners' capital accounts and bases in their partnership interests are not reduced by the remaining built-in loss associated with the §1.752-7 liability. If the partnership (or any successor) notifies the §1.752-7 liability partner of the satisfaction of the §1.752-7 liability, then the §1.752-7 liability partner is entitled to a loss or deduction. The amount of that deduction or loss is, in the case of a partial satisfaction of the §1.752-7 liability, the amount that the partnership would, but for this section, take into account on the partial satisfaction of the §1.752-7 liability (but not, in total, more than the §1.752-7 liability reduction) or, in the case of a complete satisfaction of the §1.752-7 liability, the remaining §1.752-7 liability reduction. To the extent of the amount that the partnership would, but for this section, take into account on satisfaction of the §1.752-7 liability, the character of that deduction or loss is

determined as if the §1.752-7 liability partner had satisfied the liability. To the extent that the §1.752-7 liability reduction exceeds the amount that the partnership would, but for this section, take into account on satisfaction of the §1.752-7 liability, the character of the §1.752-7 liability partner's loss is capital.
(2) Example. The following example illustrates the provision of this paragraph (f):

Example.

(i) Facts. In 2004, A, B, and C form partnership PRS. A contributes Property 1 with a fair market value and basis of $5,000,000 subject to a §1.752-7 liability of $2,000,000 for a 25% interest in PRS. B contributes $3,000,000 cash for a 25% interest in PRS, and C contributes $6,000,000 cash for a 50% interest in PRS. In 2012, when PRS has a section 754 election in effect, PRS distributes Property 2, which has a basis and fair market value of $3,000,000, to A in liquidation of A's PRS interest. At the time of the distribution, the fair market value of A's PRS interest is still $3,000,000, the basis of that interest is still $5,000,000, and the remaining built-in loss associated with the §1.752-7 liability is still $2,000,000. Assume that none of the exceptions of paragraph (d)(2) of this section apply to the distribution and that the satisfaction of the §1.752-7 liability would have given rise to a deductible expense to A. In 2013, PRS pays $1,000,000 to satisfy the entire §1.752-7 liability.

PRS Balance Sheet (in millions)

| Assets Value | Assets Basis | | Liabilities/Equity Value | Liabilities/Equity Basis | |
|---|---|---|---|---|---|
| $5 | $5 | Property 1 | | | |
| $9 | $9 | Cash | | | |
| | | | $2 | - | §1.752-7 Liability |
| | | | | | Partner's Equity: |
| | | | $3 | $5 | A |
| | | | $3 | $3 | B |
| | | | $6 | $6 | C |

(ii) Liquidation of A's PRS interest. Immediately before the distribution of Property 2 to A, A's basis in the PRS interest is reduced (to $3,000,000) by the §1.752-7 liability reduction, i.e., the lesser of the excess of A's basis in the PRS interest ($5,000,000) over the adjusted value ($3,000,000) of that interest ($2,000,000) or the remaining built-in loss associated with the §1.752-7 liability ($2,000,000). Therefore, A's basis in Property 2 under section 732(b) is $3,000,000. Because this is the same as the partnership's basis in Property 2 immediately before the distribution, the partnership's basis adjustment under section 734(b) is $0.

Computation of §1.752-7 Liability Reduction (in millions)

| | |
|---|---|
| 1. Basis of A's PRS interest | $5 |
| 2. Less adjusted value of A's PRS interest | (3) |
| 3. Difference | $2 |
| 4. Remaining built-in loss from §1.752-7 liability | 2 |
| 5. §1.752-7 liability reduction | |

```
    (lesser of 3 or 4)                              $2
```

(iii) Satisfaction of §1.752-7 liability. PRS is not entitled to a deduction, loss, or capital expense on the satisfaction of the §1.752-7 liability to the extent of the remaining built-in loss associated with the §1.752-7 liability ($2,000,000). Because this amount exceeds the amount paid by PRS to satisfy the §1.752-7 liability ($1,000,000), PRS is not entitled to any deduction for the §1.752-7 liability in 2013. If, however, PRS notifies A of the satisfaction of the §1.752-7 liability, A is entitled to an ordinary deduction in 2013 of $1,000,000 (the amount paid in satisfaction of the §1.752-7 liability) and a capital loss of $1,000,000 (the remaining §1.752-7 liability reduction).

```
PRS's Deduction on Satisfaction of Liability (in millions)
----------------------------------------------------------
Amount paid by PRS to satisfy §1.752-7 liability       $1
Remaining built-in loss for §1.752-7 liability         (2)
                                                       ---
Difference (but not below zero)                        $0
```

(g) Assumption of §1.752-7 liability by a partner other than §1.752-7 liability partner—

(1) In general. If this paragraph (g) applies, section 704(c)(1)(B) does not apply to an assumption of a §1.752-7 liability from a partnership by a partner other than the §1.752-7 liability partner. The rules of paragraph (g)(2) of this section apply only if the §1.752-7 liability partner is a partner in the partnership at the time of the assumption of the §1.752-7 liability from the partnership. The rules of paragraphs (g)(3) and (4) of this section apply to any assumption of the §1.752-7 liability by a partner other than the §1.752-7 liability partner, whether or not the §1.752-7 liability partner is a partner in the partnership at the time of the assumption from the partnership.

(2) Consequences to §1.752-7 liability partner. If, at the time of an assumption of a §1.752-7 liability from a partnership by a partner other than the §1.752-7 liability partner, the §1.752-7 liability partner remains a partner in the partnership, then the §1.752-7 liability partner's basis in the partnership interest is reduced by the §1.752-7 liability reduction (as defined in paragraph (b)(7) of this section). If the assuming partner (or any successor) notifies the §1.752-7 liability partner of the satisfaction of the §1.752-7 liability (within the meaning of paragraph (b)(8) of this section), then the §1.752-7 liability partner is entitled to a deduction or loss. The amount of that deduction or loss is, in the case of a partial satisfaction of the §1.752-7 liability, the amount that the assuming partner would, but for this section, take into account on the satisfaction of the §1.752-7 liability (but not, in total, more than the §1.752-7 liability reduction) or, in the case of a complete satisfaction of the §1.752-7 liability, the remaining §1.752-7 liability reduction. To the extent of the amount that the assuming partner would, but for this section, take into account on the satisfaction of the §1.752-7 liability, the character of that deduction or loss is determined as if the §1.752-7 liability partner had satisfied the liability. To the extent that the §1.752-7 liability reduction exceeds the amount that the assuming partner would, but for this section, take into account on the satisfaction of the §1.752-7 liability, the character of the §1.752-7 liability partner's loss is capital.

(3) Consequences to partnership. Immediately after the assumption of the §1.752-7 liability from the partnership by a partner other than the §1.752-7 liability partner, the partnership must reduce the basis of partnership assets by the remaining built-in loss associated with the §1.752-7 liability (as defined in paragraph (b)(6) of this section). The reduction in the basis of partnership assets

must be allocated among partnership assets as if that adjustment were a basis adjustment under section 734(b).

(4) Consequences to assuming partner. No deduction, loss, or capital expense is allowed to an assuming partner (other than the §1.752-7 liability partner) on the satisfaction of the §1.752-7 liability assumed from a partnership to the extent of the remaining built-in loss associated with the §1.752-7 liability. Instead, upon the satisfaction of the §1.752-7 liability, the assuming partner must adjust the basis of the partnership interest, any assets (other than cash, accounts receivable, or inventory) distributed by the partnership to the partner, or gain or loss on the disposition of the partnership interest, as the case may be. These adjustments are determined as if the assuming partner's basis in the partnership interest at the time of the assumption were increased by the lesser of the amount paid (or to be paid) to satisfy the §1.752-7 liability or the remaining built-in loss associated with the §1.752-7 liability. However, the assuming partner cannot take into account any adjustments to depreciable basis, reduction in gain, or increase in loss until the satisfaction of the §1.752-7 liability.

(5) Example. The following example illustrates the provisions of this paragraph (g):

Example.

(i) Facts. In 2004, A, B, and C form partnership PRS. A contributes Property 1, a nondepreciable capital asset with a fair market value and basis of $5,000,000, in exchange for a 25% interest in PRS and assumption by PRS of a §1.752-7 liability of $2,000,000. B contributes $3,000,000 cash for a 25% interest in PRS, and C contributes $6,000,000 cash for a 50% interest in PRS. PRS uses the cash contributed to purchase Property 2. In 2007, PRS distributes Property 1, subject to the §1.752-7 liability to B in liquidation of B's interest in PRS. At the time of the distribution, A's interest in PRS still has a value of $3,000,000 and a basis of $5,000,000, and B's interest in PRS still has a value and basis of $3,000,000. Also at that time, Property 1 still has a value and basis of $5,000,000, Property 2 still has a value and basis of $9,000,000, and the remaining built-in loss associated with the §1.752-7 liability still is $2,000,000. Assume that none of the exceptions of paragraph (d)(2)(i) of this section apply to the assumption of the §1.752-7 liability by B and that the satisfaction of the §1.752-7 liability by A would have given rise to a deductible expense to A. In 2010, B pays $1,000,000 to satisfy the entire §1.752-7 liability. At that time, B still owns Property 1, which has a basis of $3,000,000.

```
PRS Balance Sheet (in millions)
-------------------------------
     Assets               Liabilities/Equity
     ------               ------------------
Value     Basis          Value      Basis
-----     -----          -----      -----
$5          $5     Property 1
$9          $9     Property 2
                         $2           -       §1.752-7 Liability
                                              Partner's Equity:
                         $3          $5           A
                         $3          $3           B
                         $6          $6           C
```

(ii) Assumption of §1.752-7 liability by B. Section 704(c)(1)(B) does not apply to the assumption of the §1.752-7 liability by B. Instead, A's basis in the PRS interest is reduced (to $3,000,000) by the §1.752-7 liability reduction, i.e., the lesser of the excess of A's

basis in the PRS interest ($5,000,000) over the adjusted value ($3,000,000) of that interest ($2,000,000), or the remaining built-in loss associated with the §1.752-7 liability as of the time of the assumption ($2,000,000). PRS's basis in Property 2 is reduced (to $7,000,000) by the $2,000,000 remaining built-in loss associated with the §1.752-7 liability. B's basis in Property 1 under section 732(b) is $3,000,000 (B's basis in the PRS interest). This is $2,000,000 less than PRS's basis in Property 1 before the distribution of Property 1 to B. If PRS has a section 754 election in effect for 2007, PRS may increase the basis of Property 2 under section 734(b) by $2,000,000.

§ 1.752-7 Liability Reduction (in millions)

| | | |
|---|---|---|
| 1. | Basis of A's PRS interest | $5 |
| 2. | Less adjusted value of A's PRS interest | (3) |
| 3. | Difference | $2 |
| 4. | Remaining built-in loss from §1.752-7 liability | 2 |
| 5. | §1.752-7 liability reduction (lesser of 3 or 4) | $2 |

A's Basis in PRS after Assumption by B (in millions)

| | | |
|---|---|---|
| 1. | Basis before assumption | $5 |
| 2. | Less §1.752-7 liability reduction | (2) |
| 3. | Basis after assumption | $3 |

PRS's Basis in Property 2 after Assumption by B (in millions)

| | | |
|---|---|---|
| 1. | Basis before assumption | $9 |
| 2. | Less remaining built-in loss from §1.752-7 liability | (2) |
| 3. | Plus section 734(b) adjustment (if partnership has a section 754 election) | 2 |
| 4. | Basis after assumption | $9 |

(iii) Satisfaction of §1.752-7 liability. B is not entitled to a deduction on the satisfaction of the §1.752-7 liability in 2010 to the extent of the remaining built-in loss associated with the §1.752-7 liability ($2,000,000). As this amount exceeds the amount paid by B to satisfy the §1.752-7 liability, B is not entitled to any deduction on the satisfaction of the §1.752-7 liability in 2010. B may, however, increase the basis of Property 1 by the lesser of the remaining built-in loss associated with the §1.752-7 liability ($2,000,000) or the amount paid to satisfy the §1.752-7 liability ($1,000,000). Therefore, B's basis in Property 1 is increased to $4,000,000. If B notifies A of the satisfaction of the §1.752-7 liability, then A is entitled to an ordinary deduction in 2010 of $1,000,000 (the amount paid in satisfaction of the §1.752-7 liability) and a capital loss of $1,000,000 (the remaining §1.752-7 liability reduction).

B's Basis in Property 1 after Satisfaction of Liability

(in millions)

| | | |
|---|---|---|
| 1. | Basis in Property 1 after distribution | $3 |
| 2. | Plus lesser of remaining built-in loss ($2) or amount paid to satisfy liability ($1) | 1 |
| 3. | Basis in Property 1 after satisfaction | |

| | |
|---|---|
| of liability | $4 |

(h) Notification by the partnership (or successor) of the satisfaction of the §1.752-7 liability. For purposes of paragraphs (e), (f), and (g) of this section, notification by the partnership (or successor) of the satisfaction of the §1.752-7 liability must be attached to the §1.752-7 liability partner's return (whether an original or an amended return) for the year in which the loss is being claimed and must include—

(1) The amount paid in satisfaction of the §1.752-7 liability, and whether the amounts paid were in partial or complete satisfaction of the §1.752-7 liability;
(2) The name and address of the person satisfying the §1.752-7 liability;
(3) The date of the payment on the §1.752-7 liability; and
(4) The character of the loss to the §1.752-7 liability partner with respect to the §1.752-7 liability.
(i) Special rule for amounts that are capitalized prior to the occurrence of an event described in paragraphs (e), (f), or (g)—
(1) In general. If all or a portion of a §1.752-7 liability is properly capitalized (capitalized basis) prior to an event described in paragraph (e), (f), or (g) of this section, then, before an event described in paragraph (e), (f), or (g) of this section, the partnership may take the capitalized basis into account for purposes of computing cost recovery and gain or loss on the sale of the asset to which the basis has been capitalized (and for any other purpose for which the basis of the asset is relevant), but after an event described in paragraph (e), (f), or (g) of this section, the partnership may not take any remaining capitalized basis into account for tax purposes.
(2) Example. The following example illustrates the provisions of this paragraph (i):

Example.

(i) Facts. In 2004, A and B form partnership PRS. A contributes Property 1, a nondepreciable capital asset, with a fair market value and basis of 5,000,000, in exchange for a 25% interest in PRS and an assumption by PRS of a §1.752-7 liability of $2,000,000. B contributes $9,000,000 in cash in exchange for a 75% interest in PRS. PRS uses $7,000,000 of the cash to purchase Property 2, also a nondepreciable capital asset. In 2007, when PRS's assets have not changed, PRS satisfies the §1.752-7 liability by paying $2,000,000. Assume that PRS is required to capitalize the cost of satisfying the §1.752-7 liability. In 2008, A sells his interest in PRS to C for $3,000,000. At the time of the sale, the basis of A's interest is still $5,000,000.
(ii) Analysis. On the sale of A's interest to C, A realizes a loss of $2,000,000 on the sale of the PRS interest (the excess of $5,000,000, the basis of the partnership interest, over $3,000,000, the amount realized on sale). The remaining built-in loss associated with the §1.752-7 liability at that time is zero because all of the §1.752-7 liability as of the time of the assumption of the §1.752-7 liability by the partnership was capitalized by the partnership. The partnership may not take any remaining capitalized basis into account for tax purposes.

| Gain/Loss on Sale of A's PRS Interest (in millions) | |
|---|---|
| 1. Amount realized on sale | $3 |
| 2. Less basis of PRS interest | |
| Original Basis | $5 |
| §1.752-7 liability reduction | $0 |
| | ---- |

| | |
|---|---|
| Difference | ($5) |
| | ==== |
| 3. Gain/Loss | ($2) |

(iii) Partial Satisfaction. Assume that, prior to the sale of A's interest in PRS to C, PRS had paid $1,500,000 to satisfy a portion of the §1.752-7 liability. Therefore, immediately before the sale of the PRS interest to C, A's basis in the PRS interest would be reduced (to $4,500,000) by the $500,000 remaining built-in loss associated with the §1.752-7 liability ($2,000,000 less the 1,500,000 portion capitalized by the partnership as that time). On the sale of the PRS interest, A realizes a loss of $1,500,000 (the excess of $4,500,000, the basis of the PRS interest, over $3,000,000, the amount realized on the sale). Neither PRS nor any of its partners is entitled to a deduction, loss, or capital expense upon the satisfaction of the §1.752-7 liability to the extent of the remaining built-in loss associated with the §1.752-7 liability ($500,000). If PRS notifies A of the satisfaction of the remaining portion of the §1.752-7 liability, then A is entitled to a deduction or loss of $500,000 (the remaining §1.752-7 liability reduction). The partnership may not take any remaining capitalized basis into account for tax purposes.

Gain/Loss on Sale of A's PRS Interest (in millions)

| | |
|---|---|
| 1. Amount realized on sale | $3 |
| 2. Less basis of PRS interest | |
| Original Basis | $5 |
| §1.752-7 liability reduction | ($0.5) |
| | ------ |
| Difference | ($4.5) |
| | ====== |
| 3. Gain/Loss | ($1.5) |

(j) Tiered partnerships—

(1) Look-through treatment. For purposes of this section, a contribution by a partner of an interest in a partnership (lower-tier partnership) to another partnership (upper-tier partnership) is treated as a contribution by the partner of the partner's share of each of the lower-tier partnership's assets and an assumption by the upper-tier partnership of the partner's share of the lower-tier partnership's liabilities (including §1.752-7 liabilities). See paragraph (e)(3)(ii) Example 1 of this section. In addition, a partnership is treated as having its share of any §1.752-7 liabilities of the partnerships in which it has an interest.

(2) Trade or business exception. If a partnership (upper-tier partnership) assumes a §1.752-7 liability of a partner, and, subsequently, another partnership (lower-tier partnership) assumes that §1.752-7 liability from the upper-tier partnership, then the §1.752-7 liability is treated as associated only with any trade or business contributed to the upper-tier partnership by the §1.752-7 liability partner. The same rule applies where a partnership assumes a §1.752-7 liability of a partner, and, subsequently, the §1.752-7 liability partner transfers that partnership interest to another partnership. See paragraph (e)(3)(ii) Example 1 of this section.

(3) Partnership as a §1.752-7 liability partner. If a transaction described in paragraph (e), (f), or (g) of this section occurs with respect to a partnership (upper-tier partnership) that is a §1.752-7 liability partner of another partnership (lower-tier partnership), then such transaction will also be treated as a transaction described in paragraph (e), (f), or (g) of this section, as appropriate, with respect to the partners of the upper-tier partnership, regardless of whether the upper-tier partnership assumed the §1.752-7 liability from those partners.

(See paragraph (b)(5) of this section for rules relating to the treatment of transactions by the partners of the upper-tier partnership). In such a case, each partner's share of the §1.752-7 liability reduction in the upper-tier partnership is equal to that partner's share of the §1.752-7 liability. The partners of the upper-tier partnership at the time of the transaction described in paragraph (e), (f), or (g) of this section, and not the upper-tier partnership, are entitled to the deduction or loss on the satisfaction of the §1.752-7 liability. Similar principles apply where the upper-tier partnership is itself owned by one or a series of partnerships. This paragraph does not apply to the extent that §1.752-7(j)(4) applied to the assumption of the §1.752-7 liability by the lower-tier partnership.
(4) Transfer of §1.752-7 liability by partnership to another partnership or corporation after a transaction described in paragraph (e),(f), or (g)—
(i) In general. If, after a transaction described in paragraph (e),(f), or (g) of this section with respect to a §1.752-7 liability assumed by a partnership (the upper-tier partnership), another partnership or a corporation assumes the §1.752-7 liability from the upper-tier partnership (or the assuming partner) in a transaction in which the basis of property is determined, in whole or in part, by reference to the basis of the property in the hands of the upper-tier partnership (or assuming partner), then—
(A) The upper-tier partnership (or assuming partner) must reduce its basis in any corporate stock or partnership interest received by the remaining built-in loss associated with the §1.752-7 liability, at the time of the transaction described in paragraph (e), (f), or (g) of this section (but the partners of the upper-tier partnership do not reduce their bases or capital accounts in the upper-tier partnership); and
(B) No deduction, loss, or capital expense is allowed to the assuming partnership or corporation on the satisfaction of the §1.752-7 liability to the extent of the remaining built-in loss associated with the §1.752-7 liability.
(ii) Subsequent transfers. Similar rules apply to subsequent assumptions of the §1.752-7 liability in transactions in which the basis of property is determined, in whole or in part, by reference to the basis of the property in the hands of the transferor. If, subsequent to an assumption of the §1.752-7 liability by a partnership in a transaction to which paragraph (j)(4)(i) of this section applies, the §1.752-7 liability is assumed from the partnership by a partner other than the partner from whom the partnership assumed the §1.752-7 liability, then the rules of paragraph (g) of this section apply.
(5) Example. The following example illustrates the provisions of paragraphs (j)(3) and (4) of this section:

Example—

(i) Assumption of §1.752-7 liability by UTP and transfer of §1.752-7 liability partner's interest in UTP. In 2004, A, B, and C form partnership UTP. A contributes Property 1 with a fair market value and basis of $5,000,000 subject to a §1.752-7 liability of $2,000,000 in exchange for a 25% interest in UTP. B contributes $3,000,000 cash in exchange for a 25% interest in UTP, and C contributes $6,000,000 cash in exchange for a 50% interest in UTP. UTP invests the $9,000,000 cash in Property 2. In 2006, A sells A's interest in UTP to D for $3,000,000. At the time of the sale, the basis of A's UTP interest is $5,000,000, the remaining built-in loss associated with the §1.752-7 liability is $2,000,000, and UTP has no liabilities other than the §1.752-7 liabilities assumed from A. Assume that none of the exceptions of paragraph (d)(2) of this section apply and that the satisfaction of the §1.752-7 liability would give rise to a deductible expense to A and to UTP. Under paragraph (e) of this section, immediately before the sale of the UTP interest to D, A's basis in UTP is reduced to $3,000,000 by the

$2,000,000 §1.752-7 liability reduction. Therefore, A neither realizes nor recognizes any gain or loss on the sale of the UTP interest to D. D's basis in the UTP interest is $3,000,000.

UTP Balance Sheet Immediately Before Contribution to LTP

(in millions)

| Assets Value | Assets Basis | Liabilities/Equity Value | Liabilities/Equity Basis | |
|---|---|---|---|---|
| $5 | $5 | | | Property 1 |
| $9 | $9 | | | Property 2 |
| | | | | §1.752-7 Liability |
| | | $2 | | Assumed from A |
| | | $1.5 | | Additional |
| | | $3.5 | | Total |
| | | | | Partner's Equity: |
| | | $2.625 | $3 | D (25%) |
| | | $2.625 | $3 | B (25%) |
| | | $5.25 | $6 | C (50%) |
| | | $10.5 | $12 | Total Equity |

UTP's Basis in LTP Immediately After Contribution (in millions)

| | | |
|---|---|---|
| 1. | Basis in assets | $14 |
| 2. | Less remaining built-in loss at time of A's sale | ($ 2) |
| 3. | UTP's basis in LTP | $12 |

Gain/Loss on Sale of A's PRS Interest to D (in millions)

| | | |
|---|---|---|
| 1. | Amount realized on sale | $3 |
| 2. | Less basis of PRS interest | |
| | Original | $5 |
| | §1.752-7 liability reduction | ($2) |
| | Difference | ($3) |
| 3. | Gain/Loss | $0 |

(ii) Assumption of §1.752-7 liability by LTP from UTP. In 2008, at a time when the estimated amount of the §1.752-7 liability has increased to $3,500,000, UTP contributes Property 1 and Property 2, subject to the §1.752-7 liability, to LTP in exchange for a 50% interest in LTP. At the time of the contribution, Property 1 still has a value and basis of $5,000,000 and Property 2 still has a value and basis of $9,000,000. UTP's basis in LTP under section 722 is $14,000,000. Under paragraph (j)(4)(i) of this section, UTP must reduce its basis in LTP by the $2,000,000 remaining built-in loss associated with the §1.752-7 liability (as of the time of the sale of the UTP interest by A). The partners in UTP are not required to reduce their bases in UTP by this amount. UTP is a §1.752-7 liability partner of LTP with respect to the entire $3,500,000 §1.752-7 liability assumed by LTP. However, as A is no longer a partner of UTP, none of the partners of UTP (as of the time of the assumption of the §1.752-7 liability by LTP) are §1.752-7 liability partners of LTP with respect to the $2,000,000 remaining built-in loss associated with the §1.752-7 liability (as of the time of the sale of the UTP interest by A). The UTP partners (as of the

time of the assumption of the §1.752-7 liability by LTP) are §1.752-7 liability partners of LTP with respect to the $1,500,000 increase in the amount of the §1.752-7 liability of UTP since the assumption of that §1.752-7 liability by UTP from A.

UTP Balance Sheet Immediately Before Contribution to LTP

(in millions)

| Assets Value | Assets Basis | Liabilities/Equity Value | Liabilities/Equity Basis | |
|---|---|---|---|---|
| $5 | $5 | | | Property 1 |
| $9 | $9 | | | Property 2 |
| | | | | §1.752-7 Liability |
| | | $2 | | Assumed from A |
| | | $1.5 | | Additional |
| | | $3.5 | | Total |
| | | | | Partner's Equity: |
| | | $2.625 | $3 | D (25%) |
| | | $2.625 | $3 | B (25%) |
| | | $5.25 | $6 | C (50%) |
| | | $10.5 | $12 | Total Equity |

UTP's Basis in LTP Immediately After Contribution (in millions)

| | | |
|---|---|---|
| 1. | Basis in assets | $14 |
| 2. | Less remaining built-in loss at time of A's sale | ($ 2) |
| 3. | UTP's basis in LTP | $12 |

(iii) Sale by UTP of LTP interest. In 2010, UTP sells its interest in LTP to E for $10,500,000. At the time of the sale, the LTP interest still has a value of $10,500,000 and a basis of $12,000,000, and the remaining built-in loss associated with the §1.752-7 liability is $3,500,000. Under paragraph (e) of this section, immediately before the sale, UTP must reduce its basis in the LTP interest by the §1.752-7 liability reduction. Under paragraph (a)(4) of this section, the remaining built-in loss associated with the §1.752-7 liability is $1,500,000 (remaining built-in loss associated with the §1.752-7 liability, $3,500,000, reduced by the amount of the §1.752-7 liability taken into account under paragraph (j)(4) of this section, $2,000,000). The difference between the basis of the LTP interest held by UTP ($12,000,000) and the adjusted value of that interest ($10,500,000) is also $1,500,000. Therefore, the §1.752-7 liability reduction is $1,500,000 and UTP's basis in the LTP interest must be reduced to $10,500,000. In addition, UTP's partners must reduce their bases in their UTP interests by their proportionate shares of the §1.752-7 liability reduction. Thus, the basis of each of B's and D's interest in UTP must be reduced by $375,000 and the basis of C's interest in UTP must be reduced by $750,000. In 2011, D sells the UTP interest to F.

Computation of §1.752-7 Liability Reduction (in millions)

| | | |
|---|---|---|
| 1. | Basis of UTP's LTP interest | $12 |
| 2. | Less adjusted value of UTP's LTP interest | ($10.5) |
| 3. | Difference between 1 and 2 | $ 1.5 |
| 4. | Remaining built-in loss | |

| | |
|---|---|
| from §1.752-7 liability | $ 1.5 |
| | ----- |
| 5. §1.752-7 liability reduction (lesser of 3 or 4) | $ 1.5 |

Gain/Loss on Sale of UTP's PRS Interest to E (in millions)

| | |
|---|---|
| 1. Amount realized on sale | $10.5 |
| 2. Less basis of PRS interest | |
| Original | $12 |
| §1.752-7 liability reduction | ($ 1.5) |
| | ------ |
| Difference | ($10.5) |
| | ======= |
| 3. Gain/Loss | $ 0 |

Partner's Bases in UTP Interests after Sale of LTP Interest

(in millions)

| | B | C | D |
|---|---|---|---|
| Basis prior to sale | $3 | $6 | $3 |
| Share of §1.752-7 liability Reduction | ($0.375) | ($0.75) | ($0.375) |
| | -------- | ------- | -------- |
| Basis after sale | $2.625 | $5.25 | $2.625 |

(iv) Deduction, expense, or loss associated with the §1.752-7 liability by LTP. In 2012, LTP pays $3,500,000 to satisfy the §1.752-7 liability. Under paragraphs (e) and (j)(4) of this section, LTP is not entitled to any deduction with respect to the §1.752-7 liability. Under paragraph (j)(3) of this section, UTP also is not entitled to any deduction with respect to the §1.752-7 liability. If LTP notifies A, B, C and D of the satisfaction of the §1.752-7 liability, then A is entitled to a deduction in 2012 of $2,000,000, B and D are each entitled to deductions in 2012 of $375,000, and C is entitled to a deduction in 2012 of $750,000.

(k) Effective dates—

(1) In general. This section applies to §1.752-7 liability transfers occurring on or after June 24, 2003. For assumptions occurring after October 18, 1999, and before June 24, 2003, see §1.752-6. For §1.752-7 liability transfers occurring on or after June 24, 2003 and before May 26, 2005, taxpayers may rely on the exception for trading and investment partnerships in paragraph (b)(8)(ii) of 1.752-7 (2003-28 I.R.B. 46; 68 FR 37434).

(2) Election to apply this section to assumptions of liabilities occurring after October 18, 1999 and before June 24, 2003—

(i) In general. A partnership may elect to apply this section to all assumptions of liabilities (including §1.752-7 liabilities) occurring after October 18, 1999, and before June 24, 2003. Such an election is binding on the partnership and all of its partners. A partnership making such an election must apply all of the provisions of §1.752-1 and §1.752-7, including §1.358-5T, §1.358-7, §1.704-1(b)(1)(ii) and (b)(2)(iv)(b ), §1.704-2(b)(3), , §1.704-3(a)(7), (a)(8)(iv), and (a)(12), §1.704-4(d)(1)(iv), §1.705-1(a)(8), §1.732-2(d)(3)(iv), and §1.737-5.

(ii) Manner of making election. A partnership makes an election under this paragraph (k)(2) by attaching the following statement to its timely filed return: [Insert name and employer identification number of electing partnership] elects under §1.752-7 of the Income Tax Regulations to be subject to the rules of

§1.358-5T, §1.358-7, §1.704-1(b)(1)(ii) and (2)(iv)(b ), §1.704-2(b)(3), , §1.704-3(a)(7), (a)(8)(iv), and (a)(12), §1.704-4(d)(1)(iv), §1.705-1(a)(8), §1.732-2(d)(3)(iv), and §1.737-5 with respect to all liabilities (including §1.752-7 liabilities) assumed by the partnership after October 18, 1999 and before June 24, 2003. In the statement, the partnership must list, with respect to each liability (including each §1.752-7 liability) assumed by the partnership after October 18, 1999 and before June 24, 2003—
(A) The name, address, and taxpayer identification number of the partner from whom the liability was assumed;
(B) The date on which the liability was assumed by the partnership;
(C) The amount of the liability as of the time of its assumption; and
(D) A description of the liability.
(iii) Filing of amended returns. An election under this paragraph (k)(2) will be valid only if the partnership and its partners promptly amend any returns for open taxable years that would be affected by the election.
(iv) Time for making election. An election under this paragraph (k)(2) must be filed with any timely filed Federal income tax return filed by the partnership on or after September 24, 2003 and on or before December 31, 2005.

## Part 602—OMB Control Numbers Under The Paperwork Reduction Act

Par. 7. The authority for part 602 continues to read as follows:

Authority: 26 U.S.C.7805.

Par. 8. In §602.101, paragraph (b) is amended by adding an entry to the table in numerical order to read as follows:

§602.101 OMB Control numbers. *****

(b) ***
______________________________________________________________CFR part or section where Current OMB identified and described control No. *****

1.752-7...............................................1545-1843 *****

Mark E. Matthews,

Deputy Commissioner for Services and Enforcement.

Approved: May 16, 2005.

Eric Solomon,

Acting Deputy Assistant Secretary of the Treasury.