construction and ongoing maintenance expenses. *Id.* Based on this example, it would seem that those tax benefits considered to be typically associated with an investment are those benefits that necessarily flow from the investment. In the case of a deduction or credit not specifically represented as to amount, the amount of each such deduction or credit should be reasonably estimated based on representations of economic value or economic projections, if any, or on any other information available to the tax shelter organizer. *Id.* Reasonable estimates of deductions or credits may take into account past experience with similar investments and reasonable estimates must assume use of the most accelerated allowable basis for cost recovery deductions. *Id.*

We understand that the tax benefit from the Transactions that was explicitly represented to the Investor as being allowable is a net deduction not in excess of the premium paid by the LLC for the long MLD position plus the additional amount of cash that the Investor contributed to the LLC.[66] Also, and based on the example in the Regulations, tax benefits that might arguably be considered as "typically associated" with the Transactions include deductions for brokerage commissions, advisory fees, the sponsor's fee and other transactional fees, as well as the Short Fixed Yield on the short MLD position. Although there might be additional deductions for an Investor from the Transactions, including losses from one or more Investments and an interest deduction in respect of the Short Bonus Yield, we believe that it is more likely than not that such additional deductions could not be specifically represented or reasonably estimated and, thus, would not be reflected in the numerator of the Investor's tax shelter ratio.[67]

Also, in determining an Investor's tax shelter ratio, the numerator of such ratio is the amount of *gross* deductions and other similar tax benefits potentially allowable with respect to the Transactions, without offset for any gross income to be derived or potentially derived from the Transactions. *See* Temp. Reg. § 301.6111-1T, A-6. *See also* Rev. Rul. 90-86, 1990-2 C.B. 256 (tax shelter ratio calculated using the gross deductions rather than the "bottom line" or net loss deductions that may be allocated by a partnership to the investor). As commentators have noted, Temporary Regulations Section 301.6111-1T, A-6 was intended to be broad. *See, e.g.*, Robert B. Martin, Jr., Coping with the Tax Shelter Registration and Compliance Requirements. 62 J. Tax'n 2 (January 1985) (noting that the Commissioner intended for the rules to be broadly written so that the Service could keep better track of tax shelters, including otherwise profitable arrangements, although the rules were since amended to exclude from the reporting requirements certain profitable arrangements qualifying as "projected income investments"); James L. George

[66] However, we would note that even these deductions would not be available to the Investor or, at a minimum, their availability would be deferred if the Investor were to decide to have the Corporation remain as a member of the LLC with CC (and Mr. Brooks). The Investor has complete discretion in this regard.

[67] This is so given the volatile nature of the Investments in general and the specific uncertainties with respect thereto as regard to the number of such Investments that CC may have had the LLC invest in, when, if at all, an Investment is disposed of and, if disposed of, the amount of gain or loss that the LLC would recognize upon such disposition, the maturity date of an Investment, etc. All of these and other matters relating to the Investments are within the sole control of CC, as the LLC's investment manager. By the same token, whether the Short Bonus Yield would ultimately give rise to a payment obligation (and, thus, an interest deduction) and, if so, the amount of such obligation (and interest deduction) is entirely uncertain and unascertainable prior to the Short Maturity Date.





C&SLLP004963

and Harvey B. Fireman, New Compliance Provisions Require Immediate Action By Tax Shelters And Partnerships, 1 J. Partnership Tax'n 346 (Winter 1985)(". . . under these rules, partnerships expected to produce taxable income may still be a tax shelter if GROSS deductions exceed twice the investor's investment.")(Emphasis supplied). While this Regulation is arguably invalid,[68] we are assuming for purposes of our opinions herein that the Regulation would be upheld as valid.

For the reasons discussed above, we believe that it is more likely than not that the numerator of the Investor's tax shelter ratio would not include, under Temporary Regulations Section 301.6111-1T, A-6, the Corporation's allocable share of the LLC's aggregate potential gross deductions from all of its "loss" Investments and, at least prior to the Short Maturity Date, from the Short Bonus Yield (which, as discussed above, more likely than not would constitute interest) since these deductions cannot be reasonably estimated.

Also, in Rev. Rul. 90-85, 1990-2 C.B. 255, the Service concluded that an investor's deduction is potentially allowable even if subject to the Section 469 passive loss limitations because the deduction could nonetheless offset other passive income of the investor or the investor may not be subject to Section 469 (e.g., certain corporations). However, this is not the case with respect to losses (including capital losses) subject to the Sections 704(d) and 1366(d) limitations which prohibit, absolutely, a partner or S corporation shareholder, respectively, from using his or its allocable share of losses of a partnership or S corporation in which the partner or shareholder has no basis. Thus, here,

---

[68] At least two commentators have suggested that this regulation goes beyond the intendment of the statute, noting that

> [t]he statute is unclear in its statements relating to the definition of aggregate deductions. Nevertheless, a tax shelter has traditionally been understood to mean an investment that provides tax losses that may be used to offset income from other sources. There is no reason to believe that Congress intended any other meaning when it enacted this statute. However, in issuing the October 13 regulations, the Service chose to ignore this traditional understanding and instead interpreted the statutory language to mean gross deductions without any offset by any gross income to be derived from the investment. . . .

Stephen P. Jarchow and Peter M. Susko, The Impact of the Tax Shelter Registration Provisions on Real Estate Syndication, 2 J. Partnership Tax'n 213 (Fall 1985); *see also* Philip F. Postlewaite and Tammy Jo Bialosky, Liabilities in the Partnership Context – Policy Concerns and the Forthcoming Regulations, 33 UCLA L. Rev. 733 (February 1986)(Generally, a "tax shelter" is viewed as an activity or investment that produces tax deductions for a taxpayer in excess of the taxpayer's income from the activity or investment with which to offset, or shelter, the taxpayer's income from other sources).

While the Secretary is granted express regulatory authority with respect to certain aspects of the tax shelter registration rules, *see* IRC §§ 6111(c)(3)(C)(ii) and 6111(f), such express regulatory authority does not extend to the manner in which the "tax shelter ratio" is to be determined. Thus, the Secretary's authority for issuing Treasury Regulations Section 301.6111-1T, A-6 falls within the Secretary's general authority under Section 7805(a) to "prescribe all needful rules and regulations for the enforcement of [the tax laws] . . . ." Although it sometimes happens, courts are generally reluctant to invalidate a Treasury Regulation and we are assuming, for purposes of this opinion, that this regulation, if subject to a court challenge, would be upheld as valid.


C&SLLP004964

the gross losses and other deductions of the LLC for any year, to the extent exceeding the LLC's gross income for such year and the Corporation's adjusted tax basis in its Class A LLC Units (and the Investor's basis in his Corporation stock), are not even "potentially allowable" under Section 1366(d) or 704(d).[69]

Accordingly, based on the foregoing, we believe that it is more likely than not that the numerator of the Investor's tax shelter ratio would not exceed the sum of the gross premium paid by the LLC for the long MLD position plus the remaining cash contributed by the Investor to the LLC (after the LLC's payment of the net premium for the MLD positions) plus the Short Fixed Yield.[70]

b. <u>Determining the "investment base" (i.e., the denominator of the "tax shelter ratio")</u>

In order to conclude that the Transaction is not a "tax shelter", one would have to conclude that the long MLD position (and, otherwise, the Long Bonus Yield in respect thereof) was "property" for purposes of Section 6111 and that either: (i) the short MLD position (and, otherwise, the Short Bonus Yield in respect thereof) was not a "liability" for purposes of Section 6111, or (ii) if so, that the amount of such liability was less than 50% of the amount of the LLC's basis in the long MLD position.

Neither Section 6111 nor the Regulations thereunder define the terms "property" and "liability" for purposes of Section 6111. Thus, we believe that you could reasonably rely on the meanings ascribed to such terms for purposes of other Sections of the Code including, for example, Sections 721 and 752. *See, e.g., Commissioner v. Keystone Consolidated Industries, Inc.*, 71 A.F.T.R. 2d 93-1809, 113 S.Ct. 2006 (S.Ct. May 24, 1993)(It is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning. Further, the Code must be given as great an internal symmetry and consistency as its words permit (citing *Commissioner v. Lester*, 366 U.S. 299, 304, 7 A.F.T.R.2d 1445 (1961))); *see also* Aquilio, Funding with Debt-Free Property Puts Plans at Risk, Practical Tax Strategies/Taxation for Accountants, Vol. 52, No. 1 (January 1994)(The Court, in *Keystone Consolidated Industries, Inc.*, also reiterated the rule of statutory construction that "identical words used in different parts of the same act are intended to have the same meaning" and that the Code must be given "as great an internal symmetry and consistency as its words permit." Since the Code is a unitary body of tax law, the

[69] We note, however, that Rev. Rul. 90-85 focused only on the "potentially allowable" issue, rather than on the requirement under Temporary Regulations Section 301.6111-1T, A-6 that *gross*, rather than the net, deductions be taken into account in determining the Investor's tax shelter ratio.

[70] Of course, the interest deduction in respect of the Short Fixed Yield would be offset by the interest income in respect of the Long Fixed Yield. We acknowledge that the Service could possibly argue that the numerator of the Investor's tax shelter ratio should also include the Deposit Amount since this amount, arguably, constitutes additional basis for the Investor in his Corporation stock and for the Corporation in its Class A LLC Units and, thereby increase, by such amount, the amount of gross deductions in respect of the LLC (from foreign currency contracts or other Investments) that are potentially allowable to the Corporation or Investor under Section 1366(d) or 704(d), respectively. We believe that it is more likely than not that the Service would be unsuccessful if it were to make such an argument.


C&SLLP004965

language in the excise tax chapters should have the same meaning as identical language in the income tax chapters).[71]

(i) Long MLD position and foreign currency contracts would more likely than not constitute "property" for purposes of Section 6111

In the absence of any guidance under Section 6111 or the Regulations thereunder and consistent with how such term is interpreted for purposes of other sections of the Code such as, for example, Sections 721 and 351, we believe that the term "property" could be interpreted broadly for purposes of Section 6111.

In *Stafford v. U.S.*, 611 F.2d 990 (5th Cir. 1980), *rev'g and rem'g* 435 F.Supp. 1036 (D.Ct. Ga. 1977), the government had appealed a decision of the District Court granting summary judgment in favor of the taxpayer that the taxpayer's receipt of a limited partnership interest, for which the taxpayer claimed to have contributed an unenforceable letter of intent, was issued in exchange for property under Section 721 and therefore was not taxable. The Fifth Circuit reversed the District Court's finding and remanded the case back to said court. In footnote 6 of its opinion, the Fifth Circuit noted, as relevant, that

> [i]n order to qualify for nonrecognition, the partnership interest must have been given at least partly in exchange for property within the meaning of §721. The taxpayer suggested and the district court adopted a broad definition of property as follows: " 'Property' can be real or personal, tangible or intangible, and a person has a property right in something if he has the right to possess it, use it and dispose of it." 435 F.Supp. at 1038. The district court cited no authority for the above definition. As noted by the district court, however, commentators have suggested that a broad definition of property should apply for purposes of the nonrecognition provisions of the Code. Neither the code nor the regulations define "property" as used in §721 or its counterpart §351. It has been said, however, that "unless

[71] For example, both Congress and the Service have indicated that the term "liability" as used in Sections 357, 358 and 752 are synonymous. H.R. Conf. Rep. No. 861, 98th Cong., 2d Sess, 1984-3 (vol. 2) CB 110-11 (Congress amended Section 704(c) to, *inter alia*, require that accounts payable contributed to a partnership be allocated to the contributing partner and not be treated as a liability of the partnership under Section 752. According to the conference committee report, this treatment was intended to be "parallel to the [1978] amendment to section 357(c)", which also excluded deductible liabilities from the definition of "liability"); Rev. Rul. 88-77, 1988-2 C.B. 129 ("The legislative history accompanying the amendment to section 704(c) made by the Tax Reform Act of 1984 explicitly rejected the conclusion reached in Revenue Ruling 60-345 in favor of an interpretation of section 752 that is consistent with section 357(c)"); Rev. Rul. 95-74, 1995-2 C.B. 36 (in support of its ruling that contingent environmental liabilities were not "liabilities" for purposes Sections 357 and 358, the IRS cited Rev. Rul. 88-77, which addressed the treatment of liabilities under Section 752).


C&SLLP004966

> there is some special reason intrinsic to the particular provision (as there is with respect to capital assets), the general word 'property' has a broad reach in tax law .... For section 351, in particular, courts have advocated a generous definition of 'property' ...." [citations omitted]. . . . The case most often cited as an example of how far courts will go in this area is H. B. Zachry Co., 49 T.C. 73 (1967), which held a carved-out oil payment to be property within the meaning of §351. Examples of other interests which have been held to be property under §351 or its predecessor section are the following: accounts receivable [citations omitted]; installment obligations [citations omitted]; cash [citations omitted]; stock (citations omitted); nonexclusive license of patents [citations omitted]; judgment claims or obligations surrendered to corporation for cancellation [citation omitted]; exclusive licensing of patents [citation omitted]; patents [citation omitted]; physical inventory [citations omitted]; interest in a binding contract to purchase property [citation omitted]; and, under certain circumstances, technical know-how (citation omitted). . . .

The Fifth Circuit added that "enforceability of any agreement evidenced by the letter of intent, while perhaps not dispositive of the question, is important and material to the question of whether Stafford transferred property to the partnership under §721". The court cited two cases which it believed merited special attention, one of which was *Washburne v. Commissioner*, 27 T.C.M. 577 (1968).

In *Washburne*, the taxpayer, who was the president and manager of a corporation engaged in the factoring business, was orally given permission by the owner of said business to find a buyer for the corporation. After a buyer was found and all the details of the sale had been agreed upon, the owner of said business purportedly granted to the taxpayer an option to purchase said business, which "option" the taxpayer then assigned to the company which purchased the business in exchange for stock of the company. The court in *Washburne* found that the taxpayer did not have an option to purchase the business and, consequently, did not transfer property within the meaning of Section 351; instead, the company stock was issued in exchange for the taxpayer's services to the company. Importantly, the *Washburne* court did not hold that an option was not property, but instead that the arrangement between the taxpayer and owner did not constitute an option in the first instance. In fact, the court's decision clearly suggests that if the purported option was, in fact, an option, then said option would have constituted property for purposes of Section 351.

On remand from the Fifth Circuit's decision, the District Court, in *Stafford v. U.S.*, 552 F. Supp. 311 (D.Ct. 1982), found that because it was unenforceable, the letter of intent did not constitute "property" for purposes of Section 721(a). On appeal, the Eleventh Circuit, in *U.S. v. Stafford*, 727 F.2d 1043 (11th Cir. 1984), reversed the District







C&SLLP004967

Court's decisions and concluded that an unenforceable letter of intent encompassed a sufficient bundle of rights to constitute "property" within the meaning of Section 721.[72] In so concluding, the court noted that

> [a]lthough the Internal Revenue Code does not define property for purposes of §721 or §351, *the courts have given the term rather broad application* [citations omitted]. In Hempt Bros., Inc. v. United States, 354 F.Supp. 1172, 1175 [31 AFTR 2d 73-1302] (M.D.Pa. 1973), aff'd, 490 F.2d 1172 [33 AFTR 2d 74-570] (3d Cir.), cert. denied, 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974), *the court stated "that the term [property for purposes of §351] encompasses whatever may be transferred."* [citations omitted]. . . .

(Emphasis added).

Based on the foregoing, the term "property" has been defined broadly for purposes of Sections 351 and 721. Nothing in Section 6111 and the Regulations thereunder suggests that a more narrow definition of said term is appropriate for purposes of said section or, otherwise, that the long MLD position, which constitutes a valuable and transferable right, is not property for purposes of said section. Accordingly, we believe that it is more likely than not that the long MLD position would be treated as "property" for purposes of Section 6111.

(ii) Whether Short Bonus Yield is a "liability" for purposes of Section 6111

As noted above, neither Section 6111 nor the Regulations thereunder define the term "liability".[73] However, we believe that it is more likely than not that, at least prior to the Short Maturity Date, the Short Bonus Yield portion of the short MLD position would not be a liability for Section 752 purposes and, therefore, would not be a liability for purposes of Section 6111. Moreover, even assuming *arguendo* that the Short Bonus Yield was a liability for Section 752 purposes, we believe that it more likely than not that the amount of such liability at any time prior to the Short Maturity Date would more likely than not be zero. *See* discussion in II.L, *infra*.

### 2. "Corporate tax shelter" under Section 6111(d)(1)

A "tax shelter" also includes any entity, plan, arrangement, or transaction (A) a significant purpose of the structure of which is the avoidance or evasion of Federal

[72] The court did emphasize, however, that it was not saying that a letter of intent, which on its face does not state a binding agreement between the parties, will generally constitute property for purposes of Section 721, but rather that its holding was limited to the letter and the facts in the present case.

[73] In fact, and as the Ninth Circuit observed in *Merkel v. Commissioner*, 192 F.3d 844 (9th Cir. 1999), "[t]he term 'liabilities' is not defined in the Internal Revenue Code or in any Treasury Regulation."



C&SLLP004968

income tax for a direct or indirect participant which is a corporation, (B) which is offered to any potential participant under "conditions of confidentiality," and (C) for which the tax shelter promoters[74] may receive fees in excess of $100,000 in the aggregate. IRC § 6111(d)(1) (a "Corporate Tax Shelter"). For purposes of clause (B) above, an offer is under conditions of confidentiality if (i) the potential participant to whom the offer is made (or any other person acting on behalf of such participant) has an understanding or agreement with or for the benefit of any promoter of the tax shelter that such participant (or such other person) will limit disclosure of the tax shelter or any significant tax features of the tax shelter, or (ii) any promoter of the tax shelter (x) claims, knows, or has reason to know, (y) knows or has reason to know that any other person (other than the potential participant) claims, or (z) causes another person to claim, that the tax shelter (or any aspect thereof) is proprietary to any person other than the potential participant or is otherwise protected from disclosure to or use by others. IRC § 6111(d)(2).

In order for the Transactions to constitute a Corporate Tax Shelter, the Transactions would have to constitute an entity, plan, arrangement or transaction a significant purpose of the structure of which is the avoidance or evasion of Federal income tax for a direct or indirect participant which is a *corporation.* IRC § 6111(d)(1)(A). Although we were unable to find anything in Section 6111 or the Regulations thereunder which defines the term "corporation" to exclude S corporations, we believe that it is more likely than not that an S corporation's participation in an entity, plan, arrangement or transaction would not, in and of itself, result in such entity, plan, arrangement or transaction being a Corporate Tax Shelter. The literal language of the statute refers to a corporation directly or indirectly participating *for the significant purpose of avoiding or evading Federal income tax.* Since an S corporation is not subject to federal income tax, *see* IRC § 1363(a), there is no federal income tax that an S corporation would need to avoid or evade.[75] Analogous support for this position can be found in the disclosure statement filing rules of Section 6011 and Temporary Regulations Section 1.6011-4T. Under Temporary Regulations Section 1.6011-4T(a),

> *[e]very taxpayer that is required to file a return for a taxable year with respect to a tax imposed under section 11*, 594, 801, or 831 and that has participated, directly or indirectly, in a reportable transaction within the meaning of paragraph (b) of this section must attach to its return for the taxable year described in paragraph (d) of this section a disclosure statement in the form prescribed by paragraph (c) of this section. For this purpose, a taxpayer will have indirectly participated in a transaction if its Federal income

[74] The term "promoter" means any person or any related person (within the meaning of Section 267 or 707) who participates in the organization, management, or sale of the tax shelter.

[75] This statutory language could be interpreted to mean a corporation's participation for a significant purpose of enabling *another person* (e.g., the S corporation shareholder) to avoid or evade Federal income tax, in which case the Transactions might be viewed as a Corporate Tax Shelter by reason of the Corporation's participation.







C&SLLP004969

> tax liability is affected by the transaction even if it is not a direct party to the transaction (e.g., it participates through a partnership or through a controlled entity). A separate disclosure statement is required for each reportable transaction. The fact that a taxpayer files a disclosure statement for a reportable transaction shall not affect the legal determination whether the tax benefits claimed with respect to the transaction are allowable.

(Emphasis added).

As relevant, under these rules, a taxpayer that is required to file a return for a taxable year with respect to the income tax imposed on a C corporation (i.e., the tax imposed under Section 11) must attach to its return a statement of any "reportable transaction" in which the taxpayer directly or indirectly participated. In defining those transactions that constitute "reportable transactions", the Regulations make reference to certain aspects and criteria used in Sections 6111 and 6112 to determine whether a transaction constitutes a "tax shelter", Corporate Tax Shelter and "potentially abusive tax shelter". *See* Temp. Reg. § 1.6011-4T(b). Since an S corporation is not a taxpayer that is subject to the tax imposed under Section 11, the Corporation, which is an S corporation, would more likely than not not be subject to these disclosure rules.

As none of the other direct or indirect participants that could derive potential federal income tax benefits from the Transactions were corporations (or entities treated as corporations for federal income tax purposes) – i.e., the Investor is an individual and CC is a single member limited liability company the sole member of which is Mr. Brooks, also an individual — we believe that it is more likely than not that the Transactions would not constitute a Corporate Tax Shelter.

Moreover, even assuming, *arguendo*, that the Transactions could be viewed as structured for the avoidance or evasion of Federal income tax for a direct or indirect participant which is a corporation, it has been represented to us that no aspect of the Transactions was offered to the Investor, the LLC, the Corporation or any other person under "conditions of confidentiality" (within the meaning of Section 6111(d)(2)).

Accordingly, we believe that it is more likely than not that the Transactions would not constitute a "tax shelter" under Section 6111 and, therefore, would not be required to be registered under Section 6111(a).

## III. <u>OPINIONS</u>

Based on the above discussion and analysis, and subject to the qualifications, representations, limitations and assumptions set forth herein, we are of the opinion that under current federal income tax law, it is more likely than not that:





C&SLLP004970

A. The Investor's contribution of his LLC membership interest to the Corporation (at a time when the Investor was the sole member and beneficial owner of the LLC) was not a taxable transaction.

B. The MLD positions would be treated as debt instruments for federal income tax purposes with a contingent interest component that would not be includable as income under Section 1275 unless and until the contingency is satisfied.

C. The Short Bonus Yield portion of the short MLD position would not be treated as a liability for purposes of Section 752.

D. The Investor's tax basis in his Corporation stock immediately following his contribution of his LLC membership interest to the Corporation was equal to the amount of the gross premium paid by the LLC for its long MLD position plus the amount of cash then held by the LLC and the LLC's basis in its other assets, without any downward adjustment in respect of the Short Bonus Yield.

E. Other than the basis adjustment for any net income, gain or loss in respect of the MLD positions at maturity, if, upon the Short Maturity Date, no payment is required to be made in respect of the Short Bonus Yield, the Corporation would have no negative basis adjustment under either Section 705(a)(2)(B) or 752(b).

F. The Corporation's sale of all of its Class A LLC Units to CC pursuant to its option under the Operating Agreement would result in a capital gain or loss to the Corporation (except to the extent subject to recharacterization under Section 751) and, thus, to the Investor, measured by the difference between the Corporation's amount realized from such sale and the Corporation's then current adjusted tax basis in its Class A LLC Units.

G. The Corporation's purchase of all of CC's Class B LLC Units pursuant to its option under the Operating Agreement would result in the LLC being treated as having liquidated under Section 708(b)(1)(A) for federal income tax purposes, and that the Corporation would take an adjusted tax basis in the LLC's then remaining assets (other than cash and "marketable securities"[76]) deemed received in the deemed liquidation of LLC (i.e., the remaining Investments) equal to the Corporation's adjusted tax basis in its LLC interest immediately before

[76] In general, subject to the exceptions of Section 731(c)(3), the term "marketable securities" means financial instruments and foreign currencies which are, as of the date of the distribution, actively traded (within the meaning of Section 1092(d)(1)), IRC § 731(c)(2)(A), as well as those additional items identified in Section 731(c)(2)(B).







C&SLLP004971

said deemed distribution (reduced by the amount of any cash and fair market value of any "marketable securities", deemed received.

H. The sale of the foreign currency contracts by the LLC, as a disregarded entity for federal income tax purposes, would result in the Corporation's (and, thus, the Investor's) recognition of ordinary gain or loss, measured by the difference between the amount realized from such sale and the Corporation's adjusted tax basis in the sold contracts (as determined in G above).

I. Assuming that the Investments and assets of the LLC (other than those assets gain or loss from the sale of which would be subject to Section 988) are capital assets for federal income tax purposes, the LLC's sale of any of such Investments or assets would result in the Corporation's (and, thus, the Investor's) recognition of capital gain or loss, measured by the difference between the amount realized from such sale and the Corporation's adjusted tax basis in the sold Investment or asset (as determined in G above).

J. The tax treatment described herein for the Investor in respect of the Transactions would be upheld if challenged by the Service and would not subject the Investor to penalties under Section 6662(b)(2) or (3).

K. The Transactions would not constitute a tax shelter within the meaning of Section 6111 and, therefore, would not be required to be registered under Section 6111(a).

The opinions set forth above are subject to the following qualifications, limitations and exceptions: no opinion is expressed regarding the tax treatment of the described transaction for the purpose of any foreign, state or local income tax, or any tax other than the United States federal income tax. Any misstatement of a material fact or omission of any fact that may be material or any change in any of the facts referred to may require a modification of all or part of our opinions.

Our opinions are limited to matters expressly set forth herein, and no opinion may be applied or inferred beyond the matters so stated. The opinions expressed herein are based upon our interpretation of current law. The opinions expressed herein are not binding on the Service or the courts. Moreover, there is no assurance that the Service or a court considering this matter would agree with our opinions or conclusions expressed herein. We do not undertake to advise you of any changes in law which may occur after the date hereof. The Code, the Regulations promulgated thereunder, and the administrative position of the Service are subject to change either prospectively or retroactively. Such changes could render certain or all of the opinions expressed herein inapplicable.


C&SLLP004972

The opinions expressed herein are furnished by us solely for the benefit of the Investor, and thus may not be relied upon or delivered to any person other than the Investor without our express, prior written approval.

Very truly yours,

Cantley & Sedacca, LLP


C&SLLP004973