**IN THE UNITED STATES COURT OF FEDERAL CLAIM**

**No. 05-1223 T**
**(Judge Allegra)**

**CLEARMEADOW INVESTMENTS, LLC,**
**CLEARMEADOW CAPITAL CORP.,**
**Tax Matters Partner,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

PLAINTIFF'S PROPOSED ADDITIONAL FINDINGS OF UNCONTROVERTED FACTS NOT RAISED IN DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS AND PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

Plaintiff, Clearmeadow Investments, LLC, Clearmeadow Capital Corp., Tax Matters Partner, by and through counsel, pursuant to RCFC 56, requests the Court to find the following facts, which are supported by citations to the Declaration of Thomas C. Pliske ("Pliske Decl.") and its exhibits. The declarations are filed as Appendix B (App. B) of the brief in support of the Plaintiff's Cross Motion for Summary Judgment.

## PLAINTIFF'S PROPOSED ADDITIONAL FINDINGS OF UNCONTROVERTED FACTS NOT RAISED IN DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS:

Pursuant to RCFC Rule 56, Plaintiff submits it proposed additional findings of uncontroverted facts ("PPAFUF") not raised in Defendant's proposed findings of uncontroverted facts ("DPFUF") as follows:

1. In response to DPFUF No. 3, Plaintiff proposes the following:

PPAFUF No. 1: During 2001, Hutton noticed that his income showed kind of the same systematic growth in profit that he had experienced over prior years. (Pliske Decl. Ex. 1 at 63, App. B. at 19)

2. In response to DPFUF No. 5, Plaintiff proposes the following:

PPAFUF No. 2: In 2001, Bryan Hanning approached Mark E. Hutton and informed Mark E. Hutton of an investment strategy offered through the law firm of Cantley & Sedacca, LLP that Bryan Hanning thought would be a potential investment opportunity for Mark E. Hutton. (Pliske Decl. Ex. 2, Hanning Deposition Exhibit 1, App. B. at 65)

3. In response to DPFUF No. 13, Plaintiff proposes the following:

PPAFUF No. 3: While the MLD transaction may have been functionally different from the prior investment transactions proposed by Hanning, the same analysis regarding investment potential and tax benefit potential are present in the MLD transaction, just as they were present in the prior investment opportunities Hanning presented to Hutton. (Pliske Decl. Ex. 2 at 25-26, App. B at 60-61.)

4. In response to DPFUF No. 18, Plaintiff proposes the following:

PPAFUF No. 4: In the October 4, 2001 letter Cantley and Sedacca stated that they were to provide legal services regarding tax planning and were engaged to "review the tax ramifications of a market link deposit investment strategy…and to research and review the law supporting the issuance of a legal opinion for" the MLD transaction. (Pliske Decl. Ex. 2,

Hanning Deposition Exhibit 3, App. B at 69.) Cantley & Sedacca also stated that it is a law firm, that it is not an investment advisor and does not express an opinion on the investment itself. (Pliske Decl. Ex. 2, Hanning Deposition Exhibit 3, App. B at 69, 71-72.)

5. In response to DPFUF No. 20, Plaintiff proposes the following:

PPAFUF No. 5: Hanning participated in the first conference call with Cantley & Sedacca, LLP, so that he could assist Hutton in understanding the MLD transaction. (Pliske Decl. Ex. 2 at 27-29, App. B. at 61; Pliske Decl. Ex. 2, Hanning Deposition Exhibit 1, App. B. at 65) If Hanning did not have the knowledge and experience to properly evaluate the merits of the transaction then it was unknown to Hutton. (Pliske Decl. Ex. 2, Hanning Deposition Exhibit 1, App. B. at 65)

6. In response to DPFUF No. 21, Plaintiff proposes the following:

PPAFUF No. 6: By participating in the conference call so he could assist Hutton in understanding the MLD transaction, Hanning implicitly represented to Hutton that he had the knowledge and experience to properly evaluate the MLD transaction. (Pliske Decl. Ex. 2, Hanning Deposition Exhibit 1, App. B. at 65)

7. In response to DPFUF No. 22, Plaintiff proposes the following:

PPAFUF No. 7: Although Hutton, alone, may not have the knowledge and experience in financial and business matters that would permit him to evaluate the merits and risks of trading options on foreign currency, he relies on others like Scott Hewitt , his CPA and tax advisor. (Pliske Decl. Ex. 1 at 15, App. B. 7.)

8. In response to DPFUF No. 24, Plaintiff proposes the following:

PPAFUF No. 8: Hewitt was Hutton's CPA and tax advisor and assisted Hutton in making his business successful through the years. (Pliske Decl. Ex. 3 at 5, App. B. at

74) Hewitt never gave Hutton any reason not to think that he had the financial and business knowledge needed to evaluate the merits of trading options on foreign currencies. (See Pliske Decl. Ex. 1 at 15-16, App. B at 7) In fact, Hewitt participated in phone calls with Cantley & Sedacca, LLP (*See* Pliske Decl. Ex. 3 at 6-9, App. B at 75); and following the telephone call, Hewitt went back to his office doing research before advising Hutton that the investment looked good. (*See* Pliske Decl. Ex. 1 at 92, App. B at 26; Pliske Decl. Ex. 3, App. B at 81)

9. In response to DPFUF No. 25, Plaintiff proposes the following:

PPAFUF No. 9: The relationship between Hutton and his business advisor, Hewitt, is such that if Hewitt, after research and investigation, did not believe that the MLD investment, or any other investment, was a viable investment, he would have relayed this to Hutton. Hewitt never told Hutton that based on his research and understanding of the MLD transaction, the MLD transaction was not a viable investment. (*See* Pliske Decl. Ex. 1 at 15-17, 23-24, App. B at 7, 9)

10. In response to DPFUF No. 26, Plaintiff proposes the following:

PPAFUF No. 10: Because Hewitt found no problems in the profitability or the tax benefits of other investment transactions, Hutton can remember no occasion which Hewitt expressed an opposing opinion that the profitability or tax benefits of other investment transactions would not be profitable or would not produce the tax benefits claimed. (Pliske Decl. Ex. 1 at 20-21, App. B at 8.)

11. In response to DPFUF No. 28, Plaintiff proposes the following:

PPAFUF No. 11: After reviewing the investment potential with Hutton, Hanning, and Cantley and Sedacca, Hewitt believed there was a potential for a return, even

though risky, the MLD transaction had a possibility of having a return. (Pliske Decl. Ex. 3 at 10, App. B. at 76)

12. In response to DPFUF No. 28, Plaintiff proposes the following:

PPAFUF No. 12: Hewitt was on the initial conference call not to provide financial analysis of the MLD transaction; but to provide advice regarding the tax aspects of the transaction. (Pliske Decl. Ex. 3 at 6-9, App. B. at 75) Hewitt's expertise in dispensing advice regarding the MLD transaction was limited to dispensing advice regarding tax benefits of the MLD transaction. (Pliske Decl. Ex. 3 at 5-6, App. B. at 74-75)

13. In response to DPFUF No. 29, Plaintiff proposes the following:

PPAFUF No. 13: Hewitt's understanding of the MLD transaction was that "there was a potential for a return" and even acknowledged that "even though risky, it had a possibility of having a return". (*See* Pliske Decl. Ex. 3 at 10, App. B at 76)

14. In response to DPFUF No. 30, Plaintiff proposes the following:

PPAFUF No. 14: Hutton did not believe that he asked anyone the <u>specific</u> question as to whether "the [MLD] transaction had a reasonable probability of producing an economic profit in excess of taxes and out-of-pockets costs." Hutton also had discussions and asked the general question whether the MLD investment was a high risk/high reward type of investment. Hutton also relied on his advisors with respect to such conclusions. (*See* Pliske Decl. Ex. 1 at 26, App. B at 10.)

15. In response to DPFUF Nos. 31 and 32, Plaintiff proposes the following:

PPAFUF No. 15: Hutton relied on the attorneys, Cantley and Sedacca, and upon his own advisors, Hewitt, his CPA and business advisor, and Hanning, his investment

advisor. (*See* Pliske Decl. Ex. 1 at 108, App. B at 30; and Pliske Decl. Ex. 1 at 26, App. B at 10.)

16. In response to DPFUF No. 43, Plaintiff proposes the following:

PPAFUF No. 16: Because the transaction was a non-taxable transaction which did Hutton was not required to report on his 2001 tax return, Hutton did not report the $2,472,500 "premium received" on his personal federal income tax return for 2001. (*See* Stoddard Decl. Ex. 29, App. B at 126-34.)

17. In response to DPFUF No. 74, Plaintiff proposes the following:

PPAFUF No. 17: Although Hewitt didn't assure Hutton that he independently tested the conclusion in the Cantley and Sedacca letter, Hewitt did perform independent tests to confirm the legal conclusions and may have informed Hutton of the results. (Pliske Decl. Ex. 3 at 33; App. B at 81) Furthermore, Hewitt performed independent research regarding the conclusions stated in the Cantley and Sedacca October 4, 2001 letter. (*See* Pliske Decl. Ex. 1 at 92, App. B. at 26; Pliske Decl. Ex. 3 at 31; App. B at 81)

18. In response to DPFUF No. 75, Plaintiff proposes the following:

PPAFUF No. 18: While the MLD transaction way have been functionally different from the prior investment transactions reviewed by Hanning and Hewitt, the same analysis regarding investment potential and tax benefit potential are present in the MLD transaction, just as they were present in the prior investment opportunities Hanning and Hewitt presented to Hutton. (*See* Pliske Decl. Ex. 2 at 25-26, App. B at 61.)

19. In response to DPFUF No. 96, Plaintiff proposes the following:

PPAFUF No. 19: Hewitt and his assistant Amy Clupny prepared an independent return for Clearmeadow Investments LLC prior to requesting the sample return, and

the sample return matched the independent figures determined by Hewitt, except for one figure. (Pliske Decl. Ex. 3 at 14-15, App. B at 77; Pliske Decl. Ex. 3, Hewitt Deposition Exhibit 2, App. B at 95.)

20. PPAFUF No. 20: Hanning was always compensated for the sale of any products that were sold by him. (Pliske Decl. Exh. No. 1 at 94, App. B. at 27)

21. PPAFUF No. 21: Hutton had known Hanning for 8+ years prior to the MLD investment in and trusted him to bring him only reputable investment products. (Pliske Decl. Exh. No. 1 at 62, App. B. at 19)

22. PPAFUF No. 22: Hutton believed that Hanning would never bring him an investment opportunity that did not make sense, or would not otherwise be a valid investment despite the risks involved. (Pliske Decl. Exh. No. 1 at 63-64, App. B. at 19)

23. PPAFUF No. 23: The law firm of Cantley & Sedacca presented the MLD investment to Hanning and later to Hutton. (Pliske Decl. Exh. No. 2 at 8, 10, App. B. at 56, 57)

24. PPAFUF No. 24: This law firm provided Hutton a legal opinion with respect to the MLD transaction and assisted Hutton with the transactions necessary to implement the transaction. (Pliske Decl. Exh. No. 1 at 88, App. B. at 25)

25. PPAFUF No. 25: Hutton was not aware, nor was it necessary that he be aware, of any role other parties may have taken with respect to the MLD transactions or perhaps their relationship with Cantley & Sedacca. (Pliske Decl. Exh. No. 1 at 88, App. B. at 25)

26. PPAFUF No. 26: Hutton simply recognized that the MLD investment was a high risk investment for which he was receiving expert assistance from a law firm with expertise in foreign-currency transactions. (Pliske Decl. Exh. No. 1 at 26, App. B. at 10)

27. PPAFUF No. 27: Hutton recognized that if certain conditions ultimately existed that there could be tax benefits, (i.e. a tax loss), or tax detriments (i.e. a taxable gain). (Pliske Decl. Exh. No. 1 at 26, App. B. at 10)

28. PPAFUF No. 28: Hutton had invested in oil wells and other high risks investments and had obtained tax benefits from such investments as intangible drilling costs. (Pliske Decl. Exh. No. 1 at 69, App. B. at 20)

29. PPAFUF No. 29: His trusted advisors, Brian Hanning, an investment advisor, presented Hutton with investment opportunities in the past; and Hutton's personal and business certified public accountant (CPA) Scott Hewitt were involved in the review and analysis of those transactions, as well as the MLD investment. (Pliske Decl. Exh. No. 1 at 63-64, App. B. at 19; Pliske Decl. Exh. No. 1 at 15, App. B. at 7)

30. PPAFUF No. 30: Neither of these trusted advisors advised Hutton that the MLD transaction was not a good investment or that the represented tax consequences, good or bad, were being improperly represented. (Pliske Decl. Exh. No. 1 at 26, App. B. at 10; Pliske Decl. Ex. 1 at 16-17, 23-24, App. B at 7, 9.)

31. PPAFUF No. 31: Both of these individuals are experienced financial advisors and have worked with Hutton many years prior to 2001 and are still working with him through today. (Pliske Decl. Ex. 2 at 4, App. B at 55; Pliske Decl. Ex. 3 at 5, App. B at 74; Pliske Decl. Ex. 1 at 15, App. B at 7)

32. PPAFUF No. 32: They continue to provide him with both financial and tax advice as might be applicable with respect to certain investments. (Pliske Decl. Ex. 2 at 24, App. B at 60; Pliske Decl. Ex. 3 at 46-47, App. B at 85)

33. PPAFUF No. 33: They participated in the initial conferences with the law firm, Cantley and Sedacca, which originally introduced the MLD transaction to Hanning; they participated in subsequent follow up conferences with Cantley and Sedacca and they did their own independent research. (Pliske Decl. Ex. 3 at 6-8, App. B at 75; Pliske Decl. Ex. 1 at 92, App. B at 26; Pliske Decl. Ex. 3 at 31, App. B at 81)

34. PPAFUF No. 34: Hutton had every reason to believe, based on the facts, that his financial advisors properly evaluated the merits and risks of the MLD transactions. (Pliske Decl. Ex. 2 at 17-18, App. B at 58-59; Pliske Decl. Ex. 1 at 16-17, App. B at 7)

35. PPAFUF No. 35: The mere fact that Hanning brought the MLD investment to Hutton, led Hutton to believe it had merit. (Pliske Decl. Ex. 1 at 26, App. B at 10)

36. PPAFUF No. 36: Hanning never brought an investment to Hutton that did not have merit. (Pliske Decl. Ex. 1 at 26, App. B at 10)

37. PPAFUF No. 37: Hewitt was involved in all conferences with Hutton and did his own independent research. (Pliske Decl. Ex. 3 at 6-8, App. B at 75; Pliske Decl. Ex. 1 at 92, App. B at 26; Pliske Decl. Ex. 3 at 31, App. B at 81)

38. PPAFUF No. 38: Hewitt never told Hutton that that the investment did not have merit and their working relationship was such that if the investment did not have merit, or if he was unable to properly analyze the investment, he would have told Hutton such. (Pliske Decl. Ex. 1 at 16-17, App. B at 7)

39. PPAFUF No. 39: It wasn't until Hutton received the letter dated May 20, 2004 that he and his advisors became aware that the IRS was taking the position that the MLD investment was a tax shelter being challenged by the IRS. (Pliske Decl. Ex. 1 at 98, App. B at 28)

40. PPAFUF No. 40: Hutton immediately paid the tax that was associated with any benefits he received from the MLD transactions. (Pliske Decl. Ex. 1 at 84-87, App. B at 24-25)

41. PPAFUF No. 41: Hutton, upon the advice of his new attorney, signed a Notice of Election to participate in the settlement initiative that was being offered by the IRS. (Pliske Decl. Ex. 1 at 38-39, App. B at 13)

42. PPAFUF No. 42: Later the IRS sought additional information and Hutton provided such information to his attorney to forward to the IRS. (Pliske Decl. Ex. 1 at 39, App. B at 13)

43. PPAFUF No. 43: The IRS claims that they never received a response to their request for additional information. (Pliske Decl. Ex. 1 at 39, App. B at 13)

44. PPAFUF No. 44: In his capacity as both an investor and partner, he immediately sought the advice and counsel of his CPA, Scott Hewitt. (Pliske Decl. Ex. 1 at 15, App. B. at 7)

45. PPAFUF No. 45: Hewitt testified that he did his own independent research and saw nothing adverse with the MLD investment to advise his client, Hutton, not to invest in the MLD transaction. (Pliske Decl. Ex. 1 at 92, App. B at 26; Pliske Decl. Ex. 3 at 31, App. B at 81)

46. PPAFUF No. 46: Hewitt independently completed the tax return, making only one small adjustment when confirming with Cantley and Sedacca, how such tax consequences were to be reflected on the tax return. (Pliske Decl. Ex. 3 at 14, App. B at 77)

47. PPAFUF No. 47: Hutton provided all the advice provided to him from Cantley & Sedacca to Scott Hewitt. (Pliske Decl. Ex. 1 at 89, App. B at 25; Pliske Decl. Ex. 3 at 11, App. B at 76)

48. PPAFUF No. 48: Hutton completed the Cantley & Sedacca client intake form with the help of his business advisor, Bryan Hanning. (Pliske Decl. Ex. 2 at 14, App B at 58; Pliske Decl. Ex. 2, Hanning Deposition Exhibit 2, App. B at 66-68.)

49. PPAFUF No. 49: The written opinion by Cantley & Sedacca that was ultimately issued on January 23, 2002 and was issued after the fact, but reflected the facts as they existed at or near the time that plaintiff entered into the transaction. (Pliske Decl. Ex. 1 at 27-28, App. B at 10)

50. PPAFUF No. 50: Hewitt was involved in telephone conversations, examined promotional materials, asked questions, and sought the advice of the law firm Cantley and Sedacca at the time of the preparation of the firm. (Pliske Decl. Ex. 3 at 6-9, App. B at 75)

51. PPAFUF No. 51: Hewitt, based upon his own research and understanding of the Internal Revenue Code prepared the tax return, independent of the advice of Cantley and Sedacca in the preparation of the return. (Pliske Decl. Ex. 1 at 92, App. B at 26; Pliske Decl. Ex. 3 at 31, App. B at 81)

52. PPAFUF No. 52: Furthermore, Hewitt reviewed the promotional material and legal opinion and concluded that the plaintiffs could reasonably rely on them for purposes of both an investment vehicle and for purposes of the tax benefits that may flow from such an investment. (Pliske Decl. Ex. 1 at 89, App. B at 25; Pliske Decl. Ex. 3 at 11, App. B at 76)

**PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERED FACTS IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT:**

Pursuant to RCFC Rule 56, Plaintiff submits its Proposed Findings of Uncontrovered Facts ("PPFUF") in support of its Cross-Motion for Summary Judgment as follows:

PPFUF No. 1. Mark E. Hutton (hereinafter "Hutton"), a resident of Wichita, Kansas (Pliske Decl. Ex. 1 at 4, App. B at 4), has been a licensed general contractor since 1992; he received his license while doing business through Hutton Construction Corporation. (*Id.* at 44, App. B at 14) For the last 15 years he has been president of the Hutton Construction Corporation. (*Id*. at 45, App. B at 14)

PPFUF No. 2. Hutton has invested in oil wells and other high risk investments and has obtained tax benefits from such investments as intangible drilling costs. (Pliske Decl. Ex. 1 at 69, App. B at 20)

PPFUF No. 3. Bryan Scott Hanning (hereinafter "Hanning") has known Hutton since 1975, and has been an advisor of some sort to Hutton and his related entities since 1992. Hanning is a representative member and agent of AGH Wealth Advisors and employed with Massachusetts Mutual Life. (Pliske Decl. Ex. 2 at 4, App. B at 55; Pliske Decl. Ex. 1 at 62, App. B at 19)

PPFUF No. 4. Hanning has brought to Hutton's attention different investments that he believes will be beneficial to Hutton. (Pliske Decl. Ex. 2 at 23-24, App. B at 60; Pliske Decl. Ex. 1 at 62-63, App. B at 19) Hanning, in the past and currently, advises Hutton regarding investment opportunities including tax planning (split dollar life insurance, 401K investment plans, deferred compensation arrangements, etc.), equity investments, and insurance investment

products. (Pliske Decl. Ex. 2 at 23-24, App. B at 60.) Hanning never brought an investment to Hutton that did not have merit. (Pliske Decl. Ex. 1 at 63-64, App. B at 19.)

PPFUF No. 5. Hutton trusts Hanning because his background and because of their long term relationship. (Pliske Decl. Ex. 1 at 64, 110, App. B at 19, 31)

PPFUF No. 6. Hanning is employed with Massachusetts Mutual Life Insurance Company and is a member of AGH Wealth Advisors in Wichita, Kansas. (Pliske Decl. Ex. 2 at 4, App. B at 194.) Hanning receives compensation if Hutton takes advantages of the investment opportunity being offered. (Pliske Decl. Ex. 1 at 94, App. B at 27)

PPFUF No. 7. In 2001, Hanning approached Hutton and informed Hutton of an investment strategy offered through the law firm of Cantley & Sedacca, LLP that Hanning thought would be a potential investment opportunity for Hutton. (Pliske Decl. Ex. 2, Hanning Deposition Exhibit 1, App. B at 65.) Hanning approached Hutton in 2001 with respect to the MLD investment opportunity because Hutton was interested in different investment opportunities. (Pliske Decl. Ex. 2 at 10, App. B at 57)

PPFUF No. 8. Hanning found Cantley & Sedacca listed under the caption "resources for investment opportunities and tax strategies" in a binder of information issued by the National Association for Family Wealth Counselors, an organization to which Hanning belongs. (Pliske Decl. Ex. 2 at 5-6, App. B at 55-56) Hanning called Cantley & Sedacca to learn about their investment choices and operations. (Pliske Decl. Ex. 2 at 8, App. B at 56)

PPFUF No. 9. During this initial call, Mr. Sedacca (hereinafter referred to as "Sedacca"), from Cantley & Sedacca, explained the mechanics of the MLD investment opportunity, the risks involved, and the reward scenarios. (Pliske Decl. Ex. 3 at 6-8, App. B at

75) Following Mr. Sedacca's presentation, Hutton posed questions requested the transaction, followed by Hanning's and Hutton's questions. (Pliske Decl. Ex. 3 at 8-9, App. B at 75)

PPFUF No. 10. A subsequent teleconference was held with Hutton, Hanning, Scott Hewitt (hereinafter "Hewitt"), Sedacca, and Mark Kaplan (hereinafter referred to as "Kaplan"). (Pliske Decl. Ex. 3 at 7, App. B at 75) Because of the complications of this sophisticated investment (i.e. MLD investment) Hanning also had another CPA that he works with, Marc Kaplan, accompany him to explain the MLD investment transaction to Hutton. (Pliske Decl. Ex. 2 at 29,33, App. B at 61-62) The second call was to clarify the information Hutton, Hanning and Hewitt received from Sedacca. (Pliske Decl. Ex. 3 at 7, App. B at 75)

PPFUF No. 11. Prior to investing in the MLD transaction, Hutton insisted on a conference call with his CPA, Hewitt, who participated and asked questions to satisfy himself as to the representations being made by Cantley and Sedacca. (Pliske Decl. Ex. 1 at 50, App. B. at 16 )

PPFUF No. 12. Mr. Hutton did not invest in the transaction until his independent CPA gave him the approval several days after the phone conference with Cantley and Sedacca. (Pliske Decl. Ex. 1 at 92, App. B. at 26)

PPFUF No. 13. Cantley & Sedacca sent Hanning a form captioned "Intake Summary," which Hanning helped Hutton to complete. Hanning then returned the form to Cantley & Sedacca. (Pliske Decl. Ex. 2 at 14, App B at 58; Pliske Decl. Ex. 2, Hanning Deposition Ex. 2, App. B at 66-68.)

PPFUF No. 14. Before 2001, Hanning had sold only one investment product to Hutton as an individual: a split-dollar variable life contract that contained mutual funds. (Pliske Decl. Ex. 2 at 11, App. B at 57) Hanning had also sold Hutton's business entities key-person life

insurance policies and a 401(k) plan. (Id. at 12, App. B at 57) Except for one life insurance policy, all of the products Hanning had sold to Hutton and his entities were products of Massachusetts Mutual Life Insurance Company. (*Id*. at 12-13, App. B at 57)

PPFUF No. 15. So that Hutton could understand the nature of the MLD transaction, Hanning arranged conference calls among himself, Hutton, Cantley & Sedacca, Marc Kaplan, and Scott Hewitt. (Pliske Decl. Ex. 2 at 27-29, App. B at 61) Edward Sedacca represented Cantley & Sedacca. (Pliske Decl. Ex. 3 at 49, App. B at 85) Marc Kaplan was a CPA employed by AGH Wealth Management Solutions. (Pliske Decl. Ex. 2 at 33, App. B at 62) Scott Hewitt is a CPA (Pliske Decl. Ex. 3 at 45, App. B at 84) who performs accounting and tax services for Hutton and his entities (Pliske Decl. Ex. 3 at 46-47, App. B at 85).

PPFUF No. 16. Because Hanning recommended Hutton as a purchaser of the MLD transaction, Cantley & Sedacca paid a referral fee to AGH Wealth Management Solutions, an entity in which Hanning had an ownership interest. (Pliske Decl. Ex. 2 at 14-15, App. B at 58)

PPFUF No. 17. Hanning disclosed to Hutton that Cantley & Sedacca had paid him a referral fee for recommending Hutton as a purchaser of the MLD transaction. (Pliske Decl. Ex. 2 at 15, App. B at 58)

PPFUF No. 18. On October 4, 2001, Cantley & Sedacca sent Hutton (through Hanning) a document captioned "Agreement for Your Legal Services." Hanning gave the document to Hutton. (Pliske Decl. Ex. 2 at 15-16, App. B at 58; Pliske Decl. Ex. 2, Hanning Deposition Exhibit 3, App. B at 69, 71-72)

PPFUF No. 19. The October 4, 2001, Agreement required Hutton to represent: (1) that he had relied solely upon his (and his financial advisor's) independent investigation of all matters or concerns regarding the MLD transaction; and (2) that he (or his financial advisor)

possessed knowledge and experience in financial and business matters sufficient to ensure his (or his financial advisor's) capability to evaluate the merits and risks of the MLD transaction. Cantley & Sedacca is a law firm and simply stated that it is not an investment advisor and does not express an opinion on the investment itself. (Pliske Decl. Ex.2, Hanning Deposition Exhibit 3, App. B at 69, 71-72)

PPFUF No. 20. Hanning does not consider himself to be Hutton's investment advisor, yet Hanning approached Hutton regarding the MLD transaction and suggested that the MLD transaction would be a potential investment opportunity for Hutton. (Pliske Decl. Ex. 2 at 11, App. B at 57; Pliske Decl. Ex. 2, Hanning Deposition Exhibit 1, App. B at 65)

PPFUF No. 21. Hanning participated in the first conference call with Cantley & Sedacca, LLP, so that he could assist Hutton in understanding the MLD transaction. If Hanning did not have the knowledge and experience to properly evaluate the merits of the transaction then it was unknown to Hutton. (Pliske Decl. Ex. 2 at 27-29, App. B. 61; Pliske Decl. Ex. 2, Hanning Deposition Ex. 1, App. B. at 65)

PPFUF No. 22. By participating in the conference call so he could assist Hutton in understanding the MLD transaction, Hanning implicitly represented to Hutton that he had the knowledge and experience to properly evaluate the MLD transaction. (Pliske Decl. Ex. 2, Haning Deposition Exhibit 1, App. B. at 65)

PPFUF No. 23. Hutton, alone, may not have the knowledge and experience in financial and business matters that would permit him to evaluate the merits and risks of trading options on foreign currency, however he relies on others like Scott Hewitt, his CPA and tax advisor. (Pliske Decl. Ex. 1 at 15, App. B. at 7) Hutton understood that the MLD investment was a *high* risk investment that had a high possible reward. (Pliske Decl. Ex. 1 at 26, App. B. at 10.)

PPFUF No. 24. Hewitt has been Hutton's accountant since 1993. (Pliske Decl. Ex. 3 at 5, App. B at 74) Hutton considers Hewitt to be the financial advisor who had sufficient knowledge and experience in financial and business matters to evaluate the MLD transaction. (Pliske Decl. Ex. 1 at 15, App. B at 7)

PPFUF No. 25. Hewitt prepared and continues to prepare Hutton's personal and business tax returns from 1994 though 2006. Hewitt is an independent and trusted advisor. (Pliske Decl Ex 3 at 5-6, App. B at 74-75)

PPFUF No. 26. Hewitt was Hutton's CPA and tax advisor and assisted Hutton in making his business successful through the years. Hewitt never gave Hutton any reason to think that he did not have the financial and business knowledge needed to evaluate the merits of trading options on foreign currencies. (*See* Pliske Decl. Ex. 1 at 15-16, App. B at 7) In fact, Hewitt participated in phone calls with Cantley & Sedacca, LLP (*See* Pliske Decl. Ex. 3 at 6-9, App. B at 75); and following the telephone call, Hewitt went back to his office doing research before advising Hutton that the investment looked good. (*See* Pliske Decl. Ex. 1 at 15-18, App. B at 7-8).

PPFUF No. 27. Typically, Hutton sought Hewitt's advice regarding various business transactions, but Hutton never directly asked Hewitt whether the MLD transaction provided a reasonable opportunity of profit apart from tax considerations. (Pliske Decl. Ex. 1 at 16-17, App. B at 7) Hutton provided Hewitt with the MLD investment materials. (Pliske Decl. Ex. 1 at 89, App. B at 25; Pliske Decl. Ex. 3 at 11, App. B at 76)

PPFUF No. 28. Because of the nature of Hutton and Hewitt's relationship, if Hewitt had a concern or a comment about the MLD transaction, Hewitt would have expressed his concerns or comments. (Pliske Decl. Ex. 1 at 16-17, App. B at 7) Hewitt never made any

comment or expressed his concerns regarding the MLD transaction. (Pliske Decl. Ex. 1 at 16-17, App. B at 7) Because of Hewitt's silence, Hutton took Hewitt's silence on the subject as a statement that the MLD transaction actually did provide a reasonable opportunity for profit. (*Id*. at 17-18, App. B at 7-8; *see also id* at 23-24, App. B at 9)

PPFUF No. 29. Hutton never asked Hewitt to check the Black/Scholes calculations that purported to show the MLD transaction's possibility of profit; and Hewitt had never mentioned to Hutton the Black/Scholes calculation or the valuation of options. (Pliske Decl. Ex. 1 at 22, App. B at 9)

PPFUF No. 30. Following the phone conversations, and before notifying Hutton that he approved the MLD transaction, Hewitt performed independent research regarding the MLD transaction. (Pliske Decl. Ex. 1 at 92, App. B at 26; Pliske Decl. Ex. 3 at 31, App. B at 81)

PPFUF No. 31. Based on Hewitt's understanding of the MLD transaction, "there was a potential for a return" and Hewitt acknowledged that "even though risky, it had a possibility of having a return". (*See* Pliske Decl. Ex. 3 at 10, App. B at 76)

PPFUF No. 32. Hutton stated that he did not believe that he asked anyone the specific question as to whether "the [MLD] transaction had a reasonable probability of producing an economic profit in excess of taxes and out-of-pockets costs." Hutton further stated that he had discussions and asked the general question whether the MLD investment was a high risk/high reward type of investment and his reliance on his advisors with respect to such conclusions. (*See* Pliske Decl. Ex. 1 at 26, App. B at 10)

PPFUF No. 33. Hutton relied on the attorneys, Cantley and Sedacca, and upon his own advisors, Hewitt, his CPA and business advisor, and Hanning, his investment advisor to

determine whether to enter into the MLD transaction. (*See* Pliske Decl. Ex. 1 at 108, App. B at 30 and Pliske Decl. Ex. 1 at 26, App. B at 10)

PPFUF No. 34. Hanning gave Hutton no negative opinion on whether the tax benefits claimed for the MLD transaction would be upheld if the IRS challenged them. (Pliske Decl. Ex. 2 at 17-18, App. B at 59)

PPFUF No. 35. Hewitt, by preparing the tax returns for Hutton claiming any tax benefits that may have flowed from the MLD transaction, implicitly assured Hutton that the tax benefits were proper. (Pliske Decl. Ex. 3 at 47, App. B at 85)

PPFUF No. 36. While the MLD transaction way have been functionally different from the prior investment transactions reviewed by Hanning and Hewitt, the same analysis regarding investment potential and tax benefit potential are present in the MLD transaction, just as they were present in the prior investment opportunities Hanning and Hewitt presented to Hutton. (Pliske Decl. Ex. 2 at 25-26, App. B at 60-61)

PPFUF No. 37. Scott Hewitt's firm, Hewitt & Co., as Hutton's accountant prepared the 2001 federal income-tax returns for Clearmeadow Investments, LLC, Clearmeadow Capital Corporation, and Hutton. (Pliske Decl. Ex. 3 at 12-13, App. B at 76)

PPFUF No. 38. Hewitt independently completed the tax return, making only one small adjustment when confirming with Cantley and Sedacca, how such tax consequences were to be reflected on the return. Hewitt contacted Cantley and Sedacca to question them on their position prior to finalizing Plaintiff's 2001 tax return, and completed the tax return in a manner for which he believed was proper and correct and not the way he was advised by Cantley and Sedacca. (Pliske Decl. Ex. 3 at 14, App. B at 77)

PPFUF No. 39. Hutton ultimately obtained the signed written opinion from a law firm, Cantley and Sedacca, stating the legal basis for all representations that had been made to him and his advisors since their initial contact. (Pliske Decl. Ex. 1 at 27-28, App. B at 10)

PPFUF No. 40. Hutton, in 2005, after being contacted by the IRS and learning that this transaction was being challenged, hired an attorney, Anthony S. Gasaway, and filed amended tax returns. (Pliske Decl. Ex. 1 at 42, App. B at 14)

PPFUF No. 41. Prior to being contacted by the IRS, neither Hutton nor Hewitt, were ever aware that the MLD investment, was what might be considered a listed transaction by the IRS, or that such investment might be included in Notice 2000-44 that was issued by the IRS. (Pliske Decl. Ex. 1 at 84, App. B at 24)

PPFUF No. 42. In addition to amending the 2001 tax returns and adjusting for any tax benefits that might have flowed from the MLD investment, Hutton paid any additional tax liability that was due. In addition, he took advantage of the Settlement initiative being offered by the IRS with respect to investors in the MLD type investments. (Pliske Decl. Ex. 1 at 84-87, App. B at 24-25)

PPFUF No. 43. He completed Form 13582, Notice of Election to Participate in Announcement 2004-46 Settlement Initiative, for his attorney, Gasaway, which was subsequently filed with the Service. (Pliske Decl. Ex. 1 at 38-39, App. B at 13)

PPFUF No. 44. Upon the IRS seeking follow up information, Hutton provided such information to his attorney. (Pliske Decl. Ex. 1 at 39, App. B at 13)

PPFUF No. 45. Today, the Service states that it never received a response for Hutton with respect to their follow up questions and that is the reason any settlement was not entered into with Hutton. (Pliske Decl. Ex. 1 at 39, App. B at 13)

PPFUF No. 46. Notice of Final Partnership Administrative Adjustment for Clearmeadow LLC was issued by the IRS on August 24, 2005. See Pliske Decl. Ex. 4, App. B at 128-140.

PPFUF No. 47. On January 23, 2002, Hutton received Cantley and Sedacca's signed tax opinion letter. See Pliske Decl., Ex. 5, App. B. at 141-242.

WHEREFORE Plaintiff asks the Court to grant its Cross Motion for Summary Judgment. Plaintiff also asks the Court to admit Plaintiff's Proposed Findings of Uncontroverted Facts.

.

Respectfully submitted,

CLEARMEADOW INVESTEMENTS, LLC
CLEARMEADOW CAPITAL CORP.,
TAX MATTERS PARTNER

Dated: October 24, 2007

s/ Thomas C. Pliske
THOMAS C. PLISKE
Stientjes & Pliske LLC
1120 Olivette Executive Parkway, Suite 220
St. Louis, MO 63132
Telephone: (314) 872-3988
Facsimile: (314) 872-7374

ATTORNEY FOR PLAINTIFF