No. 05-1223 T
(Judge Allegra)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

CLEARMEADOW INVESTMENTS, LLC,
CLEARMEADOW CAPITAL CORP.,
Tax Matters Partner,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

RICHARD T. MORRISON
Acting Assistant Attorney General

DAVID GUSTAFSON
ROBERT STODDART
Attorneys
United States Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, DC 20044
TEL: (202) 307-6445
FAX: (202) 514-9440

# TABLE OF CONTENTS

*Page*


I. *The Clearmeadow partnership assumed a liability as part of the MLD short position that Clearmeadow Capital Corp. contributed to the partnership.* . . . . 2

A. *The undisputed facts show that the Clearmeadow partnership assumed a liability from Clearmeadow Capital.* . . . . 3

B. *By law, the Clearmeadow partnership could assume a liability without electing to be taxed as a corporation.* . . . . 4

II. *The 40% penalty will apply to the underpayment that will result from Clearmeadow Capital's gross overstatement of its basis in its partnership interest and its assets.* . . . . 5

A. *Treas. Reg. § 1.752-6 requires Clearmeadow Capital to reduce the basis of its partnership interest by the amount of the liability the partnership assumed because Clearmeadow Capital transferred no trade or business along with the liability.* . . . . 8

B. *A 40% penalty applies to the underpayment that could arise from Clearmeadow Capital's gross valuation misstatement even though the transactions also constitute an economic sham.* . . . . 10

III. *Hutton's factual assertions, even if accepted, fail to establish a prima facie defense against imposition of the 40% penalty.* . . . . 13

IV. *If a trial should be necessary to determine if the partnership can prevent imposition of the 40% penalty on the ground that it reasonably relied on certain advice, the Court can limit the scope of the trial because many facts are uncontested and should be considered established under RCFC 56(d).* . . . . 16

A. *Hutton is not entitled to summary judgment on the issue of whether the partnership reasonably relied upon advice he claims to have received.* . . . . 16

B. *The Court can find that all uncontested proposed findings are established and can limit the trial to the issue of whether the partnership reasonably relied upon the advice it received.* . . . . 17

[Table of Contents, continued]

*Page*

*1. Hutton has established for all purposes that his partnership and his transactions lacked business purpose and economic effect.* . . . . . . . . . . 17

*2. The Court should accept all of the defendant's proposed findings supported by the testimony of Edward Sedacca and Daniel J. Brooks because their testimony meets the requirements of RCFC 56(e) and because Hutton has offered no evidence to the contrary.* . . . . . . . . . . 19

*3. Hutton has offered almost no meritorious opposition to the defendant's proposed findings, which should be considered established for purposes of the trial..* . . . . . . . . . . 22

Conclusion. . . . . . . . . . . . . . . . . . . . 23

Appendix A:

Internal Revenue Code (26 U.S.C.). . . . . . . . . . 25

Treasury Regulations (26 C.F.R.). . . . . . . . . . 30

Federal Rules of Evidence. . . . . . . . . . 35

## TABLE OF AUTHORITIES

*Page*

Cases:

*Agro Science Co. v. Commissioner*, 934 F.2d 573 (5th Cir. 1991). . . . . . . . . . . . . . . . . . . 8
*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*,
731 F.2d 831 (Fed. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
*Brown v. Commissioner*, 85 T.C. 968 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
*Coltec Indus., Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006). . . . . . . . . . . . . 11, 19
*Celotex Corp. v. Catrett*, 477 U.S. 315 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
*Commissioner v. Groetzinger*, 480 U.S. 23 (1987) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
*Fox v. Commissioner*, 82 T.C. 1001 (1984).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
*Gilman v. Commissioner*, 933 F.2d 143 (2d Cir. 1991).. . . . . . . . . . . . . . . . . . . . . . . . 13
*Heasley v. Commissioner*, 902 F.2d 380 (5th Cir. 1990).. . . . . . . . . . . . . . . . . . . . . . . . 11
*Hoover v. Switlik Parachute Co.*, 663 F.2d 964 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . 20
*Jade Trading, LLC v. United States*, 65 Fed. Cl. 188 (2005). . . . . . . . . . . . . . . . . . . . . 21
*Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401 (Fed. Cir. 1984).. . . . . . . . . . . . . 19, 20
*Miller v. Premier Corp.*, 608 F.2d 973 (4th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . 15
*NHB X, LLC, Norman H. Bevan, Tax Matters Partner v. Commissioner*,
No. 17453-05 (Tax Ct.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
*RJT Investments X v. Commissioner*, 491 F.3d 732 (8th Cir. 2007). . . . . . . . . . . . . . . . . 18
*Sealy Power, Ltd. v. Commissioner*, 46 F.3d 382 (5th Cir. 1995). . . . . . . . . . . . . . . . . . 18
*Transcapital Leasing Associates 1990-II, L.P. v. United States*, 97 A.F.T.R.2d
(P.H.) ¶ 2006-734 (W.D. Tex. 2006), *aff'd*, 2007 WL 2461825 (5th Cir.
Aug. 23, 2007) (*per curiam*). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
*Watanabe Realty Corp. v. City of New York*,
315 F. Supp. 2d 375 (S.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
*Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . 11
*Zfass v. Commissioner*, 118 F.3d 184 (4th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Statutes:

Internal Revenue Code of 1986 (26 U.S.C.):

§ 162.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
§ 212.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 358.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9, 10
§ 721.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
§ 722.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
§ 723.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

[Table of Authorities, Statutes, 26 U.S.C., continued]

*Page*

§ 732.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
§ 752.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
§ 1012.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
§ 6226.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11, 12
§ 6664.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C.:

§ 41.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
§ 1295.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Treasury Regulations (26 C.F.R.):

§ 1.752-6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-12
§ 1.6664-4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
§ 301.6221-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
§ 301.7701-2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
§ 301.7701-3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Miscellaneous:

Fed. R. Evid. 201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
Rules of the Court of Federal Claims
32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 19-23
Notice 2000-44, 2000-2 C.B. 255. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 10, 23

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1223 T
(Judge Allegra)

CLEARMEADOW INVESTMENTS, LLC,
CLEARMEADOW CAPITAL CORP.,
Tax Matters Partner,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At pages 39-40 of the brief in support of its motion for summary judgment (Def. SJ Brief), filed on August 22, 2007, the defendant asked the Court to make three determinations, which were the following: (1) that the Clearmeadow partnership assumed a contingent liability from Clearmeadow Capital Corp. in a transaction similar to those described in Notice 2000-44; (2) that a 40% penalty will be applicable to any substantial underpayment that results from Clearmeadow Capital's overstated basis in its partnership interest and in the assets distributed to it by the partnership; and (3) that the purchase and contribution of the MLD positions and the formation and liquidation of the partnership had neither business purpose nor economic substance.

On October 24, 2007, the plaintiff's sole shareholder, Mark Hutton (Hutton), filed a 35-page response to the defendant's motion (Pl. Response) in which he denies that the Clearmeadow partnership assumed a liability from the plaintiff, denies that any penalty can apply, and asserts that the partnership can raise a defense to the proposed penalties. Hutton admits that the transaction before the Court lacked business purpose and economic substance–though he seems to make the admission only "for purposes of the Defendant's Motion for Summary Judgment." *See* Pl. Response at 33-34. Hutton filed a separate 24-page brief in support of his own cross-motion for summary judgment (Pl. SJ Brief), apparently assuming that there can be no genuine factual dispute about whether he reasonably relied on the expertise of advisors who lacked and had never claimed the expertise he attributes to them. In addition, Hutton has opposed many of the defendant's proposed factual findings with arguments that have no merit.

After considering Hutton's arguments and factual assertions, the defendant continues to believe it is entitled to judgment as a matter of law. Hutton has now established that he has underpaid his taxes because of one or more gross valuation misstatements, and he has failed to allege facts sufficient to raise a triable issue of whether the partnership reasonably relied on advice it received. If, however, the Court should consider a trial necessary, the trial can be limited in scope, and under RCFC 56(d) most of the necessary facts should be considered as established for trial in this summary-judgment proceeding.

*I. The Clearmeadow partnership assumed a liability as part of the MLD short position that Clearmeadow Capital Corp. contributed to the partnership.*

Hutton insists that "genuine issues of material fact exist as to . . . the . . . character of the assumed liability . . ." (Pl. Response at 13), but he points to nothing in the record that could raise

such an issue. He also insists that the Clearmeadow partnership assumed no liability because it "never filed nor was required to file an IRS Form 8832, Entity Classification Election . . . ." *Id.* at 15. The facts and the law confute these objections.

*A. The undisputed facts show that the Clearmeadow partnership assumed a liability from Clearmeadow Capital.*

In the plaintiff's response to defendant's proposed findings of uncontroverted facts (PRDPF) (filed on October 24, 2007), Hutton admitted the facts needed to establish that the Clearmeadow partnership assumed a liability from Clearmeadow Capital.

On October 9, 2001, Edward Sedacca signed a certificate of formation for Clearmeadow Investments, LLC. (PRDPF 35.) The LLC's initial operating agreement named Hutton as sole member. (PRDPF 36.) On October 15, 2001, for a premium of EUR 2,747,252, the LLC purchased an option from Societe Generale under which the LLC could collect EUR 4,395,604 if the yen/dollar exchange rate was equal to or greater than 124.65 on December 14, 2001 (the "long MLD position"). (PRDPF 38, 39.) The LLC reported the sums EUR 2,747,252 (as of October 15, 2001) and EUR 4,395,604 (as of December 14, 2001) as $2,500,000 and $2,800,000, respectively. (*See* PRDPF 42, 101.)

Also on October 15, 2001, for a premium of EUR 2,717,033, the LLC sold an option to Societe Generale under which the LLC would pay Societe Generale EUR 4,347,352 if the yen/dollar exchange rate was equal to or greater than 124.67 on December 14, 2001 (the "short MLD position"). (PRDPF 40, 41). The LLC reported the sums EUR 2,717,033 (as of October 15, 2001) and EUR 4,347,352 (as of December 14, 2001) as $2,472,500 and $2,769,200 respectively. (*See* PRDPF 42, 102.)

On October 19, 2001, Hutton contributed his entire membership interest in the LLC to Clearmeadow Capital Corp. as a contribution to its capital. (PRDPF 54.) Also on October 19, the LLC admitted a second member, CF Advisors XXXVII, LLC, the president of which was Daniel J. Brooks. (PRDPF 55.)

As long as Clearmeadow Capital was the LLC's sole member, the LLC was an entity disregarded as separate from its owner for federal tax purposes (*see* 26 C.F.R. (Treas. Reg.) § 301.7701-3(b)(1)(ii)), and Clearmeadow Capital directly held a contingent liability to pay EUR 4,347,352 ($2,769,200 on the closing date) as part of the short MLD position. When CF Advisors joined the LLC, however, a new entity sprang into being, an entity recognized as separate from its owner–the Clearmeadow partnership. *See* Treas. Reg. § 301.7701-3(f)(2) (emphasis added) ("A single member entity disregarded as an entity separate from its owner *is classified as a partnership when the entity has more than one member*"). For tax purposes Clearmeadow Capital no longer held the liability–the Clearmeadow partnership had assumed it. When the liability was later paid, it was the partnership that paid it, and it was the partnership that reported the payment as a deductible expense on its tax return. (*See* PRDPF 102.) The relevant facts are clear, and Hutton has admitted them all. On this point he has raised no issue of fact.

### *B. By law, the Clearmeadow partnership could assume a liability without electing to be taxed as a corporation.*

According to Hutton, however, the partnership never accepted Clearmeadow Capital's liability because "Clearmeadow LLC, as a disregarded entity, never filed nor was required to file an IRS Form 8832, Entity Classification Election, to convert from a single member disregarded

entity to a multi-member disregarded entity at the time it admitted CF Advisors to the LLC." Pl. Response at 15.

The LLC could not have elected to become a "multi-member disregarded entity" because such entities do not exist. "A business entity with two or more members is classified for federal tax purposes *as either a corporation or a partnership*." Treas. Reg. § 301.7701-2(a) (emphasis added). After admitting its second member, the LLC could have elected to be taxed as a corporation under § 301.7701-3(a); but because it filed no election, it became a partnership by default under § 301.7701-3(b)(1), which provides: "[U]nless the entity elects otherwise, a domestic eligible entity [a non-corporation] is . . . [a] partnership if it has two or more members."

Hutton seems to argue that the Clearmeadow partnership could not have assumed Clearmeadow Capital's liability because the partnership never elected to be taxed as a corporation. If this is his argument, it is a *non sequitur* and requires no further response.

*II. The 40% penalty will apply to the underpayment that will result from Clearmeadow Capital's gross overstatement of its basis in its partnership interest and its assets.*

On October 19, 2001, Clearmeadow Capital contributed the following items to the Clearmeadow partnership in exchange for a partnership interest: (1) the long MLD position, in which it had a basis of $2,500,000; (2) the short MLD position, which imposed a contingent liability to pay the dollar equivalent of EUR 4,347,352 as of December 14, 2001; and (3) $287,500 in cash. *See* Def. SJ Mot. at 22. Under Code § 721(a), Clearmeadow Capital recognized no gain or loss on the contribution; and under § 722, its basis in its partnership interest included the amount of the contributed cash and the adjusted basis of the long MLD position. But the partnership also assumed Clearmeadow Capital's contingent liability on the

short position, which was a "liability" within the meaning of Code § 358(h)(3) ("[T]he term 'liability' shall include any fixed or contingent obligation to make payment, without regard to whether the obligation is otherwise taken into account for purposes of this title"). As a result, Clearmeadow Capital must reduce its outside basis by the amount of the liability. Treas. Reg. § 1.752-6(a) provides:

> If, in a transaction described in section 721(a), a partnership assumes a liability (defined in section 358(h)(3)) of a partner (other than a liability to which section 752(a) and (b) apply), then, after application of section 752(a) and (b), the partner's basis in the partnership is reduced (but not below the adjusted value of such interest) by the amount (determined as of the date of the exchange) of the liability.[1]

When the Clearmeadow partnership liquidated, it distributed the following assets to Clearmeadow Capital: $281,815 in cash and 1,487.51 units of Canadian currency. (*See* DPF 97, 98.) Clearmeadow Capital's basis in the Canadian currency should have been "an amount equal to the adjusted basis of [its] interest in the partnership reduced by any money distributed in the same transaction." Code § 732(b). Clearmeadow Capital, however, failed to adjust the basis of its partnership interest by the liability the partnership had assumed. Because of this error (and perhaps others), it claimed a basis of $2,501,000 in the 1,487.51 Canadian dollars and accordingly it reported a capital loss of $1,004,040 when it sold 597.98 of the Canadian dollars. (*See* DPF 92, 104.)

---

[1] By its terms, if Treas. Reg. § 1.752-6 applies to a liability, Code § 752(a) & (b) cannot be applied afterwards. Therefore the defendant will not calculate Clearmeadow Capital's outside basis by decreasing it in the amount of the transferred liability (§ 752(b)), increasing it by the resulting increase in the partner's pro-rata share of the partnership's new liability (§ 752(a)), and then decreasing it again when the partnership's liability disappears at the closing of the short sale (§ 752(b)). The resulting net decrease in basis would probably be similar.

As the defendant has explained (Def. SJ Brief at 31), Clearmeadow Capital overstated its basis in the Canadian currency by considerably more than 400%. A correction of this overstatement will result in an underpayment on Hutton's individual return, and the underpayment will exceed $5,000. Hutton will therefore be liable for a 40% penalty under Code § 6662(a), (b)(3), (e), and (h). *See* Def. SJ Brief at 30.

In his response, Hutton denies on two grounds that the penalty can apply: (1) Because the partnership assumed a contingent liability, he argues (wrongly) that Clearmeadow Capital must reduce its basis in the partnership only if Treas. Reg. § 1.752-6 applies to the transaction before the Court;[2] and he insists that the regulation does not apply. *See* Pl. Response at 16-21. (2) He also insists that his tax underpayment will result not because Clearmeadow Capital overstated its basis in the Canadian currency, but because the IRS ignored the entire transaction as an economic sham. *See id.* at 23-25. The Fifth Circuit has held that an overvaluation penalty cannot apply in those circumstances, and in Hutton's (unexplained) view, the Fifth Circuit's opinion is "controlling in this case." *Id*. at 24. Neither argument has merit.

---

[2] The penalty will also apply because the transactions lacked business purpose and economic substance. Accordingly, Clearmeadow Capital's basis in its partnership interest and assets will equal $0. *See* page 11, *infra*. If the Court decides the case on this theory, the defendant will be entitled to judgment as a matter of law. If, however, the Court applies Treas. Reg. § 1.752-6, a minor factual issue will require resolution. The parties must either stipulate to the fair market value of the liability the partnership assumed, or the Court must decide it. On the date of the assumption, October 19, the liability was worth about the amount of the premium the LLC had demanded to assume it on October 15–EUR 2,717,033, or $2,472,500; but expert testimony will be needed to establish the exact amount, absent a stipulation to accept a reasonable adjustment from $2,472,500 as the liability's value.

### *A. Treas. Reg. § 1.752-6 requires Clearmeadow Capital to reduce the basis of its partnership interest by the amount of the liability the partnership assumed because Clearmeadow Capital transferred no trade or business along with the liability.*

Treas. Reg. § 1.752-6 applies to the present case retroactively. *See* Def. SJ Brief at 26-29. Hutton does not challenge the retroactive application of the regulation.

Instead, Hutton argues that Treas. Reg. § 1.752-6 cannot apply to the contingent liability that was part of the MLD short position because § 1.752-6(b)(1) incorporates "the exceptions contained in [Code] section 358(h)(2)(A) and (B)." In Hutton's view, Clearmeadow Capital transferred "the trade or business which the liability [was] associated . . . to the person assuming the liability as part of the exchange" (§ 358(h)(2)(A)) and thus qualifies for the exception. *See* Pl. Response at 16-19.

Hutton's argument fails for several reasons. First, he takes his definition of "trade or business" from *Commissioner v. Groetzinger*, 480 U.S. 23, 35 (1987) (construing Code § 162): "[T]o be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and . . . the taxpayer's primary purpose for engaging in the activity must be for income or profit." *See* Pl. Response at 18. Hutton, however, has both conceded and established that the transaction before the Court lacked business purpose and economic effect. *See id.* at 33-34; *see also* pages 17-19, *infra*. Hutton can hardly argue that the Clearmeadow partnership engaged in a trade or business with a genuine profit motive.[3]

---

[3] From this lack of profit motive it also follows that Hutton may not deduct his out-of-pocket expenses. *See, e.g., Agro Science Co. v. Comm'r*, 934 F.2d 573, 576 (5th Cir. 1991) ("Expenditures may only be deducted under [Code] sections 162 . . . and 212 if the facts and circumstances indicate that the taxpayer made them primarily in furtherance of a bona fide profit objective independent of tax consequences").

Second and more important–Code § 358(h)(2)(A) could apply only if Clearmeadow Capital had held a trade or business that it could have transferred to the partnership *as part of the exchange* that occurred on October 19, 2001; but there is no indication that Clearmeadow Capital Corp. or the LLC had carried on a business before Clearmeadow Capital exchanged its cash and MLD positions for a partnership interest, and Hutton has offered no evidence of such a business. Instead he argues that the Clearmeadow partnership carried on a trade or business *after* the exchange. For example, he quotes the Restated and Amended Operating Agreement that went into effect when CF Advisors joined the LLC. Under the agreement, the partnership was to acquire and manage investments in foreign currency, and the Class B member was to run the business. *See* Pl. Response at 18-19; DPF 55-56. But the LLC had no Class B member when Clearmeadow Capital transferred the MLD positions to the partnership. Hutton also cites the partnership's purchases and sales of foreign currency investments (Pl. Response at 18-19), but naturally the partnership had to exist before it could buy and sell foreign currency. The partnership's asserted "trade or business" could not exist before the partnership existed.

Before the exchange, Clearmeadow Capital held no trade or business: it held cash, the long MLD position, and the short MLD position, which imposed on the holder a contingent liability to pay the dollar equivalent of EUR 4,347,352 on December 14, 2001. Hutton might argue that Clearmeadow Capital transferred "substantially all the *assets* with which the liability [was] associated . . . to the person assuming the liability as part of the exchange." Code § 358(h)(2)(B) (emphasis added). This exception also appears in Treas. Reg. § 1.752-6(b)(1), but the exception does not apply to transactions described in Notice 2000-44, 2000-2 C.B. 255. *See* § 1.752-6(b)(2). The defendant has shown that Hutton's transaction is substantially similar

to the ones described in Notice 2000-44 (see the excerpt from the Notice quoted at Def. SJ Brief 25), and Hutton has not shown otherwise. Thus Hutton has failed to move his transaction beyond the reach of Treas. Reg. § 1.752-6.

*B. A 40% penalty applies to the underpayment that could arise from Clearmeadow Capital's gross valuation misstatement even though the transactions also constitute an economic sham.*

In the FPAA issued to the Clearmeadow partnership, the IRS found that the partnership had assumed a partner's liability when it accepted the MLD short position; and it held that the transferor partner would have to reduce the basis of its partnership interest accordingly. The IRS also found that there was no business purpose or economic substance either in the purchase and contribution of the MLD positions or in the formation and liquidation of the partnership. It proposed to assess penalties on any underpayment resulting from valuation misstatements. (*See* DPF 129.)

The defendant has established the IRS's first contention: Clearmeadow Capital overstated the basis of its partnership interest and consequently overstated its basis in the assets the partnership distributed in liquidation. Because of the valuation overstatement, Clearmeadow Capital reported an inflated capital loss to Hutton, its sole shareholder. Hutton claimed the loss on his individual return, thus understating his tax liability. Hutton will be liable to a penalty equal to 40% of the portion of the underpayment that "is attributable to one or more gross valuation misstatements." Code § 6662(h).

Hutton himself has established the IRS's second contention and has given the Court another ground on which to find the penalty applicable: his transactions lacked business purpose and economic substance. *See* pages 17-19, *infra*. As a result, the transactions and the

partnership must be ignored. *See Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1352 (Fed. Cir. 2006). As a further result, Clearmeadow Capital's basis in the Canadian currency was $0, and Hutton is liable for the 40% penalty even if Treas. Reg. § 1.752-6 does not apply. *See Zfass v. Comm'r*, 118 F.3d 184, 191 (4th Cir. 1997) (quoting the trial court's opinion). He asserts, however, that the transaction's lack of economic substance protects him from the penalties he would owe otherwise. *See* Pl. Response at 24-25. Hutton relies entirely upon a notion the Fifth Circuit expressed in *Heasley v. Commissioner*, 902 F.2d 380, 383 (5th Cir. 1990):

> Whenever the I.R.S. totally disallows a deduction or credit, the I.R.S. may not penalize the taxpayer for a valuation overstatement included in that deduction or credit. In such a case, the underpayment is not attributable to a valuation overstatement. Instead, it is attributable to claiming an improper deduction or credit.

*Accord Weiner v. United States*, 389 F.3d 152, 161-62 (5th Cir. 2004).

Every other court of appeals to consider this issue has disagreed with the Fifth Circuit. In footnote 12 on page 39 of Def. SJ Brief, the defendant cited opinions by the Eighth, Second, Sixth, Fourth, and Third Circuits. Most of these opinions discuss the Fifth Circuit's view and explain why it is untenable; yet instead of refuting their reasoning or distinguishing their facts, Hutton ignores them and asserts, "Heasley is controlling in this case." Pl. Response at 24. The Fifth Circuit, however, does not review the judgments of this Court. *See* 28 U.S.C. §§ 41, 1295(a)(3). *Heasley* is not controlling. *Heasley* is not even persuasive.

Code § 6662(h) applies the 40% penalty to the portion of an underpayment that "is attributable to one or more gross valuation misstatements." Hutton's underpayment will be *attributable to* a gross valuation misstatement because he claimed an inflated capital loss that resulted from Clearmeadow Capital's inflated basis in an asset. The IRS will have at least two

alternative theories upon which to *deny* the capital loss: (1) reduction of Clearmeadow Capital's basis in its partnership interest, as required by Treas. Reg. § 1.752-6; and (2) disallowance of the transaction's tax attributes on the ground that the transaction was an economic sham. But no matter what ground the IRS relies upon to deny Hutton's capital loss, the underpayment will be attributable to denial of a loss that was claimed because of a gross valuation misstatement and hence will be attributable to the gross valuation misstatement. Most courts of appeal agree with this view. *See Zfass*, 118 F.3d at 190 (emphasis added; citations omitted) ("The Second, Sixth, and Eighth Circuits have held that when an underpayment stems from deductions that are *disallowed due to a lack of economic substance*, the deficiency is *attributable to an overstatement of value* and is subject to penalty").

Even if Hutton properly understood the words "attributable to," the Court cannot accept his construction of the statute because he is implicitly reading into it a word that Congress chose not to add. In Hutton's view, Code § 6662(h) applies the 40% penalty only when an underpayment "is attributable [*solely*] to one or more gross valuation misstatements." The Court, however, must apply the statute as written. If Hutton's underpayment is attributable to two alternative grounds, it is also attributable to each of them: an underpayment remains attributable to a gross valuation misstatement if it is attributable both to a gross valuation misstatement and to the disregarding of an economic sham.

Hutton's interpretation of Code § 6662(h) would punish the defendant for being successful. Hutton would unquestionably owe the penalty if the defendant had shown only that Clearmeadow Capital overstated its basis in its partnership interest and in its assets. But because the defendant has also shown that the entire transaction was an economic sham, Hutton asserts

that he owes no penalties. If Hutton is correct, a transaction can be penalized if it has one flaw, but it is immune from penalties if it has two. Naturally, the courts have rejected such a perverse result. *See Gilman v. Comm'r*, 933 F.2d 143, 150 (2d Cir. 1991).

Unless the partnership can establish a defense, the 40% penalty will apply to any substantial underpayment resulting from Clearmeadow Capital's gross valuation misstatement. Hutton has failed to show why the penalty should not apply.

*III. Hutton's factual assertions, even if accepted, fail to establish a prima facie defense against imposition of the 40% penalty.*

This Court has jurisdiction to decide whether the partnership can raise a "reasonable-cause" defense under Code § 6664(c)(1) to penalties arising from gross valuation misstatements because (among other reasons) the partnership made a gross valuation misstatement on its return: it reported on a Schedule K-1 that Clearmeadow Capital Corp. had contributed $2,787,500 of capital during the year. (Defendant's Proposed Additional Fact, filed today.) This valuation misstatement is related to a substantial tax underpayment on Hutton's individual return. The partnership should have reduced the capital contribution by the value of the liability the partnership assumed.[4] Thus the Court can consider Hutton's argument that the partnership

[4] This is not the only gross misstatement on the partnership return. The partnership also asserted that its own "cost basis" in 1487.51 units of Canadian currency was $2,501,000 (DPF 97) even though it had paid only $1,000 for the currency (DPF 86). This is a blatant error. The partnership had only a $1,000 cost basis in the currency because a partnership's basis in a purchased asset is the purchase price. *Compare* Code § 1012 (basis is purchase price unless subchapter K provides otherwise for partnerships), *with* § 723 (partnership takes a carryover basis in contributed property). The partnership seems to have increased its $1,000 basis in the Canadian currency by adding the $2,500,000 carryover basis it took in the long MLD position, for which Hutton had ostensibly paid a premium of $2,500,000. (*See* DPF 38, 42.) But the partnership had already used that $2,500,000 of basis to reduce the $2,800,000 of income it booked when the long MLD position closed. (*See* DPF 101.) The Clearmeadow partnership

reasonably relied upon advice he received when he was acting for the partnership (*e.g.*, when he directed Hewitt to draft the partnership return). But Hutton has failed to allege sufficient facts to raise a triable issue whether the partnership reasonably relied on the advice it received.

Before Hutton entered the MLD transaction, Cantley & Sedacca required him to represent in writing that he (or his financial advisor) possessed knowledge and experience in financial and business matters sufficient to ensure his (or his financial advisor's) capability to evaluate the merits and risks of the MLD transaction. (*See* DPF 18.) Hutton made that representation–in writing. (*See* DPF 34.) Thus Hutton knew he was obliged to determine that he or his financial advisors had the ability to evaluate the merits and risks of the MLD transaction–but he never even inquired whether his advisors had the ability that he attributed to them. He and his advisors have all admitted that they lacked that ability. (*See* DPF 20 (Bryan Hanning), 22 (Hutton), 28 (Scott Hewitt).) Hutton cannot argue that he reasonably *assumed* they had the necessary expertise, because he was on notice to *determine* that they had it.

Hutton certainly cannot argue that the partnership reasonably relied either on Cantley & Sedacca's investment expertise (*see* DPF 18) or on their opinion letter. As the defendant has shown, Cantley & Sedacca warned Hutton not to rely upon their opinion letter if he had made any false statement in his "Investor Representations." He made an obviously false representation about his profit motive, and therefore he either knew or should have known that the partnership could not rely upon the opinion letter. *See* Def. SJ Brief at 31-34; *see also* Treas. Reg. § 1.6664-4(c)(1)(ii) (emphasis added) (A taxpayer may not rely on advice "based upon a representation or

---

could not deduct $2,500,000 of basis from taxable income and also preserve that basis in the (apparent) hope or belief that its partners could deduct the same basis a second time.

assumption which the taxpayer knows, *or has reason to know*, is unlikely to be true . . ."). This regulation renders Hutton's state of mind irrelevant.

Hutton does not dispute that his representations were false when he made them, but he seems to insist that the Cantley & Sedacca's opinion letter is reliable because it "reflected the facts as they existed at or near the time that plaintiff entered the transaction." Pl. Response at 28; see also plaintiff's proposed additional finding of uncontroverted fact (PPAFUF) No. 49. Hutton is wrong. Cantley & Sedacca based their opinion in part on Hutton's written, detailed, and false representation of his profit motive. There is no evidence that Hutton made the same representation to Cantley & Sedacca at a time when it could have been true, as the defendant explained in its response to Hutton's proposed finding no. 49 (filed herewith):

> [T]he Cantley & Sedacca opinion expressly relies upon Hutton's representation that he "intends to continue his Investment for a period of time to enable [him] to earn a reasonable profit from the Transactions, in excess of all fees and transactions [*sic*] and without regard to tax benefits." Pliske Decl. Ex. 5 at 7. Hutton has offered no evidence that he made this representation "at or near the time that plaintiff entered into the transaction." In fact, the record shows that Hutton made this representation for the first time on March 11, 2002, three months after the Clearmeadow partnership liquidated. (*See* DPF 68-69.) Hutton cannot pretend that Cantley & Sedacca were relying on the representation in October of 2001–five months before he made it.

Hutton either knew or should have known that he made a false representation. Cantley & Sedacca stated that they based their written opinion in part on that representation; they also warned Hutton that he could not rely upon their opinion if he had made any false representation. As a matter of law, neither Hutton nor the partnership could have relied upon Cantley & Sedacca's written opinion. Hutton also asserts that he received *oral* advice from Cantley &

Sedacca before the partnership existed (*see* Pl. Response at 25-26), but the as-yet-nonexistent partnership could hardly have relied upon it.

*IV. If a trial should be necessary to determine if the partnership can prevent imposition of the 40% penalty on the ground that it reasonably relied on certain advice, the Court can limit the scope of the trial because many facts are uncontested and should be considered established under RCFC 56(d).*

As the defendant has shown, Hutton has failed to allege facts that present a triable issue of whether the partnership reasonably relied upon the advice it received. If, however, the Court finds that Hutton has alleged such facts, a trial will be necessary; but the proceedings can be strictly limited, and most of the facts can be found before trial under RCFC 56(d).

*A. Hutton is not entitled to summary judgment on the issue of whether the partnership reasonably relied upon advice he claims to have received.*

On November 21, 2005, Hutton filed a complaint seeking a refund, a determination of partnership items and the related items set forth in the FPAA, and a determination of "the partnership level defenses relating to the penalties asserted in the FPAA." Compl. ¶ 2. On October 24, 2007, however, Hutton filed a cross-motion for summary judgment and a supporting brief in which he seeks only a declaration either that the asserted penalties do not apply or that he has established a reasonable-cause defense against them. *See* Pl. SJ Brief at 23-24. He seems to have abandoned his other demands.

The defendant has demonstrated that the 40% penalty applies because of the adjustments in the FPAA, and that the partnership has raised no triable issue of whether the partnership has established a "reasonable cause" defense under Code § 6664(c)(1). But if the Court determines that Hutton has alleged sufficient facts to raise the issue, Hutton is not entitled to summary judgment because he bases the defense on assertions that are at odds with the record. They

involve genuine issues of fact that prevent entry of summary judgment for Hutton. See the defendant's responses to plaintiff's proposed additional findings of uncontroverted fact and plaintiff's proposed findings of uncontroverted fact, filed today.

### *B. The Court can find that all uncontested proposed findings are established and can limit any trial to the issue of whether the partnership reasonably relied upon the advice it received.*

If the Court determines to hold a trial, the defendant asks the Court to consider the parties' cross-motions for summary judgment and to limit the triable issues under RCFC 56(d), which provides that the Court–

> at the hearing of the motion . . . shall if practicable ascertain what material facts exist without substantial controversy . . . . It shall thereupon make an order specifying the facts that appear without substantial controversy . . . and directing such further proceedings in the action as are just. Upon trial of the action the facts so specified shall be deemed established, and the trial shall be conduced accordingly.

Because Hutton has made so many ambiguous statements and has raised unsupported objections to so many of the defendant's proposed findings, the defendant will show which classes of fact are without substantial controversy.

#### *1. Hutton has established for all purposes that his partnership and his transactions lacked business purpose and economic effect.*

Hutton seems to concede that his MLD transaction was an economic sham (*see, e.g.*, Pl. Response at 13), but he also purports to limit the concession to "the defendant's motion for summary judgment" and to insist that the concession is made only "at this time" (*ibid.*). His ambivalence reaches its peak on page 33 of his response when he begins a sentence with these words: "Clearmeadow LLC's transaction lacked business purpose and economic substance." He ends the same sentence with these words: "however in 2001, when the transaction was entered

into, Clearmeadow LLC' [*sic*] transaction did not lack economic substance and business purpose." Whatever Hutton may mean, he cannot preserve an issue for trial by conceding it in summary-judgment proceedings. It is established that Hutton's transaction and the partnership itself were both economic shams–not because Hutton conceded the point, but because he has offered no evidence to the contrary.

Under TEFRA this Court has jurisdiction to decide whether the partnership was a sham. *See RJT Investments X v. Comm'r*, 491 F.3d 732, 735-36 (8th Cir. 2007) (a case factually similar to the present case). The FPAA finds that both the MLD transactions and the formation and liquidation of the partnership lacked business purpose and economic effect, *i.e.*, that they were economic shams. (DPF 129.) Hutton bears the burden of proving that the findings are incorrect. *See, e.g., Sealy Power, Ltd. v. Comm'r*, 46 F.3d 382, 385-86 (5th Cir. 1995); *Transcapital Leasing Assocs. 1990-II, L.P. v. United States*, 97 A.F.T.R. 2d (P.H.) ¶ 2006-734, 2006-1943 (W.D. Tex. 2006), *aff'd*, 2007 WL 2461825 (5th Cir. Aug. 23, 2007) (*per curiam*). Hutton, however, has offered no evidence that the FPAA was wrong. Furthermore, the defendant has offered evidence that the FPAA was correct: the evidence is Hutton's own testimony. (*See* DPF 134.)

Though Hutton points to nothing in the record that could support a finding that the MLD transaction and the partnership had economic substance, he offers a legal argument that he seems to think can generate a triable issue of fact. He states (Pl. Response at 33-34):

> [I]ssues of fact remain regarding whether the transaction lacked economic substance or business purpose because Plaintiff followed the black letter of the law as it was written during the time the transaction was entered and at the time the 2001 tax return was prepared and filed with the Internal Revenue Service.

But a legal argument is not a fact and cannot prevent the Court from accepting the defendant's proposed findings. *See, e.g., Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1404 (Fed. Cir. 1984) (*quoting Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984)) ("The party opposing the [summary-judgment] motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient"). Furthermore, Hutton has the law backwards: Technical compliance with the law cannot impart economic substance to a sham transaction. In fact, if a transaction lacks economic substance it is a sham "despite literal compliance with the statute." *E.g., Coltec*, 454 F.3d at 1354.

Hutton's failure of proof is enough to establish that the FPAA was correct. *See* Def. SJ Brief at 38-39 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Under RCFC 56(d) the Court should determine that the point has been conclusively established before trial. *See Watanabe Realty Corp. v. City of New York*, 315 F. Supp. 2d 375, 404 (S.D.N.Y. 2003).

*2. The Court should accept all of the defendant's proposed findings supported by the testimony of Edward Sedacca and Daniel J. Brooks because their testimony meets the requirements of RCFC 56(e) and because Hutton has offered no evidence to the contrary.*

The defendant supported many of its proposed findings by citing the sworn statement of Edward Sedacca and the deposition of Daniel J. Brooks. Both the statement and the deposition were taken in another proceeding, *NHB X, LLC, Norman H. Bevan, Tax Matters Partner v. Commissioner*, No. 17453-05 (Tax Ct.). Bevan, the petitioner, purchased the same tax shelter Hutton purchased and from the same promoters; and he entered a purported partnership with the

same individual who managed Hutton's partnership, Daniel J. Brooks. In his responses, Hutton opposes all of these proposed findings on the ground that the statement and deposition cannot be used as "depositions" under RCFC 32. He also asks the Court to strike defendant's exhibits 34 (Brooks's deposition) and 35 (Sedacca's statement).[5] Hutton's objections have no merit.

The defendant did not use Sedacca's statement and Brooks's deposition as RCFC 32 "depositions." The defendant used them as "affidavits" within the meaning of RCFC 56(e), which provides that–

> affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Affiants must also make their statements under oath or penalty of perjury. *See, e.g., Levi Strauss*, 742 F.2d at 1404. The Sedacca declaration and the Brooks deposition meet all of these requirements, and the Court's rules demand nothing more. Depositions and statements made under oath are just as good as affidavits and may be used to support motions for summary judgment under Rule 56(e). *See, e.g., Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 966-67 (9th Cir. 1981) (citing cases and other authorities).

Hutton also opposes each of these proposed findings by asserting that "this is not a fact that Plaintiff has any knowledge or may otherwise determine if true and accurate [*sic*]." (*E.g.*, plaintiff's response to defendant's proposed finding 66.) But by confessing ignorance Hutton cannot prevent the Court from adopting a proposed finding. If he can cite no evidence, he should

---

[5] Hutton opposes the following proposed findings that cite Sedacca's statement: DPFs 7, 8, 9, & 10. He opposes the following proposed findings that cite the deposition of Daniel Brooks: DPFs 60-67, 70, 71, 72 (in part), & 76-78.

either say that he does not oppose the finding or file an affidavit under RCFC 56(f) stating reasons why he cannot present facts essential to justify his opposition and requesting more time to collect the facts. In this case, however, the parties had a long period in which to conduct discovery, and it is doubtful if Hutton can identify any stone he has left unturned.

Finally, Hutton argues that these proposed findings are irrelevant because they establish that Cantley & Sedacca and Brooks were involved in MLD transactions with persons other than Hutton. *See* Pl. Response at 4-5. The argument is untenable. Hutton entered a transaction developed by Sedacca. All of Sedacca's transactions were similar and relied upon the same legal theory. (*See* DPF 8.) Sedacca's testimony sheds light on Hutton's transaction. Hutton brought this case on behalf of a partnership, yet he argues that his partner's testimony is irrelevant because his partner (essentially Brooks) also entered other partnerships. But the partnerships were all basically the same. (DPF 64.)

Hutton bought a tax shelter that the promoters sold to many customers. When examining mass-marketed tax shelters, courts have considered the testimony of the promoters and agents even if the testimony did not deal directly with the single customer before the court. *See, e.g., Brown v. Comm'r*, 85 T.C. 968, 972 n.6 (1985) (evidence of the promoters' dealings with participants other than the petitioners was "admissible in order to determine whether the transactions with petitioners [were] bona fide"); *Fox v. Comm'r*, 82 T.C. 1001, 1017 (1984) (examining the similarities between the transactions of petitioner and other clients of the same broker to determine that petitioners' losses were not properly deductible under Code § 165). *See generally Jade Trading, LLC v. United States*, 65 Fed. Cl. 188, 191 (2005) (discussing cases).

Furthermore, Brooks's testimony is sometimes the only source of vital information. For example, the record contains only one definition of "market-linked deposit," and it comes from Brooks. (DPF 63.) The testimony is not irrelevant. By adopting these proposed findings, the Court will radically shorten and simplify any trial and render the testimony of at least two witnesses unnecessary.

*3. Hutton has offered almost no meritorious opposition to the defendant's proposed findings, which should be considered established for purposes of the trial.*

Hutton has also opposed other proposed findings on unsupportable grounds. The defendant will mention only a few of them. In DPF 82, the defendant stated the yen/dollar exchange rate as of December 14, 2001. The information appears on a website maintained by the International Monetary Fund. *See* Declaration of Robert Stoddart, ¶ 16, appendix B to the brief in support of defendant's motion for summary judgment. In his response to DPF 82, Hutton states, "This is not a fact that Plaintiff has any knowledge or may otherwise determine if true and accurate [*sic*]. The proposed fact may require expert testimony." The defendant asks the Court to take judicial notice of the yen/dollar exchange rate under Fed. R. Evid. 201(d).

In his response to DPF 127, which is lifted directly from the sworn declaration of Martha TenEyck, Hutton states, "this fact is unsupported by the record or an attached affidavit as required under RCFC Rule 56(e)." And in his response to DPF 134, Hutton insists he cannot be held to a statement he made in another proceeding even though he swore in the present proceeding that the statement is accurate and even though he raises no triable issue about the

accuracy of the statement. These objections have no merit. Hutton's responses to the defendant's other proposed findings also demand a skeptical reading.

CONCLUSION

Using only uncontested facts, the defendant has established that the Clearmeadow partnership assumed a liability from Clearmeadow Capital, that Clearmeadow Capital accordingly overstated its basis in its partnership interest and in its assets, and that the overstatement will result in a substantial underpayment on Hutton's 2001 individual income-tax return. *See* pages 2-13, *supra.* Hutton admits and has established that his transactions lacked business purpose and economic effect. On these points the defendant is entitled to judgment as a matter of law. Accordingly, the defendant asks the Court to make the following determinations:

> (1) a determination of what the partners contributed to the Clearmeadow partnership in exchange for their partnership interests, and in particular, a determination that the partnership assumed a contingent liability when it accepted Clearmeadow Capital's contribution of the short MLD position in a transaction similar to the transactions described in Notice 2000-44;
>
> (2) a determination that a 40% penalty will be applicable to any substantial underpayment that results from Clearmeadow Capital's overstated basis in its partnership interest and in the assets distributed to it by the partnership; and
>
> (3) a determination that the purchase and contribution of the MLD positions, the formation of the Clearmeadow partnership, and its liquidation had neither business purpose nor economic substance, and that the FPAA properly reduced all of the reported items of income and loss to zero.

If the Court decides it requires a trial to determine whether the partnership reasonably relied upon the advice it received, the defendant asks the Court under RCFC 56(d) to "make an order specifying the facts that appear without substantial controversy . . . and directing such further proceedings in the action as are just." If the Court does not determine that the MLD

transactions and the Clearmeadow partnership lacked economic substance, the Court may also require a trial to determine the fair market value of the liability the partnership assumed.

Respectfully submitted,

s/Robert Stoddart

ROBERT STODDART
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
TEL: (202) 307-6445
FAX: (202) 514-9440
Robert.C.Stoddart@usdoj.gov

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section

s/ David Gustafson

December 10, 2007

APPENDIX A

Internal Revenue Code of 1986 (26 U.S.C.)

§ 162. Trade or business expenses

(a) In general.–There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business

. . . .

. . . .

. . . .

§ 212. Expenses for production of income

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year–

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; or

(3) in connection with the determination, collection, or refund of any tax.

. . . .

§ 358. Basis to distributees

. . . .

**(h)** Special rules for assumption of liabilities to which subsection (d) does not apply–

(1) In general.–If, after application of the other provisions of this section to an exchange or series of exchanges, the basis of property to which subsection (a)(1) applies exceeds the fair market value of such property, then such basis shall be reduced (but not below such fair market value) by the amount (determined as of the date of the exchange) of any liability–

[26 U.S.C. § 358(h), continued]

(A) which is assumed by another person as part of the exchange, and

(B) with respect to which subsection (d)(1) does not apply to the assumption.

(2) Exceptions.–Except as provided by the Secretary, paragraph (1) shall not apply to any liability if–

(A) the trade or business with which the liability is associated is transferred to the person assuming the liability as part of the exchange, or

(B) substantially all of the assets with which the liability is associated are transferred to the person assuming the liability as part of the exchange.

(3) Liability.--For purposes of this subsection, the term 'liability' shall include any fixed or contingent obligation to make payment, without regard to whether the obligation is otherwise taken into account for purposes of this title.

. . . .

§ 721. Nonrecognition of gain or loss on contribution

(a) General rule.–No gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership.

. . . .

. . . .

§ 722. Basis of contributing partner's interest

The basis of an interest in a partnership acquired by a contribution of property, including money, to the partnership shall be the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution increased by the amount (if any) of gain recognized under section 721(b) to the contributing partner at such time.

. . . .

§ 723. Basis of property contributed to a partnership

The basis of property contributed to a partnership by a partner shall be the adjusted basis of such property to the contributing partner at the time of the contribution increased by the amount (if any) of gain recognized under section 721(b) to the contributing partner at such time.

[26 U.S.C., continued]

§ 732. Basis of distributed property other than money

. . . .

(b) Distributions in liquidation.–The basis of property (other than money) distributed by a partnership to a partner in liquidation of the partner's interest shall be an amount equal to the adjusted basis of such partner's interest in the partnership reduced by any money distributed in the same transaction.

. . . .

. . . .

§ 733. Basis of distributee partner's interest

In the case of a distribution by a partnership to a partner other than in liquidation of a partner's interest, the adjusted basis to such partner of his interest in the partnership shall be reduced (but not below zero) by–

(1) the amount of any money distributed to such partner, and

(2) the amount of the basis to such partner of distributed property other than money, as determined under section 732.

. . . .

§ 752. Treatment of certain liabilities

(a) Increase in partner's liabilities.–Any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities, shall be considered as a contribution of money by such partner to the partnership.

(b) Decrease in partner's liabilities.–Any decrease in a partner's share of the liabilities of a partnership, or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities, shall be considered as a distribution of money to the partner by the partnership.

. . . .

. . . .

[26 U.S.C., continued]

§ 1012. Basis of property–cost

The basis of property shall be the cost of such property, except as otherwise provided in this subchapter and subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), and P (relating to capital gains and losses). . . .

. . . .

§ 6226. Judicial review of final partnership administrative adjustments

. . . .

(f) Scope of judicial review.–A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

. . . .

. . . .

§ 6662. Imposition of accuracy-related penalty on underpayments

(a) Imposition of penalty.–If this section applies to any portion of an underpayment of tax required to be shown on a return, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies.

(b) Portion of underpayment to which section applies.–This section shall apply to the portion of any underpayment which is attributable to 1 or more of the following:

. . . .

(3) Any substantial valuation misstatement under chapter 1.

. . . .

. . . .

[26 U.S.C. § 6622, continued]

(e) Substantial valuation misstatement under chapter 1.–

(1) In general.–For purposes of this section, there is a substantial valuation misstatement under chapter 1 if–

(A) the value of any property (or the adjusted basis of any property) claimed on any return of tax imposed by chapter 1 is 200 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be), or

. . . .

(2) Limitation.–No penalty shall be imposed by reason of subsection (b)(3) unless the portion of the underpayment for the taxable year attributable to substantial valuation misstatements under chapter 1 exceeds $5,000 ($10,000 in the case of a corporation other than an S corporation or a personal holding company (as defined in section 542)).

. . . .

(h) Increase in penalty in case of gross valuation misstatements.–

(1) In general.–To the extent that a portion of the underpayment to which this section applies is attributable to one or more gross valuation misstatements, subsection (a) shall be applied with respect to such portion by substituting "40 percent" for "20 percent".

(2) Gross valuation misstatements.–The term "gross valuation misstatements" means–

(A) any substantial valuation misstatement under chapter 1 as determined under subsection (e) by substituting–

(i) "400 percent" for "200 percent" each place it appears.

. . . .

. . . .

[The Pension Protection Act of 2006, Pub. L. No. 109-280, § 1219(a)(1) & (2), 120 Stat. 780, 1083, made the following amendments to Code § 6662: In subsection (e)(1) it struck out "200 percent" and substituted "150 percent." And it rewrote subsection (h)(2)(A)(i)as follows: "in paragraph (1)(A), "200 percent" for "150 percent". The amendments apply to returns filed after the date of enactment, August 17, 2006. *See id.*, § 1219(e)(1), 120 Stat. at 1085.]

[26 U.S.C., continued]

§ 6664. Definitions and special rules

. . . .

(c) Reasonable cause exception for underpayments.--

1. In general.–No penalty shall be imposed under section 6662 or 6663 with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.

. . . .

. . . .

. . . .

Treasury Regulations (26 C.F.R.):

§ 1.752-6 Partnership assumption of partner's section 358(h)(3) liability after October 18, 1999, and before June 24, 2003

(a) In general. If, in a transaction described in section 721(a), a partnership assumes a liability (defined in section 358(h)(3)) of a partner (other than a liability to which section 752(a) and (b) apply), then, after application of section 752(a) and (b), the partner's basis in the partnership is reduced (but not below the adjusted value of such interest) by the amount (determined as of the date of the exchange) of the liability. For purposes of this section, the adjusted value of a partner's interest in a partnership is the fair market value of that interest increased by the partner's share of partnership liabilities under Sec. Sec. 1.752-1 through 1.752-5.

(b) Exceptions–

(1) In general. Except as provided in paragraph (b)(2) of this section, the exceptions contained in section 358(h)(2)(A) and (B) apply to this section.

(2) Transactions described in Notice 2000-44. The exception contained in section 358(h)(2)(B) does not apply to an assumption of a liability (defined in section 358(h)(3)) by a partnership as part of a transaction described in, or a transaction that is substantially similar to the transactions described in, Notice 2000-44 (2000-2 C.B. 255). See Sec. 601.601(d)(2) of this chapter.

[26 C.F.R. § 1.752-6, continued]

(d) Effective dates–

(1) In general. This section applies to assumptions of liabilities occurring after October 18, 1999 and before June 24, 2003.

. . . .

. . . .

Sec. 1.6664-4 Reasonable cause and good faith exception to section 6662 penalties.

(a) In general. No penalty may be imposed under section 6662 with respect to any portion of an underpayment upon a showing by the taxpayer that there was reasonable cause for, and the taxpayer acted in good faith with respect to, such portion. Rules for determining whether the reasonable cause and good faith exception applies are set forth in paragraphs (b) through (g) of this section.

. . . .

(c) Reliance on opinion or advice–

(1) Facts and circumstances; minimum requirements. All facts and circumstances must be taken into account in determining whether a taxpayer has reasonably relied in good faith on advice (including the opinion of a professional tax advisor) as to the treatment of the taxpayer (or any entity, plan, or arrangement) under Federal tax law. For example, the taxpayer's education, sophistication and business experience will be relevant in determining whether the taxpayer's reliance on tax advice was reasonable and made in good faith. In no event will a taxpayer be considered to have reasonably relied in good faith on advice (including an opinion) unless the requirements of this paragraph (c)(1) are satisfied. The fact that these requirements are satisfied, however, will not necessarily establish that the taxpayer reasonably relied on the advice (including the opinion of a tax advisor) in good faith. For example, reliance may not be reasonable or in good faith if the taxpayer knew, or reasonably should have known, that the advisor lacked knowledge in the relevant aspects of Federal tax law.

[26 C.F.R. § 1.6664-4(c)(1), continued]

> (i) All facts and circumstances considered. The advice must be based upon all pertinent facts and circumstances and the law as it relates to those facts and circumstances. For example, the advice must take into account the taxpayer's purposes (and the relative weight of such purposes) for entering into a transaction and for structuring a transaction in a particular manner. In addition, the requirements of this paragraph (c)(1) are not satisfied if the taxpayer fails to disclose a fact that it knows, or reasonably should know, to be relevant to the proper tax treatment of an item.
>
> (ii) No unreasonable assumptions. The advice must not be based on unreasonable factual or legal assumptions (including assumptions as to future events) and must not unreasonably rely on the representations, statements, findings, or agreements of the taxpayer or any other person. For example, the advice must not be based upon a representation or assumption which the taxpayer knows, or has reason to know, is unlikely to be true, such as an inaccurate representation or assumption as to the taxpayer's purposes for entering into a transaction or for structuring a transaction in a particular manner.
>
> . . . .

. . . .

. . . .

Sec. 301.6221-1 Tax treatment determined at partnership level.

> . . . .
>
> (c) Penalties determined at partnership level. Any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item shall be determined at the partnership level. Partner-level defenses to such items can only be asserted through refund actions following assessment and payment. Assessment of any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item shall be made based on partnership-level determinations. Partnership-level determinations include all the legal and factual determinations that underlie the determination of any penalty, addition to tax, or additional amount, other than partner-level defenses specified in paragraph (d) of this section.

[26 C.F.R. § 301.6221-1, continued]

(d) Partner-level defenses. Partner-level defenses to any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item may not be asserted in the partnership-level proceeding, but may be asserted through separate refund actions following assessment and payment. See section 6230(c)(4). Partner-level defenses are limited to those that are personal to the partner or are dependent upon the partner's separate return and cannot be determined at the partnership level. Examples of these determinations are whether any applicable threshold underpayment of tax has been met with respect to the partner or whether the partner has met the criteria of section 6664(b) (penalties applicable only where return is filed), or section 6664(c)(1) (reasonable cause exception) subject to partnership-level determinations as to the applicability of section 6664(c)(2).

. . . .

. . . .

Sec. 301.7701-2 Business entities; definitions.

(a) Business entities. For purposes of this section and Sec. 301.7701-3, a business entity is any entity recognized for federal tax purposes (including an entity with a single owner that may be disregarded as an entity separate from its owner under Sec. 301.7701-3) that is not properly classified as a trust under Sec. 301.7701-4 or otherwise subject to special treatment under the Internal Revenue Code. A business entity with two or more members is classified for federal tax purposes as either a corporation or a partnership. A business entity with only one owner is classified as a corporation or is disregarded; if the entity is disregarded, its activities are treated in the same manner as a sole proprietorship, branch, or division of the owner.

(b) Corporations. For federal tax purposes, the term corporation means–

. . . .

(2) An association (as determined under Sec. 301.7701-3);

. . . .

. . . .

[26 C.F.R., continued]

Sec. 301.7701-3 Classification of certain business entities.

(a) In general. A business entity that is not classified as a corporation under Sec. 301.7701-2(b) (1), (3), (4), (5), (6), (7), or (8) (an eligible entity) can elect its classification for federal tax purposes as provided in this section. An eligible entity with at least two members can elect to be classified as either an association (and thus a corporation under Sec. 301.7701-2(b)(2)) or a partnership, and an eligible entity with a single owner can elect to be classified as an association or to be disregarded as an entity separate from its owner. Paragraph (b) of this section provides a default classification for an eligible entity that does not make an election. Thus, elections are necessary only when an eligible entity chooses to be classified initially as other than the default classification or when an eligible entity chooses to change its classification. . . .

(b) Classification of eligible entities that do not file an election–

(1) Domestic eligible entities. Except as provided in paragraph (b)(3) of this section, unless the entity elects otherwise, a domestic eligible entity is–

(i) A partnership if it has two or more members; or

(ii) Disregarded as an entity separate from its owner if it has a single owner.

. . . .

. . . .

(f) Changes in number of members of an entity–

. . . .

(2) Partnerships and single member entities. An eligible entity classified as a partnership becomes disregarded as an entity separate from its owner when the entity's membership is reduced to one member. A single member entity disregarded as an entity separate from its owner is classified as a partnership when the entity has more than one member. If an elective classification change under paragraph (c) of this section is effective at the same time as a membership change described in this paragraph (f)(2), the deemed transactions in paragraph (g) of this section resulting from the elective change preempt the transactions that would result from the change in membership.

Federal Rules of Evidence

Rule 201. Judicial Notice of Adjudicative Facts

. . . .

(d) When mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.

. . . .